TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GRAND VIEW FINANCIAL, LLC,<br><br>       Debtor and Debtor in Possession. | Case No.:  2:17-bk-20125-RK<br><br>Chapter 11 Case<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING TURNOVER OF PROPERTY OF THE ESTATE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br><u>Hearing:</u><br>Date:       June 19, 2018<br>Time:      2:30 p.m.<br>Place:     Courtroom 1675<br>            255 E. Temple St.<br>            Los Angeles, CA 90012 |

**PLEASE TAKE NOTICE THAT** a hearing will be held at the above referenced date, time, and location to consider this motion (the "Motion") by Grand View Financial, LLC, the debtor and debtor in possession herein (the "Debtor"), for the entry of an order compelling (a) Shirley Hanes ("Hanes") and any other occupants of 1130 N. Edison Street, Stockton, CA 95208 (the "N. Edison Property") to turnover possession of the N. Edison Property to the Debtor and (b) Hanes to turnover and pay the Debtor $8,225.00 in currently owed rent, property insurance payments, and late fees and any additional rent, property insurance payments, and late fees accruing hereafter (the "N. Edison Rent") pursuant to the terms of that certain Month to Month Rental Agreement between the Debtor and Hanes for the lease of the N. Edison Property (the "N. Edison Lease"), and (2) (a) Stephen Ho ("Ho" and, with Hanes, the "Subject Tenants") and any other occupants of 185 Linden Avenue, San Bruno, CA 94066 (the "Linden Property" and, with the N. Edison Property, the "Subject Properties") to turnover possession of the Linden Property to the Debtor and (b) Ho to turnover and pay the Debtor $41,580.00 in currently owed rent, property insurance payments, and late fees and any additional rent, property insurance payments, and late fees accruing hereafter (the "Linden Rent" and, with the N. Edison Rent, the "Subject Rent") pursuant to the terms of that certain Month to Month Rental Agreement between the Debtor and Ho for the lease of the Linden Property (the "Linden Lease" and, with the N. Edison Lease, the "Subject Leases").

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon this Notice and Motion and the Memorandum and Declaration of Steve Rogers annexed hereto, 11 U.S.C. § 542, Local Bankruptcy Rule ("LBR") 9013-1, the record in this case, and all arguments made at the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), any opposition to the Motion must (1) be in writing and include all reasons and evidence in support of the opposition, (2) be filed at least fourteen (14) days prior to the hearing on the Motion, and (3) be served on the United States Trustee and counsel for the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the Court may deem the failure of any party to file a timely opposition to the Motion to constitute consent to the granting of the Motion and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order

(1)    granting the Motion;

(2)    compelling (a) Hanes and any other occupants of the N. Edison Property to turnover possession of the N. Edison Property to the Debtor and (b) Hanes to turnover and pay the N. Edison Rent owed under the N. Edison Lease;

(3)    compelling Ho and any other occupants of the Linden Property to turnover possession of the Linden Property to the Debtor and (b) Ho to turnover and pay the Linden Rent owed under the Linden Lease; and

(4)    granting such other and further relief as the Court deems just and proper.

Dated:  May 17, 2018                    **GRAND VIEW FINANCIAL, LLC**


                                        By:    _Todd M. Arnold_____
                                               TODD M. ARNOLD
                                        LEVENE, NEALE, BENDER, YOO
                                          & BRILL L.L.P.
                                        Attorneys for Debtor and Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.

## STATEMENT OF FACTS

**A.    GENERAL BACKGROUND.**

On August 17, 2017 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").[2]  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.   An Official Committee of Unsecured Creditors has not been formed.

**B.    THE DEBTOR'S BUSINESS AND REAL PROPERTY.**

The Debtor is a Wyoming limited liability company that was formed in 2015.   The Debtor is in the business of acquiring distressed real property (each a "Property" and, collectively, the "Properties")  in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "Alleged Secured Claim" and, collectively, the "Alleged Secured Claims") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "Alleged Lien" and, collectively, the "Alleged Secured Liens") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid. The defects are often the same defects that were part of the mortgage crisis and resulting implosion of the U.S. economy 2007 and/or were the result of efforts by surviving lenders, servicers and mortgage trustees to quickly foreclose on and liquidate real estate assets without following applicable law.

In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a

---

[1] All capitalized terms herein have the same meanings as in the preceding Notice of Motion and Motion.

[2] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

"Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the Debtor and the Former Owner. In a typical transaction in which the Debtor acquires a Property:

(1) the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "Sale Agreement" and, collectively, the "Sale Agreements") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an "Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Sale Agreement and Unsecured Note;

(2) the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

(3) the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

Through the Petition Date, the Debtor acquired approximately 42 Properties. Unfortunately, prior to the Petition Date, approximately 28 of the approximately 42 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon. As noted herein, the Debtor disputes the enforceability and validity of the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the validity of the purported foreclosures on the Foreclosure Properties, which the Debtor will seek to invalidate, reverse, or avoid.

**C.    THE REASONS FOR FILING BANKRUPTCY AND THE DEBTOR'S EXIT STRATEGY AND MEANS AND EFFORTS TO IMPLEMENT IT.**

On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary, invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a Chapter 11 plan of reorganization.

As of the Petition Date, the Debtor intended to initiate actions (each an "Avoidance Action" and, collectively, the "Avoidance Actions") to invalidate, reverse, or avoid the purported foreclosures on the Foreclosure Properties, to initiate claim objections (each a "Claim Objection" and, collectively, the "Claim Objections") to challenge and eliminate all of the Alleged Secured Claims and related Alleged Liens, to sell the resulting unencumbered Properties for the highest and best price (subject to any rights of first refusal a Former Owner may have to repurchase the subject Property), and to propose and confirm a Plan whereby all allowed secured claims (which the Debtor believes will be limited to some tax claims against certain of the Properties), administrative claims, priority claims, and general unsecured claims (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which is the Debtor's exit strategy.  The Debtor has begun to initiate Avoidance Actions, some of which include Claim Objections, and the Debtor will continue to initiate Avoidance Actions in furtherance of the Debtor's exit strategy.

Also in furtherance of its exit strategy, the Debtor (1) obtained Court authority to employ Keller Williams (the "Broker") real estate broker to market and sell the Properties at the appropriate time [see Dkts. 33 and 87] and (2) with the assistance of the Broker, began to market for sale certain Properties that are not Foreclosed Properties.

Finally, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

**D.    THE SUBJECT PROPERTIES FOR WHICH THE DEBTOR IS SEEKING TURNOVER OF POSSESSION AND BACK-RENT.**

**N. EDISON LEASE**

On or about October 7, 2016, the Debtor entered into the N. Edison Lease with Hanes regarding the lease of the N. Edison Property to Hanes.  A true and correct copy of the N. Edison Lease is attached hereto as **Exhibit "1."**  As can be seen, the N. Edison Lease provides for (1) a month to month lease of the N. Edison Property by Hanes from the Debtor, (2) $1,075 in monthly rent payable to the Debtor, which monthly rent was later reduced to $1,000, (3) a 10% late fee on unpaid rent, (4) tenant to be responsible for reimbursing the Debtor for the payment of property insurance, and (5) the right of either party to terminate the N. Edison Lease on thirty (30) days written notice and for Hanes to surrender the property and keys back to the Debtor upon termination of the N. Edison Lease (*see* N. Edison Lease, ¶¶ 4, 5, 11 and 12).

As of the Date hereof, Hanes failed to pay $8,225 in rent, property insurance, and late fees owed to the Debtor pursuant to the N. Edison Lease.  *See* **Exhibit "2"** hereto, which is a summary of Subject Rent owed on the Subject Properties discussed herein.  Based on the foregoing, and because the Debtor desires to sell the N. Edison Property and needs access to such property to market it and effectuate a sale, on May 17, 2018, pursuant to its rights under the N. Edison Lease, the Debtor sent a notice to Hanes terminating the N. Edison Lease.  A true and correct copy of that termination letter is attached hereto as **Exhibit "3."**  Therefore, the N. Edison Lease will terminate effective as of June 17, 2018, at which point the Debtor will be entitled to possession of the N. Edison Property and Hanes is required to surrender the N. Edison Property and the keys thereto to the Debtor.

Hanes was scheduled with a contingent claim in the Debtor's bankruptcy Schedules. *See* **Exhibit "4,"** which is a true and correct copy of the relevant pages of the Debtor's most

1   recently filed amended Schedules of Assets and Liabilities (the "Schedules").  Hanes did not

2   file a proof of claim and the Bar Date has passed.  *See* **Exhibit "5"** hereto, which is a copy of

3   the claims docket in this case.  Therefore, Hanes has no claim against the Debtor that can be

4   setoff against the N. Edison Rent.

5       **LINDEN LEASE**

6       On or about July 29, 2016, the Debtor entered into the Linden Lease with Ho regarding

7   the lease of the Linden Property to Ho.  A true and correct copy of the Linden Lease is attached

8   hereto as **Exhibit "6."**  As can be seen, the Linden Lease provides for (1) a month to month

9   lease of the Linden Property by Ho from the Debtor, (2) $1,725 in monthly rent payable to the

10  Debtor, which monthly rent was later reduced to $1,650, (3) a 10% late fee on unpaid rent, (4)

11  tenant to be responsible for reimbursing the Debtor for the payment of property insurance, and

12  (5) the right of either party to terminate the Linden Lease on thirty (30) days written notice and

13  for Ho to surrender the property and keys back to the Debtor upon termination of the Linden

14  Lease (*see* Linden Lease, ¶¶ 4, 5, 11 and 12).

15      As of the Date hereof, Ho failed to pay $41,580 in rent, property insurance, and late

16  fees owed to the Debtor pursuant to the Linden Lease.  *See* **Exhibit "2"** hereto, which is a

17  summary of Subject Rent owed on the Subject Properties discussed herein.  Based on the

18  foregoing, and because the Debtor desires to sell the Linden Property and needs access to such

19  property to market it and effectuate a sale, on May 17, 2018, pursuant to its rights under the

20  Linden Lease, the Debtor sent a notice to Ho terminating the Linden Lease.  A true and correct

21  copy of that termination letter is attached hereto as **Exhibit "7."**  Therefore, the Linden Lease

22  will terminate effective as of June 17, 2018, at which point the Debtor will be entitled to

23  possession of the Linden Property and Ho is required to surrender the Linden Property and the

24  keys thereto to the Debtor.

25      Ho was scheduled with a contingent claim in the Debtor's bankruptcy Schedules.  *See*

26  **Exhibit "4,"** which is a true and correct copy of the relevant pages of the Debtor's most

27  recently filed Schedules.  Ho did not file a proof of claim and the Bar Date has passed.  *See*

28

8

1  **Exhibit "5"** hereto, which is a copy of the claims docket in this case.  Therefore, Ho has no

2  claim against the Debtor that can be setoff against the Linden Rent.

**II.**

**DISCUSSION**

A.  **THE DEBTOR IS ENTITLED TO TURNOVER OF THE SUBJECT PROPERTIES AND THE PAYMENT OF BACK-RENT OWED UNDER THE SUBJECT LEASES FOR THE SUBJECT PROPERTIES.**

The commencement of a bankruptcy case creates an estate.  11 U.S.C. § 541(a).  "Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case…. and (7) Any interest in property that the estate acquires after the commencement of the case."  *Id.*

The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad and includes all kinds of property, including property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.  *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S. Ct. 2309, 2313–14, 76 L. Ed. 2d 515 (1983).  As noted, under Section 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  This expansive language is not ambiguous—all means all.  But even assuming the statute is ambiguous, this provision has been consistently interpreted by the courts to have the broadest possible scope. "Congress intended a broad range of property to be included in the estate.... The statutory language reflects this scope of the estate.... The house and senate reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad."  *Whiting Pools*, 462 U.S. at 204 (1983); *accord*, *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir.2001).

Section 542(a) states, "[e]xcept as provided in subsection (c) or (d) of this section [not applicable here], an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee [or Debtor in

9

1  Possession], and account for, such property or the value of such property, unless such property

2  is of inconsequential value or benefit to the estate." 11 U.S.C. §§ 542(a) and 1107.

3      Further, Section 542(b) states, "[e]xcept as provided in subsection (c) or (d) of this

4  section [not applicable here], an entity that owes a debt that is property of the estate and that is

5  matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the

6  trustee [or Debtor in Possession], except to the extent that such debt may be offset under section

7  553 of this title against a claim against the debtor.  11 U.S.C. §§ 542(b) and 1107.

8      Here, the Subject Tenants are in possession, custody or control of the Subject Properties,

9  which constitute property of the estate that the Debtor can sell or lease.  In fact, the Debtor

10 intends to sell the Subject Properties but needs to gain access to the Subject Properties so that

11 the Debtor's Broker can assess the value of the Subject Properties and proceed to list and

12 market them for sale and the Debtor can seek approval of such sales pursuant to Section 363.

13 Further, since the Subject Tenants are materially delinquent on their rent obligations under the

14 Subject Leases, at minimum, the Debtor is entitled to lease the Subject Properties to paying

15 tenants.  Based on the foregoing, and because, as a result of the Debtor's exercise of its right to

16 terminate the Subject Leases effective as of June 17, 2018, the Subject Tenants no longer have a

17 right to occupy the Subject Properties, the Debtor is entitled to turnover thereof pursuant to

18 Section 542(a).

19     In addition to the foregoing, the Debtor is entitled to turnover of the delinquent Subject

20 Rent owed by the Subject Tenants pursuant to Section 542(b), as the Subject Rent is property of

21 the estate that has matured and may not be offset, as none of the Subject Tenants filed any

22 claims that could form the basis for turnover.

23 **B.**    **THE DEBTOR MAY SEEK TURNOVER PURSUANT TO MOTION.**

24     The Debtor should not need to file an adversary proceeding for the requested relief. Case

25 law supports the Debtor's efforts to recover property of the estate by motion practice.  *See*

26 *Sterling Mining Company v. Sunshine Precious Metals, Inc.*, 2009 WL 2514159, at *3 (Bankr.

27 D. Idaho Aug. 14, 2009) (finding that case law provides exceptions to the "adversary

28

1  proceeding" rule regarding requests for turnover of property), *citing Austein v. Schwartz (In re*

2  *Gerwer)*, 898 F.2d 730 (9th Cir. 1990) (where the court concluded that the trustee's prosecution

3  of a turnover request by motion rather than adversary proceeding did not harm the third party, a

4  creditor, and the failure to require the different procedural process was harmless error); *see also*

5  10 COLLIER ON BANKRUPTCY ¶ 9014.01, at 9014-4 (even where a contested matter is

6  commenced by motion instead of a proper adversary proceeding, so long as due process has

7  bene afforded to the responding party, the courts will apply the harmless error rule and not force

8  the parties to start all over again); *Korneff v. Downey Regional Medical Center (In re Downey*

9  *Regional Medical Center)*, 441 B.R. 120, 128 (B.A.P. 9th Cir. 2010) (same); *United Student Aid*

10  *Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (Supreme Court unanimously reasoning and

11  holding that, even when an adversary proceeding is required, the real importance is actual notice

12  and an opportunity to be heard and stating that "[d]ue process requires notice reasonably

13  calculated, under all the circumstances, to apprise interested parties of the pendency of the

14  action and afford them an opportunity to present their objections.") (internal cites and quotes

15  omitted).

16      In *Sterling Mining Company v. Sunshine Precious Metals, Inc.*, 2009 WL 2514159, the

17  debtor in possession brought an emergency motion in the main chapter 11 case, not in an

18  adversary proceeding, but the bankruptcy court accepted and heard the motion as filed in the

19  bankruptcy court because due process had been afforded to the opposing party.  Here, the

20  Debtor has brought this motion on regular notice with full opportunity for opposing parties to

21  object to the Motion and participate at the hearing on the Motion.

22      In *In re Gerwer*, 898 F.2d 730 (9th Cir. 1990), the debtors at issue held interests in notes

23  and deeds of trust (similarly, here, the Debtor holds an interest in the Subject Properties, Subject

24  Leases, and Subject Rent).  *See In re Gerwer*, 898 F. 2d at 732.  The trustee in that case sought

25  the turnover of the estate's interests in such property in order to effectuate a sale of such

26  property (similarly, here, the Debtor seeks to market and sell the Subject Properties).  The Ninth

27  Circuit found that the request for turnover by motion did not harm the objecting creditor.  *Id.* at

28

1   734; *see also Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (B.A.P. 9th Cir. 2002)

2   (recognizing that when the record of a contested matter is developed to a sufficient degree that

3   the record of an adversary proceeding likely would not have been materially different, any

4   "error" in procedure is harmless and does not affect the substantial rights of the parties).

5                                              **III.**

6                                        **CONCLUSION**

7       **WHEREFORE**, the Debtor respectfully requests that the Court enter an order

8       (1)      granting the Motion;

9       (2)      compelling (a) Hanes and any other occupants of the N. Edison Property to

10  turnover possession of the N. Edison Property to the Debtor and (b) Hanes to turnover and pay

11  the N. Edison Rent owed under the N. Edison Lease;

12      (3)      compelling Ho and any other occupants of the Linden Property to turnover

13  possession of the Linden Property to the Debtor and (b) Ho to turnover and pay the Linden Rent

14  owed under the Linden Lease; and

15      (4)      granting such other and further relief as the Court deems just and proper.

16  Dated: May 17, 2018                    **GRAND VIEW FINANCIAL, LLC**

17

18                                         By:   *Todd M. Arnold*
                                                  TODD M. ARNOLD
19                                         LEVENE, NEALE, BENDER, YOO
                                             & BRILL L.L.P.
20                                         Attorneys for Debtor and Debtor in Possession

21

22

23

24

25

26

27

28

1

2              <u>**DECLARATION OF STEVE ROGERS**</u>

3          I, STEVE ROGERS, hereby declare as follows:

4          1.      I am over 18 years of age.  Except where otherwise stated, I have personal

5    knowledge of the facts set forth below and, if called to testify, would and could competently

6    testify thereto.

7          2.      I am the Managing Member and Vice President of Grand View Financial, LLC,

8    the debtor and debtor in possession herein (the "<u>Debtor</u>").  I am familiar with the Debtor's

9    books and records maintained in the ordinary course of the Debtor's business, the Debtor's bank

10   accounts, and the Debtor's business and operations.

11         3.      I make this Declaration in support of the Motion to which this Declaration is

12   attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the

13   Motion.

14         4.      On August 17, 2017 (the "<u>Petition Date</u>"), the Debtor commenced its bankruptcy

15   case by filing a voluntary petition under Chapter 11. The Debtor is operating its estate and

16   managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.  An

17   Official Committee of Unsecured Creditors has not been formed.

18         5.      The Debtor is a Wyoming limited liability company that was formed in 2015.

19   The Debtor is in the business of acquiring distressed real property (each a "<u>Property</u>" and,

20   collectively, the "<u>Properties</u>")  in situations where public records and documents available to the

21   Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an

22   "<u>Alleged Secured Claim</u>" and, collectively, the "<u>Alleged Secured Claims</u>") and the related trust

23   deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property

24   (each an "<u>Alleged Lien</u>" and, collectively, the "<u>Alleged Secured Liens</u>") suffer from defects

25   rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid.

26   The defects are often the same defects that were part of the mortgage crisis and resulting

27   implosion of the U.S. economy 2007 and/or were the result of efforts by surviving lenders,

28

1  servicers and mortgage trustees to quickly foreclose on and liquidate real estate assets without

2  following applicable law.

3         6.       In situations where the Debtor identifies a Property it is interested in acquiring,

4  the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a

5  "Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the

6  Debtor and the Former Owner.  In a typical transaction in which the Debtor acquires a Property:

7                (a)       the Debtor and the Former Owner execute a Real Estate Shared-Equity

8  Transaction & Purchase and Sale Agreement (each a "Sale Agreement" and, collectively,

9  the "Sale Agreements") pursuant to which, among other things, the Former Owner sells the

10  subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an

11  "Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually

12  agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able

13  to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby

14  increasing the equity in the Property, which is to be shared between the Former Owner and

15  the Debtor according to the terms of the subject Sale Agreement and Unsecured Note;

16                (b)       the Former Owner executes a Grant Deed (or sometimes a Warranty

17  Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

18                (c)       the Debtor and the Former Owner execute a Month to Month Rental

19  Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements")

20  whereby the Former Owner leases back the Property from the Debtor.

21         7.       Through the Petition Date, the Debtor acquired approximately 42 Properties.

22  Unfortunately, prior to the Petition Date, approximately 28 of the approximately 42 Properties

23  (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly

24  foreclosed upon.  As noted herein, the Debtor disputes the enforceability and validity of the

25  Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on

26  the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and,

27  therefore, the validity of the purported foreclosures on the Foreclosure Properties, which the

28

1    Debtor will seek to invalidate, reverse, or avoid.

2         8.    On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11

3    bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the

4    Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary,

5    invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid

6    alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure

7    Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's

8    Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a

9    Chapter 11 plan of reorganization.

10        9.    As of the Petition Date, the Debtor intended to initiate actions (each an

11   "Avoidance Action" and, collectively, the "Avoidance Actions") to invalidate, reverse, or avoid

12   the purported foreclosures on the Foreclosure Properties, to initiate claim objections (each a

13   "Claim Objection" and, collectively, the "Claim Objections") to challenge and eliminate all of

14   the Alleged Secured Claims and related Alleged Liens, to sell the resulting unencumbered

15   Properties for the highest and best price (subject to any rights of first refusal a Former Owner

16   may have to repurchase the subject Property), and to propose and confirm a Plan whereby all

17   allowed secured claims (which the Debtor believes will be limited to some tax claims against

18   certain of the Properties), administrative claims, priority claims, and general unsecured claims

19   (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the

20   Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which

21   is the Debtor's exit strategy.  The Debtor has begun to initiate Avoidance Actions, some of

22   which include Claim Objections, and the Debtor will continue to initiate Avoidance Actions in

23   furtherance of the Debtor's exit strategy.

24        10.   Also in furtherance of its exit strategy, the Debtor (1) obtained Court authority to

25   employ Keller Williams (the "Broker") real estate broker to market and sell the Properties at the

26   appropriate time [see Dkts. 33 and 87] and (2) with the assistance of the Broker, began to

27   market for sale certain Properties that are not Foreclosed Properties.

28

11.    Finally, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

12.    On or about October 7, 2016, the Debtor entered into the N. Edison Lease with Hanes regarding the lease of the N. Edison Property to Hanes.  A true and correct copy of the N. Edison Lease is attached hereto as **Exhibit "1."**

13.    As of the Date hereof, Hanes failed to pay $8,225 in rent, property insurance, and late fees owed to the Debtor pursuant to the N. Edison Lease.  *See* **Exhibit "2"** hereto, which is a summary of Subject Rent owed on the Subject Properties discussed herein, which was prepared and is based on the Debtor's books and records.  Based on the foregoing, and because the Debtor desires to sell the N. Edison Property and needs access to such property to market it and effectuate a sale, on May 17, 2018, pursuant to its rights under the N. Edison Lease, the Debtor, acting through counsel, sent a notice to Hanes terminating the N. Edison Lease.  A true and correct copy of that termination letter is attached hereto as **Exhibit "3."**

14.    Hanes was scheduled with a contingent claim in the Debtor's bankruptcy Schedules.  *See* **Exhibit "4,"** which is a true and correct copy of the relevant pages of the Debtor's most recently filed amended Schedules of Assets and Liabilities (the "Schedules").  Hanes did not file a proof of claim and the Bar Date has passed.  *See* **Exhibit "5"** hereto, which is a copy of the claims docket in this case.

15.    On or about July 29, 2016, the Debtor entered into the Linden Lease with Ho regarding the lease of the Linden Property to Ho.  A true and correct copy of the Linden Lease is attached hereto as **Exhibit "6."**

16.    As of the Date hereof, Ho failed to pay $41,580 in rent, property insurance, and late fees owed to the Debtor pursuant to the Linden Lease.  *See* **Exhibit "2"** hereto, which is a summary of Subject Rent owed on the Subject Properties discussed herein.  Based on the foregoing, and because the Debtor desires to sell the Linden Property and needs access to such property to market it and effectuate a sale, on May 17, 2018, pursuant to its rights under the Linden Lease, the Debtor, acting through counsel, sent a notice to Ho terminating the Linden

1    Lease. A true and correct copy of that termination letter is attached hereto as **Exhibit "7."**

2          17.    Ho was scheduled with a contingent claim in the Debtor's bankruptcy Schedules.

3    *See* **Exhibit "4,"** which is a true and correct copy of the relevant pages of the Debtor's most

4    recently filed Schedules.  Ho did not file a proof of claim and the Bar Date has passed.  *See*

5    **Exhibit "5"** hereto, which is a copy of the claims docket in this case.

6          18.    The Debtor intends to sell the Subject Properties but needs to gain access to the

7    Subject Properties so that the Debtor's Broker can assess the value of the Subject Properties and

8    proceed to list and market them for sale and the Debtor can seek Court approval of such sales.

9         I declare and verify under penalty of perjury that the foregoing is true and correct to the

10   best of my knowledge.

11        Executed on this 17th day of May 2018, at Minden, Nevada.

12

13

14

15   STEVE ROGERS

16

17

18

19

20

21

22

23

24

25

26

27

28

17

# EXHIBIT "1"

# MONTH-TO-MONTH
## Rental Agreement

THIS AGREEMENT, entered into this 7th day of October, 2016 by and between: Shirley Hanes hereinafter referenced as "Tenant," and  "Grand View Financial LLC,"  hereinafter referenced as "Owner/Landlord." Whereby Owner/Landlord herein agrees to rent to Tenant and Tenant Rents the premises known as 1130 N. Edison Street, Stockton  95201, County of San Joaquin, State of California, upon the following terms and conditions:

### TERM:
1.  The term of the agreement shall be from month-to-month, commencing  on October 7, 2016.

### RENT:
2.  The rent for said premises shall be One Thousand and Seventy-Five ($1,075.00) Dollars per month,  payable in advance on or before the FIRST day of each month. Each Tenant herein shall be individually liable and responsible for any and  all payments, rent or otherwise, due hereunder. At  Owner/Landlord's  option, Owner/Landlord may at  any time requirement or other sums be paid in either certified check, cashier's check, direct deposit or money order. If the Tenant is unable to pay rent when due, the Owner/Landlord has the legal right to serve notice to pay rent or vacate within (3) days, as provided by California Code of Civil Procedures Section 1161.

### DEPOSIT:
3.  At the time of signing of this Agreement; Tenant shall pay to Owner/Landlord, in trust, a deposit equal to one month's rent to be held and disbursed for Tenant damages to the Premises or other defaults under this Agreement (if any) as provided by law.  Deposit will be forfeited upon the conclusion of services against the Reset Agreement.

### PROPERTY INSURANCE:
4. Tenant will be responsible to maintain appropriate insurance for their interests in the Premises and property located on the Premises. Tenant shall pay 1/12 of the annual Owner/Landlord's insurance rate along with the monthly rent on or before the FIRST day of each month. An estimated insurance rate is due and payable until the actual rate is determined.

### LATE CHARGE:
5.  Should Tenant fail to pay all rent due prior to rent due date, then, in that event, a late charge of 10% of monthly rent shall immediately be due. Such late charges shall be deemed additional rent for such rental month and Owner/Landlord may add such late charges to Tenant's next monthly rent payment.

### RETURN CHECK CHARGE
6.  Notwithstanding any penal  or civil  sanctions  or damages which may apply,  Tenant  shall  pay Owner/Landlord    a $ 35.00 charge  for each and every  returned check, draft,  or order drawn on any bank or depository regardless of Tenant's intent, knowledge or fault. Such returned check charges shall be deemed additional rent for such rental month and Owner/Landlord may add such charges to next months rent.

### CLEANING AND MAINTENANCE:
7.  The cost of repairing or replacing any damage or wear and tear shall be the Tenant's sole responsibility. The Tenant shall keep the rental property tenantable, safe, sanitary and in compliance with all state and local housing, building, and health requirements applicable to the rental property; shall have all required inspections and certifications, if any, made; shall maintain the mechanical equipment and utilities in good operating condition; and shall maintain the following in good repair and clean condition.
   a.  Effective waterproofing and weather protection of room and exterior walls including windows and doors.
   b.  Plumbing fixtures and gas facilities.
   c.  A water supply capable of producing hot and cold running water, furnished to appropriate fixtures and connected to a
       sewage disposal system approved under applicable law.
   c.  Adequate heating facilities.
   d.  Electrical lighting.
   e.  Clean and sanitary building, grounds and appurtenances, free from all accumulation of debris, filth, rubbish, garbage,
and I         infestation by rats, rodents, and vermin at the commencement of the rental agreement.
   f.  An adequate number of appropriate receptacles for garbage and rubbish.
   g.  Floors, stairways and railings.
   h.  Smoke detectors and carbon monoxide detectors.

### USE OF PREMISES:
8.  Tenant agrees that the said premises shall be used and occupied for no other purpose than as a dwelling; and that said premises shall be occupied only by the signers of this agreement, and no others, without first obtaining the written consent of Owner/Landlord.

### UTILITIES:
9.  Tenant shall pay for all utilities, services, and charges supplied to said premises.

### RENTAL PRO-RATE:
10.  In the event that the rental payment date herein provided is not made prior than the first day of the month, then Tenant agrees to pro-rate said rental payment to the 1st day of the succeeding month, if so requested by Owner/Landlord.

### NOTICE OF TERMINATION:

11. This agreement and the tenancy hereby granted may be terminated by either party hereto by giving to the other party not less than thirty (30) days prior notice in writing.

### SURRENDER OF PREMISES:

12. Tenant agrees on the last day of Tenant's tenancy hereunder, to surrender to Owner/Landlord said premises and appurtenances and all furniture, goods, chattels, and keys belonging to Owner/Landlord in the same condition as when received, reasonable wear and tear excepted. Before departure, Tenant shall leave his forwarding address so that Owner/Landlord may make any notification and/ or refund as required by law.

### ASSIGNMENT:

13. Tenant shall not assign this agreement nor sub-let said premises or any part thereof without written consent of Owner/Landlord or his agent.

### INSPECTION/ ENTRY:

14. Pursuant, to Civil Code, Sec. 1954, all state and municipal codes, local ordinance, or health, safety or fire prevention rules, regulations or directives or any case decision concerning the proper maintenance and care of the demised premises and its contents, Owner/Landlord reserves the right to itself or its agents, to enter the premises at such reasonable times, with or without Tenant's presence, and for such reasonable purposes, including the inspection and showing of said premises at any time during reasonable business hours pursuant to the laws and guidelines referred to above, to inspect the same, to see that no damages have occurred thereto and to determine if said property is still occupied. Tenant specifically agrees not to change any lock or add any lock device to said premises without the prior written consent of Owner/Landlord or his agent. Tenant acknowledges that Owner/Landlord or his agent has a key to the premises and may use the same for entry, as provided herein.

### ALTERATIONS:

15. Tenant shall not paint or make any alterations to said premises without written consent of Owner/Landlord or his agent.

### MAINTENANCE AND REPAIRS:

16. Tenant, except as herein expressly provided, shall at his sole expense, keep and maintain said premises and appurtenances and every part thereof including all household furniture, goods, chattels, belonging to Owner/Landlord in good and sanitary order, condition and repair.

### PETS:

17. Tenant agrees that he shall not keep or permit to be kept in or about said premises, any dog, cat, bird, other pet or animal, without the specific written permission of Owner/Landlord or his agent.

### QUIET ENJOYMENT:

18. Tenant shall not commit, nor allow to be committed, any waste upon said premises or any nuisance, or other act or allow unnecessary noise especially during quiet times under city or county noise and/or "party" ordinance(s) (10:00 p.m. to 8:00 a.m.)

### GOVERNMENTAL REGULATIONS:

19. Tenant shall comply with laws, ordinances and governmental regulations applicable to said premises or to the use thereof.

### COST OF SUIT / ATTORNEY'S FEES:

20. In the event Owner/Landlord shall bring any action in connection herewith Owner/Landlord shall be entitled to receive as part of such action reasonable attorney's fees and court costs. Tenant also agrees to pay any other reasonable expenses that Owner/Landlord incurs in the enforcement of any of the covenants or provisions hereof, or in the recovery of rent or damages.

### WAIVER OF BREACH:

21. The waiver by Owner/Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant, or condition herein contained.

### NOTICES:

22. All notices to be given to Tenant may be given in writing personally, or by depositing the same in the United States mail, postage prepaid, and addressed to Tenant at said premises, whether or not Tenant has departed from, abandoned or vacated the premises.

### ENTIRE AGREEMENT:

23. This agreement constitutes the entire agreement between Owner/Landlord and Tenant, except as expressly provided herein.

*IN WITNESS THEREOF*, the parties hereto have executed this agreement the day and year first above written.

SHIRLEY HANES

# EXHIBIT "2"

| Tenant/Address/Rent | Unpaid Rent (Due on the 1st of the Month) | | Unpaid Property Insurance | | 10% Late Fee | |
|---|---|---|---|---|---|---|
| **Shirley Hanes** <br> **1130 N Edison Street,** <br> **Stockton, CA 95208** <br><br> **Mo Rent = $1,000** | 11/1/2017 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 12/1/2017 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 1/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 2/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 3/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 4/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 5/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | | $ 7,000.00 | $ | 525.00 | $ | 700.00 |
| **TOTAL OWED** | | | | | $ | 8,225.00 |

| Tenant/Address/Rent | Unpaid Rent (Due on the 1st of the Month) | | Unpaid Property Insurance | | 10% Late Fee | |
|---|---|---|---|---|---|---|
| **Stephen Ho**<br>**185 Linden Avenue,**<br>**San Bruno, CA  94066**<br><br>**Mo Rent = $1,650** | 8/1/2016 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 9/1/2016 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 10/1/2016 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 11/1/2016 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 12/1/2016 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 1/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 2/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 3/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 4/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 5/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 6/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 7/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 8/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 9/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 10/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 11/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 12/1/2017 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 1/1/2018 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 2/1/2018 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 3/1/2018 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 4/1/2018 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 5/1/2018 | $ 1,650.00 | $ | 75.00 | $ | 165.00 |
| | | $ 36,300.00 | $ 1,650.00 | | $ | 3,630.00 |
| **TOTAL OWED** | | | | | **$ 41,580.00** | |

# EXHIBIT "3"

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
LAW OFFICES



L N B Y & B

May 17, 2018

**VIA U.S. MAIL**
Shirley Hanes
1130 N. Edison Street
Stockton, CA 95208

Re:     **Lease (the "Lease") of 1130 N. Edison Street (the "Property")**

Ms. Hanes:

Our firm serves as counsel to Grand View Financial, LLC ("GV") in its
bankruptcy case. I am writing in regard to the Lease for the Property. A copy of the
Lease is attached hereto for your reference.

Please take notice that (1) you are delinquent on $8,225.00 in currently owed rent,
property insurance payments, and late fees, (2) the Debtor needs access to the Property to
effectuate the marketing and sale thereof, and (3) once the sale is effectuated, any lien of
the alleged secured creditor will attach to the sale proceeds and we will then seek to clear
the lien/claim of the alleged secured creditor. An itemization of currently owed rent,
property insurance payments, and late fees is also attached hereto for your reference.

**Based on the foregoing and for other reasons, pursuant to ¶ 11 of the Lease,
GV hereby gives notice of the termination of the Lease. Based on the foregoing,
pursuant to ¶ 12 of the Lease, you are required to surrender possession of the
Property and the keys thereto to GV on June 17, 2018.**

Concurrently herewith, GV filed a motion with the bankruptcy court to compel
turnover of the Property and the keys thereto to GV and for payment of back-rent owed to
GV. That motion will be served on you. GV reserves the right to seek the recovery of
additional amounts for attorneys' fees pursuant to ¶ 20 of the Lease, particularly if you do
not voluntarily pay back-rent and turnover possession of the Property and the keys thereto
by the date stated herein.

Please contact me to arrange for turnover of the Property and the keys thereto on
June 17, 2018 and for the payment of back-rent owed to GV.

Sincerely,

*/s/ Todd M. Arnold*
Todd Arnold

TODD M. ARNOLD   ATTORNEY AT LAW    EMAIL: TMA@LNBYB.COM    DIRECT: 310.229.3349
10250 CONSTELLATION BLVD., STE 1700, LOS ANGELES, CA 90067 ☜ TEL: 310.229.1234  FAX: 310.229.1244  WWW.LNBYB.COM

| Tenant/Address/Rent | Unpaid Rent (Due on the 1st of the Month) | | Unpaid Property Insurance | | 10% Late Fee | |
|---|---|---|---|---|---|---|
| **Shirley Hanes** **1130 N Edison Street,** **Stockton, CA  95208** **Mo Rent = $1,000** | 11/1/2017 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 12/1/2017 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 1/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 2/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 3/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 4/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | 5/1/2018 | $ 1,000.00 | $ | 75.00 | $ | 100.00 |
| | | $ 7,000.00 | $ | 525.00 | $ | 700.00 |
| **TOTAL OWED** | | | | | $ | 8,225.00 |

# MONTH-TO-MONTH
## Rental Agreement

THIS AGREEMENT, entered into this 7th day of October, 2016 by and between: Shirley Hanes hereinafter referenced as "Tenant," and "Grand View Financial LLC," hereinafter referenced as "Owner/Landlord." Whereby Owner/Landlord herein agrees to rent to Tenant and Tenant Rents the premises known as 1130 N. Edison Street, Stockton 95201, County of San Joaquin, State of California, upon the following terms and conditions:

**TERM:**

1. The term of the agreement shall be from month-to-month, commencing on October 7, 2016.

**RENT:**

2. The rent for said premises shall be One Thousand and Seventy-Five ($1,075.00) Dollars per month, payable in advance on or before the FIRST day of each month. Each Tenant herein shall be individually liable and responsible for any and all payments, rent or otherwise, due hereunder. At Owner/Landlord's option, Owner/Landlord may at any time requirement or other sums be paid in either certified check, cashier's check, direct deposit or money order. If the Tenant is unable to pay rent when due, the Owner/Landlord has the legal right to serve notice to pay rent or vacate within (3) days, as provided by California Code of Civil Procedures Section 1161.

**DEPOSIT:**

3. At the time of signing of this Agreement; Tenant shall pay to Owner/Landlord, in trust, a deposit equal to one month's rent to be held and disbursed for Tenant damages to the Premises or other defaults under this Agreement (if any) as provided by law. Deposit shall be forfeited upon the conclusion of services against the Reset Agreement.

**PROPERTY INSURANCE:**

4. Tenant will be responsible to maintain appropriate insurance for their interests in the Premises and property located on the Premises. Tenant shall pay 1/12 of the annual Owner/Landlord's insurance rate along with the monthly rent on or before the FIRST day of each month. An estimated insurance rate is due and payable until the actual rate is determined.

**LATE CHARGE:**

5. Should Tenant fail to pay all rent due prior to rent due date, then, in that event, a late charge of 10% of monthly rent shall immediately be due. Such late charges shall be deemed additional rent for such rental month and Owner/Landlord may add such late charges to Tenant's next monthly rent payment.

**RETURN CHECK CHARGE**

6. Notwithstanding any penal or civil sanctions or damages which may apply, Tenant shall pay Owner/Landlord a $ 35.00 charge for each and every returned check, draft, or order drawn on any bank or depository regardless of Tenant's intent, knowledge or fault. Such returned check charges shall be deemed additional rent for such rental month and Owner/Landlord may add such charges to next months rent.

**CLEANING AND MAINTENANCE:**

7. The cost of repairing or replacing any damage or wear and tear shall be the Tenant's sole responsibility. The Tenant shall keep the rental property tenantable, safe, sanitary and in compliance with all state and local housing, building, and health requirements applicable to the rental property; shall have all required inspections and certifications, if any, made; shall maintain the mechanical equipment and utilities in good operating condition; and shall maintain the following in good repair and clean condition.

    a. Effective waterproofing and weather protection of room and exterior walls including windows and doors.
    b. Plumbing fixtures and gas facilities.
    c. A water supply capable of producing hot and cold running water, furnished to appropriate fixtures and connected to a sewage disposal system approved under applicable law.
    c. Adequate heating facilities.
    d. Electrical lighting.
    e. Clean and sanitary building, grounds and appurtenances, free from all accumulation of debris, filth, rubbish, garbage, and l      infestation by rats, rodents, and vermin at the commencement of the rental agreement.
    f. An adequate number of appropriate receptacles for garbage and rubbish.
    g. Floors, stairways and railings.
    h. Smoke detectors and carbon monoxide detectors.

**USE OF PREMISES:**

8. Tenant agrees that the said premises shall be used and occupied for no other purpose than as a dwelling; and that said premises shall be occupied only by the signers of this agreement, and no others, without first obtaining the written consent of Owner/Landlord.

**UTILITIES:**

9. Tenant shall pay for all utilities, services, and charges supplied to said premises.

**RENTAL PRO-RATE:**

10. In the event that the rental payment date herein provided is not made prior than the first day of the month, then Tenant agrees to pro-rate said rental payment to the 1st day of the succeeding month, if so requested by Owner/Landlord.

## NOTICE OF TERMINATION:

11. This agreement and the tenancy hereby granted may be terminated by either party hereto by giving to the other party not less than thirty (30) days prior notice in writing.

## SURRENDER OF PREMISES:

12. Tenant agrees on the last day of Tenant's tenancy hereunder, to surrender to Owner/Landlord said premises and appurtenances and all furniture, goods, chattels, and keys belonging to Owner/Landlord in the same condition as when received, reasonable wear and tear excepted. Before departure, Tenant shall leave his forwarding address so that Owner/Landlord may make any notification and/ or refund as required by law.

## ASSIGNMENT:

13. Tenant shall not assign this agreement nor sub-let said premises or any part thereof without written consent of Owner/Landlord or his agent.

## INSPECTION/ ENTRY:

14. Pursuant, to Civil Code, Sec. 1954, all state and municipal codes, local ordinance, or health, safety or fire prevention rules, regulations or directives or any case decision concerning the proper maintenance and care of the demised premises and its contents, Owner/Landlord reserves the right to itself or its agents, to enter the premises at such reasonable times, with or without Tenant's presence, and for such reasonable purposes, including the inspection and showing of said premises at any time during reasonable business hours pursuant to the laws and guidelines referred to above, to inspect the same, to see that no damages have occurred thereto and to determine if said property is still occupied. Tenant specifically agrees not to change any lock or add any lock device to said premises without the prior written consent of Owner/Landlord or his agent. Tenant acknowledges that Owner/Landlord or his agent has a key to the premises and may use the same for entry, as provided herein.

## ALTERATIONS:

15. Tenant shall not paint or make any alterations to said premises without written consent of Owner/Landlord or his agent.

## MAINTENANCE AND REPAIRS:

16. Tenant, except as herein expressly provided, shall at his sole expense, keep and maintain said premises and appurtenances and every part thereof including all household furniture, goods, chattels, belonging to Owner/Landlord in good and sanitary order, condition and repair.

## PETS:

17. Tenant agrees that he shall not keep or permit to be kept in or about said premises, any dog, cat, bird, other pet or animal, without the specific written permission of Owner/Landlord or his agent.

## QUIET ENJOYMENT:

18. Tenant shall not commit, nor allow to be committed, any waste upon said premises or any nuisance, or other act or allow unnecessary noise especially during quiet times under city or county noise and/or "party" ordinance(s) (10:00 p.m. to 8:00 a.m.)

## GOVERNMENTAL REGULATIONS:

19. Tenant shall comply with laws, ordinances and governmental regulations applicable to said premises or to the use thereof.

## COST OF SUIT / ATTORNEY'S FEES:

20. In the event Owner/Landlord shall bring any action in connection herewith Owner/Landlord shall be entitled to receive as part of such action reasonable attorney's fees and court costs. Tenant also agrees to pay any other reasonable expenses that Owner/Landlord incurs in the enforcement of any of the covenants or provisions hereof, or in the recovery of rent or damages.

## WAIVER OF BREACH:

21. The waiver by Owner/Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant, or condition herein contained.

## NOTICES:

22. All notices to be given to Tenant may be given in writing personally, or by depositing the same in the United States mail, postage prepaid, and addressed to Tenant at said premises, whether or not Tenant has departed from, abandoned or vacated the premises.

## ENTIRE AGREEMENT:

23. This agreement constitutes the entire agreement between Owner/Landlord and Tenant, except as expressly provided herein.

*IN WITNESS THEREOF*, the parties hereto have executed this agreement the day and year first above written.

SHIRLEY HANES

# EXHIBIT "4"

Attorney or Party Name  Address  Telephone & FAX Nos  State    FOR COURT USE ONLY
Bar No  & Email Address

Todd M. Arnold 221868
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
(310) 229-1234
221868 CA

_Individual appearing without attorney_
✓ _Attorney for Debtor_

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re

**Grand View Financial LLC**                    CASE NO  2-17-bk-20125-RK

                                                CHAPTER  11

SUMMARY OF AMENDED SCHEDULES,
MASTER MAILING LIST,
AND/OR STATEMENTS
[LBR 1007-1(c)]

                                Debtor(s)

A filing fee is required to amend Schedules D  or E/F (see Abbreviated Fee Schedule on the Court s website
www.cacb uscourts gov)  A supplemental master mailing list (do not repeat any creditors on the original) is also required as an
attachment if creditors are being added to the Schedule D or E/F  Are one or more creditors being added? ✓ Yes    No

The following schedules  master mailing list or statements (check all that apply) are being amended

✓ Schedule A/B          Schedule C          ✓ Schedule D    ✓ Schedule E/F          ✓ Schedule G

✓ Schedule H            Schedule i          Schedule J       Schedule J-2           ✓ Statement of Financial Affairs

  Statement About Your Social Security Number(s)          Statement of              ✓ Master Mailing List
                                                          Intentions

Other (_specify_)    **Amended Summary of Assets and Liabilities, Amended Top 20**

I/we declare under penalty of perjury under the laws of the United States that the amended schedules  master mailing list  and or
statements are true and correct

Date    2-27-18                        _____
                                       **Steve Rogers**  Managing Member
                                       Debtor 1 Signature

                                       Debtor 2 (Joint Debtor) Signature (if applicable)

NOTE: It is the responsibility of the Debtor  or the Debtor's attorney  to serve copies of all amendments on all creditors listed in this
Summary of Amended Schedules  Master Mailing List  and/or Statements  and to complete and file the attached Proof of Service of
Document

This form is mandatory  it has been approved for use by the United States Bankruptcy Court for the Central District of California

| Debtor | **Grand View Financial LLC** | Case number (if known) | **2:17-bk-20125-RK** |
|---|---|---|---|
| | Name | | |

| 3.47 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $434,000.00 |
|---|---|---|---|

**Robert Burns**
690 Heather Court
Pacifica, CA 94044-2141

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.48 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $115,600.00 |
|---|---|---|---|

**Robert Roberts & Timothy Brey**
44300 Lighthouse Road
Point Arena, CA 95468

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.49 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $233,000.00 |
|---|---|---|---|

**Robert Sedler**
5173 WARING ROAD, #117
San Diego, CA 92120

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note (re 9651 McCool Lane, Santee, CA 92071)**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.50 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Samuel Ng and Angela Leung**
3217 Acalanes Avenue
Lafayette, CA 94549

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note and Action re 3217 Acalanes Ave**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.51 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $69,000.00 |
|---|---|---|---|

**Savon Phon**
9092 Chianti Circle
Stocton, CA 95212-3816

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.52 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Sharp Financial LLC**
8939 S Sepulveda Bvld Suite 102
Los Angeles, CA 90045-3605

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.53 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $164,000.00 |
|---|---|---|---|

**Shriley Hanes**
1130 N Edison Street
Stockton, CA 95203-2319

Date(s) debt was incurred _
Last 4 digits of account number _

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Promissory Note**

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Grand View Financial LLC** | Case number (if known) | **2:17-bk-20125-RK** |
|---|---|---|---|
| | Name | | |

---

| 3.54 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Siamak Nazhand**
c/o George M. Eckert
2371 El Camino Ave.
Sacramento, CA 95821

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: **UD Action re 1102 Penniman**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.55 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**SIX PID, INC.**
2410 CAMINO RAMON, STE 243
San Ramon, CA 94582

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: **Quiet Title Action re 3217 Acalanes Ave**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.56 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$800,000.00** |
|---|---|---|---|

**Stella Tan**
4525-4527 Lincoln Way
San Francisco, CA 94122-1128

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Promissory Note**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.57 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$164,800.00** |
|---|---|---|---|

**Steven Ho**
185 Linden Avenue
San Bruno, CA 94066-5407

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Promissory Note**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.58 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$310,800.00** |
|---|---|---|---|

**Steven Vaughn**
543 East Midlake Drive
Draper, UT 84020-7821

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Promissory Note**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.59 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$340,550.00** |
|---|---|---|---|

**Sunil & L. Lori Wadhwa**
747 Sturbridge Drive
Folsom, CA 95630-6166

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Promissory Note**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$261,300.00** |
|---|---|---|---|

**Timothy Johnston**
5115 Curtis Blvd
Port St John, FL 32927-3166

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Promissory Note**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

# EXHIBIT "5"

# Central District of California
# Claims Register

## 2:17-bk-20125-RK Grand View Financial LLC

**Judge:** Robert N. Kwan    **Chapter:** 11

**Office:** Los Angeles    **Last Date to file claims:**

**Trustee:**    **Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (38024395)<br>Franchise Tax Board<br>Bankruptcy Section MS A340<br>PO BOX 2952<br>Sacramento CA 95812-2952 | **Claim No: 1**<br>*Original Filed Date:* 08/29/2017<br>*Original Entered Date:* 08/29/2017 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Rebecca Estonilo<br>*Modified:* |

| Amount | claimed: | $1798.71 | |
|---|---|---|---|
| Priority | claimed: | $1642.71 | |

*History:*

| Details | | 1-1 | 08/29/2017 | Claim #1 filed by Franchise Tax Board, Amount claimed: $1798.71 (Estonilo, Rebecca) |
|---|---|---|---|---|

*Description:* (1-1) 0040

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (38065771)<br>Brookside Golf Community Association<br>c/o Thomas & Associates<br>2390 Professional Drive<br>Roseville, CA 95661 | **Claim No: 2**<br>*Original Filed Date:* 09/20/2017<br>*Original Entered Date:* 09/20/2017 | *Status:*<br>*Filed by:* CR<br>*Entered by:* ePOC-User AutoDocket<br>*Modified:* |

| Amount | claimed: | $10128.58 | |
|---|---|---|---|
| Secured | claimed: | $8468.58 | |

*History:*

| Details | | 2-1 | 09/20/2017 | Claim #2 filed by Brookside Golf Community Association, Amount claimed: $10128.58 (AutoDocket, ePOC-User) |
|---|---|---|---|---|

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (38003121)<br>Amador County Tax Collector<br>810 Court Street<br>Jackson, CA 95642-2132 | **Claim No: 3**<br>*Original Filed Date:* 09/28/2017<br>*Original Entered Date:* 09/28/2017 | *Status:*<br>*Filed by:* CR<br>*Entered by:*<br>*Modified:* |

*History:*

| Details | | 3-1 | 09/28/2017 | Claim #3 filed by Amador County Tax Collector, Amount claimed: $3094.34 (Milano, Sonny) |
|---|---|---|---|---|

*Description:* (3-1) Secured Property Taxes

*Remarks:*

| Amount | claimed: | $3094.34 | |
|---|---|---|---|
| Secured | claimed: | $3094.34 | |

*History:*

| Details | | 3-1 | 09/28/2017 | Claim #3 filed by Amador County Tax Collector, Amount claimed: $3094.34 (Milano, Sonny) |
|---|---|---|---|---|

*Description:* (3-1) Secured Property Taxes

*Remarks:*

---

| *Creditor:* (38003145) | **Claim No: 4** | *Status:* |
|---|---|---|
| El Dorado County | *Original Filed* | *Filed by:* CR |
| Treasurer-Tax Collector | *Date:* 10/19/2017 | *Entered by:* Olivia Ventura |
| 360 Fair Lane | *Original Entered* | *Modified:* |
| Placerville, CA 95667 | *Date:* 10/20/2017 | |

| Amount | claimed: | $8383.55 | |
|---|---|---|---|
| Secured | claimed: | $8383.55 | |

*History:*

| Details | | 4-1 | 10/19/2017 | Claim #4 filed by El Dorado County, Amount claimed: $8383.55 (Ventura, Olivia) |
|---|---|---|---|---|

*Description:* (4-1) Property Taxes

*Remarks:*

---

| *Creditor:* (38140074) | **Claim No: 5** | *Status:* |
|---|---|---|
| PennyMac Loan Services, LLC | *Original Filed* | *Filed by:* CR |
| 6101 Condor Drive, Suite 200 | *Date:* 10/30/2017 | *Entered by:* Robert P Zahradka |
| Moorpark, CA 93021 | *Original Entered* | *Modified:* |
| | *Date:* 10/30/2017 | |

| Amount | claimed: | $310989.72 | |
|---|---|---|---|
| Secured | claimed: | $310989.72 | |

*History:*

| Details | | 5-1 | 10/30/2017 | Claim #5 filed by PennyMac Loan Services, LLC, Amount claimed: $310989.72 (Zahradka, Robert) |
|---|---|---|---|---|

*Description:* (5-1) Total Debt $310,989.72

*Remarks:* (5-1) Arrearages $22,807.95

---

| *Creditor:* (38003205) History | **Claim No: 6** | *Status:* |
|---|---|---|
| San Diego Treasurer-Tax Collector | *Original Filed* | *Filed by:* CR |
| Attn: Bk Desk | *Date:* 11/06/2017 | *Entered by:* Olivia Ventura |
| 1600 Pacific Coast Hwy RM 162 | *Original Entered* | *Modified:* |
| San Diego, CA 92101 | *Date:* 11/07/2017 | |

*History:*

| Details | | 6-1 | 11/06/2017 | Claim #6 filed by San Diego Treasurer-Tax Collector, Amount claimed: $464.50 (Ventura, Olivia) |
|---|---|---|---|---|

*Description:* (6-1) Property Taxes

*Remarks:*

| Amount | claimed: | $464.50 | |
|---|---|---|---|
| Secured | claimed: | $464.50 | |

| History: | | | |
|---|---|---|---|
| Details | 6-1 | 11/06/2017 | Claim #6 filed by San Diego Treasurer-Tax Collector, Amount claimed: $464.50 (Ventura, Olivia) |

*Description:* (6-1) Property Taxes

*Remarks:*

---

| Creditor: (38162567) The Bank of New York Mellon Nationstar Mortgage LLC ATTN: Bankruptcy Dept PO BOX 619094 Dallas, TX 75261 | **Claim No: 7** Original Filed Date: 11/08/2017 Original Entered Date: 11/08/2017 | Status: Filed by: CR Entered by: Can Guner Modified: |
|---|---|---|

| Amount | claimed: | $1020360.02 | |
|---|---|---|---|
| Secured | claimed: | $1020360.02 | |

| History: | | | |
|---|---|---|---|
| Details | 7-1 | 11/08/2017 | Claim #7 filed by The Bank of New York Mellon, Amount claimed: $1020360.02 (Guner, Can) |

*Description:*

*Remarks:* (7-1) Total arrears: $447740.33

---

| Creditor: (38195113) U.S. Bank National Association Nationstar Mortgage LLC ATTN: Bankruptcy Dept PO BOX 619094 Dallas, TX 75261 | **Claim No: 8** Original Filed Date: 11/24/2017 Original Entered Date: 11/24/2017 | Status: Filed by: CR Entered by: Can Guner Modified: |
|---|---|---|

| Amount | claimed: | $746636.64 | |
|---|---|---|---|
| Secured | claimed: | $746636.64 | |

| History: | | | |
|---|---|---|---|
| Details | 8-1 | 11/24/2017 | Claim #8 filed by U.S. Bank National Association, Amount claimed: $746636.64 (Guner, Can) |

*Description:*

*Remarks:* (8-1) Total Arrears: 284336.97

---

| Creditor: (38196809) Nationstar Mortgage LLC ATTN: Bankruptcy Dept PO BOX 619094 Dallas, TX 75261 | **Claim No: 9** Original Filed Date: 11/27/2017 Original Entered Date: 11/27/2017 | Status: Filed by: CR Entered by: Can Guner Modified: |
|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 9-1 | 11/27/2017 | Claim #9 filed by Nationstar Mortgage LLC, Amount claimed: $534509.16 (Guner, Can) |

*Description:*

*Remarks:* (9-1) Total Arrears $262877.52

| Amount | claimed: | $534509.16 | |
| Secured | claimed: | $534509.16 | |

*History:*

| Details | | 9-1 | 11/27/2017 | Claim #9 filed by Nationstar Mortgage LLC, Amount claimed: $534509.16 (Guner, Can) |

*Description:*

*Remarks:* (9-1) Total Arrears $262877.52

---

| *Creditor:* (38216434) <br> U.S. Bank National Association <br> Nationstar Mortgage LLC <br> ATTN: Bankruptcy Dept <br> PO BOX 619094 <br> Dallas, TX 75261 | **Claim No: 10** <br> *Original Filed* <br> *Date:* 12/05/2017 <br> *Original Entered* <br> *Date:* 12/05/2017 | *Status:* <br> *Filed by:* CR <br> *Entered by:* Madison C Wilson <br> *Modified:* |

| Amount | claimed: | $6983269.80 | |
| Secured | claimed: | $6983269.80 | |

*History:*

| Details | | 10-1 | 12/05/2017 | Claim #10 filed by U.S. Bank National Association, Amount claimed: $6983269.80 (Wilson, Madison) |

*Description:*

*Remarks:* (10-1) Total Arrears: 3080241.64

---

| *Creditor:* (38231020) <br> The Bank of New York Mellon Trustee (See 410) <br> c/o Specialized Loan Servicing LLC <br> 8742 Lucent Blvd, Suite 300 <br> Highlands Ranch, Colorado 80129 | **Claim No: 11** <br> *Original Filed* <br> *Date:* 12/14/2017 <br> *Original Entered* <br> *Date:* 12/14/2017 | *Status:* <br> *Filed by:* CR <br> *Entered by:* Andrew Kussmaul <br> *Modified:* |

| Amount | claimed: | $522824.62 | |
| Secured | claimed: | $522824.62 | |

*History:*

| Details | | 11-1 | 12/14/2017 | Claim #11 filed by The Bank of New York Mellon Trustee (See 410), Amount claimed: $522824.62 (Kussmaul, Andrew) |

*Description:*

*Remarks:*

---

| *Creditor:* (38003221) <br> Stella Tan <br> 4525-4527 Lincoln Way <br> San Francisco, CA 94122-1128 | **Claim No: 12** <br> *Original Filed* <br> *Date:* 01/26/2018 <br> *Original Entered* <br> *Date:* 01/26/2018 | *Status:* <br> *Filed by:* CR <br> *Entered by:* Larry D Webb <br> *Modified:* |

*History:*

| Details | | 12-1 | 01/26/2018 | Claim #12 filed by Stella Tan, Amount claimed: $645800.00 (Webb, Larry) |

*Description:* (12-1) Promissory note

*Remarks:*

| Amount | claimed: | $645800.00 | |
|---|---|---|---|

*History:*

| Details | | 12-1 | 01/26/2018 | Claim #12 filed by Stella Tan, Amount claimed: $645800.00 (Webb, Larry) |
|---|---|---|---|---|

*Description:* (12-1) Promissory note

*Remarks:*

---

| *Creditor:* (38299758)<br>The Lilly Gan Revocable Living Trust<br>c/o Michael J Berger Esq<br>9454 Wilshire Blvd 6th Fl<br>Beverly Hills CA 90212 | **Claim No: 13**<br>*Original Filed*<br>*Date:* 01/29/2018<br>*Original Entered*<br>*Date:* 01/29/2018 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Michael Jay Berger<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $829984.00 | |
|---|---|---|---|

*History:*

| Details | | 13-1 | 01/29/2018 | Claim #13 filed by The Lilly Gan Revocable Living Trust, Amount claimed: $829984.00 (Berger, Michael) |
|---|---|---|---|---|

*Description:*

*Remarks:*

---

| *Creditor:* (38003229)<br>Ventura County Tax Collector<br>800 South Victoria Ave<br>Ventura, CA 93009-1290 | **Claim No: 14**<br>*Original Filed*<br>*Date:* 03/01/2018<br>*Original Entered*<br>*Date:* 03/01/2018 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Mary K Barnes<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $282.90 | |
|---|---|---|---|
| Secured | claimed: | $282.90 | |

*History:*

| Details | | 14-1 | 03/01/2018 | Claim #14 filed by Ventura County Tax Collector, Amount claimed: $282.90 (Barnes, Mary) |
|---|---|---|---|---|

*Description:* (14-1) Secured property taxes.

*Remarks:*

---

| *Creditor:* (38003229)<br>Ventura County Tax Collector<br>800 South Victoria Ave<br>Ventura, CA 93009-1290 | **Claim No: 15**<br>*Original Filed*<br>*Date:* 03/01/2018<br>*Original Entered*<br>*Date:* 03/01/2018 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Mary K Barnes<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $706.48 | |
|---|---|---|---|
| Priority | claimed: | $706.48 | |

*History:*

| Details | | 15-1 | 03/01/2018 | Claim #15 filed by Ventura County Tax Collector, Amount claimed: $706.48 (Barnes, Mary) |
|---|---|---|---|---|

*Description:* (15-1) Priority property taxes.

*Remarks:*

| Creditor:       (38446714)<br>THE BANK OF NEW YORK MELLON<br>Nationstar Mortgage LLC d/b/a Mr. Cooper<br>PO Box 619096<br>Dallas, TX 75261-9741 | Claim No: 16<br>Original Filed<br>Date: 04/10/2018<br>Original Entered<br>Date: 04/10/2018 | Status:<br>Filed by: CR<br>Entered by: Todd S Garan<br>Modified: |
|---|---|---|

Amount claimed: $1245797.29
Secured claimed: $1245797.29

History:
| Details | 16-1 | 04/10/2018 | Claim #16 filed by THE BANK OF NEW YORK MELLON, Amount claimed: $1245797.29 (Garan, Todd) |

Description: (16-1) 5672
Remarks:

---

| Creditor:       (38472282)<br>Solano County Tax Collector<br>675 Texas Street, Suite 1900<br>Fairfield, CA 94533 | Claim No: 17<br>Original Filed<br>Date: 04/16/2018<br>Original Entered<br>Date: 04/23/2018 | Status:<br>Filed by: CR<br>Entered by: Kim S. Collins<br>Modified: |
|---|---|---|

Amount claimed: $1405.64
Secured claimed: $1405.64

History:
| Details | 17-1 | 04/16/2018 | Claim #17 filed by Solano County Tax Collector, Amount claimed: $1405.64 (Collins, Kim S.) |

Description:
Remarks:

---

| Creditor:       (38500128)<br>The Bank of New York Mellon<br>c/o PHH Mortgage Corporation<br>One Mortgage Way<br>Mail Stop SV01<br>Mt Laurel, NJ 08054 | Claim No: 18<br>Original Filed<br>Date: 05/04/2018<br>Original Entered<br>Date: 05/04/2018 | Status:<br>Filed by: CR<br>Entered by: Todd S Garan<br>Modified: |
|---|---|---|

Amount claimed: $1149595.51
Secured claimed: $1149595.51

History:
| Details | 18-1 | 05/04/2018 | Claim #18 filed by The Bank of New York Mellon, Amount claimed: $1149595.51 (Garan, Todd) |

Description: (18-1) 7535
Remarks:

---

| Creditor:       (38500999)<br>JPMorgan Chase Bank National Association<br>Chase Records Center Attn:<br>Correspondence Mail Code LA4-5555<br>700 Kansas Lane | Claim No: 19<br>Original Filed<br>Date: 05/04/2018<br>Original Entered<br>Date: 05/04/2018 | Status:<br>Filed by: CR<br>Entered by: Todd S Garan<br>Modified: |
|---|---|---|

Monroe LA 71203

| Amount | claimed: | $498536.46 | |
| Secured | claimed: | $498536.46 | |

*History:*

| Details | | 19-1 | 05/04/2018 | Claim #19 filed by JPMorgan Chase Bank National Association, Amount claimed: $498536.46 (Garan, Todd) |

*Description:* (19-1) 2495

*Remarks:*

---

| *Creditor:*        (38504977) | **Claim No: 20** | *Status:* |
| Pamela P Gabriel | *Original Filed* | *Filed by:* CR |
| 21 Richmond Hill Road | *Date:* 05/04/2018 | *Entered by:* Sarah Cowan |
| Greenwich CT 06831 | *Original Entered* | *Modified:* |
| | *Date:* 05/08/2018 | |

| Amount | claimed: | $2000000.00 | |

*History:*

| Details | | 20-1 | 05/04/2018 | Claim #20 filed by Pamela P Gabriel, Amount claimed: $2000000.00 (Cowan, Sarah) |

*Description:* (20-1) contracts to sell 3 parcels of property

*Remarks:*

# Claims Register Summary

**Case Name:** Grand View Financial LLC
**Case Number:** 2:17-bk-20125-RK
**Chapter:** 11
**Date Filed:** 08/17/2017
**Total Number Of Claims:** 20

| Total Amount Claimed* | $16514567.92 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $13034618.73 | |
| **Priority** | $2349.19 | |
| **Administrative** | | |

---

**PACER Service Center**

| **Transaction Receipt** | | | |
|---|---|---|---|
| 05/14/2018 14:35:11 | | | |
| **PACER Login:** | lnbyb1700:4835325:4871380 | **Client Code:** | 8277 |
| **Description:** | Claims Register | **Search Criteria:** | 2:17-bk-20125-RK Filed or Entered From: 4/24/2000 Filed or Entered To: 12/31/2018 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT "6"

# MONTH-TO-MONTH
## Rental Agreement

THIS AGREEMENT, entered into this 29th day of July, 2016 by and between: Steven Ho, hereinafter referenced as "Tenant," and "Grand View Financial LLC," hereinafter referenced as "Owner/Landlord," Whereby Owner/Landlord herein agrees to rent to Tenant and Tenant Rents the premises known as 185 Linden Avenue, San Bruno 94066, County of San Mateo, State of California, upon the following terms and conditions:

### TERM:

1. The term of the agreement shall be from month-to-month, commencing on July 29, 2016.

### RENT:

2. The rent for said premises shall be One Thousand Seven Hundred and Twenty-Five ($1,725.00) Dollars per month, payable in advance on or before the FIRST day of each month. Each Tenant herein shall be individually liable and responsible for any and all payments, rent or otherwise, due hereunder. At Owner/Landlord's option, Owner/Landlord may at any time requirement or other sums be paid in either certified check, cashier's check, direct deposit or money order. If the Tenant is unable to pay rent when due, the Owner/Landlord has the legal right to serve notice to pay rent or vacate within (3) days, as provided by California Code of Civil Procedures Section 1161.

### DEPOSIT:

3. At the time of signing of this Agreement; Tenant shall pay to Owner/Landlord, in trust, a deposit equal to one month's rent to be held and disbursed for Tenant damages to the Premises or other defaults under this Agreement (if any) as provided by law. Deposit will be forfeited upon the conclusion of services against the Reset Agreement.

### PROPERTY INSURANCE:

4. Tenant will be responsible to maintain appropriate insurance for their interests in the Premises and property located on the Premises. Tenant shall pay 1/12 of the annual Owner/Landlord's insurance rate along with the monthly rent on or before the FIRST day of each month. An estimated insurance rate is due and payable until the actual rate is determined.

### LATE CHARGE:

5. Should Tenant fail to pay all rent due prior to rent due date, then, in that event, a late charge of 10% of monthly rent shall immediately be due. Such late charges shall be deemed additional rent for such rental month and Owner/Landlord may add such late charges to Tenant's next monthly rent payment.

### RETURN CHECK CHARGE

6. Notwithstanding any penal or civil sanctions or damages which may apply, Tenant shall pay Owner/Landlord a $ 35.00 charge for each and every returned check, draft, or order drawn on any bank or depository regardless of Tenant's intent, knowledge or fault. Such returned check charges shall be deemed additional rent for such rental month and Owner/Landlord may add such charges to next months rent.

### CLEANING AND MAINTENANCE:

7. The cost of repairing or replacing any damage or wear and tear shall be the Tenant's sole responsibility. The Tenant shall keep the rental property tenantable, safe, sanitary and in compliance with all state and local housing, building, and health requirements applicable to the rental property; shall have all required inspections and certifications, if any, made; shall maintain the mechanical equipment and utilities in good operating condition; and shall maintain the following in good repair and clean condition.

   a. Effective waterproofing and weather protection of room and exterior walls including windows and doors.
   b. Plumbing fixtures and gas facilities.
   c. A water supply capable of producing hot and cold running water, furnished to appropriate fixtures and connected to a sewage disposal system approved under applicable law.
   c. Adequate heating facilities.
   d. Electrical lighting.
   e. Clean and sanitary building, grounds and appurtenances, free from all accumulation of debris, filth, rubbish, garbage, and infestation by rats, rodents, and vermin at the commencement of the rental agreement.
   f. An adequate number of appropriate receptacles for garbage and rubbish.
   g. Floors, stairways and railings.
   h. Smoke detectors and carbon monoxide detectors.

### USE OF PREMISES:

8. Tenant agrees that the said premises shall be used and occupied for no other purpose than as a dwelling; and that said premises shall be occupied only by the signers of this agreement, and no others, without first obtaining the written consent of Owner/Landlord.

### UTILITIES:

9. Tenant shall pay for all utilities, services, and charges supplied to said premises.

### RENTAL PRO-RATE:

10. In the event that the rental payment date herein provided is not made prior than the first day of the month, then Tenant agrees to pro-rate said rental payment to the 1st day of the succeeding month, if so requested by Owner/Landlord.

### NOTICE OF TERMINATION:

11. This agreement and the tenancy hereby granted may be terminated by either party hereto by giving to the other

party not less than thirty (30) days prior notice in writing.

## SURRENDER OF PREMISES:

12. Tenant agrees on the last day of Tenant's tenancy hereunder, to surrender to Owner/Landlord said premises and appurtenances and all furniture, goods, chattels, and keys belonging to Owner/Landlord in the same condition as when received, reasonable wear and tear excepted. Before departure, Tenant shall leave his forwarding address so that Owner/Landlord may make any notification and/ or refund as required by law.

## ASSIGNMENT:

13. Tenant shall not assign this agreement nor sub-let said premises or any part thereof without written consent of Owner/Landlord or his agent.

## INSPECTION/ENTRY:

14. Pursuant, to Civil Code, Sec. 1954, all state and municipal codes, local ordinance, or health, safety or fire prevention rules, regulations or directives or any case decision concerning the proper maintenance and care of the demised premises and its contents, Owner/Landlord reserves the right to itself or its agents, to enter the premises at such reasonable times, with or without Tenant's presence, and for such reasonable purposes, including the inspection and showing of said premises at any time during reasonable business hours pursuant to the laws and guidelines referred to above, to inspect the same, to see that no damages have occurred thereto and to determine if said property is still occupied. Tenant specifically agrees not to change any lock or add any lock device to said premises without the prior written consent of Owner/Landlord or his agent. Tenant acknowledges that Owner/Landlord or his agent has a key to the premises and may use the same for entry, as provided herein.

## ALTERATIONS:

15. Tenant shall not paint or make any alterations to said premises without written consent of Owner/Landlord or his agent.

## MAINTENANCE AND REPAIRS:

16. Tenant, except as herein expressly provided, shall at his sole expense, keep and maintain said premises and appurtenances and every part thereof including all household furniture, goods, chattels, belonging to Owner/Landlord in good and sanitary order, condition and repair.

## PETS:

17. Tenant agrees that he shall not keep or permit to be kept in or about said premises, any dog, cat, bird, other pet or animal, without the specific written permission of Owner/Landlord or his agent.

## QUIET ENJOYMENT:

18. Tenant shall not commit, nor allow to be committed, any waste upon said premises or any nuisance, or other act or allow unnecessary noise especially during quiet times under city or county noise and/or "party" ordinance(s) (10:00 p.m. to 8:00 a.m.)

## GOVERNMENTAL REGULATIONS:

19. Tenant shall comply with laws, ordinances and governmental regulations applicable to said premises or to the use thereof.

## COST OF SUIT / ATTORNEY'S FEES:

20. In the event Owner/Landlord shall bring any action in connection herewith Owner/Landlord shall be entitled to receive as   part of such action reasonable attorney's fees and court costs. Tenant also agrees to pay any other reasonable expenses that Owner/Landlord incurs in the enforcement of any of the covenants or provisions hereof, or in the recovery of rent or damages.

## WAIVER OF BREACH:

21. The waiver by Owner/Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant, or condition herein contained.

## NOTICES:

22. All notices to be given to Tenant may be given in writing personally, or by depositing the same in the United States mail, postage prepaid, and addressed to Tenant at said premises, whether or not Tenant has departed from, abandoned or vacated the premises.

## ENTIRE AGREEMENT:

23. This agreement constitutes the entire agreement between Owner/Landlord and Tenant, except as expressly provided herein.

*IN WITNESS THEREOF*, the parties hereto have executed this agreement the day and year first above written.

Steven Ho

# EXHIBIT "7"

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
LAW OFFICES



May 17, 2018

**VIA U.S. MAIL**
Steven Ho
185 Linden Avenue
San Bruno, CA 94066

   Re: **Lease (the "Lease") of 185 Linden Avenue (the "Property")**

Mr. Ho:

   Our firm serves as counsel to Grand View Financial, LLC ("<u>GV</u>") in its
bankruptcy case.  I am writing in regard to the Lease for the Property.  A copy of the
Lease is attached hereto for your reference.

   Please take notice that (1) you are delinquent on $41,580 in currently owed rent,
property insurance payments, and late fees, (2) the Debtor needs access to the Property to
effectuate the marketing and sale thereof, and (3) once the sale is effectuated, any lien of
the alleged secured creditor will attach to the sale proceeds and we will then seek to clear
the lien/claim of the alleged secured creditor.  An itemization of currently owed rent,
property insurance payments, and late fees is also attached hereto for your reference.

   **Based on the foregoing and for other reasons, pursuant to ¶ 11 of the Lease,
GV hereby gives notice of the termination of the Lease.  Based on the foregoing,
pursuant to ¶ 12 of the Lease, you are required to surrender possession of the
Property and the keys thereto to GV on June 17, 2018.**

   Concurrently herewith, GV filed a motion with the bankruptcy court to compel
turnover of the Property and the keys thereto to GV and for payment of back-rent owed to
GV.  That motion will be served on you.  GV reserves the right to seek the recovery of
additional amounts for attorneys' fees pursuant to ¶ 20 of the Lease, particularly if you do
not voluntarily pay back-rent and turnover possession of the Property and the keys thereto
by the date stated herein.

   Please contact me to arrange for turnover of the Property and the keys thereto on
June 17, 2018 and for the payment of back-rent owed to GV.

       Sincerely,

       */s/ Todd M. Arnold*
       Todd Arnold

| Tenant/Address/Rent | | Unpaid Rent (Due on the 1st of the Month) | | Unpaid Property Insurance | | 10% Late Fee | |
|---|---|---|---|---|---|---|---|
| Stephen Ho<br>185 Linden Avenue,<br>San Bruno, CA 94066<br><br>Mo Rent = $1,650 | 8/1/2016 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 9/1/2016 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 10/1/2016 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 11/1/2016 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 12/1/2016 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 1/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 2/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 3/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 4/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 5/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 6/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 7/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 8/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 9/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 10/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 11/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 12/1/2017 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 1/1/2018 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 2/1/2018 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 3/1/2018 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 4/1/2018 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | 5/1/2018 | $ | 1,650.00 | $ | 75.00 | $ | 165.00 |
| | | $ | 36,300.00 | $ 1,650.00 | | $ | 3,630.00 |
| **TOTAL OWED** | | | | | | $ 41,580.00 | |

# *MONTH-TO-MONTH*

## *Rental Agreement*

THIS AGREEMENT, entered into this 29th day of July, 2016 by and between: Steven Ho, hereinafter referenced as "Tenant," and "Grand View Financial LLC," hereinafter referenced as "Owner/Landlord." Whereby Owner/Landlord herein agrees to rent to Tenant and Tenant Rents the premises known as 185 Linden Avenue, San Bruno 94066, County of San Mateo, State of California, upon the following terms and conditions:

### TERM:

1. The term of the agreement shall be from month-to-month, commencing on July 29, 2016.

### RENT:

2. The rent for said premises shall be One Thousand Seven Hundred and Twenty-Five ($1,725.00) Dollars per month, payable in advance on or before the FIRST day of each month. Each Tenant herein shall be individually liable and responsible for any and all payments, rent or otherwise, due hereunder. At Owner/Landlord's option, Owner/Landlord may at any time requirement or other sums be paid in either certified check, cashier's check, direct deposit or money order. If the Tenant is unable to pay rent when due, the Owner/Landlord has the legal right to serve notice to pay rent or vacate within (3) days, as provided by California Code of Civil Procedures Section 1161.

### DEPOSIT:

3. At the time of signing of this Agreement; Tenant shall pay to Owner/Landlord, in trust, a deposit equal to one month's rent to be held and disbursed for Tenant damages to the Premises or other defaults under this Agreement (if any) as provided by law. Deposit will be forfeited upon the conclusion of services against the Reset Agreement.

### PROPERTY INSURANCE:

4. Tenant will be responsible to maintain appropriate insurance for their interests in the Premises and property located on the Premises. Tenant shall pay 1/12 of the annual Owner/Landlord's insurance rate along with the monthly rent on or before the FIRST day of each month. An estimated insurance rate is due and payable until the actual rate is determined.

### LATE CHARGE:

5. Should Tenant fail to pay all rent due prior to rent due date, then, in that event, a late charge of 10% of monthly rent shall immediately be due. Such late charges shall be deemed additional rent for such rental month and Owner/Landlord may add such late charges to Tenant's next monthly rent payment.

### RETURN CHECK CHARGE

6. Notwithstanding any penal or civil sanctions or damages which may apply, Tenant shall pay Owner/Landlord a $ 35.00 charge for each and every returned check, draft, or order drawn on any bank or depository regardless of Tenant's intent, knowledge or fault. Such returned check charges shall be deemed additional rent for such rental month and Owner/Landlord may add such charges to next months rent.

### CLEANING AND MAINTENANCE:

7. The cost of repairing or replacing any damage or wear and tear shall be the Tenant's sole responsibility. The Tenant shall keep the rental property tenantable, safe, sanitary and in compliance with all state and local housing, building, and health requirements applicable to the rental property; shall have all required inspections and certifications, if any, made; shall maintain the mechanical equipment and utilities in good operating condition; and shall maintain the following in good repair and clean condition.

  a. Effective waterproofing and weather protection of room and exterior walls including windows and doors.
  b. Plumbing fixtures and gas facilities.
  c. A water supply capable of producing hot and cold running water, furnished to appropriate fixtures and connected to a sewage disposal system approved under applicable law.
  c. Adequate heating facilities.
  d. Electrical lighting.
  e. Clean and sanitary building, grounds and appurtenances, free from all accumulation of debris, filth, rubbish, garbage, and infestation by rats, rodents, and vermin at the commencement of the rental agreement.
  f. An adequate number of appropriate receptacles for garbage and rubbish.
  g. Floors, stairways and railings.
  h. Smoke detectors and carbon monoxide detectors.

### USE OF PREMISES:

8. Tenant agrees that the said premises shall be used and occupied for no other purpose than as a dwelling; and that said premises shall be occupied only by the signers of this agreement, and no others, without first obtaining the written consent of Owner/Landlord.

### UTILITIES:

9. Tenant shall pay for all utilities, services, and charges supplied to said premises.

### RENTAL PRO-RATE:

10. In the event that the rental payment date herein provided is not made prior than the first day of the month, then Tenant agrees to pro-rate said rental payment to the 1st day of the succeeding month, if so requested by Owner/Landlord.

### NOTICE OF TERMINATION:

11. This agreement and the tenancy hereby granted may be terminated by either party hereto by giving to the other

party not less than thirty (30) days prior notice in writing.

## SURRENDER OF PREMISES:

12.  Tenant agrees on the last day of Tenant's tenancy hereunder, to surrender to Owner/Landlord said premises and appurtenances and all furniture, goods, chattels, and keys belonging to Owner/Landlord in the same condition as when received, reasonable wear and tear excepted. Before departure, Tenant shall leave his forwarding address so that Owner/Landlord may make any notification and/ or refund as required by law.

## ASSIGNMENT:

13.  Tenant shall not assign this agreement nor sub-let said premises or any part thereof without written consent of Owner/Landlord or his agent.

## INSPECTION/ENTRY:

14.  Pursuant, to Civil Code, Sec. 1954, all state and municipal codes, local ordinance, or health, safety or fire prevention rules, regulations or directives or any case decision concerning the proper maintenance and care of the demised premises and its contents, Owner/Landlord reserves the right to itself or its agents, to enter the premises at such reasonable times, with or without Tenant's presence, and for such reasonable purposes, including the inspection and showing of said premises at any time during reasonable business hours pursuant to the laws and guidelines referred to above, to inspect the same, to see that no damages have occurred thereto and to determine if said property is still occupied. Tenant specifically agrees not to change any lock or add any lock device to said premises without the prior written consent of Owner/Landlord or his agent. Tenant acknowledges that Owner/Landlord or his agent has a key to the premises and may use the same for entry, as provided herein.

## ALTERATIONS:

15.  Tenant shall not paint or make any alterations to said premises without written consent of Owner/Landlord or his agent.

## MAINTENANCE AND REPAIRS:

16.  Tenant, except as herein expressly provided, shall at his sole expense, keep and maintain said premises and appurtenances and every part thereof including all household furniture, goods, chattels, belonging to Owner/Landlord in good and sanitary order, condition and repair.

## PETS:

17.  Tenant agrees that he shall not keep or permit to be kept in or about said premises, any dog, cat, bird, other pet or animal, without the specific written permission of Owner/Landlord or his agent.

## QUIET ENJOYMENT:

18.  Tenant shall not commit, nor allow to be committed, any waste upon said premises or any nuisance, or other act or allow unnecessary noise especially during quiet times under city or county noise and/or "party" ordinance(s) (10:00 p.m. to 8:00 a.m.)

## GOVERNMENTAL REGULATIONS:

19.  Tenant shall comply with laws, ordinances and governmental regulations applicable to said premises or to the use thereof.

## COST OF SUIT / ATTORNEY'S FEES:

20.  In the event Owner/Landlord shall bring any action in connection herewith Owner/Landlord shall be entitled to receive as part of such action reasonable attorney's fees and court costs. Tenant also agrees to pay any other reasonable expenses that Owner/Landlord incurs in the enforcement of any of the covenants or provisions hereof, or in the recovery of rent or damages.

## WAIVER OF BREACH:

21.  The waiver by Owner/Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant, or condition herein contained.

## NOTICES:

22.  All notices to be given to Tenant may be given in writing personally, or by depositing the same in the United States mail, postage prepaid, and addressed to Tenant at said premises, whether or not Tenant has departed from, abandoned or vacated the premises.

## ENTIRE AGREEMENT:

23.  This agreement constitutes the entire agreement between Owner/Landlord and Tenant, except as expressly provided herein.

*IN WITNESS THEREOF*, the parties hereto have executed this agreement the day and year first above written.


Steven Ho

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING TURNOVER OF PROPERTY OF THE ESTATE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 17, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Matthew R. Clark    bankruptcyecfs@gmail.com, mclark@ecf.courtdrive.com;bkyecf@rasflaw;mclark@rasflaw.com
- Theron S Covey    tcovey@rasflaw.com, CAECF@tblaw.com
- Jered T Ede    jede@greenhall.com, cgallardo@greenhall.com
- Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Can Guner    cguner@rasflaw.com
- Jamie D Hanawalt    ecfcacb@aldridgepite.com, jhanawalt@ecf.inforuptcy.com
- Matthew S Henderson    matthew.henderson@piblaw.com, marian.flores@piblaw.com
- Laurie Howell    laurie.howell@tflglaw.com
- Chi L Ip    filing@lawyer4property.com, jenny@lawyer4property.com
- Merdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Ian Landsberg    ian@landsberg-law.com, casey@landsberg-law.com;lisa@landsberg-law.com;diana@landsberg-law.com;yesi@landsberg-law.com;ilandsberg@ecf.inforuptcy.com
- Megan E Lees    caecf@tblaw.com, MEL@ecf.inforuptcy.com
- Angie M Marth    amarth@logs.com, ssali@logs.com
- Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
- Vinod Nichani    vinod@nichanilawfirm.com, vnichani1978@gmail.com
- Michael G Olinik    michael@oliniklaw.com, rachael@callahanfirm.com
- David M Poitras    dpoitras@jmbm.com, bt@jmbm.com;vr@jmbm.com;dmp@ecf.inforuptcy.com
- Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Cassandra J Richey    cdcaecf@bdfgroup.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Edward G Schloss    egs2@ix.netcom.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- Hatty K Yip    hatty.yip@usdoj.gov
- Kristin A Zilberstein    ecfnotifications@ghidottilaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           **F 9013-3.1.PROOF.SERVICE**

1

**2.** **SERVED BY UNITED STATES MAIL**: On **May 17, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> <u>completed</u> no later than 24 hours after the document is filed.

2

3

☒ *Service information continued on attached page*

4

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR** **EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 17, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

5

6

7

8

**SERVED BY PERSONAL DELIVERY**
Honorable Robert N. Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682 / Courtroom 1675
Los Angeles, CA 90012

9

10

11

☐ *Service information continued on attached page*

12

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

13

14

| May 17, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
| Date | Type Name | Signature |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-3.1.PROOF.SERVICE**

Grand View Financial LLC
20 Largest
File No. 8277

Grand View Financial LLC
6601 Center Drive West
Suite 500-8354
Los Angeles, CA 90045

Kenneth G Lau
Office of the United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

RSN U.S. BANK NATIONAL ASSOCIATION.
AS TRUSTEE, SUCCESSOR IN INTEREST
TO WACHOVIA BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR J.P.
MORGAN MORTGAGE TRUST 2005-A3,
MORTAGE PASS-THROUGH
CERTIFICATES
C/O RAS CRANE. LLC
BANKRUPTCY DEPARTMENT
10700 ABBOTT'S BRIDGE ROAD
SUITE 170
DULUTH, GA 30097

Amador County Tax Collector RSN
Attn: Michael E. Ryan
810 Court Street
Jackson, CA 95642

Steven Ho
185 Linden Avenue
San Bruno, CA 94066-5407

Shriley Hanes
1130 N Edison Street
Stockton, CA 95203-2319

Angela Leung
3217 Acalanes Avenue
Lafayette, CA 94549-3206

Daniel Golden
21360 Crestwind Drive
San Marcos, CA 92078-5000

David & Leah Manaoat
102 Sonora Court
Oakley, CA 94561-3953

E. Greg Somerville
4916 Saint Andrews Drive
Stockton, CA 95219-1917

Ellen & Clyde Davenport
5555 Thayer Lane
San Ramon, CA 94582-3067

Frankie Cheung
1765 Valdez Way
Fremont, CA 94539-3662

Gary & Johanna Lohse
7394 N Meridian Road
Vacaville, CA 95688-9607

Heather Hartig
324 Manor Drive
Pacifica, CA 94044

James Yocum
3417 Danner Circle
Birmingham, AL 35243

John & Sonja Tombarelli
4129 South Conklin Road
Greenacres, WA 99016-9789

Lehman Brothers
400 Professional Drive
Gaithersburg, MD 20879

Marc & Michelle Griffith
6020 Heatherton Drive
Somis, CA 93066-9611

Leslie Edwards
17287 W. Summerfield Road
Post Falls, ID 83854

Lorraine Moller
2525 Arapahoe, Suite 500
Boulder, CO 80302-6720

Robert & Pamela Gabriel
3 Sayles Street
Greenwich, CT 06807-2142

Robert & Pamela Gabriel
18 Sherman Avenue
Greenwich, CT 06830-6046

Robert & Pamela Gabriel
21 Richmond Hill Road
Greenwich, CT 06831-2525

Sunil & L. Lori Wadhwa
747 Sturbridge Drive
Folsom, CA 95630-6166

Robert Burns
690 Heather Court
Pacifica, CA 94044-2141

Stella Tan
4525-4527 Lincoln Way
San Francisco, CA 94122-1128