TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067
Telephone: (310) 229-1234 / Fax: (310) 229-1244
Email: tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GRAND VIEW FINANCIAL, LLC,<br><br>    Debtor and Debtor in Possession. | Case No.: 2:17-bk-20125-RK<br><br>Chapter 11 Case<br><br>**DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER:**<br>**(1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS, SUBJECT TO OVERBID,**<br>**(2) FINDING THAT THE BUYER IS GOOD FAITH PURCHASER,**<br>**(3) APPROVING BIDDING PROCEDURES AND BREAK-UP FEE,**<br>**(4) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS, AND**<br>**(5) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h);**<br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**<br><br>Hearing<br>Date:  October 2, 2018<br>Time:  2:30 p.m.<br>Place:  Courtroom 1675<br>         255 E. Temple Street<br>         Los Angeles, CA  90012 |

1    **PLEASE TAKE NOTICE** that Grand View Financial, LLC, the debtor and debtor in

2    possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby moves,

3    pursuant to this motion (the "Motion"), for the entry of an order (the "Sale Order"):

4    (1)    pursuant to 11 U.S.C. §§ 363(b) and (f), approving the sale of the

5    Debtor's residential real property located at 428 Georgetown Ave., Ventura CA 93003-2124

6    (the "Georgetown Property") to (a) Amelia and Jon Stockton (together, the "Buyer"), free

7    and clear of any and all liens, claims, encumbrances, and interests, with the exception of

8    Items 1, 5-10, and 14 (the "Excepted Items") set forth in the preliminary title report for the

9    Property (the "Title Report"), a true and correct copy of which is attached hereto as **Exhibit**

10   **"1,"** for a purchase price of $660,000 (the "Purchase Price"), pursuant to the Counteroffer re

11   Purchase and Sale of 428 Georgetown Ave., Ventura CA 93003-2124 (the "Purchase

12   Agreement"), a true and correct copy of which is attached hereto as **Exhibit "2,"** subject to

13   overbid (each an "Overbid" and collectively the "Overbids") pursuant to the overbid

14   procedures (the "Overbid Procedures") set forth below and any auction (the "Auction")

15   conducted pursuant to the Overbid Procedures, or (b) the winning overbidder (each an

16   "Overbidder" and collectively the "Overbidders") at the Auction;

17   (2)    pursuant to 11 U.S.C. § 363(m) finding that the Buyer or any winning

18   Overbidder at the Auction confirmed as the winning bidder for the Georgetown Property is a

19   "good faith" purchaser entitled to the protections afforded under 11 U.S.C. § 363(m);

20   (3)    approving the following Overbid Procedures and break-up fee (the

21   "Break-Up Fee"):

22   •    **Date, Time, and Location of the Auction:** The Auction

23   shall be held concurrently with the hearing on the Motion, as follows:

24   **Date:  October 2, 2018**

25   **Time:  2:30 p.m.**

26   **Place:  Courtroom 1675**
     **255 E. Temple Street**
     **Los Angeles, CA  90012**

27

28

- **Initial Overbid Amount:** The Purchase Price of $660,000, plus *at least* $10,000 more (*i.e.*, at least $670,000) (the "Initial Overbid Amount");

- **Qualification of Overbidders:** In order for any prospective Overbidder to have the right to bid at the Auction, the prospective Overbidder must, **within three (3) business days prior to the Auction**, (a) provide to counsel for the Debtor, Levene, Neale, Bender, Yoo & Brill L.L.P., c/o Todd M. Arnold, 10250 Constellation Boulevard, Suite 1700 Los Angeles, California 90067, Telephone: (310) 229-1234 Facsimile: (310) 229-1244, Email: tma@lnbyb.com ("LNBYB"), a signed proposed purchase agreement (each an "Overbid Purchase Agreement"), in substantially and materially the same form as the Purchase Agreement,[1] redlined to show any changes, with such purchase agreement not to contain any financing, inspection, due diligence, or other contingencies (other than the entry of the Sale Order approving the sale of the Georgetown Property to the Overbidder), and including, a removal of all contingencies (other than the entry of the Sale Order approving the sale of the Georgetown Property to the Overbidder) pursuant to CAR Form CR 14.C, and with a minimum purchase price of at least the Initial Overbid Amount of $670,000; (b) submit a deposit in the amount of 10% of the Initial Overbid Amount set forth in the Overbid Purchase Agreement by cashiers' check or wire into a segregated trust account maintained by LNBYB, who will provide wire instructions on request; (c) demonstrate that the prospective Overbidder has sufficient funds or financing to close the transaction within fifteen (15) calendar days of the entry of the Sale Order approving the prospective Overbidder and the sale of the Georgetown Property to the Overbidder; and (d) agree that the

---

[1] LNBYB will provide a copy of the Purchase Agreement in Word to any parties interested in submitting an Overbid.

prospective Overbidder's deposit will be non-refundable if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Georgetown Property within fifteen (15) calendar following the date of entry of the Sale Order – regardless of whether an appeal has been filed of the Sale Order, provided there is no entered stay pending appeal of either of the foregoing orders (*i.e.*, no final order requirement).

- **Overbidding Increments and Considerations in Determining the Winning Bidder at Any Auction:** In order to qualify to bid at the Auction, any Overbid Purchase Agreement is required to include an Initial Overbid Amount of at least $670,000. Subsequent overbids at the Auction must be in increments of $1,000 or amounts that are wholly divisible by $1,000. The Debtor, in consultation with its professionals, will select the highest and best offer and recommend Court approval of the sale of the Georgetown Property to the Buyer or any qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals, has made the highest and best offer for the Georgetown Property.

- **Break-Up Fee:** In the event the Buyer is not the successful bidder at the Auction and an Overbidder closes a purchase of the Georgetown Property, the Debtor shall pay a $5,000 Break-Up Fee (approximately .75% of the Purchase Price) to the Buyer upon the close of escrow;

(4)     authorizing the Debtor to pay from the proceeds of the sale of the Georgetown Property (a) any pre-closing real property taxes secured by the Georgetown Property allocated to the Debtor, (b) the 6% commission owed to the Debtor's broker, Keller Williams Realty and KW Commercial (the "Primary Broker") and associated Keller Williams Realty and KW Commercial offices located throughout the United States ("Associated Brokers" and, together with Primary Broker, the "Broker"), and any cooperating broker, pursuant to the Purchase Agreement and the Debtor's application to

employ the Broker, which was approved by the Court, and (c) any other customary escrow closing fees and charges allocated to the Debtor;

  (5) waiving the 14-day stay period set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>") to enable the sale of the Georgetown Property to close as quickly as possible; and

  (6) providing such other relief as is appropriate under the circumstances.

  **PLEASE TAKE FURTHER NOTICE** that the principal terms and conditions of the proposed sale to the Buyer, subject to overbid, include the following:[2]

-  <u>Name of Buyer:</u>  Amelia and Jon Stockton (*i.e.*, the "<u>Buyer</u>").

-  <u>Asset:</u> The Georgetown Property.

-  <u>Purchase Price:</u> $660,000 subject to overbid pursuant to the Overbid Procedures.

-  <u>Deposit:</u> $19,800 (3% of the Purchase Price)

-  <u>Estimated Costs of Sale:</u> Total of 8% comprised of a 6% commission for the Debtor's broker, plus any outstanding real property taxes, plus other customary closing costs.

-  <u>Condition of Asset/Property:</u> "As-is" and "Where is."

-  <u>Contingencies:</u> The Purchase Agreement contained a due diligence period that expired on August 14, 2018.  All contingencies have now been lifted other than the entry of the Sale Order approving the sale of the Georgetown Property to the Buyer.

-  <u>Other Terms:</u> The sale is subject to the Overbid Procedures and Break-Up Fee set forth above.  Further, the Debtor's sale of the Georgetown Property shall be free and clear of any and all liens, claims, encumbrances, and interests, other than the Excepted Items, which non-excepted liens, claims, encumbrances, and interests the Debtor believes are limited to (a) Items 2-4, 18, and 19 of the Title Report, which are liens securing claims for unpaid real property taxes and certain personal property taxes owed to Ventura County

---

[2] This is a summary only.  To the extent there is any inconsistency between this summary and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

(the "County"), which will be paid from escrow upon closing, (b) Item 11 of the Title Report, which is a purported lien allegedly securing an alleged loan from Affiliated Funding Corporation ("Affiliated Funding") that was later allegedly transferred to US Bank National Association ("US Bank"), as Successor Trustee to Wachovia Bank N.A. ("Wachovia"), as Trustee for the holders of JPMorgan Mortgage Trust 2005-A-3 (the "JPM Trust"), but which claim and lien, will attach to the proceeds from the sale of the Georgetown Property with the same extent, validity, and priority as such claim and lien had prior to the sale, (c) Items 12 and 13 of the Title Report, which are *lis pendens* (the "Lis Pendens" recorded against the Georgetown Property by Raymond and Cheryl Gutierrez, the former owners of the Georgetown Property (the "Gutierrezes"), that relate to two actions initiated by the Gutierrezes that are no longer pending, (d) Items 15-17 of the Title Report, which are deeds of trust (the "Affiliate DOTs") issued by the Debtor to certain of its affiliates (the "Affiliates") that were deemed to be released, reconveyed, terminated, and expunged from title pursuant to an order of the Court, (e) Item 20 of the Title Report, which is a Judgment Lien,  allegedly securing a Judgment entered in favor of Affiliated Funding, US Bank, and others, but which claim and lien, will attach to the proceeds from the sale of the Georgetown Property with the same extent, validity, and priority as such claim and lien had prior to the sale, and (f) Item 21 of the Title Report, which is a generalized item for "[a]ny defect or invalidity of the title to said Land arising out of or occasioned by a violation of the Bankruptcy Code."

• Potential Tax Consequences:  The Debtor will have to pay applicable capital gains taxes stemming from the sale of the Georgetown Property after applicable deductions and exemptions.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon 11 U.S.C. §§ 105(a), 363(b), (f), and (m), FRBP 2002 and 6004, any applicable Local Bankruptcy Rules (the "LBR"), the annexed Memorandum of Points and Authorities and Declarations in support of the Motion, as well as the exhibits thereto (together, the "Memorandum, Declarations, and Exhibits"), the concurrently filed notice of the Motion (the "Notice") all other evidence duly

1  admitted by the Court in connection with consideration of the Motion, the record in this case,

2  and the arguments and statements of counsel to be made at the hearing on the Motion.

3       **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), any

4  opposition to the Motion must (1) be in writing and include all reasons and evidence in support

5  of the opposition, (2) be filed at least fourteen (14) days prior to the hearing on the Motion, and

6  (3) be served on the United States Trustee and counsel for the Debtor.

7       **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the Court

8  may deem the failure of any party to file a timely opposition to the Motion to constitute consent

9  to the granting of the Motion and the relief requested herein.

10      **WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order

11  providing the relief requested in paragraphs (1) through (6) of the above Motion.

12  Dated: September 11, 2018              GRAND VIEW FINANCIAL, LLC

13

14                                        By: ___*/s/ Todd M. Arnold*_____
15                                            TODD M. ARNOLD
                                             LEVENE, NEALE, BENDER, YOO
16                                               & BRILL L.L.P.
                                             Attorneys for Debtor and
17                                           Debtor in Possession

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

3  MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 8

4  I. STATEMENT OF FACTS ........................................................................................... 8

5    A.  GENERAL BACKGROUND ...................................................................... 8

6    B.  THE DEBTOR'S BUSINESS AND REAL PROPERTY ............................ 8

7    C.  THE DEBTOR'S ACQUISITION OF THE GEORGETOWN
8        PROPERTY. ................................................................................................. 9

9    D.  THE REASONS FOR FILING BANKRUPTCY AND THE
         DEBTOR'S EXIT STRATEGY. ................................................................. 9
10
     E.  ACTIONS BY THE DEBTOR IN FURTHERANCE OF ITS EXIT
11       STRATEGY ................................................................................................ 12

12   F.  PRIOR AND ONGOING MARKETING EFFORTS REGARDING
         THE SALE OF THE GEORGETOWN PROPERTY. ................................ 12
13
     G.  THE PROPOSED SALE OF THE GEORGETOWN PROPERTY
14       UNDER THE PURCHASE AGREEMENT. .............................................. 14

15   H.  ALLEGED LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
16       RECORDED AGAINST THE GEORGETOWN PROPERTY FROM
         WHICH THE DEBTOR IS SEEKING TO SELL FREE AND CLEAR. ........... 14
17
     I.  THE PROPOSED OVERBID PROCEDURES AND BREAK-UP FEE............ 15
18
19  II. LEGAL ARGUMENT ................................................................................................ 17

20   A.  THE COURT SHOULD APPROVE THE SALE OF THE
         GEORGETOWN PROPERTY TO THE BUYER, SUBJECT TO
21       OVERBID, OR TO ANY WINNING OVERBIDDER AT AUCTION. ............. 17

22       1.  THE DEBTOR HAS OR WILL HAVE COMPLIED WITH ALL
             APPLICABLE NOTICE REQUIREMENTS. ............................................. 17
23
         2.  THE SALE OF THE GEORGETOWN PROPERTY TO THE BUYER,
24           SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER
             AT AUCTION, SHOULD BE APPROVED, BECAUSE GOOD
25           BUSINESS REASONS FOR THE SALE EXIST, THE PURCHASE
             PRICE FOR THE GEORGETOWN PROPERTY IS FAIR AND
26           REASONABLE, AND THE PROPOSED SALE IS IN THE BEST
             INTERESTS OF THE ESTATE AND CREDITORS............................. 18
27

28

i

B.    THE COURT SHOULD APPROVE THE SALE OF THE
GEORGETOWN PROPERTY FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES, AND INTERESTS, OTHER THAN
THE EXCEPTED ITEMS, TO THE BUYER OR ANY WINNING
OVERBIDDER AT THE AUCTION ..................................................................... 22

1.    APPLICABLE STANDARDS. ................................................ 22

2.    THE COURT SHOULD APPROVE THE SALE OF THE
GEORGETOWN PROPERTY FREE AND CLEAR OF THE NON-
EXCEPTED ITEMS IN THE TITLE REPORT TO THE BUYER OR
ANY WINNING OVERBIDDER AT THE AUCTION. ........................ 24

C.    THE COURT SHOULD APPROVE THE OVERBID PROCEDURES
AND THE BREAK-UP FEE. ................................................................. 38

D.    THE COURT SHOULD APPROVE THE PAYMENT OF CERTAIN
CLAIMS FROM SALE PROCEEDS UPON THE CLOSE OF THE
SALE OF THE GEORGETOWN PROPERTY. ...................................... 41

E.    THE COURT SHOULD WAIVE THE 14-DAY STAY PERIOD SET
FORTH IN BANKRUPTCY RULES 6004(h) ....................................... 42

III. CONCLUSION ................................................................................................. 42

DECLARATION OF STEVE ROGERS ..................................................................... 43

DECLARATION OF RAYMOND GUTIERREZ ........................................................ 52

DECLARATION OF W. DARROW FIEDLER ........................................................... 54

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 995 Fifth Ave. Assoc., L.P.*
  96 B.R. 24 (Bankr. S.D.N.Y. 1989)..................................................................40

*In re Abbotts Dairies*
  788 F.2d at 149.................................................................................................21

*In re Alpha Industries, Inc.*
  84 B.R. 703 (Bankr. Mont. 1988)...................................................................20

*In re Atlanta Packaging Products, Inc.*
  99 B.R. 124 (Bankr. N.D. Ga. 1988)..........................................................38, 39

*Bey v. Citi Mortg., Inc.*
  No. EDCV 15–1838–JGB, 2015 U.S. Dist. LEXIS 144433 (C.D. Cal. Oct. 23,
  2015)..................................................................................................................35

*Big Shanty Land Corp. v. Comer Properties, Inc.*
  61 B.R. 272 (Bankr. N.D. Ga. 1985)..........................................................8, 20

*In re Canyon Partnership*
  55 B.R. 520 (Bankr. S.D. Cal. 1985).............................................................20

*Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*
  94 B.R. 343 (Bankr. E.D. Pa. 1988)..........................................................22, 23

*Clear Channel Out-door, Inc. v. Knupfer (In re PW, LLC)*
  391 B.R. 25 (B.A.P. 9th Cir. 2008)............................................................24, 33

*Cottle v. Storer Communication Inc.*
  849 F.2d 570 (11th Cir. 1988).........................................................................40

*In re Crowthers McCall Pattern, Inc.*
  114 B.R. 877 (Bankr. S.D.N.Y. 1990)............................................................39

*In re Daufuskie Island Props., LLC*
  431 B.R. 626 (Bankr. D.S.C. 2010)................................................................23

*In re Ex-Cel Concrete Company, Inc.*
  178 B.R. 198 (B.A.P. 9th Cir. 1995)...............................................................23

*In re Financial News Network, Inc.*
  126 B.R. 152 (Bankr. S.D.N.Y. 1991)............................................................39

*In re Gabel*
  61 B.R. 661 (Bankr. W.D. La. 1985)...............................................................23

*In re Gerwer*
  898 F.2d 730 (9th Cir. 1990) ...................................................................22

*Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.)*
  277 F.3d 1057 (9th Cir. 2002) .................................................................23

*In re Holy Hill Cmty. Church*
  563 B.R. 6 (C.D. Cal. 2017) ..............................................................35, 36

*In re Integrated Resources, Inc.*
  147 B.R. 650 (S.D.N.Y. 1992), *app dismissed on jurisdictional grounds,* 3
  F.3d 49 (2d Cir. 1993).............................................................................40

*In re Karpe*
  84 B.R. 926 (Bankr. M.D.Pa. 1988) ........................................................22

*In re Kellogg-Taxe*
  2014 WL 1016045 (Bankr. C.D. Cal. Mar.17, 2014) ..............................23

*In re The Landing*
  156 B.R. 246 (Bankr. E.D. Mo. 1993) .....................................................19

*In re Lionel Corp.*
  722 F.2d 1063 (2d Cir. 1983)...................................................................19

*In re Mama's Original Foods, Inc.*
  234 B.R. 500 (C.D. Cal. 1999) ................................................................19

*Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms,*
  *Inc.)*
  36 B.R. 856 (Bankr. W.D. Mo. 1984)......................................................23

*In re Net Data Centers*
  Case No. 15-12690-BB, Dkt. No. 259 (Bankr. CD Cal. Sep. 1, 2015) ....41

*In re Paddlewheels, Inc.*
  2007 WL 1035151 (Bankr. E.D.La. April 2, 2007 ..................................23

*In re Pomare, Ltd.*
  No. 15-00203, 2015 WL 3523096 (Bankr. D. Haw. May 18, 2015)..........41

*In re S.N.A. Nut Co.*
  186 B.R. 98 (Bankr. N.D. Ill. 1995) ........................................................40

*In re Schwartz*
  954 F.2d 569 (9th Cir. 1993) ............................................................26, 37

*SEC v. Capital Cove Bancorp LLC*
  2015 WL 9701154 (C.D. Cal. Oct.13, 2015)......................................24, 29

*In re T Asset Acquisition Co., LLC*
    No. 2:09-31853-ER, 2010 WL 4689562 (Bankr. C.D. Cal. Jan. 28, 2010).......................14, 41

*In re Veal*
    450 B.R. 897 (B.A.P. 9th Cir. 2011).........................................................28, 29, 30, 33

*Walter v. Sunwest Bank (In re Walter)*
    83 B.R. 14 (B.A.P. 9th Cir. 1988)....................................................................19

*In re Wilde Horse Enterprises, Inc.*
    136 B.R. 830 (Bankr. C.D. Cal. 1991)......................................................19, 20, 21

**California Cases**

*Bank of Am. v. Graves*
    51 Cal. App. 4th 607, 59 Cal. Rptr. 2d 288 (1996)..............................................34

*Barer v. Cty. of Riverside*
    57 Cal. App. 4th 558, 67 Cal. Rptr. 2d 241 (1997).............................................33

*Cal-W. Bus. Servs., Inc. v. Corning Capital Grp.*
    221 Cal. App. 4th 304, 163 Cal. Rptr. 3d 911 (2013)..........................................30

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*
    207 Cal. App. 3d 1018, 255 Cal. Rptr. 157 (Ct. App. 1989) ................................34

*Glaski v. Bank of Am., Nat'l Ass'n.*
    218 Cal. App. 4th 1079 (2013) ......................................................................31

*Riverside Cty. Cmty. Facilities Dist. No. 87-1 v. Bainbridge 17*
    77 Cal. App. 4th 644, 92 Cal. Rptr. 2d 29 (1999)..............................................34

*Tabarrejo v. Superior Court*
    232 Cal. App. 4th 849, 182 Cal. Rptr. 3d 30 (2014)...........................................31

**Other State Cases**

*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013)
    39 Misc.3d 1220(A), 2013 WL 1831799, slip.....................................................32

**Federal Statutes**

11 U.S.C.
    § 101 et seq. ...........................................................................8, 9, 10, 12
    § 101(31) ...............................................................................................22
    § 102(1)(A) ............................................................................................17
    § 363 .....................................................................................................38
    § 363(b) ......................................................................................18, 19, 20

§ 363(b)(1) .................................................................................................. 17, 21
§ 363(b)(2) ........................................................................................................ 17
§ 363(f) ........................................................................................................ 22, 23
§ 363(f)(2) .......................................................................................... 23, 26, 36
§ 363(f)(3) ........................................................................................................ 37
§ 363(f)(4) ................................................................................................. *passim*
§ 363(f)(5) ....................................................................... 24, 25, 33, 35
§ 363(m) ........................................................................................................... 22
§ 506(a) ............................................................................................................ 37
§ 549 .......................................................................................................... 26, 37
§§ 1107 and 1108 ............................................................................................. 8

## California Statutes

Cal.Civ.Code
§ 2924k ............................................................................................................ 35

Cal. Com. Code
§§ , 3-203(c), 3-302(a)(2), 3-301 ................................................................ 32

Cal. Rev. & Tax. Code
§ 2192.1 ........................................................................................................... 34
§ 23304.1 ......................................................................................................... 30

## Other State Statutes

EPTL
§ 7–2.4 ............................................................................................................. 31

## Other Authorities

Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) §
4.8 .................................................................................................................. 34

Fed.R.Bankr.P. 2002(a)(2) ............................................................................. 17
Fed. R. Bankr. P. 2002(c)(1) ........................................................................... 17
Fed.R.Bankr.P. 2002(k) .................................................................................. 17
Fed.R.Bankr.P. 6004(a) .................................................................................. 17
Fed. R. Bankr. P. 6004(f) ................................................................................ 38
Fed.R.Bankr.P. 6004(h) .................................................................................. 42

## MEMORANDUM OF POINTS AND AUTHORITIES[3]

## I.
## STATEMENT OF FACTS

### A.    GENERAL BACKGROUND.

On August 17, 2017 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").[4]    The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.    An Official Committee of Unsecured Creditors has not been formed.

### B.    THE DEBTOR'S BUSINESS AND REAL PROPERTY.

The Debtor is a Wyoming limited liability company that was formed in 2015.    The Debtor is in the business of acquiring distressed real property (each a "Property" and, collectively, the "Properties")  in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "Alleged Secured Claim" and, collectively, the "Alleged Secured Claims") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "Alleged Lien" and, collectively, the "Alleged Secured Liens") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid.

In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a "Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the Debtor and the Former Owner.  In a typical transaction in which the Debtor acquires a Property:

(1)    the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "Purchase Agreement" and, collectively, the "Purchase Agreements") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an

---

[3] Capitalized terms not otherwise defined herein have the same meanings as in the preceding Motion.
[4] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

"Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Purchase Agreement and Unsecured Note;

(2)    the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

(3)    the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

Through the Petition Date, the Debtor acquired 42 Properties.  In the ordinary course of its business, the Debtor acquired an additional two Properties after the Petition Date, and the Debtor may acquire other Properties.  Unfortunately, prior to the Petition Date, approximately 28 of the 44 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon.  The Debtor has decided to stop pursuing recovery on 22 of the Foreclosed Properties.  Thus, at present, the Debtor has an interest in and/or is pursuing recovery on 22 Properties.

C.    **THE DEBTOR'S ACQUISITION OF THE GEORGETOWN PROPERTY.**

Consistent with the Debtor's business model, the Debtor and the Gutierrezes, the Former Owners of the Georgetown Property, entered into a Purchase Agreement, the Debtor issued an Unsecured Note to the Gutierrezes, the Gutierrezes executed a Rental Agreement, and the Gutierrezes executed a Grant Deed transferring title to the Georgetown Property to the Debtor (the "Grant Deed").  A true and correct copy of the Grant Deed is attached hereto as **Exhibit "3."**

D.    **THE REASONS FOR FILING BANKRUPTCY AND THE DEBTOR'S EXIT STRATEGY.**

On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the

1    Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary,

2    invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid

3    alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure

4    Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's

5    Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a

6    Chapter 11 plan of reorganization.

7         As of the Petition Date, the Debtor intended (1) to initiate adversary proceedings  (each

8    an "Adversary" and, collectively, the "Adversary Proceedings") and/or claim objections (each a

9    "Claim Objection" and, collectively, the "Claim Objections") to (a) invalidate, reverse, or avoid

10   the purported foreclosures on the Foreclosure Properties and (b) challenge and eliminate all of

11   the Alleged Secured Claims and related Alleged Liens, (2) to sell the resulting unencumbered

12   Properties for the highest and best price (subject to any rights of first refusal a Former Owner

13   may have to repurchase the subject Property), and (3) to propose and confirm a plan whereby all

14   allowed secured claims (which the Debtor believes will be limited to some tax claims against

15   certain of the Properties), administrative claims, priority claims, and general unsecured claims

16   (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the

17   Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which

18   was the Debtor's original exit strategy.

19        While the Debtor disputes the enforceability and validity of the Alleged Secured Claims

20   and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure

21   Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the

22   validity of the purported foreclosures on the Foreclosure Properties, the Debtor has decided to

23   somewhat alter its original bankruptcy and exit strategy.  More specifically, the Debtor took

24   actions, including the initiation of Adversary Proceedings (which included Claim Objections),

25   in an effort to invalidate, reverse, or avoid the purported foreclosures on certain of the

26   Foreclosure Properties and to challenge certain related the Alleged Secured Claims and Alleged

27   Liens forming the purported basis for the foreclosures on the Foreclosure Properties.  However,

28   the Debtor, in an exercise of its business judgment, later determined that the cost of pursuing

most other potential Adversary Proceedings and Claim Objections likely outweighed the benefit to be gained in such Adversary Proceedings and Claim Objections, particularly when considering prior results before this Court, the costs of litigating the Adversary Proceedings and Claim Objections, and the delay and risks inherent in litigating Adversary Proceedings and Claim Objections pertaining to the Foreclosed Properties that are the subject of the Rejected Purchase Agreements (as defined below).

Based on the foregoing and other factors, the Debtor, in an exercise of its business judgment, decided that it made better sense to reject 22 of the 28 all of the Purchase Agreements relating to Foreclosed Properties (the "Rejected Purchase Agreements"), to stop seeking recovery on such Foreclosed Properties, and to instead focus on selling the 16 Properties that are non-Foreclosed Properties and continuing to litigate Adversary Proceedings and Claim Objections related to six of the Foreclosed Properties.

The Debtor intends to seek to sell such non-Foreclosed Properties, such as the Georgetown Property that is the subject of this Motion, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale.  Once non-Foreclosed Properties, such as the Georgetown Property that is the subject of this Motion, are sold, to the extent a consensual resolution cannot be reached regarding the disposition of sale proceeds as among the Debtor and any holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners), the Debtor will litigate, in contested Claim Objections or Adversary Proceedings, with the holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) pertaining to the non-Foreclosed Properties, to determine their claims and, therefore, the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property.

The Debtor believes that the foregoing is more likely to result in a higher net benefit to the estate than litigating all Adversary Proceedings and Claim Objections regarding the Foreclosed Properties.

**E.      ACTIONS BY THE DEBTOR IN FURTHERANCE OF ITS EXIT STRATEGY.**

The Debtor already sought and obtained Court authority to reject the Rejected Purchase Agreements, each of which pertained to a Foreclosed Property.

In respect to non-Foreclosed Properties, in furtherance of the Debtor's exit strategy, the Debtor (1) obtained Court authority to employ the Broker as the Debtor's real estate broker to market and sell the Properties at the appropriate time [*see* Dkts. 33, 96, 255, and 264] and (2) with the assistance of the Broker, began to market certain of the non-Foreclosed Properties for sale, including the Georgetown Property, as discussed in more detail below.   The Debtor's Court-approved employment of the Broker provides for a 6% commission to be paid to the Broker and shared with the cooperating broker in connection with the sale of the Georgetown Property [*see id.*].

In addition, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

Also in furtherance of the Debtor's exit strategy, the Debtor filed a motion to approve a settlement agreement between the Debtor and certain of its Affiliates (the "Affiliate Settlement Motion") pursuant to which, *inter alia*, the Affiliate DOTs issued by the Debtor to certain of its Affiliates would be deemed to be released, reconveyed, terminated, and expunged from title. [Dkts. 252 and 253.  On  June 28, 2018, the Court entered its Affiliate Settlement Order [Dkt. 271] granting the Affiliate Settlement Motion and deeming the Affiliate DOTs to be released, reconveyed, terminated, and expunged from title.   A true and correct copy of the Affiliate Settlement Order is attached hereto as **Exhibit "4."**

**F.      PRIOR  AND  ONGOING  MARKETING  EFFORTS  REGARDING  THE  SALE OF THE GEORGETOWN PROPERTY.**

In furtherance of its efforts to market and sell the Georgetown Property, the Broker (1) accessed and viewed the Georgetown Property, (2) discussed the Georgetown Property and related comparative sale data to come to agreement with the Debtor on a listing price, (3) photographed the Georgetown Property, (4) on or about March 30, 2018, listed the Georgetown Property on the MLS, which listing was followed by private showings.  The Broker's marketing

efforts resulted in numerous views on the MLS and other online platforms, a number of private showings, and multiple offers for the Georgetown Property.

In addition to the foregoing, the Broker will continue to market the Georgetown Property through the Auction date in an effort to attract Overbidders by, among other things, (1) continuing to respond to inquiries regarding the Georgetown Property, (2) when possible, continuing to conduct private showings to interested parties, (3) mailing or emailing a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the Overbid Procedures, to (a) all parties and/or the brokers of all parties that have provided contact information to the Broker and have shown interest in the Georgetown Property and (b) potential interested parties in the Broker's email database, and (4) posting on the MLS basic information about the Auction and Overbid Procedures (such as date and time of the auction and minimum initial overbid amount) and contact information for the Debtor's counsel indicating that such counsel can provide a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the full, detailed Overbid Procedures.

In addition to the foregoing, as required by LBR 6004-1, concurrently with the filing hereof, the Debtor will submit an additional copy of the Notice of the Motion, which include the Overbid Procedures, with the Clerk of the Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE for purposes of publication.  LBR 6004-1(c)(3) and (f).

The efforts of the Debtor and the Broker to market and sell the Georgetown Property resulted in the Debtor receiving a number of signed offers for the Georgetown Property. Ultimately, after considering other and prior purchase offers, and based on consultation with its professionals, the Debtor accepted the offer from the Buyer and entered into the Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit "2."**

The Purchase Agreement is the result of arms-length negotiations.  Other than in connection with the proposed sale of the Georgetown Property, the Debtor and its principals have no prior connections with and have never met the Buyer.

**G.    THE PROPOSED SALE OF THE GEORGETOWN PROPERTY UNDER THE PURCHASE AGREEMENT.**

The principal terms and conditions of the proposed sale of the Georgetown Property to the Buyer, subject to overbid, include the following:[5]

- **Name of Buyer:** Amelia and Jon Stockton (*i.e.*, the "Buyer").

- **Asset:** The Georgetown Property.

- **Purchase Price:** $660,000 subject to overbid pursuant to the Overbid Procedures.

- **Deposit:** $19,800 (3% of the Purchase Price)

- **Estimated Costs of Sale:** Total of 8% comprised of a 6% commission for the Debtor's broker, plus any outstanding real property taxes, plus other customary closing costs.

- **Condition of Asset/Property:** "As-is" and "Where is."

- **Contingencies:** The Purchase Agreement contained a due diligence period that expired on August 14, 2018. All contingencies have now been lifted other than the entry of the Sale Order approving the sale of the Georgetown Property to the Buyer.

- **Other Terms:** The sale is subject to the Overbid Procedures and Break-Up Fee set forth herein above and below. Further, the Debtor's sale of the Georgetown Property shall be free and clear of any and all liens, claims, encumbrances, and interests, other than the Excepted Items, which non-Excepted Items are discussed further below.

- **Potential Tax Consequences:** The Debtor will have to pay applicable capital gains taxes stemming from the sale of the Georgetown Property after applicable deductions and exemptions.

**H.    ALLEGED LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS RECORDED AGAINST THE GEORGETOWN PROPERTY FROM WHICH THE DEBTOR IS SEEKING TO SELL FREE AND CLEAR.**

The Title Report for the Property is attached hereto as **Exhibit "1."** Pursuant to the Motion, the Debtor is seeking to sell the Georgetown Property free and free and clear of all

---

[5] This is a summary only. To the extent there is any inconsistency between this summary and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

liens, claims, encumbrances, and interests, with the exception of Items 1, 5-10, and 14 (the "Excepted Items") set forth in the Title Report. In other words, the Debtor will be selling free and clear of the Items 2-4, 11-13, and 15-21 of the Title Report as the non-Excepted Items of the Title Report. The foregoing non-Excepted Items, and the bases for being able to sell free and clear thereof, are discussed below in Section II.B.2 hereof.

## I. THE PROPOSED OVERBID PROCEDURES AND BREAK-UP FEE.

The proposed Overbid Procedures and Break-Up Fee are as follows:

- **Date, Time, and Location of the Auction:** The Auction shall be held concurrently with the hearing on the Motion, as follows:

| | |
|---|---|
| **Date:** | **October 2, 2018** |
| **Time:** | **2:30 p.m.** |
| **Place:** | **Courtroom 1675** |
| | **255 E. Temple Street** |
| | **Los Angeles, CA  90012** |

- **Initial Overbid Amount:** The Purchase Price of $660,000, plus *at least* $10,000 more (*i.e.*, at least $670,000) (the "Initial Overbid Amount");

- **Qualification of Overbidders:** In order for any prospective Overbidder to have the right to bid at the Auction, the prospective Overbidder must, **within three (3) business days prior to the Auction**, (a) provide to counsel for the Debtor, Levene, Neale, Bender, Yoo & Brill L.L.P., c/o Todd M. Arnold, 10250 Constellation Boulevard, Suite 1700 Los Angeles, California 90067, Telephone: (310) 229-1234 Facsimile: (310) 229-1244, Email: tma@lnbyb.com ("LNBYB"), a signed proposed purchase agreement (each an "Overbid Purchase Agreement"), in substantially and materially the same form as the Purchase Agreement,[6] redlined to show any changes, with such purchase agreement not to contain any financing, inspection, due diligence, or other contingencies (other than the entry of the Sale Order approving the sale of the Georgetown Property to the Overbidder), and including, a removal of all contingencies (other than the entry of the Sale Order approving

---

[6] LNBYB will provide a copy of the Purchase Agreement in Word to any parties interested in submitting an Overbid.

the sale of the Georgetown Property to the Overbidder) pursuant to CAR Form CR 14.C, and with a minimum purchase price of at least the Initial Overbid Amount of $670,000; (b) submit a deposit in the amount of 10% of the Initial Overbid Amount set forth in the Overbid Purchase Agreement by cashiers' check or wire into a segregated trust account maintained by LNBYB, who will provide wire instructions on request; (c) demonstrate that the prospective Overbidder has sufficient funds or financing to close the transaction within fifteen (15) calendar days of the entry of the Sale Order approving the prospective Overbidder and the sale of the Georgetown Property to the Overbidder; and (d) agree that the prospective Overbidder's deposit will be non-refundable if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Georgetown Property within fifteen (15) calendar following the date of entry of the Sale Order – regardless of whether an appeal has been filed of the Sale Order, provided there is no entered stay pending appeal of either of the foregoing orders (*i.e.*, no final order requirement).

- **Overbidding Increments and Considerations in Determining the Winning Bidder at Any Auction:**  In order to qualify to bid at the Auction, any Overbid Purchase Agreement is required to include an Initial Overbid Amount of at least $670,000. Subsequent overbids at the Auction must be in increments of $1,000 or amounts that are wholly divisible by $1,000.  The Debtor, in consultation with its professionals, will select the highest and best offer and recommend Court approval of the sale of the Georgetown Property to the Buyer or any qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals, has made the highest and best offer for the Georgetown Property.

- **Break-Up Fee:**  In the event the Buyer is not the successful bidder at the Auction and an Overbidder closes a purchase of the Georgetown Property, the Debtor shall pay a $5,000 Break-Up Fee (approximately .75% of the Purchase Price) to the Buyer upon the close of escrow.

The Debtor believes that the proposed Overbid Procedures and Break-Up Fee, together

with efforts already undertaken by the Broker to market the Georgetown Property and by the Debtor and the estate to negotiate and enter into the Purchase Agreement, will result in the Debtor and the estate receiving the highest and best price for the Georgetown Property under the circumstances.

## II.
## LEGAL ARGUMENT

**A.** **THE COURT SHOULD APPROVE THE SALE OF THE GEORGETOWN PROPERTY TO THE BUYER, SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER AT AUCTION.**

    **1.** **THE DEBTOR HAS OR WILL HAVE COMPLIED WITH ALL APPLICABLE NOTICE REQUIREMENTS.**

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

FRBP 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to FRBP 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with Section 363(b)(2). Fed.R.Bankr.P. 6004(a). FRBP 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice. Fed.R.Bankr.P. 2002(a)(2). FRBP 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. It also provides that the notice of sale or property is sufficient if it generally describes the property. Fed. R. Bankr. P. 2002(c)(1). FRBP 2002(k) requires that the notice be given to the United States Trustee. Fed.R.Bankr.P. 2002(k).

In addition, LBR 6004-1 requires that the notice contain the information specified in LBR 6004-1(c)(3) and that an additional copy of the notice be submitted to the Clerk of the

1    Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE at the time of filing for

2    purposes of publication.  LBR 6004-1(c)(3) and (f).

3         The Debtor has or will have complied with all of the above provisions of the Bankruptcy

4    Code, the FRBP and the LBR.  The Debtor has complied with  FRBP 6004(a) and 2002(a)(2),

5    (c)(1), (i) and (k), as well as LBR 6004-1(c)(3), as far as practicable under the circumstances,

6    because the Notice of the Motion includes all of the required information set forth above,

7    including, without limitation, the date, time and place of the hearing on the Motion to approve

8    the proposed sale of the Georgetown Property to the Buyer, subject to overbid, the deadline for

9    objecting to the Motion, the Auction date and Overbid Procedures, and related deadlines, and

10   the Notice of the Motion has been served on the Office of the United States Trustee, the Debtor,

11   all of the Debtor's known creditors, all parties appearing on the Title Report (even parties to the

12   Excepted Items where addresses are available), and all parties requesting special notice.

13   Further, this Motion and its annexed Memorandum, Declarations, and Exhibits will be served

14   on the Office of the United States Trustee, the Debtor, all parties appearing on the Title Report

15   (even parties to the Excepted Items where addresses are available), and all parties requesting

16   special notice.  Additionally, the Notice of the Motion advises parties in interest how and where

17   to obtain a full copy of this Motion and its annexed Memorandum, Declarations, and Exhibits.

18        Further, as required by LBR 6004-1(f), concurrently with the filing hereof, the Debtor

19   submitted an additional copy of the Notice of the Motion, which include the Overbid

20   Procedures, with the Clerk of the Bankruptcy Court together with a Form F 6004-

21   2.NOTICE.SALE for purposes of publication.

22        Based on the foregoing, all applicable notice requirements have been satisfied.

23       **2.**    **THE SALE OF THE GEORGETOWN PROPERTY TO THE BUYER,**

24   **SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER AT AUCTION, SHOULD BE APPROVED, BECAUSE GOOD BUSINESS**

25   **REASONS FOR THE SALE EXIST, THE PURCHASE PRICE FOR THE GEORGETOWN PROPERTY IS FAIR AND REASONABLE, AND THE**

26   **PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE AND CREDITORS.**

27       As a general matter, a Court considering a motion to approve a sale under Section

28   363(b) should determine from the evidence presented before it that a "good business reason"

exists to grant such a motion. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). In addition, the Court must further find that the sale is in the best interest of the estate. To make this determination, a Court should consider whether:

>    (1)    the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;
>    (2)    the property has been given adequate marketing;
>    (3)    the sale is in good faith, *i.e.*, there is an absence of any lucrative deals with insiders, and
>    (4)    adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999). Here, the proposed sale of the Georgetown Property to the Buyer pursuant to the terms of the Purchase Agreement, or to successful Overbidder at the Auction, satisfies each of these requirements.

### a.    <u>Sound Business Purpose</u>.

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). The facts pertaining to the sale at issue here amply substantiate the Debtor's business decision that the contemplated sale of the Georgetown Property to the Buyer pursuant to the terms of the Purchase Agreement, or to successful Overbidder at the Auction, serves the best interests of the estate and merits the approval of this Court.

As noted above, the Debtor's exit strategy now primarily focuses on (1) selling the non-Foreclosed Properties, such as the Georgetown Property, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale, (2) once non-Foreclosed Properties, such as the Georgetown Property, are sold, seeking to reach consensual resolutions with holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) regarding alleged claims and liens pertaining to the subject non-Foreclosed Property, and (3) to the extent a consensual resolutions cannot be reached, litigating, in contested Claim Objections or

1    Adversary Proceedings, to resolve such alleged claims and liens and, therefore, to determine the

2    appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property.

3    Thus, the proposed sale furthers the Debtor's exit strategy.

4         In addition to the foregoing, the sale of the Georgetown Property will (1) substantially

5    curtail, if not stop, the accrual of any additional secured claims in favor of US Bank for

6    additional interest and (2) stop the accrual of additional secured property tax claims against the

7    estate related to the Georgetown Property.

8         Based on the foregoing, the Debtor submits that the proposed sale of the Georgetown

9    Property is in the best interests of the estate and its creditors and, therefore, represents a sound

10   exercise of the Debtor's business judgment.

11              **b.    Fair and Reasonable Price.**

12        In order for a sale to be approved under Section 363(b), the purchase price must be fair

13   and reasonable.  *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

14   The trustee is given substantial discretion in this regard.  *Id.*  In addition, Courts have broad

15   discretion with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer

16   Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the

17   ultimate purpose is to obtain the highest price for the property sold.  *Wilde Horse Enterprises,

18   Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha

19   Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

20        As noted above, the Debtor's Broker engaged in, and will continue to engage in,

21   expansive marketing efforts regarding the sale of the Georgetown Property.    Those efforts

22   resulted in a number of signed offers for the Georgetown Property.    The offer under the

23   Purchase Agreement represents the highest and best offer for the Georgetown Property thus far

24   that has remained in escrow.  Further, the Overbid Procedures and Auction process proposed to

25   be implemented by the Debtor are specifically designed to ensure that the highest price possible

26   is obtained for Georgetown Property.  Although the Debtor will not know the results of the

27   Auction (if one is conducted) until the Auction has been completed, based upon the marketing

28   efforts by the Debtor's highly experienced Broker after the Petition Date, which are outlined

1  above and which will continue through the Auction date, the Georgetown Property will have

2  been exposed to those parties who are most likely to be interested in acquiring the Georgetown

3  Property, and the highest and best bid obtained for the Georgetown Property (whether it is the

4  bid offered by the Buyer or an Overbid submitted by a successful Overbidder) will constitute

5  fair and reasonable value for the Property.

6              **c.    Adequate Marketing.**

7              The intensive marketing efforts undertaken by the Debtor's Broker after the Petition Date,

8  which will continue through the Auction date, are set forth in detail above and are not repeated

9  here.  In consideration of the foregoing marketing efforts by the Debtor's Broker, the Georgetown

10  Property has been, and will be, adequately marketed.

11             **d.    Good Faith.**

12             When a Bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1), it is

13  required to make a finding with respect to the "good faith" of the purchaser.  *In re Abbotts*

14  *Dairies*, 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed

15  to circumvent creditor protections.  *Id.* at 150.  With respect to the Debtor's conduct in

16  conjunction with the proposed sale of the Property, the good faith requirement focuses

17  principally on whether there is any evidence of "fraud, collusion between the purchaser and

18  other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

19  *Abbotts Dairies*, 788 F.2d at 147; *Wilde Horse Enterprises*, 136 B.R. at 842.

20             Here, as discussed above, the Purchase Agreement is the result of arms-length

21  negotiations and, other than in connection with the proposed sale of the Georgetown Property,

22  the Debtor and its principals have no prior connections with and have never met the Buyer.

23             Based on the foregoing, and because the Buyer has no affiliation with the Debtor other

24  than as set forth above and is not an "insider" of the Debtor as that term is defined in Section

25  101(31), the Debtor submits that there has been no fraud or collusion in connection with the

26  proposed sale of the Georgetown Property.  Therefore, the good faith requirement has been

27  satisfied, and that the Buyer (or a successful Overbidder) should be deemed a "good faith"

28  purchaser under Section 363(m) and entitled to the benefits under Section 363(m).

e.    **<u>Accurate and Reasonable Notice.</u>**

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections.  *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988).  A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections.  *Id.*

As set forth in detail in Paragraph II.A.1 above, the Debtor has complied with all of the applicable notice provisions of the Bankruptcy Code, the FRBP and the LBR.  Thus, the Notice of the Motion (and proposed sale of the Property) should be deemed adequate, accurate, and reasonable by the Court.

**B.    <u>THE COURT SHOULD APPROVE THE SALE OF THE GEORGETOWN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, OTHER THAN THE EXCEPTED ITEMS, TO THE BUYER OR ANY WINNING OVERBIDDER AT THE AUCTION.</u>**

**1.    <u>APPLICABLE STANDARDS.</u>**

The Court has the power to authorize the sale of property free and clear of liens, claims, or interests.  *See* 11 U.S.C. § 363(f); *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990).

Section 363(f) permits a sale of property "free and clear of any interest in such property of an entity other than the estate" if ***any one*** of the following five conditions is met:

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens.  *See e.g., Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988);

1  *Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.),* 36 B.R.

2  856, 858 (Bankr. W.D. Mo. 1984).

3      In regard to *Section 363(f)(2),* the "consent" of an entity asserting an interest in the

4  property sought to be sold, as referenced in 11 U.S.C. § 363(f)(2), can be implied if such entity

5  fails to make a timely objection to the sale after receiving notice of the sale. *In re Eliot,* 94 B.R.

6  343, 345 (E.D. Pa. 1988); *see also, In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198, 203

7  (B.A.P. 9th Cir. 1995) ("The issue here is whether there was consent or non-opposition by

8  Citicorp."); *In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ("The

9  Sale Motion complies with section 363(f) of the Bankruptcy Code, in that the Trustee either

10  obtained the consent of Whitney to the sale of the Vessel to Purchaser or Whitney had no

11  objection to the Sale."); *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985) (implied consent is

12  sufficient to authorize a sale under § 363(f)(2)).

13      To satisfy *Section 363(f)(4),* there must be an objective basis for a factual or legal

14  dispute as to the validity of the interest. *In re Kellogg-Taxe,* 2014 WL 1016045, at *6 (Bankr.

15  C.D. Cal. Mar.17, 2014) (*citing In re Gaylord Grain L.L.C.,* 306 B.R. 624, 627 (B.A.P. 8th Cir.

16  2004)); *In re Daufuskie Island Props., LLC,* 431 B.R. 626, 645 (Bankr. D.S.C. 2010); *see also

17  Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1062

18  (9th Cir. 2002) (adopting objective test for determining whether claim supporting involuntary

19  petition is subject to *bona fide* dispute). "[T]he moving party must 'provide *some* factual

20  grounds to show some objective basis for the dispute." *SEC v. Capital Cove Bancorp LLC,*

21  2015 WL 9701154, at *7 (C.D. Cal. Oct.13, 2015) (emphasis added).  The court is not required

22  to resolve the underlying dispute as a condition to authorizing the sale, but must determine that

23  it exists. *Capital Cove Bancorp,* 2015 WL 9701154, at *7; *Kellogg-Taxe,* 2014 WL 1016045, at

24  *6.

25      Pursuant to *Section 363(f)(5),* a debtor in possession may sell property free and clear of

26  any interest if the holder of that interest "*could* be compelled, in a legal or equitable proceeding,

27  to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5) (emphasis added).

28  Section 363(f)(5) has generally been interpreted to mean that if, under applicable law, the holder

of the lien or interest could be compelled to accept payment in exchange for its interest, the debtor in possession may take advantage of that right by replacing the holder's lien or interest with a payment or other adequate protection.  COLLIER ON BANKRUPTCY, ¶ 363.06 [6] (15th ed. rev. 2003).

In *Clear Channel Out-door, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008) ("*PW*"), the BAP reversed the Bankruptcy Court's approval of a sale to a senior lender free and clear of the liens of the junior lienholder under § 363(f)(5). In reversing the Bankruptcy Court's decision, the BAP found that Section 363(f)(5) requires that "(1) a proceeding exists or ***could*** be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest."  *Id*. at 41 (emphasis added). Analyzing the aforementioned factors in reverse order, the BAP concluded that a lien constitutes an "interest" for purposes of Section 363(f)(5).  *Id*. With respect to the second factor, the BAP ruled that Section 363(f)(5) refers to those proceedings in which the creditor "***could*** be compelled to take less than the value of the claim secured by the interest." *Id*. (emphasis added).  In order to approve a sale free and clear under Section 363(f)(5), the Court must "make a finding of the existence of … a mechanism [to address extinguishing the lien or interest without paying such interest in full] and the [debtor in possession] must demonstrate how satisfaction of the lien 'could be compelled.'" *Id*. at 45.  Finally, the Bankruptcy Appellate Panel held that Section 363(f)(5) requires that there be, "or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest." *Id*.

2.     **THE COURT SHOULD APPROVE THE SALE OF THE GEORGETOWN PROPERTY FREE AND CLEAR OF THE NON-EXCEPTED ITEMS IN THE TITLE REPORT TO THE BUYER OR ANY WINNING OVERBIDDER AT THE AUCTION.**

As noted, the Debtor is seeking to sell the Georgetown Property free and free and clear of all liens, claims, encumbrances, and interests, with the exception of Excepted Items 1, 5-10, and 14  set forth in the Title Report, a copy of which is attached hereto as Exhibit "1."  In other words, the Debtor seeking to sell the Georgetown Property free and clear of the Items 2-4, 11-

1   13, and 15-21 of the Title Report as the non-Excepted Items.   The foregoing non-Excepted

2   Items, and the bases for being able to sell free and clear thereof, are as follows.

3           a.        **Items 2-4, 18, and 19 of the Title Report** are liens (the "Tax Liens")

4   securing the County's claims for unpaid real property taxes owed for the Georgetown Property

5   and certain other taxes (the "Secured Tax Claims").   More specifically, the Items 2-4, 18, and

6   19 of the Title Report indicate that the County's Secured Tax Claims total approximately

7   $1,789.18, comprised of (i) a claim in the amount of $789.34 for supplemental 2017-2018 real

8   property taxes (*see* Title Report Item 2), (ii) a claim in the amount of $238.08 for supplemental

9   2015-2016 real property taxes (*see* Title Report Item 3), (iii) a claim in the amount of $133.08

10  for supplemental 2016-2017 real property taxes (*see* Title Report Item 4), and (iv) a claim in the

11  amount of $314.34 for 2017-2018 personal property taxes (*see* Title Report Item 18) and a

12  further claim in the amount of $314.34 for 2017-2018 personal property taxes (*see* Title Report

13  Item 19).

14          In addition to the foregoing, the County filed Proof of Claim 14, a true and

15  correct copy of which is attached hereto as **Exhibit "5,"** asserting a secured claim in the amount

16  of $282.90 for supplemental 2015-2016 real property taxes, which Proof of Claim appears to

17  duplicate the amount owed for Title Report Item 3.

18          The County's Secured Tax Claims will be paid from the proceeds of the sale of

19  the Georgetown Property.   Based on the foregoing, the Debtor believes that the County will,

20  either affirmatively or by a lack of any opposition to the Motion, consent to the sale free and

21  clear of the County's Tax Liens and Secured Tax Claims provided that the Secured Tax Claims

22  are paid upon closing.   Based on the foregoing, the Court should approve the sale of the

23  Georgetown Property free and clear of the County's Tax Liens and Secured Tax Claims

24  pursuant to Section 363(f)(2).

25          In addition to the foregoing, the Debtor notes that the purported Tax Liens

26  referenced in Items 18 and 19 of the Title Report and the Secured Tax Claims related thereto are

27  subject to *bona fide* dispute because the subject Tax Liens were recorded on December 17,

28  2017, which is after the Petition Date of August 17, 2017, and, therefore, makes the subject Tax

1    Liens void, not merely voidable, because the recordation thereof constituted a violation of the

2    automatic stay. *In re Schwartz*, 954 F.2d 569, 570-71 (9th Cir. 1993). Further, the Tax Liens

3    may be avoidable under Section 549 providing for the avoidance of transfers of estate property

4    that occur after the Petition Date and are not authorized under the Title 11 or the Court. 11

5    U.S.C. § 549. Based on the foregoing, the Court could also approve the sale of the Georgetown

6    Property free and clear of the County's Tax Liens and Secured Tax Claims referenced in Items

7    18 and 19 of the Title Report pursuant to Section 363(f)(4).

8

9       **b.**  **Item 11 of the Title Report** is a purported lien under a deed of trust (the

10   "Subject DOT") purportedly issued by the Gutierrezes to Affiliated Funding and purportedly

11   securing an alleged loan from Affiliated Funding to the Gutierrezes in the original principal

12   amount of $583,200 under a promissory note (the "Subject Note") purportedly issued by the

13   Gutierrezes to Affiliated Funding, which Subject DOT and Subject Note were allegedly later

14   transferred to US Bank, as Successor Trustee to Wachovia, as Trustee for the holders of the

     JPM Trust.

15      In addition to the foregoing, an entity on behalf of US Bank filed Proof of Claim

16   8 (the "US Bank POC" or "US Bank Claim"), a true and correct copy of which is attached

17   hereto as **Exhibit "6,"** asserting a secured claim in the amount of $746,636, which US Bank

18   POC appears to duplicate Subject DOT and purported amounts due under the Subject Note

19   referenced in Title Report Item 11. More specifically, the US Bank POC was filed by RAS

20   Crane, LLC ("RAS Crane"), as the alleged authorized agent of Nationstar Mortgage LLC

21   ("Nationstar") as the purported servicer of the loan under the Subject Note. The USB POC

22   includes a number of attachments, including (1) the Subject Note (USB POC, p. 11 of 43 – p. 16

23   of 43), (2) the Subject DOT (USB POC, p. 17 of 43 – p. 31 of 43), and (3) a purported corporate

24   assignment (the "DOT Assignment") of the Subject Note and Subject DOT dated October 26,

25   2012 (the "DOT Assignment") (USB POC, p. 36 of 43).

26      **The Debtor can sell free and clear of the Subject DOT, the Subject Note,**

27   **and the US Bank Claim referenced in Title Report Item 11 pursuant to Sections 363(f)(4)**

28

1 | **or (f)(5).**

2 | (1)    **FACTS.**

3 | The Subject Note (1) purports to evidence a loan in the amount of $583,000

4 | made on or about January 24, 2005 by Affiliated Funding to the Gutierrezes and (2) includes

5 | three endorsements (the "<u>Endorsements</u>") purportedly showing three transfers of the note, first

6 | from Affiliated Funding to Countrywide Document Custody Services, a division of Treasury

7 | Bank, N.A. ("<u>CDC</u>"), then from CDC to Countrywide Home Loans, Inc. ("<u>Countrywide, Inc.</u>"),

8 | then from Countrywide, Inc. in blank.  *See* Subject Note (USB POC, p. 11 of 43 – p. 16 of 43).

9 | The Subject DOT provides that (1) the "Lender" is Affiliated Funding, (2)

10 | MERS was the purported nominee for Affiliated Funding and beneficiary of the Subject DOT,

11 | (3) "[u]pon payment of all sums secured by [the Subject DOT], [Affiliated Funding] shall

12 | request Trustee to reconvey the Property and shall surrender [the Subject DOT] and all notes

13 | evidencing debt secured by [the Subject DOT] to the Trustee.  The Trustee shall reconvey the

14 | Property without warranty to the party legally entitled to it," (4) the Subject DOT may have

15 | been insured, and (5) "Lender [Affiliated Funding], at its option, may from time to time appoint

16 | a successor trustee to any Trustee appointed hereunder by an instrument executed and

17 | acknowledged by Affiliated Funding and recorded in the office of the Recorder of the county in

18 | which the Property is located. The instrument shall contain the name of the Lender, Trustee and

19 | Borrower, the book and page where [the Subject DOT] is recorded and the name and address of

20 | the successor to the Trustee **This procedure for substitution shall govern to the exclusion of**

21 | **all other provisions for substitution."**  *See* Subject DOT (USB POC, p. 17 of 43 – p. 31 of

22 | 43).

23 | Pursuant to the DOT Assignment, which is dated October 26, 2012, MERS, "for

24 | value received" purported to assign the Subject Note and Subject DOT to "US Bank National

25 | Association [US Bank], as Successor Trustee to Wachovia Bank N.A. [Wachovia], as Trustee

26 | for the holders of JPMorgan Mortgage Trust 2005-A-3 [the JPM Trust]." *See* DOT Assignment

27 | (USB POC, p. 36 of 43).

28 |

## (2)    SECTION 363(f)(4).

The Property can be sold free and clear of the US Bank POC (and therefore the Subject DOT and US Bank Claim referenced in Title Report Item 11) pursuant to Section 363(f)(4), because the US Bank POC (and therefore the Subject DOT and US Bank Claim referenced in Title Report Item 11) are subject to *bona fide* dispute based on standing and related issues discussed below.[7]

The party seeking to assert and enforce the US Bank POC, Subject Note, and Subject DOT, must establish constitutional and prudential standing.  *See In re Veal*, 450 B.R. 897, 906 (B.A.P. 9th Cir. 2011).  ("A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional *and* prudential standing requirements.") *Id.* (emphasis added).  ***Constitutional standing*** requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress.  *Id.*  The Debtor disputes whether US Bank, or any other party asserting claims pursuant to the Subject Note and Subject DOT, have suffered any injury.  As noted above, the Subject DOT may have been insured.  If the Subject DOT was insured and US Bank or any other party asserting claims pursuant to the Subject Note and Subject DOT received payment of insurance proceeds to cover any losses thereunder such that they were made whole, then such parties would have no injury in fact and, therefore, lack constitutional standing.  Despite the foregoing, RAS Crane who filed the USB POC went to great length to prevent the Debtor from ascertaining whether the Subject Note had been paid off by insurance proceeds or otherwise.

More specifically, the JPM Trust is/was an entity that filed reports with the Securities and Exchange Commission (the "SEC").  Attached hereto as **Exhibit "7"** are true and correct copies of the relevant pages from a form 8-K filed by the JPM Trust with the SEC and the Pooling and Servicing Agreement (the "PSA") attached thereto indicating that (1) the PSA was dated May 1, 2005, (2) the JPM Trust was intended to be treated as a real estate mortgage

---

[7] The Debtor reserves the right to expand upon or add additional bases for asserting a bona fide dispute or objection to the US Bank POC (and therefore the US Bank DOT and US Bank Claim referenced in Title Report Item 11).

investment conduit (a "REMIC") for federal tax purposes, (3) the JPM Trust would be governed by New York state law, (3) the PSA had a "Closing Date" of May 26, 2005, (4) as of the "Closing Date" of May 26, 2005, (a) J.P. Morgan Mortgage Acquisition Mortgage Acquisition Corp. ("JPM Acquisition") had acquired a number of loans and related deeds of trust, which would purportedly include the Subject Note and Subject DOT, (b) the JPM Trust acquired number of loans and related deeds of trust, which would purportedly include the Subject Note and Subject DOT, from JPM Acquisition, and (c) the JPM Trust then transferred the foregoing loans and related deeds of trust to Wachovia, as the purported trustee of the JPM Trust.

Attached hereto as **Exhibit "8"** is a true and correct copy of a form 8-K filed by the JPM Trust with the SEC pursuant to which the JPM Trust reported financial information, including loans in the JPM Trust *identified by loan number* that had been paid off or otherwise satisfied.  The JPM Trust filed a number of such 8-Ks.  Despite the foregoing, in filing the US Bank POC, RAS Crane was extremely careful to redact the loan number under the Subject Note, even though there is no legal basis to redact the loan number and the JPM Trust itself regularly identities loan numbers in documents filed with the SEC that are publicly available.

Based on the foregoing, the Debtor asserts that there is a *bona fide* dispute as to whether the Subject Note was satisfied by insurance proceeds, which would eliminate the US Bank POC (and therefore the Subject DOT and US Bank Claim referenced in Title Report Item 11) and, therefore, the constitutional standing of RAS Crane, US Bank, the JPM Trust, or any other party asserting claims under the Subject Note and Subject DOT to either assert claims or object to the Motion.

In regard to ***prudential standing***, "[t]o satisfy the prudential standing requirement, a party must assert its own legal rights" and establish that it is the "real party in interest."  *In re Veal*, 450 B.R. at 907-918, *citing Dunmore v. United States,* 358 F.3d 1107, 1112 (9th Cir. 2004) and other cases.  Where, as here, a claimant not the initial payee of a note and beneficiary of a deed of trust, satisfaction of the prudential standing requirement generally requires that the claimant establish that (1) it is the "person entitled to enforce" the note as a holder (i.e., they possess the note and either (a) the note has been made payable to the person who possesses the

1   note or (b) the note has been made payable to the bearer of the note, which determination

2   requires physical examination not only of the face of the note but also of any endorsements), (2)

3   it is a valid beneficiary or assignee of the deed of trust, and (3) title to the note and deed of trust

4   were never split, as that would extinguish the deed of trust and make the note an unsecured

5   obligation. *In re Veal*, 450 B.R. at 907-918.

6          Here, prudential standing has not been established with respect to the US Bank POC

7   (and therefore the Subject DOT and US Bank Claim referenced in Title Report Item 11) for a

8   number of reasons. **First and foremost,** the Subject Note and Subject DOT indicate that the

9   loan was made by Affiliated Funding, a Nevada corporation, located at 5 Hutton Center Drive,

10  Ste. # 1100, Santa Ana California, whose president was Alfred Hanna.  However, Affiliated

11  Funding had a "forfeited" status with the California Secretary of State as of January 3, 2005.

12  *Compare* Subject Note and Subject DOT listing the foregoing address and name of the president

13  for Affiliated Funding *with* the Business Entity Detail and Statement of Information for

14  Affiliated Funding, a true and correct copy of which is attached hereto as **Exhibit "15,"** also

15  listing the same the foregoing address and name of the president for Affiliated Funding and

16  indicating that Affiliated Funding's status was "forfeited;" *see also* annexed declaration of

17  Raymond Gutierrez indicating that an attorney at the California Secretary of State's office

18  advised him that Affiliated Funding was forfeited effective as of January 3, 2005.  The forfeit of

19  Affiliated Funding on January 3, 2005, which is before January 24, 2005, when the Subject

20  Note and Subject DOT where executed by the Gutierrezes and Affiliated Funding, renders the

21  Subject Note and Subject DOT void or voidable at inception and also voids any alleged later

22  assignments of the Subject Note and Subject DOT void as well.  *See, e.g., Cal-W. Bus. Servs.,*

23  *Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th 304, 310, 163 Cal. Rptr. 3d 911, 915 (2013)

24  ("'a suspended corporation is disqualified from exercising any right, power or privilege.'

25  *Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1365, 64 Cal.Rptr.2d 4; *see*

26  *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th

27  212, 217, 39 Cal.Rptr.3d 33 [suspended corporation cannot 'exercise the powers and privileges

28  of a corporation in good standing'].");  Cal. Rev. and Tax. Code §23304.1  ("Every contract

1  made in this state by a taxpayer during the time that the taxpayer's powers, rights, and

2  privileges are suspended or forfeited pursuant to Section 23301, 23301.5, or 23775 shall,

3  subject to Section 23304.5, be voidable at the request of any party to the contract other than the

4  taxpayer."); *Tabarrejo v. Superior Court*, 232 Cal. App. 4th 849, 862, 182 Cal. Rptr. 3d 30, 42

5  (2014) ("contracts entered into during the time of suspension are voidable").  Based on the

6  foregoing, there is a bona fide dispute regarding the validity and enforceability of the Subject

7  Note and Subject DOT from inception, any purported transfers of the Subject Note and Subject

8  DOT, and any enforcement thereof by any purported successor in interest.

9        **Second,** the Subject Note, the Subject DOT, and the DOT assignment do not

10  establish that the Subject Note or Subject DOT were ever validly transferred to the JPM Trust

11  before the "Closing Date" of May 26, 2005, *if ever.*  None of the Endorsements to the Subject

12  Note are dated and, therefore, it is impossible to ascertain when they were executed and whether

13  any were executed before the Closing Date.  Further, the final endorsement is in blank.  Thus, it

14  is also impossible to establish whether the Subject Note was ever validly transferred to JPM

15  Acquisition and then to the JPM Trust pursuant to the PSA.  More importantly, the DOT

16  Assignment indicates that the earliest possible attempt to transfer the Subject Note and Subject

17  DOT to the JPM Trust was on October 26, 2012, over seven (7) years after the May 26, 2005

18  "Closing Date" of the JPM Trust, which would make the purported transfers of the Subject Note

19  and Subject DOT into the JPM Trust, and therefore, any standing of US Bank or any other

20  parties to enforce the Subject Note and US Bank pursuant to the JPM Trust under the PSA and

21  any related agreements, ***void not merely voidable***.  *See Glaski v. Bank of Am., Nat'l Ass'n*., 218

22  Cal. App. 4th 1079 (2013) (court noting that in applying New York trust law to a REMIC trust

23  that "applying the statute to void the attempted transfer is justified because it protects the

24  beneficiaries of the WaMu Securitized Trust from the potential adverse tax consequence of the

25  trust losing its status as a REMIC trust under the Internal Revenue Code. Because the literal

26  interpretation furthers the statutory purpose, we join the position stated by a New York court

27  approximately two months ago: 'Under New York Trust Law, every sale, conveyance or other

28  act of the trustee in contravention of the trust is void. EPTL § 7–2.4. Therefore, the acceptance

1   of the note and mortgage by the trustee after the date the trust closed, would be void.' (*Wells*

2   *Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip

3   opn. p. 8; *see Levitin & Twomey, Mortgage Servicing, supra*, 28 Yale J. on Reg. at p. 14, fn. 35

4   [under N.Y. law, any transfer to the trust in contravention of the trust documents is void].)

5   Relying on *Erobobo*, a bankruptcy court recently concluded 'that under New York law,

6   assignment of the Saldivars' Note after the start up day is void *ab initio*.

7       **Third,** on July 25, 2011, in response to a request for information about the Subject

8   Note sent by the Gutierrezes to Bank of America, Bank of America sent the Gutierrezes a copy

9   of the Subject Note with only one Endorsement – an Endorsement from Affiliated Funding in

10  blank.  A true and correct copy of the correspondence and copy of the Subject Note sent by

11  Bank of America to the Gutierrezes is attached hereto as **Exhibit "9."**  The foregoing copy of

12  the Subject Note does not match the Subject Note attached to the US Bank POC, which has

13  three Endorsements, including one from Affiliated Funding to CDC.  This creates a *bona fide*

14  dispute as to the veracity of the Subject Note attached to the US Bank POC, and the purported

15  Endorsements thereto, and, therefore, the US Bank POC itself, particularly in regards to US

16  Bank's ability to enforce the note.

17      **Fourth,** there is no evidence establishing that any of the purported transferees of the

18  Subject Note paid value for the Subject Note, which would be required to make the purported

19  assignee of the Subject Note a person entitled to enforce the note.  Cal. Com. Code §§, 3-203(c),

20  3-302(a)(2), 3-301.  Likewise, upon demand by the Debtor, which is hereby made, US Bank is

21  required to (1) exhibit the original of the Subject Note to the Debtor and (2) since presentment

22  is made by US Bank as purported trustee on behalf of the JPM Trust, provide reasonable

23  evidence of authority to present the Original Note and demand payment thereon.  Cal. Com.

24  Code § 3-501(b)(2).

25      **Fifth,** the lack of assignments of the Subject DOT corresponding to the purported

26  assignments of the Subject Note indicates that title to the Subject Note and Subject DOT may

27  have been split, which would  extinguish the deed of trust and make the note an unsecured

28  obligation.  *In re Veal*, 450 B.R. 897, 907-18.

1    **Sixth,** the DOT Assignment pursuant to which MERS' purported to assign the

2    Subject Note and Subject DOT to US Bank is October 26, 2012, which is after the Subject Note

3    and Subject DOT had purportedly already been transferred to JPM Acquisition, which would

4    render DOT Assignment void.  Further, MERS was never the owner of the Subject Note and

5    had no authority to assign the Subject DOT to US Bank, as the Subject DOT indicates that only

6    Affiliated Funding and no other party could effectuate such an assignment.

7    Based on the foregoing, the Court could can and should approve the sale of the

8    Georgetown Property free and clear of the Subject DOT, Subject Note, and US Bank Claim

9    referenced in Title Report Item 11 pursuant to Section 363(f)(4).    Notwithstanding the

10   foregoing, the Subject DOT and US Bank Claim will attach to the proceeds from the sale of the

11   Georgetown Property with the same extent, validity, and priority as such claim and lien had

12   prior to the sale.

13   ### (3)    SECTION 363(f)(5).

14   In addition to the foregoing, the Court can approve the sale of the Georgetown

15   Property free and clear of the Subject DOT, Subject Note, and US Bank Claim referenced in

16   Title Report Item 11 pursuant to Section 363(f)(5), because all of the factors set forth in *PW*,

17   for a sale free and clear of the alleged Subject DOT and US Bank Claim are satisfied.  **First**, as

18   discussed in *PW*, US Bank's alleged lien pursuant to the Subject DOT (and therefore the alleged

19   US Bank Claim) constitute an interest in property for the purposes of Section 363(f)(5).  *PW*,

20   391 B.R. at 41.

21   **Second**, in regard to the combined other elements – that a proceeding exists or

22   could be brought, in which US Bank could be compelled to accept a money satisfaction of its

23   lien – as set forth above, the County has the Secured Tax Claims secured by the Tax Liens

24   against the Georgetown Property.  The County's Tax Liens, at least with respect to Title Report

25   Items 2-4 pertaining to claims for real property taxes, are senior to all liens, including US

26   Bank's alleged lien under the Subject DOT.  *See Barer v. Cty. of Riverside*, 57 Cal. App. 4th

27   558, 566–71, 67 Cal. Rptr. 2d 241, 246–49 (1997) (noting that a county's liens for real property

28   taxes are senior to all other liens regardless of the time of their creation) (*citing* Cal. Rev. &

1   Tax. Code § 2187 (West) ("Every tax, penalty, or interest, including redemption penalty or

2   interest, on real property is a lien against the property assessed.") and Cal. Rev. & Tax. Code §

3   2192.1 (West) ("Every tax declared in this chapter to be a lien on real property … [has] priority

4   over all other liens on the property, regardless of the time of their creation. Any tax or

5   assessment described in the preceding sentence shall be given priority over matters including,

6   but not limited to, any recognizance, deed, judgment, debt, obligation, or responsibility with

7   respect to which the subject real property may become charged or liable.")

8           The County could conduct a judicial foreclosure on its Tax Liens.  *See, e.g.,*

9   *Riverside Cty. Cmty. Facilities Dist. No. 87-1 v. Bainbridge 17*, 77 Cal. App. 4th 644, 660–61,

10  92 Cal. Rptr. 2d 29, 40–41 (1999) (discussing a county's judicial foreclosure on a tax lien).  The

11  County could also non-judicially foreclose on its Tax Liens. In the event of foreclosure by the

12  County, US Bank's lien (and therefore its ability to foreclose on the Georgetown Property in

13  order to recover on its alleged secured claim) could be eliminated and/or US Bank could be

14  compelled to accept money satisfaction of its alleged lien securing its alleged claim against the

15  Debtor.  *See, e.g., FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1023,

16  255 Cal. Rptr. 157, 161 (Ct. App. 1989) ("'The statutory scheme concerning nonjudicial

17  foreclosure contemplates that in order to protect its interest, a junior lienor must pay the trustor's

18  obligation to the senior lienor." (*Arnolds Management Corp. v. Eischen, supra*, 158 Cal.App.3d

19  at p. 579, 205 Cal.Rptr. 15; Civ.Code, §§ 2904, 2876, 2924c, sub. (a)(1).)  If a junior lienor does

20  not cure the default in the senior obligation or redeem at the senior foreclosure, its lien will be

21  extinguished at the foreclosure sale unless the successful bidder purchases at a price high

22  enough to pay off the senior indebtedness and the junior indebtedness as well. (*See, e.g., Bank*

23  *of Hemet v. United States*, (9th Cir.1981) 643 F.2d 661.)"); *Bank of Am. v. Graves*, 51 Cal. App.

24  4th 607, 611–12, 59 Cal. Rptr. 2d 288, 291 (1996) ("A senior foreclosure sale conveys the

25  property free of all junior liens.... Thus, the junior no longer has a lien on the property, and the

26  security has been entirely destroyed. A sold-out junior thus holds security that has 'become

27  valueless' and is permitted to sue directly on the note." (Bernhardt, Cal. Mortgage and Deed of

28  Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 4.8, pp. 193–194.)"); Cal.Civ.Code § 2924k (noting

34

1    that when a senior trust deed holder forecloses, the funds from the sale are first used to pay

2    certain costs of sale, then second used to pay the obligations of the senior foreclosing lender

3    secured by the deed of trust that is the subject of the foreclosure sale, then third to pay the

4    outstanding balance of obligations secured by any junior liens in the order of their priority).

5           Based on the foregoing, the Debtor respectfully submits that the Debtor can sell

6    free and clear of US Bank's alleged lien under the Subject DOT pursuant to Section 363(f)(5).

7    Again, the Subject DOT and US Bank Claim will attach to the proceeds from the sale of the

8    Georgetown Property with the same extent, validity, and priority as such claim and lien had

9    prior to the sale.

10

11          c.     **Items 12 and 13 of the Title Report** are the two Lis Pendens recorded

12   against the Georgetown Property by the Gutierrezes, the former owners of the Georgetown

13   Property.  The first Lis Pendens referenced in Title Report Item 12 is attached hereto as **Exhibit
"10."**  As can be seen from Title Report Item 12 and the first Lis Pendens, the first Lis Pendens

14   relates to Case No. 56-2013-00432682 initiated by the Gutierrezes against Bank of America and

15   others and was recorded by the Gutierrezes against the Georgetown Property.  Also attached

16   hereto as **Exhibit "11"** is the docket for Case No. 56-2013-00432682 indicating that the case

17   was dismissed in December 2013.  Thus, the first Lis Pendens should have been released and is

18   of no further effect.  *See In re Holy Hill Cmty. Church*, 563 B.R. 6, 14 (C.D. Cal. 2017) (citing

19   and quoting *In re Gonzalez*, No. ADV. 08–01756–ER, 2012 WL 603747, at *5 (9th Cir. B.A.P.

20   Feb. 2, 2012) ("We also note that the bankruptcy court's dismissal of the adversary proceeding

21   alone would have rendered the Lis Pendens ineffective.") and *Bey v. Citi Mortg., Inc.*, No.

22   EDCV 15–1838–JGB (DTBx), 2015 U.S. Dist. LEXIS 144433, at *11 (C.D. Cal. Oct. 23, 2015)

23   ("That action has been dismissed with prejudice, thus the lis pendens serves no purpose and

24   must be expunged.").  Further, the Debtors believe that the Gutierrezes will, either affirmatively

25   or by a lack of any opposition to the Motion, consent to the sale free and clear of the first Lis

26   Pendens.

27

28

1     Similarly, the second Lis Pendens referenced in Title Report Item 13 is attached

2  hereto as **Exhibit "12."**  As can be seen from Title Report Item 13 and the second Lis Pendens,

3  relates to Case No. 56-2015-00742859 initiated by the Gutierrezes against Affiliated Funding

4  and others and was recorded by the Gutierrezes against the Georgetown Property.    Also

5  attached hereto is **Exhibit "13,"** which is the docket for Case No. 56-2015-00742859 indicating

6  that the case was removed to federal court, and **Exhibit "14,"** which is the docket for the case

7  as removed to federal court as Case No. 2:15-cv-09308 and indicating that the case was

8  dismissed in February 2016.  Thus, the second Lis Pendens should have been released and is of

9  no further effect.  *See Holy Hill Cmty. Church*, 563 B.R. at 14 (and cases cited and quoted

10  therein as noted above).  Further, as with the first Lis Pendens, the Debtors believe that the

11  Gutierrezes will, either affirmatively or by a lack of any opposition to the Motion, consent to the

12  sale free and clear of this Lis Pendens.

13     Based on the foregoing, the Debtor respectfully submits that the Debtor can sell

14  free and clear of the Lis Pendens pursuant to Section 363(f)(2) based on consent and/or Section

15  363(f)(4) based on the *bona fide* dispute over the validity of the Lis Pendens which are of no

16  further effect due to the dismissal of the actions underlying the Lis Pendens.

17

18     **d.    Items 15-17 of the Title Report** are the Affiliate DOTs issued by the

19  Debtor to certain of its Affiliates that were deemed to be released, reconveyed, terminated, and

20  expunged from title pursuant to an order of the Affiliate Settlement Order.  Based on the

21  foregoing, the Affiliate DOTs are already deemed to be expunged from title.  However, to the

22  extent it is deemed necessary, the Debtor also hereby consents to the sale of the Georgetown

23  Property free and clear of the Affiliate DOTs.

24     Based on the foregoing, the Debtor respectfully submits that the Debtor can sell

25  free and clear of the Affiliate DOTs pursuant to Section 363(f)(2) based on consent and/or

26  Section 363(f)(4) based on the *bona fide* dispute over the validity of the Affiliate DOTs, which

27  are of no further effect due to the entry of the Affiliate Settlement Order.

28

e.      **Item 20 of the Title Report** is a Judgment Lien, allegedly securing a Judgment entered in favor of Affiliated Funding, US Bank, and others in the amount of $37,196.  The foregoing Judgment Lien was recorded on December 26, 2017, which is after the Petition Date of August 17, 2017, and, therefore, makes the subject Judgment Lien void, not merely voidable, because the recordation thereof constituted a violation of the automatic stay. *In re Schwartz*, 954 F.2d 569, 570-71 (9th Cir. 1993).  The Judgment Lien is also potentially avoidable under Section 549 providing for the avoidance of transfers of estate property that occur after the Petition Date and are not authorized under the Title 11 or the Court.  11 U.S.C. § 549.  Further, assuming the Georgetown Property is sold for the Purchase Price of $660,000 and the Secured Tax Claims in the approximate amount of $1,789.18 and the US Bank Claim in the alleged amount of approximately $746,636 are all valid, then the Judgment Lien would be out of the money and unsecured rendering the Judgment Lien void in terms of securing any portion of the claim underlying the Judgment Lien.  11 U.S.C. § 506(a).  Based on the foregoing, the Judgment Lien is subject to *bona fide* dispute and the Debtor can sell free and clear thereof pursuant to Section 363(f)(4).

Alternatively, assuming the Georgetown Property is sold for the Purchase Price of $660,000 and the US Bank Claim in the alleged amount of approximately $746,636 is invalid, then the sale  price of the Georgetown Property would exceed the aggregate value of all liens on the Georgetown Property and the Debtor could sell free and clear of the Judgment Lien under Section 363(f)(3).

Notwithstanding any of the foregoing, the Judgment Lien and related claim will attach to the proceeds from the sale of the Georgetown Property with the same extent, validity, and priority as such Judgment Lien and claim had prior to the sale.

f.      **Item 20 of the Title Report** is a generalized item for "[a]ny defect or invalidity of the title to said Land arising out of or occasioned by a violation of the Bankruptcy Code."  The Debtor is unaware of any such defects or invalidity.  Due to the foregoing, and the generalized, unspecified nature of this Item 20 of the Title Report, the Debtor disputes Item 20.

Therefore, the Judgment Lien is subject to *bona fide* dispute and the Debtor can sell free and clear thereof pursuant to Section 363(f)(4).

## C.    THE COURT SHOULD APPROVE THE OVERBID PROCEDURES AND THE BREAK-UP FEE.

FRBP 2002 and 6004 govern the scope of the notice to be provided in the event a trustee elects to sell property of the estate under Section 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, FRBP 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. P. 6004(f).

Neither the Bankruptcy Code nor the FRBP contain specific provisions with respect to the procedures to be employed by a trustee in conducting a public or private sale. Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*

The Debtor believes that the proposed Overbid Procedures, which are set forth in Section I.G hereof, will maximize the price ultimately obtained for the Georgetown Property while still protecting the estate from parties who may wish to bid on the Georgetown Property but who are ultimately unable to consummate a purchase of the Georgetown Property. The Overbid Procedures serve numerous legitimate purposes. Among other things, the Overbid Procedures will (1) foster competitive bidding among any serious potential purchasers, (2) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability to consummate a purchase of the Georgetown Property, and (3) ensure that the highest possible price is obtained for the Georgetown Property.

1    One of the Overbid Procedures provided under the Purchase Agreement is the payment

2    of the Break-Up Fee in the sum of $5,000 (approximately .75% of the Purchase Price) to the

3    Buyer in the event that the Buyer is not the winning bidder for the Property.  The Debtor

4    submits that, under the circumstances of this case, the proposed Break-Up Fee is reasonable

5    and should be approved.

6    A corollary to the principles noted by the Court in the *Atlanta Packaging Products* case

7    – that the objective of bankruptcy rules and the duty of the trustee or debtor with respect to

8    sales of assets is to obtain the highest price or greatest overall benefit possible for the estate –

9    is that the Court should not "cherry-pick" among contractual provisions, objecting to select

10    individual portions, if the agreement as a whole is supported by an articulated business

11    judgment.  At least one bankruptcy court has expressly applied this corollary to a transaction

12    including breakup and overbid provisions in the sale of the debtor's business.  In *In re*

13    *Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr. S.D.N.Y. 1990), the Court approved a

14    transaction including provisions relating to a breakup fee and minimum overbids.    In

15    responding to objections to other provisions of the agreement, the Court held that:

16
17
18
19
20

> The Court is not to second guess the inclusion of some provisions
> as long as the Agreement as a whole is within reasonable business
> judgment, and the subject provisions do not distort the balance
> Congress struck in Chapter 11.  *Cf. In re Ames Dep't Stores, Inc.,*
> *Eastern Retailers Service Corp., et al.*, 115 B.R. 34, 37-38 (Bankr.
> S.D.N.Y. 1990) (some contractual provisions may be justified by
> the need to attract a prospective investor.).

21    114 B.R. at 886.

22    A break-up fee like the one which is proposed to be paid to the Buyer in the event of a

23    successful sale of the Property to a party other than the Buyer has been approved by other

24    courts.  In general, "[a] 'break-up fee' is an incentive payment to an unsuccessful bidder who

25    placed the estate property in a sales configuration mode ... to attract other bidders to the

26    auction." *In re Financial News Network, Inc.*, 126 B.R. 152, 154 n. 5 (Bankr. S.D.N.Y. 1991);

27    *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 653 (S.D.N.Y. 1992), *app dismissed*

28    *on jurisdictional grounds,* 3 F.3d 49 (2d Cir. 1993) ["[a] break-up fee, or more appropriately, a

39

1    termination fee, is an incentive payment to a prospective purchaser with which a company fails

2    to consummate a transaction"].    Agreements to provide breakup fees are designed to

3    compensate the potential acquirer who serves as a catalyst or "stalking horse' which attracts

4    more favorable offers.  *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); *In re*

5    *995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

6          Outside of bankruptcy, a break-up fee is generally allowed as long as it "enhances" the

7    bidding.  *In re S.N.A. Nut Co.*, 186 B.R. at 102.  In the bankruptcy context, a break-up fee is

8    generally permissible "if reasonably related to the bidder's efforts and the transaction's

9    magnitude."  *Cottle v. Storer Communication Inc.*, 849 F.2d 570, 578 (11th Cir. 1988); *In re*

10   *995 Fifth Ave., supra,* 96 B.R. at 28.  Generally speaking, whether the payment of a break-up

11   fee is appropriate is evaluated under the "business judgment rule."  *In re S.N.A. Nut Co., supra*,

12   186 B.R. at 102.  Under this rule, there is a presumption that, in making a business decision,

13   the debtor acted on an informed basis, in good faith and in the honest belief that the action

14   taken was in the best interest of the company.

15         In evaluating the appropriateness of a break-up fee, the appropriate question for the

16   Court to consider is "whether the break-up fee served any of three possible useful functions:

17   (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum

18   for other bidders to follow, or (3) to attract additional bidders."  *In re Integrated Resources,*

19   *Inc.,* 147 B.R. at 662.  Further, LBR 6004-1(b)(6) provides that in making a request for

20   approval of a break-up fee, the debtor must provide evidence establishing that the fee is likely

21   to enhance the ultimate sale price and that the break-up fee is reasonable.

22         Here, the Break-Up Fee allowed the Debtor to attract and retain a potentially successful

23   bid from the Buyer.  That bid may give other potential Overbidders confidence to make

24   Overbids on the Property, which would enhance the ultimate sale price for the Property.

25   Without the Break-Up Fee, which was part of the package of consideration for the Purchase

26   Agreement, the Buyer would not have entered into the Purchase Agreement and there may not

27   have been any purchase price for the Property.  In addition to attracting the Buyer and serving

28   to enhance the price received for the Property, the Break-Up Fee also serves to establish a bid

1   minimum for any Overbids.  The Debtor submits that the Break-Up Fee equal to approximately

2   .75% of the Purchase Price is reasonable and break-up fees of between 3% and 5% been

3   approved in numerous other cases.  *See e.g., In re T Asset Acquisition Co., LLC*, No. 2:09-

4   31853-ER, 2010 WL 4689562, at *2 (Bankr. C.D. Cal. Jan. 28, 2010) (approving 3% break-up

5   fee as reasonable); *In re Pomare, Ltd.*, No. 15-00203, 2015 WL 3523096, at *4 (Bankr. D.

6   Haw. May 18, 2015) (approving 5% break-up fee as reasonable); *In re Net Data Centers*, Case

7   No. 15-12690-BB, Dkt. No. 259 (Bankr. CD Cal. Sep. 1, 2015) (approving 5% break-up fee as

8   reasonable).

9       Based on the foregoing, the Debtor submits that the proposed Overbid Procedures,

10  including the proposed Break-Up Fee, are reasonable and in the best interests of the estate and,

11  therefore, should be approved.

12  **D.    THE COURT SHOULD APPROVE THE PAYMENT OF CERTAIN CLAIMS
13         FROM SALE PROCEEDS UPON THE CLOSE OF THE SALE OF THE
           GEORGETOWN PROPERTY.**

14      LBR 6004-1(h) provides as follows:

15          A disbursement of proceeds [from a sale of estate property] must
16          not be made without a specific order of the court authorizing the
            disbursement, ***except*** for payment to secured creditors, payment to
17          a debtor of exempt proceeds, and payment for expenses of sale.
            Proceeds may be disbursed to pay auctioneer's fees and brokers'
18          commissions without additional order of the court if payment is
            consistent with the terms of the order approving the sale or
19          authorizing the employment of the auctioneer or broker.

20  LBR 6004-1(h).

21      Here, pursuant to the Motion, the Debtor is requesting authority for the Debtor to pay

22  from the proceeds of the sale of the Georgetown Property (1) any pre-closing real property taxes

23  secured by the Georgetown Property allocated to the Debtor, (2) the 6% commission owed to

24  the Debtor's Broker and any cooperating broker, pursuant to the Purchase Agreement and the

25  Debtor's application to employ the Broker, which was approved by the Court [*see* Dkts. 33, 96,

26  255, and 264], and (3) any other customary escrow closing fees and charges allocated to the

27  Debtor.  All of the foregoing payments are consistent with allowed disbursements of sale

28

proceeds under LBR 6004-1(h).

**E.      THE COURT SHOULD WAIVE THE 14-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULES 6004(h).**

 FRBP 6004(h) provides, among other things, that an "order authorizing the … sale … of property . . . is stayed until the expiration of 14 days after entry of the court order, unless the court orders otherwise." Fed.R.Bankr.P. 6004(h).

The Debtor's goals under its new exit strategy was and is to, among other things, market and sell the non-Foreclosed Properties, including the Georgetown Property that is the subject hereof, for the highest and best price possible and then to quickly proceed with (1) efforts to resolve any disputed secured or other claims related to the Georgetown Property and (2) payment of allowed secured claims related to the Georgetown Property in full. Waiver of the stay under FRBP 6004(h) will further these goals by allowing for an expedited closing of the proposed sale decreasing the chances that the Buyer (or successful Overbidder at the Auction) fails to close due to the passage of time.

Based on the foregoing, the Debtor requests that the Court waive the stay under FRBP 6004(h) and that the Sale Order be effective immediately upon entry.

**III.**
**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order providing the relief requested in paragraphs (1) through (6) of the preceding Notice of Motion and Motion.

Dated: September 11, 2018          GRAND VIEW FINANCIAL, LLC

                                     By:    /s/ Todd M. Arnold
                                         TODD M. ARNOLD
                                     LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                                     Attorneys for Debtor and Debtor in Possession

### DECLARATION OF STEVE ROGERS

I, STEVE ROGERS, hereby declare as follows:

1.      I am over 18 years of age.   Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Managing Member and Vice President of Grand View Financial, LLC, the debtor and debtor in possession herein (the "Debtor").   I am familiar with the Debtor's books and records maintained in the ordinary course of the Debtor's business, the Debtor's bank accounts, and the Debtor's business and operations.

3.      I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

4.      On August 17, 2017 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11.  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.  An Official Committee of Unsecured Creditors has not been formed.

5.      The Debtor is a Wyoming limited liability company that was formed in 2015.  The Debtor is in the business of acquiring distressed real property (each a "Property" and, collectively, the "Properties")  in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "Alleged Secured Claim" and, collectively, the "Alleged Secured Claims") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "Alleged Lien" and, collectively, the "Alleged Secured Liens") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid.

6.      In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a "Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the Debtor and the Former Owner.  In a typical transaction in which the Debtor acquires a Property:

a.    the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "Purchase Agreement" and, collectively, the "Purchase Agreements") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an "Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Purchase Agreement and Unsecured Note;

b.    the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

c.    the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

7.    Through the Petition Date, the Debtor acquired 42 Properties.  In the ordinary course of its business, the Debtor acquired an additional two Properties after the Petition Date, and the Debtor may acquire other Properties.  Unfortunately, prior to the Petition Date, approximately 28 of the 44 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon.  The Debtor has decided to stop pursuing recovery on 22 of the Foreclosed Properties.  Thus, at present, the Debtor has an interest in and/or is pursuing recovery on 22 Properties.

8.    Consistent with the Debtor's business model, the Debtor and the Gutierrezes, the Former Owners of the Georgetown Property, entered into a Purchase Agreement, the Debtor issued an Unsecured Note to the Gutierrezes, the Gutierrezes executed a Rental Agreement, and the Gutierrezes executed a Grant Deed transferring title to the Georgetown Property to the Debtor (the "Grant Deed").  A true and correct copy of the Grant Deed is attached hereto as **Exhibit "3."**

44

9.    On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary, invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a Chapter 11 plan of reorganization.

10.    As of the Petition Date, the Debtor intended (1) to initiate adversary proceedings (each an "Adversary" and, collectively, the "Adversary Proceedings") and/or claim objections (each a "Claim Objection" and, collectively, the "Claim Objections") to (a) invalidate, reverse, or avoid the purported foreclosures on the Foreclosure Properties and (b) challenge and eliminate all of the Alleged Secured Claims and related Alleged Liens, (2) to sell the resulting unencumbered Properties for the highest and best price (subject to any rights of first refusal a Former Owner may have to repurchase the subject Property), and (3) to propose and confirm a plan whereby all allowed secured claims (which the Debtor believes will be limited to some tax claims against certain of the Properties), administrative claims, priority claims, and general unsecured claims (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which was the Debtor's original exit strategy.

11.    While the Debtor disputes the enforceability and validity of the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the validity of the purported foreclosures on the Foreclosure Properties, the Debtor has decided to somewhat alter its original bankruptcy and exit strategy.  More specifically, the Debtor took actions, including the initiation of Adversary Proceedings (which included Claim Objections), in an effort to invalidate, reverse, or avoid the purported foreclosures on certain of the Foreclosure Properties and to challenge certain related the Alleged Secured Claims and Alleged

Liens forming the purported basis for the foreclosures on the Foreclosure Properties.  However, the Debtor, in an exercise of its business judgment, later determined that the cost of pursuing most other potential Adversary Proceedings and Claim Objections likely outweighed the benefit to be gained in such Adversary Proceedings and Claim Objections, particularly when considering prior results before this Court, the costs of litigating the Adversary Proceedings and Claim Objections, and the delay and risks inherent in litigating Adversary Proceedings and Claim Objections pertaining to the Foreclosed Properties that are the subject of the Rejected Purchase Agreements (as defined below).

12.    Based on the foregoing and other factors, the Debtor, in an exercise of its business judgment, decided that it made better sense to reject 22 of the 28 all of the Purchase Agreements relating to Foreclosed Properties (the "Rejected Purchase Agreements"), to stop seeking recovery on such Foreclosed Properties, and to instead focus on selling the 16 Properties that are non-Foreclosed Properties and continuing to litigate Adversary Proceedings and Claim Objections related to six of the Foreclosed Properties.

13.    The Debtor intends to seek to sell such non-Foreclosed Properties, such as the Georgetown Property that is the subject of this Motion, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale.  Once non-Foreclosed Properties, such as the Georgetown Property that is the subject of this Motion, are sold, to the extent a consensual resolution cannot be reached regarding the disposition of sale proceeds as among the Debtor and any holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners), the Debtor will litigate, in contested Claim Objections or Adversary Proceedings, with the holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) pertaining to the non-Foreclosed Properties, to determine their claims and, therefore, the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property.

14.    I believe that the foregoing is more likely to result in a higher net benefit to the estate than litigating all Adversary Proceedings and Claim Objections regarding the Foreclosed Properties.

15.     The Debtor already sought and obtained Court authority to reject the Rejected Purchase Agreements, each of which pertained to a Foreclosed Property.

16.     In respect to non-Foreclosed Properties, in furtherance of the Debtor's exit strategy, the Debtor (1) obtained Court authority to employ the Broker as the Debtor's real estate broker to market and sell the Properties at the appropriate time [*see* Dkts. 33, 96, 255, and 264] and (2) with the assistance of the Broker, began to market certain of the non-Foreclosed Properties for sale, including the Georgetown Property, as discussed in more detail below.  The Debtor's Court-approved employment of the Broker provides for a 6% commission to be paid to the Broker and shared with the cooperating broker in connection with the sale of the Georgetown Property [*see id.*].

17.     In addition, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

18.     Also in furtherance of the Debtor's exit strategy, the Debtor filed a motion to approve a settlement agreement between the Debtor and certain of its Affiliates (the "Affiliate Settlement Motion") pursuant to which, *inter alia*, the Affiliate DOTs issued by the Debtor to certain of its Affiliates would be deemed to be released, reconveyed, terminated, and expunged from title.  [Dkts. 252 and 253.  On  June 28, 2018, the Court entered its Affiliate Settlement Order [Dkt. 271] granting the Affiliate Settlement Motion and deeming the Affiliate DOTs to be released, reconveyed, terminated, and expunged from title.  A true and correct copy of the Affiliate Settlement Order is attached hereto as **Exhibit "4."**

19.     I am informed by the Broker and believe that, in furtherance of its efforts to market and sell the Georgetown Property, the Broker (1) accessed and viewed the Georgetown Property, (2) discussed the Georgetown Property and related comparative sale data to come to agreement with the Debtor on a listing price, (3) photographed the Georgetown Property, (4) on or about March 30, 2018, listed the Georgetown Property on the MLS, which listing was followed by private showings.  The Broker's marketing efforts resulted in numerous views on the MLS and other online platforms, a number of private showings, and multiple offers for the Georgetown Property.

20.    I am informed by the Broker and believe that, in addition to the foregoing, the Broker will continue to market the Georgetown Property through the Auction date in an effort to attract Overbidders by, among other things, (1) continuing to respond to inquiries regarding the Georgetown Property, (2) when possible, continuing to conduct private showings to interested parties, (3) mailing or emailing a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the Overbid Procedures, to (a) all parties and/or the brokers of all parties that have provided contact information to the Broker and have shown interest in the Georgetown Property and (b) potential interested parties in the Broker's email database, and (4) posting on the MLS basic information about the Auction and Overbid Procedures (such as date and time of the auction and minimum initial overbid amount) and contact information for the Debtor's counsel indicating that such counsel can provide a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the full, detailed Overbid Procedures.

21.    The efforts of the Debtor and the Broker to market and sell the Georgetown Property resulted in the Debtor receiving a number of signed offers for the Georgetown Property.    Ultimately, after considering other and prior purchase offers, and based on consultation with its professionals, the Debtor accepted the offer from the Buyer and entered into the Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit "2."**

22.    The Purchase Agreement is the result of arms-length negotiations.  Other than in connection with the proposed sale of the Georgetown Property, the Debtor and its principals have no prior connections with and have never met the Buyer.

23.    The Title Report for the Property is attached hereto as **Exhibit "1."**

24.    I believe that the proposed Overbid Procedures and Break-Up Fee, together with efforts already undertaken by the Broker to market the Georgetown Property and by the Debtor and the estate to negotiate and enter into the Purchase Agreement, will result in the Debtor and the estate receiving the highest and best price for the Georgetown Property under the circumstances.

25.    As noted above, the Debtor's exit strategy now primarily focuses on (1) selling the non-Foreclosed Properties, such as the Georgetown Property, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale, (2) once non-Foreclosed Properties, such as the Georgetown Property, are sold, seeking to reach consensual resolutions with holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) regarding alleged claims and liens pertaining to the subject non-Foreclosed Property, and (3) to the extent a consensual resolutions cannot be reached, litigating, in contested Claim Objections or Adversary Proceedings, to resolve such alleged claims and liens and, therefore, to determine the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property. Thus, the proposed sale furthers the Debtor's exit strategy.

26.    In addition to the foregoing, the sale of the Georgetown Property will (1) substantially curtail, if not stop, the accrual of any additional secured claims in favor of US Bank for additional interest and (2) stop the accrual of additional secured property tax claims against the estate related to the Georgetown Property.

27.    Based on the foregoing, I submit that the proposed sale of the Georgetown Property is in the best interests of the estate and its creditors and, therefore, represents a sound exercise of the Debtor's business judgment.

28.    The County filed Proof of Claim 14, a true and correct copy of which is attached hereto as **Exhibit "5,"** asserting a secured claim in the amount of $282.90 for supplemental 2015-2016 real property taxes, which Proof of Claim appears to duplicate the amount owed for Title Report Item 3.

29.    An entity on behalf of US Bank filed Proof of Claim 8 (the "US Bank POC" or "US Bank Claim"), a true and correct copy of which is attached hereto as **Exhibit "6,"** asserting a secured claim in the amount of $746,636.

30.    The JPM Trust is/was an entity that filed reports with the Securities and Exchange Commission (the "SEC").  Attached hereto as **Exhibit "7"** are true and correct copies of the relevant pages from a form 8-K filed by the JPM Trust with the SEC and the Pooling and

1  Servicing Agreement (the "PSA") attached thereto.

2      31.    Attached hereto as **Exhibit "8"** is a true and correct copy of a form 8-K filed by

3  the JPM Trust with the SEC pursuant to which the JPM Trust reported financial information,

4  including loans in the JPM Trust identified by loan number that had been paid off or otherwise

5  satisfied.

6      32.    The first Lis Pendens referenced in Title Report Item 12 is attached hereto as

7  **Exhibit "10."**

8      33.    Attached hereto as **Exhibit "11"** is the docket for Case No. 56-2013-

9  00432682 indicating that the case was dismissed in December 2013.

10     34.    The second Lis Pendens referenced in Title Report Item 13 is attached

11  hereto as **Exhibit "12."**

12     35.    Attached hereto is **Exhibit "13,"** which is the docket for Case No. 56-

13  2015-00742859 indicating that the case was removed to federal court, and **Exhibit "14,"** which

14  is the docket for the case as removed to federal court as Case No. 2:15-cv-09308 and indicating

15  that the case was dismissed in February 2016.

16     36.    Items 15-17 of the Title Report are the Affiliate DOTs issued by the

17  Debtor to certain of its Affiliates that were deemed to be released, reconveyed, terminated, and

18  expunged from title pursuant to an order of the Affiliate Settlement Order.  Based on the

19  foregoing, the Affiliate DOTs are already deemed to be expunged from title.  However, to the

20  extent it is deemed necessary, the Debtor also hereby consents to the sale of the Georgetown

21  Property free and clear of the Affiliate DOTs.

22     37.    Item 20 of the Title Report is a generalized item for "[a]ny defect or

23  invalidity of the title to said Land arising out of or occasioned by a violation of the Bankruptcy

24  Code."  I am unaware of any such defects or invalidity.

25     38.    I believe the proposed Overbid Procedures, which are set forth in Section

26  I.G hereof, will maximize the price ultimately obtained for the Georgetown Property while still

27  protecting the estate from parties who may wish to bid on the Georgetown Property but who are

28  ultimately unable to consummate a purchase of the Georgetown Property.

39.    One of the Overbid Procedures provided under the Purchase Agreement is the payment of the Break-Up Fee in the sum of $5,000 (approximately .75% of the Purchase Price) to the Buyer in the event that the Buyer is not the winning bidder for the Property. I submit that, under the circumstances of this case, the proposed Break-Up Fee is reasonable and should be approved.

40.    I submit that the Break-Up Fee equal to approximately .75% of the Purchase Price is reasonable.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of September 2018, at Minden, Nevada.


STEVE ROGERS

51

## DECLARATION OF RAYMOND GUTIERREZ, JR.

I, RAYMOND GUTIERREZ, JR. do hereby declare:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the former owner of the Georgetown Property, which I owned with my wife prior to the transfer of the Georgetown Property to the Debtor.

3.      I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

4.      Based on my research and discussions on October 20, 2017 with an attorney at the California Secretary of State's office named Janee T. Marlan, I ascertained that Affiliated Funding had a "forfeited" status with the California Secretary of State as of January 3, 2005. *Compare* Subject Note and Subject DOT listing the foregoing address and name of the president for Affiliated Funding *with* the Business Entity Detail and Statement of Information for Affiliated Funding, a true and correct copy of which is attached hereto as **Exhibit "15,"** also listing the same the foregoing address and name of the president for Affiliated Funding and indicating that Affiliated Funding's status was "forfeited."

5.      On July 25, 2011, in response to a request for information about the Subject Note I sent to Bank of America, Bank of America sent me a copy of the Subject Note with only one Endorsement – an Endorsement from Affiliated Funding in blank.  A true and correct copy of the correspondence and copy of the Subject Note sent by Bank of America is attached hereto as **Exhibit "9."**

/ / /

/ / /

/ / /

6.     Further, I consent to the sale free and clear of the first Lis Pendens referenced in Items 12 and 13 of the Title Report.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this ___10th___ day of September 2018, at __Ventura__, California.


_____
RAYMOND GUTIERREZ, JR.

## DECLARATION OF W. DARROW FIEDLER

I, W. DARROW FIEDLER, do hereby declare:

1.    I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am a California-licensed real estate broker with Keller Williams Realty and KW Commercial located at 23670 Hawthorne Blvd., Suite 100, Torrance, California ("Primary Broker"), whose employment, together with the employment of associated Keller Williams Realty and KW Commercial offices located throughout the United States ("Associated Brokers" and, together with Primary Broker, the "Broker"), was approved by the Court. and

3.    I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

4.    In furtherance of its efforts to market and sell the Georgetown Property, the Broker (1) accessed and viewed the Georgetown Property, (2) discussed the Georgetown Property and related comparative sale data to come to agreement with the Debtor on a listing price, (3) photographed the Georgetown Property, (4) on or about March 30, 2018, listed the Georgetown Property on the MLS, which listing was followed by private showings.  The Broker's marketing efforts resulted in numerous views on the MLS and other online platforms, a number of private showings, and multiple offers for the Georgetown Property.

5.    In addition to the foregoing, the Broker will continue to market the Georgetown Property through the Auction date in an effort to attract Overbidders by, among other things, (1) continuing to respond to inquiries regarding the Georgetown Property, (2) when possible, continuing to conduct private showings to interested parties, (3) mailing or emailing a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the Overbid Procedures, to (a) all parties and/or the brokers of all parties that have provided contact information to the Broker and have shown interest in the Georgetown Property and (b) potential interested parties in the Broker's email database, and (4) posting on the MLS basic information

about the Auction and Overbid Procedures (such as date and time of the auction and minimum initial overbid amount) and contact information for the Debtor's counsel indicating that such counsel can provide a copy of the Notice and this Motion and Memorandum, Declarations, and Exhibits, which include the full, detailed Overbid Procedures.

6.      The efforts of the Debtor and the Broker to market and sell the Georgetown Property resulted in the Debtor receiving a number of signed offers for the Georgetown Property.    Ultimately, after considering other and prior purchase offers, and based on consultation with its professionals, the Debtor accepted the offer from the Buyer and entered into the Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit "2."**

7.      The Purchase Agreement is the result of arms-length negotiations.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this  10th  day of September 2018, at Torrance, California.


_____
W. DARROW FIEDLER

# EXHIBIT "1"

 **Fidelity National Title Company**
5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone:  (818) 881-7800

Issuing Policies of Fidelity National Title Insurance Company

ORDER NO.: **00192484-994-VNO-SI**
LOAN NO.:

Escrow Officer:  Van Nuys Title Only EO
Title Officer:  Sheila Isham
Phone: (818) 758-5718
Fax: (818) 475-5013
Email: team.sheila@fnf.com

Better Escrow Service
3115 West Olive Avenue, Suite 1
Burbank, CA 91505

ATTN:        Alitta
YOUR REF:

PROPERTY:      **428 Georgetown Avenue, Ventura, CA**

## AMENDED **PRELIMINARY REPORT**

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned by:

*Cindy Fried*

Authorized Signature

# Fidelity National Title Company

5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800

## AMENDED **PRELIMINARY REPORT**

---

**EFFECTIVE DATE:**      July 26, 2018 at 7:30 a.m., Amended: August 3, 2018, Amendment No. 2

**ORDER NO.: 00192484-994-VNO-SI**

The form of policy or policies of title insurance contemplated by this report is:

> **ALTA Homeowner's Policy of Title Insurance (12-2-13)**
> **ALTA Extended Loan Policy (6-17-06)**

1.     THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

> **A Fee**

2.     TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

> **Raymond Gutierrez Jr. and Cheryl A. Gutierrez, husband and wife as community property with right of survivorship, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

| | |
|---|---|
| Name of Debtor: | **Grand View Financial LLC** |
| Date of Filing: | **August 17, 2017** |
| U.S. District Court: | **Central District of California** |
| Case No: | **2:17-bk-20125-RK** |

> **And subject to Item No. 14**

3.     THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

> **See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.: 00192484-994-VNO-SI

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VENTURA, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 82 OF TRACT NO. 2468-2, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68 PAGES 23 TO 25 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER  HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND BUT, HOWEVER, WITHOUT THE RIGHT OF SURFACE OR SUBSURFACE ENTRY ABOVE 500 FEET MEASURED VERTICALLY FROM THE SURFACE OF SAID LAND.

APN: 082-0-023-085

APN MAP

PLOTTED MAP

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:  00192484-994-VNO-SI

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2018-2019.

2.  Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2017-2018.

    APN No.:            082-0-023-085
    Default No.         None Shown
    Default Date:       June 30, 2018

    Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

    Amount:             $394.67, by August 31, 2018
    Amount:             $398.67, by September 30, 2018

3.  Supplemental assessment for 2015-2016:

    1st Installment     $94.59, Delinquent + Penalty $9.45
    Must be Paid By:    June 30, 2017
    2nd Installment     $94.59, Delinquent + Penalty $39.45
    Must be Paid By:    October 31, 2017
    Bill No.:           978248

4.  Supplemental assessment for 2016-2017:

    1st Installment     $46.86, Delinquent + Penalty $4.68
    Must be Paid By:    June 30, 2017
    2nd Installment     $46.86, Delinquent + Penalty $34.68
    Must be Paid By:    October 31, 2017
    Bill No.:           978249

5.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

    Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for payment thereof.

6.  Water rights, claims or title to water, whether or not disclosed by the public records.

7.  Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract/plat;

    Purpose:            Public utility
    Affects:            Said land

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:  00192484-994-VNO-SI

## EXCEPTIONS
### (Continued)

8.    Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

|  |  |
|---|---|
| Purpose: | Utility installation and maintenance |
| Recording Date: | July 14, 1976 |
| Recording No: | Book 4629, Page 219, Official Records |
| Affects: | Said land |

And re-recorded August 5, 1976 in Book 4644 Page 741 of Official Records.

9.    Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable laws, as set forth in the document referred to in the numbered item last above shown.

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

10.    Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

|  |  |
|---|---|
| Purpose: | Public utilities |
| Recording Date: | August 6, 1976 |
| Recording No: | Book 4645, Page 713, Official Records |
| Affects: | Said land |

Limitations on the use, by the owners of said Land, of the easement area as set forth in the easement document shown hereinabove.

Reference is hereby made to said document for full particulars.

11.    A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $583,200.00 |
| Dated: | January 24, 2005 |
| Trustor/Grantor: | Raymond Gutierrez Jr and Cheryl A. Gutierrez, husband and wife as community property with right of survivorship |
| Trustee: | Stewart Title of California, Inc. |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Affiliated Funding Corporation |
| Loan No.: | As provided therein |
| Recording Date: | February 1, 2005 |
| Recording No: | 20050201-0024590, Official Records |

An assignment of the beneficial interest under said deed of trust which names:

|  |  |
|---|---|
| Assignee: | U.S. Bank, National Association, Successor Trustee to Wachovia Bank N.A., as Trustee for the holders of JPMorgan Mortgage Trust 2005-A3 |
| Recording Date: | October 29, 2012 |
| Recording No: | 20121029-00192269-0, Official Records |

## EXCEPTIONS
### (Continued)

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Barrett Daffin Frappier Treder & Weiss LLP |
| Recording Date: | January 14, 2015 |
| Recording No: | 20150114-0004844-0, Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Barrett Daffin Frappier Treder & Weiss LLP |
| Recording Date: | April 21, 2015 |
| Recording No: | 20150421-00059103-0, Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Barrett Daffin Frappier Treder & Weiss LLP |
| Date, Time and Place of Sale: | July 6, 2017 at the main entrance to the Government Center Hall of Justice, 800 South Victoria Avenue, Ventura, CA 93003 |
| Recording Date: | May 25, 2017 |
| Recording No: | 2010525-00068236-0, Official Records |

12.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Raymond Gutierrez, Cheryl Gutierrez |
| Defendant: | Bank of America, National Association; and DOES 1-100, Inclusive |
| County: | Ventura |
| Court: | Superior |
| Case No.: | 56-2013-00432682-CU-OR-VTA |
| Nature of Action: | Breach of Contract – Third Party Beneficiary, Constructive Fraud, Violation of California Civil Code Section 2923.5, Violation of California Civil Code Section 2923.6, Violation of California Civil Code Section 2923.7, Promissory Estoppel, Negligence, Negligent Misrepresentation, Violation of Business and Professions Code Section 17200, et seq. |
| Recording Date: | March 5, 2013 |
| Recording No: | 20130305-00040067-0, Official Records |

13.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Raymond Gutierrez Jr., an individual; Cheryl A. Gutierrez, an individual |
| Defendant: | Affiliated Funding Corporation; Nationstar Mortgage LLC; Mortgage Electronic Registration Systems, Inc.; U.S. Bank N.A. as Successor Trustee to the J.P. Morgan Mortgage Trust 2005-A3; Barrett, Daffin Frappier Treder & Weiss; and DOES 1 through 10, inclusive |
| County: | Ventura |
| Court: | Superior |
| Case No.: | 56-2015-00472859-CU-OR-VTA |
| Nature of Action: | Real property claim |
| Recording Date: | October 1, 2015 |
| Recording No: | 20151001-00146944-0, Official Records |

## EXCEPTIONS
### (Continued)

14.    The effect of a Deed as set forth below:

| | |
|---|---|
| Grantor: | Raymond Gutierrez, Jr. and Cheryl A. Gutierrez |
| Grantee: | Grand View Financial, LLC, a Wyoming Limited Liability Company |
| Dated: | April 13, 2016 |
| Recording Date: | April 15, 2016 |
| Recording No.: | 20160415-00052162-0, Official Records |

The Company requires that an affidavit (attached) be completed and executed by the above grantor and that said affidavit be acknowledged before a notary who is an employee of the title or escrow Company and then submitted to the Title Officer for review.

The Company further requires a statement of information from the above grantors in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said Land, but which if any do exist, may affect the title or impose liens or encumbrances thereon.

Matters contained in that certain document

| | |
|---|---|
| Entitled: | Revocation of Deed |
| Dated: | June 28, 2016 |
| Executed by: | Raymond Gutierrez, Jr. and Cheryl A. Gutierrez |
| Recording Date: | June 28, 2016 |
| Recording No: | 20160628-00089761-0, Official Records |

Reference is hereby made to said document for full particulars.

15.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $583,000.00 |
| Dated: | May 16, 2016 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | Upscale Financial LLC, Sharp Financial LLC, Premium Capital LLC |
| Loan No.: | As provided therein |
| Recording Date: | May 17, 2016 |
| Recording No: | 20160517-00067827-0, Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

## EXCEPTIONS
### (Continued)

16.    A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $75,000.00 |
| Dated: | June 21, 2016 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | Beneficial Financial Services LLC |
| Loan No.: | As provided therein |
| Recording Date: | June 24, 2016 |
| Recording No: | 20160624-00088195-0, Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

17.    A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $80,000.00 |
| Dated: | March 15, 2017 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | North Park Investments LLC |
| Loan No.: | As provided therein |
| Recording Date: | March 15, 2017 |
| Recording No: | 20170315-00036426-0, Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:   00192484-994-VNO-SI

## EXCEPTIONS
### (Continued)

18.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Ventura |
| Fiscal Year: | 2017-2018 |
| Taxpayer: | Grand View Financial LLC |
| County Identification Number: | 20171207001583890 |
| Amount: | $314.34 |
| Recording Date: | December 7, 2017 |
| Recording No: | 20171207001583890, Official Records |

19.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Ventura |
| Fiscal Year: | 2017-2018 |
| Taxpayer: | Grand View Financial LLC |
| County Identification Number: | 20171207001583900 |
| Amount: | $170.60 |
| Recording Date: | December 7, 2017 |
| Recording No: | 20171207001583900, Official Records |

20.    An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $37,196.50 |
| Debtor: | Raymond Gutierrez, Jr. and Cheryl A. Gutierrez |
| Creditor: | Nationstar Mortgage LLC, Mortgage Electronic Registration Systems, Inc. and U.S. Bank, N.A. |
| Date entered: | December 13, 2017 |
| County: | Ventura |
| Court: | United States District Court, Central District of California, Western Division |
| Case No.: | 2:17-cv-05684 JFW (KKx) |
| Recording Date: | December 26, 2017 |
| Recording No: | 20171226-00168125-0, Official Records |

21.    Any defect or invalidity of the title to said Land arising out of or occasioned by a violation of the Bankruptcy Code.

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

### END OF EXCEPTIONS

---

CLTA Preliminary Report Form – Modified (11/17/06)

## REQUIREMENTS SECTION

1.  In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

    Party(s):                All Parties

    The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

    NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.  The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

    Limited Liability Company:        Grand View Financial, LLC

    a)  A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

    b)  If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

    c)  If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

    d)  A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created.

    e)  If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

    f)  If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

    The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

---

**END OF REQUIREMENTS**

---

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:  00192484-994-VNO-SI

## INFORMATIONAL NOTES SECTION

1.    Notice:  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

2.    None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

3.    Note:  The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said land a Single Family Dwelling known as 428 Georgetown Avenue, Ventura, California, to an Extended Coverage Loan Policy.

4.    Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration provision. Arbitrable matters may include, but are not limited to any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance Coverage.

5.    Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

6.    Note:  Property taxes for the fiscal year shown below are PAID. For proration purposes the amounts were:

| | |
|---|---|
| Tax Identification No.: | **082-0-023-085** |
| Fiscal Year: | 2017-2018 |
| 1st Installment: | $4,042.80 |
| 2nd Installment: | $4,042.80 |
| Exemption: | $0.00 |
| Land: | $497,250.00 |
| Improvements: | $267,750.00 |
| Personal Property: | $0.00 |
| Code Area: | 05-003 |

7.    Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

8.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

9.    Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

10.   If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

PRELIMINARY REPORT                                                              Fidelity National Title Company
YOUR REFERENCE:                                                          ORDER NO.:  00192484-994-VNO-SI

# INFORMATIONAL NOTES
## (Continued)

11.   Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized
      Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using
      Bancserv or other approved third party service. If the above requirements cannot be met, please call the Company at
      the number provided in this report

12.   Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and
      recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The
      reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition,
      an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An
      example of the required language is as follows:

      The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00,
      included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of
      Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is
      authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the
      successor Trustee under the Trust Deed to be paid off in full.

      In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand
      statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the
      reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the
      requirements of the revised statute.

13.   Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer
      Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums,
      including endorsements as follows:

      Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained
      by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

      Line 1108 is used to record the amount of the total title insurance premium, including endorsements, that is retained
      by the title underwriter. Fidelity National Title Company retains 12% of the total premium and endorsements.

## END OF INFORMATIONAL NOTES

Sheila Isham/fj

**WIRE SAFE**™ | Inquire before you wire!

# Wire Fraud Alert

*This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.*

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*  
*http://www.fbi.gov*

*Internet Crime Complaint Center:*  
*http://www.ic3.gov*

### FIDELITY NATIONAL FINANCIAL, INC.
### PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

**Types of Information Collected**
We may collect two types of information from you: Personal Information and Browsing Information.

Personal Information. FNF may collect the following categories of Personal Information:
- contact information (*e.g.,* name, address, phone number, email address);
- demographic information (*e.g.,* date of birth, gender, marital status);
- identity information (*e.g.,* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.,* loan or bank account information); and
- other personal information necessary to provide products or services to you.

Browsing Information. FNF may automatically collect the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or mobile device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website

**How Personal Information is Collected**
We may collect Personal Information about you from:
- information we receive from you on applications or other forms;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**How Browsing Information is Collected**
If you visit or use an FNF Website, Browsing Information may be collected during your visit. Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

**Other Online Specifics**
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to other websites. FNF is not responsible for the privacy practices or the content of any of those other websites. We advise you to read the privacy policy of every website you visit.

**Use of Personal Information**
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and third parties' products and services, jointly or independently.

**When Information Is Disclosed**
We may make disclosures of your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or

- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

Please see "**Choices With Your Information**" to learn the disclosures you can restrict.

### Security of Your Information
We maintain physical, electronic, and procedural safeguards to guard your Personal Information. We limit access to nonpublic personal information about you to employees who need to know that information to do their job. When we provide Personal Information to others as discussed in this Privacy Notice, we expect that they process such information in compliance with our Privacy Notice and in compliance with applicable privacy laws.

### Choices With Your Information
If you do not want FNF to share your information with our affiliates to directly market to you, you may send an "opt out" request by email, phone, or physical mail as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by California law.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not share information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

### Information From Children
The FNF Websites are meant for adults and are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

### FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices With Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

### Your Consent To This Privacy Notice; Notice Changes
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The revised Privacy Notice, showing the new revision date, will be posted

on the FNF Website. Each time you provide information to us following any amendment of this Privacy Notice, your provision of information to us will signify your assent to and acceptance of the terms of the revised Privacy Notice for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you submit to us in any manner that we may choose without notice or compensation to you.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to access or correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, send your requests via email to privacy@fnf.com, by phone to (888) 934-3354, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the field rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for each discount. These discounts only apply to transaction involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**
FNTC - Fidelity National Title Company
FNTCCA – Fidelity National Title Company of California

**FNF Underwriter**
FNTIC - Fidelity National Title Insurance Company

**Available Discounts**
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**DISASTER LOANS (FNTIC)**
The charge for a lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

Effective Date:  12/02/2014

**ATTACHMENT ONE**

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE**

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

     c.   that result in no loss to You; or
     d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
     a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
     b.   in streets, alleys, or waterways that touch the Land.
     This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  |  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|---|
| Covered Risk 16: | 1.00% | % of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% | % of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: |  | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: |  | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
     (i)   the occupancy, use, or enjoyment of the Land;
     (ii)  the character, dimensions, or location of any improvement erected on the Land;
     (iii) the subdivision of land; or
     (iv) environmental protection;
     or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

(Except as provided in Schedule B - Part II,( t(or T)his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

Attachment One (6-5-14) CA & NV

**(PART I**

(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

7. (Variable exceptions such as taxes, easements, CC&R's, etc. shown here.)

Attachment One (6-5-14) CA & NV

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.



# EXHIBIT "2"

**Counteroffer re Purchase and Sale of:**
**428 Georgetown Av, Ventura, CA 93003-2124**

This is a counteroffer ("Counteroffer") to the July 18, 2018, "CA Residential Purchase Agreement and Joint Escrow Instructions" (the "Buyer's Offer") from Amelia Stockton, Jon Stockton (collectively, "Buyer") regarding the purchase of the real property commonly known as 428 Georgetown Av, Ventura, CA 93003-2124, APN: 082-002-3085 ("Property"), by Amelia Stockton, Jon Stockton from Grand View Financial, LLC ("Seller" or "Debtor," and together with Buyer the "Parties"), the Chapter 11 debtor and debtor in possession, in bankruptcy case number 2:17-bk-20125-RK pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").

When fully-executed below, this Counteroffer will constitute conclusive evidence of the contract for the sale and purchase of the Property (the "Sale") and the Parties agreement for the Sale, subject to overbid and approval by the Bankruptcy Court in the Debtor's bankruptcy case and further or more complete documentation in Seller's discretion. **This Counteroffer Supersedes the Buyer's Offer.**   Seller may elect to deem this Counteroffer the definitive agreement between the Parties regarding the Sale.

1.   Purchase Price:  The purchase price for the Property shall be $660,000; all cash (the "Purchase Price").

2.   Initial Deposit:  Within two (2) business days following Buyer's execution of this Counteroffer, Buyer shall deliver to escrow, together with an executed copy of this Counteroffer, the sum of 3% of the Purchase Price, which amounts to $19,800 and shall be applied toward the Purchase Price (the "Deposit"), as follows:

     Better Escrow Service, Alitta Mitchell, Escrow Officer
     3115 W. Olive Av., Burbank, CA 91505-4545
     (818) 381-4714; alitta@betterescrowservice.com

3.   Due Diligence Period:  Buyer acknowledges that he/she/it is familiar with the Property.  At Buyer's sole expense, Buyer shall have until 1:00 p.m. PDT, on Tuesday, August 14, 2018, to obtain all investigations, appraisals and tests, and to complete any and all due diligence which the Buyer desires (the "Due Diligence Deadline").  By no later than the Due Diligence Deadline, Buyer may advise Seller, in writing, of his/her/its election to cancel the Sale, in which case Buyer shall receive a full refund of the Deposit (the "Notice to Cancel").  Absent Buyer's submission of a Notice to Cancel in accordance with this paragraph 3, the Sale shall be without any further contingencies or due diligence requirements of the Buyer.

1

**Without limiting the generality of the foregoing, Buyer's silence shall be deemed an acceptance and affirmative election to proceed with the Sale without any further contingencies or due diligence requirements.**

4. <u>Bankruptcy Court Approval</u>:  The Sale is expressly subject to Bankruptcy Court approval in the Debtor's bankruptcy case.  As soon as reasonably practical following expiration of the Due Diligence Deadline without Buyer's submission of a Notice to Cancel, Seller shall file a motion to approve the Sale with the Bankruptcy Court pursuant to section 363 of the United States Bankruptcy Code and related overbid procedures (the "<u>Approval Motion</u>").  As part of such motion, Seller shall request a finding of Buyer's "good faith" in accordance with section 363(m) of the United States Bankruptcy Code.

5. <u>Overbid</u>: The Sale is subject to notice to creditors and other parties in interest and shall be subject to higher and better bids through and including the hearing on the Approval Motion, pursuant to sale and overbid procedures determined in Seller's sole discretion and subject to Bankruptcy Court approval.  <u>Break-up Fee provision</u>:  Buyer to receive ($5,000) if not the successful bidder; itial overbid will be $670,000 and thereafter in $1,000 increments.

6. <u>Tender of Balance of Purchase Price/Closing</u>:  The Sale shall close, with Buyer tendering the full Purchase Price, not more than fifteen (15) calendar days after the entry of an order of the Bankruptcy Court authorizing the Sale.

7. <u>Property Sold "As is" "Where is"</u>:  Buyer acknowledges that Seller is a debtor in possession administering its bankruptcy estate.  Seller and or Seller's agents have not, and will not, inspect the Property or determine its condition, fitness or use for any particular purpose, nor will any of them provide any written disclosures, guarantees or warranties of any kind.  Seller and Seller's agents are exempt from complying with the requirements of Article 1.5 of the California Civil Code Sections 1102-1102.17 relating to disclosures upon transfer of real property.
**The sale shall be "as-is" and "where is" with no warranty or recourse whatsoever.**  If any state or local ordinance laws require that the Property be brought into compliance, Buyer, at his/her/its sole expense, shall comply with and pay for any such requirements.

8. <u>Transfer of Property</u>:  Transfer of the Property by Seller shall be by Grant Deed or Quitclaim Deed.  Seller shall convey and Buyer shall accept the marketable title to the Property that will be insured by Fidelity National Title Company, without material exception, subject only to the terms of this Counteroffer and any further documentation of the Sale consistent with this Counteroffer.

2

9.    Liens, Claims, Encumbrances and Interests:  The Sale shall be free and of such liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests attaching to the net proceeds of the Sale with the same extent, validity, and priority of such liens, claims, encumbrances, and interests prior to the Sale.

10.    Assessments, Taxes and Escrow fees:  The following assessments, taxes and other costs shall be allocated as follows: (a) all allowable assessments and real property taxes shall be prorated through the closing date of the Sale to the applicable accounts of Seller and Buyer, such that the amounts applicable to the account of Buyer shall not be deducted from the Purchase Price;  (b) escrow fees shall be split equally between Buyer and Seller (50/50), such that the amounts allocable to Buyer shall not be deducted from the Purchase Price; (c) Seller shall pay real property transfer tax (County and State only) and the costs of a standard issue title insurance policy, such that these taxes and costs shall not be deducted from the Purchase Price; and (d) City transfer tax shall be split equally between Buyer and Seller (50/50), such that the amount allocable to Buyer shall not be deducted from the Purchase Price.  **All other costs are at Buyer's sole expense and are not to be deducted from the Purchase Price.**

11.    Brokers and Commissions:  Buyer is represented by Coldwell Banker Residential Brokerage, DRE #00616212 ("CBR") and the Seller is represented by Keller Williams Realty South Bay & KW Commercial, DRE #01854035 ("KWR & KWC").  Subject to Bankruptcy Court approval, Seller shall pay commission as follows, through escrow: six percent (6%) of the Purchase Price total: 2.5% to CBR and 1.75% to KWR & 1.75 KWC.  No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to the Buyer and upon closing of such sale.

12.    Seller Right to Terminate:  Seller may decline, at its option and sole discretion, to consummate the Sale for any reason, including without limitation: (a) the dismissal or closure of the Debtor's bankruptcy case; (b) the conversion of the debtor's Chapter 11 bankruptcy case to any other chapter under the Bankruptcy Code; (c) the inability to subordinate any liens on the Property to the expenses of administration; (d) the inability to obtain approval of the Sale by the Bankruptcy Court; or (e) the inability to sell the Property on the terms and conditions set forth herein.  Seller reserves the right, in its sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination

3

on Buyer.  No liability or obligations shall accrue to Seller's bankruptcy estate, Seller, or Seller's members and officers, as a result of any such termination.  Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability to close escrow, shall be a refund of the Deposit in full.

13.    **Non-Refundability and Forfeiture of Deposit:  Except as set forth above in paragraph 12 to this Counteroffer, immediately upon expiration of the Due Diligence Deadline without Buyer's submission of a Notice to Cancel in accordance with paragraph 3 to this Counteroffer, the entirety of the Deposit shall be absolutely non-refundable and forfeited to the Seller.    Notwithstanding the immediately preceding sentence, in the event: (a) the Bankruptcy Court enters an order that does not authorize Seller to sell the Property to Buyer; or (b) the Bankruptcy Court enters an order that authorizes the sale to another bidder and Buyer is not a backup bidder, Seller shall refund the entire Deposit to Buyer within ten (10) calendar days following entry of such order of the Bankruptcy Court. In the event Buyer is overbid and is a backup bidder, Seller shall refund the entire Deposit to Buyer only if the Sale closes to the winning bidder and within ten (10) calendar days following such closing.**

　　　　　　　AS　**(Buyer's initials)**　　　　　　　JS　**(Buyer's initials)**

14.    Escrow Instructions:  Escrow instructions shall be signed by Buyer and Seller within twenty-one (21) calendar days after execution of this Counteroffer.  In the event that Buyer is unable to close escrow within fifteen (15) calendar days after entry of the Bankruptcy Court's order authorizing the Sale (the "Closing Date"), the Buyer shall compensate Seller two hundred fifty dollars ($250.00) per day for each day beyond the Closing Date that the Sale does not close for a total extended period of no more than ten (10) calendar days.    Thereafter, Seller shall have absolute discretion to either: (a) provide further extensions of the Closing Date at the same rate of compensation; or (b) terminate the Sale to Buyer and retain the entirety of the Deposit as liquidated damages.

15.    Bankruptcy Court Jurisdiction:  The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Counteroffer/agreement. This Counteroffer/agreement shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable Federal bankruptcy law.

4

16. <u>Expiration of Offer</u>: This Counteroffer shall expire, if not executed by Buyer and delivered to Seller's agent, W Darrow Fiedler, DRE #00676445, of Keller Williams Realty / KW Commercial, on or before 1:00 p.m. PDT, Wednesday, July 25, 2018.

17. <u>Multiple Offers</u>: Buyer recognizes that multiple offers and/or counteroffers (in addition to the instant Counteroffer) may be pending and Seller reserves the right, per Paragraph 12, to choose which contract to submit to the Bankruptcy Court for approval.

**Read, Understood, Agreed To and Accepted:**

**Seller**

_____        7-20-18
Steve Rogers, Managing Member & Vice President        Date
for Grand View Financial, LLC

**Read, Understood, Agreed To and Accepted:**

**Buyer(s) and His/Her/Its/Their Agent**

Amelia Stockton – Buyer        7/24/2018 12:21:30 PM PDT
                                Date

Jon Stockton – Buyer        7/24/2018 11:18:13 AM PDT
                                Date

Mark Goetz – Buyer's Agent        7/24/2018 10:55:12 AM PDT
DRE #01030186                        Date

5

# EXHIBIT "3"

RECORDING REQUESTED BY:
Raymond Gutierrez Jr. and Cheryl A. Gutierrez

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

GVF Processing
5173 Waring Road, #117
San Diego, California  92120

Order No.:
Escrow No.:
APN: 082-0-023-030

20160415-00052162-0 1/2

Ventura County Clerk and Recorder
MARK A. LUNN
04/15/2016 04:25:49 PM
1052880 $17.00 CE

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $_-0-_City Tax is $_-0-_ R&T Code_11911_
This is a bona fide gift and the grantor received nothing in return.
_____ Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area  __X___ City of _Ventura_____

For valuable consideration, receipt of which is hereby acknowledged, **Raymond Gutierrez, Jr. and Cheryl A. Gutierrez**, Grantor(s) hereby grant(s) to:

**Grand View Financial, LLC, a Wyoming Limited Liability Company,** Grantee,

the real property situated in the City of **Ventura** County of **Ventura**, State of **California**, more particularly described as follows:

LOT 82, TRACT NO 2468-2, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGES 23, 24 AND 25 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, BUT HOWEVER, WITHOUT THE RIGHT OF SURFACE OR SUBSURFACE ENTRY ABOVE 500 FEET MEASURED VERTICALLY FROM THE SURFACE OF SAID LAND.

**APN NO.  082-0-023-030**

Also known as: **428 Georgetown Avenue, Ventura, CA  93003**

Dated: _April 13, 2016_

_____
**Raymond Gutierrez, Jr.**

Dated: _April 13, 2016_

_____
**Cheryl A. Gutierrez**

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# ACKNOWLEDGEMENT OF NOTARY

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  California          }
County of  _Ventura_          }ss.
                              }
On _April 13th, 2016_ before me, _Emily Noelle Lueck, Notary Public_

(PRINTED Name of Notary Public and Title)

Personally appeared **Raymond Gutierrez Jr. and Cheryl A. Gutierrez**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Emily Lueck_          (Seal)
                Notary Public

EMILY NOELLE LUECK
Commission # 2079156
Notary Public - California
Ventura County
My Comm. Expires Aug 22, 2018

This is a true certified copy of the
original public record if it bears the
seal, imprinted in purple ink, of the
County Clerk and Recorder.

MARK A. LUNN    APR 1 5 2016
County Clerk and Recorder
Ventura County, California

# EXHIBIT "4"

1   TODD M. ARNOLD (SBN 221868)
    LEVENE, NEALE, BENDER, YOO & BRILL LLP
2   10250 Constellation Blvd., Suite 1700
    Los Angeles, CA  90067
3   Telephone: (310) 229-1234
    Fax: (310) 229-1244
4   Email: tma@lnbyb.com

5

6   *Attorneys for Debtor and Debtor in Possession*

FILED & ENTERED

JUN 28 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                 **LOS ANGELES DIVISION**

11

12   In re:                          Case No.:  2:17-bk-20125-RK

13   GRAND VIEW FINANCIAL, LLC,       Chapter 11 Case

14         Debtor and Debtor in Possession.

15                             **ORDER GRANTING DEBTOR'S MOTION
TO APPROVE SETTLEMENT BETWEEN
DEBTOR, ON ONE HAND, AND
AFFILIATES OF THE DEBTOR, ON THE
OTHER HAND**

16

17

18                             Hearing:
                                  Date:       June 26, 2018

19                                  Time:       2:30 p.m.

20                                  Place:      Courtroom 1675
                                             255 E. Temple St.

21                                               Los Angeles, CA 90012

22

23       A hearing was held at the above referenced date, time, and location to consider the

24   *Motion To Approve Settlement Between Debtor, On One Hand, And Affiliates Of The Debtor,*

25   *On The Other Hand* [Dkt. 252] (the "Motion") filed by Grand View Financial, LLC, the debtor

26   and debtor in possession herein (the "Debtor").  Appearances were made as set forth on the

27   record of the Court.  Capitalized terms not otherwise defined herein have the same meanings as

    in the Motion.

28

                                              1

Upon consideration of the Motion, notice of the Motion, and that no opposition to the Motion was filed, and for good cause shown,

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1)     The Motion is granted.

(2)     The Settlement Agreement and Release (the "Settlement Agreement") entered into between the Debtor, on one hand, and the following affiliates of the Debtor – Beneficial Financial Services, LLC ("Beneficial"), North Park Investments, LLC ("North Park"), Premium Capital, LLC ("Premium"), Refreshing Resources, LLC ("Refreshing Resources"), Sharp Financial, LLC ("Sharp"), and Upscale Financial, LLC ("Upscale" and, with Beneficial, North Park, Premium, Refreshing Resources and Sharp, the "Affiliates") – on the other hand, a copy of which is attached to the Motion as **Exhibit "1,"** and the terms of the Settlement Agreement, are approved.

(3)     The Deeds of Trust (the "DOT's") executed by the Debtor in favor of the Affiliates – those listed in Schedule 1 to the Settlement Agreement, which Schedule 1 is attached hereto, and any other DOTs executed by the Debtor in favor of any of the Affiliates – are deemed to be released, re-conveyed, terminated, and expunged upon this Order becoming a final, non-appealable order (the "Final Order"), without the need for the Debtor, the Affiliates, or any other party to record any terminations of the DOTs with applicable county recording offices, but provided that the Debtor and/or the Affiliates are authorized to record notices of terminations of the DOTs with applicable county recording offices upon this Order becoming a Final Order.

/ / /

/ / /

/ / /

2

1        (4)    The Debtor and the Affiliates are authorized to take any and all steps necessary

2    to effectuate the Settlement Agreement.

3        **IT IS SO ORDERED.**

4                       # # #

Date: June 28, 2018

Robert Kwan
United States Bankruptcy Judge

1

2

# __SCHEDULE 1__

3

| Affiliate Name | Property Address | City | ST | Zip | Date TD Recorded | Note Amount | Reference |
|---|---|---|---|---|---|---|---|
| NORTH PARK INVESTMENTS LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 12.20.16 | 80,000 | 2016-0008663 |
| UPSCALE FINANCIAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| SHARP FINANCIAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| PREMIUM CAPITAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| BENEFICIAL FINANCIAL SERVICES | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| NORTH PARK INVESTMENTS LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 12.16.16 | 80,000 | 2016-0690545 |
| PREMIUM CAPITAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 8.23.16 | 75,000 | 2016-0435061 |
| SHARP FINANCIAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 9.2.16 | 75,000 | 2016-0460943 |
| REFRESHING RESOURCES LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 6.26.17 | 50,000 | 2017-0286479 |
| UPSCALE FINANCIAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 2.14.17 | 80,000 | 2017-0075046 |
| REFRESHING RESOURCES LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.19.17 | 50,000 | 2017-052285 |
| BENEFICIAL FINANCIAL SERVICES | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.17.16 | 75,000 | 2016-059336 |
| UPSCALE FINANCIAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| SHARP FINANCIAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| PREMIUM CAPITAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| NORTH PARK INVESTMENTS LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 1.30.17 | 80,000 | 2017-009561 |
| NORTH PARK INVESTMENTS LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 2.16.17 | 80,000 | 2017043614 |
| UPSCALE FINANCIAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 2.16.17 | 80,000 | 2017043613 |
| BENEFICIAL FINANCIAL SERVICES | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192289 |
| PREMIUM CAPITAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192290 |
| SHARP FINANCIAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192291 |
| NORTH PARK INVESTMENTS LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 2.16.17 | 80,000 | 2017-0029795-00 |
| UPSCALE FINANCIAL LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| SHARP FINANCIAL | 5555 THAYER | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| LLC | LANE | | | | | | |
| PREMIUM CAPITAL LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| BENEFICIAL FINANCIAL SERVICES | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| REFRESHING RESOURCES LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.15.17 | 50,000 | 2017-068059 |
| UPSCALE FINANCIAL LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.6.17 | 80,000 | 2017-064074 |
| SHARP FINANCIAL LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.28.17 | 75,000 | 2017-073393 |
| NORTH PARK INVESTMENTS LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 12.19.26 | 80,000 | 2576106000 |
| UPSCALE FINANCIAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| SHARP FINANCIAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| PREMIUM CAPITAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| BENEFICIAL FINANCIAL SERVICES | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| NORTH PARK INVESTMENTS LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 2.2.17 | 80,000 | 2017-0000903-00 |
| UPSCALE FINANCIAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| SHARP FINANCIAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| PREMIUM CAPITAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| SHARP FINANCIAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 7.3.17 | 75,000 | 5464 |
| PREMIUM CAPITAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 12.2.16 | 75,000 | 11022 |
| NORTH PARK INVESTMENTS LLC | 3 SAYLES | GREENWICH | CT | 6807 | 12.21.16 | 75,000 | 11579 |
| UPSCALE FINANCIAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 3.2.17 | 80,000 | 1908 |
| NORTH PARK INVESTMENTS LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 12.21.16 | 75,000 | 11577 |
| SHARP FINANCIAL LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 7.3.17 | 75,000 | 5463 |
| UPSCALE FINANCIAL LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 3.2.17 | 80,000 | 1909 |
| SHARP FINANCIAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 7.3.17 | 75,000 | 5462 |
| PREMIUM CAPITAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 9.19.16 | 75,000 | 8681 |
| NORTH PARK INVESTMENTS LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 12.21.16 | 75,000 | 11578 |
| UPSCALE FINANCIAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 3.2.17 | 80,000 | 1907 |
| REFRESHING RESOURCES LLC | 21360 CRESTWIND | SAN MARCOS | CA | 92078 | 6.26.17 | 50,000 | 2017-0286480 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| | DRIVE | | | | | | |
| NORTH PARK INVESTMENTS LLC | 8769 HILLERY DRIVE | SAN DIEGO | CA | 92126 | 2.14.17 | 40,000 | 2017-0075049 |
| UPSCALE FINANCIAL LLC | 8769 HILLERY DRIVE | SAN DIEGO | CA | 92126 | 2.14.17 | 40,000 | 2017-0075049 |
| BENEFICIAL FINANCIAL SERVICES | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 6.24.16 | 75,000 | 20160624-00088193-0 |
| UPSCALE FINANCIAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| SHARP FINANCIAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| PREMIUM CAPITAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| NORTH PARK INVESTMENTS LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 1.30.17 | 80,000 | 20170130-00012073-0 |
| REFRESHING RESOURCES LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 6.14.17 | 50,000 | 20170614-00077061-0 |
| BENEFICIAL FINANCIAL SERVICES | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 6.21.16 | 75,000 | 2016-0305770 |
| UPSCALE FINANCIAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| SHARP FINANCIAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| PREMIUM CAPITAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| NORTH PARK INVESTMENTS LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 3.15.17 | 80,000 | 20170315-00036426-0 |
| UPSCALE FINANCIAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| SHARP FINANCIAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| PREMIUM CAPITAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| BENEFICIAL FINANCIAL SERVICES | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 6.24.16 | 75,000 | 20160624-00088195-0 |
| NORTH PARK INVESTMENTS LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 3.15.17 | 80,000 | 20170315-00036427-0 |
| UPSCALE FINANCIAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| SHARP FINANCIAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| PREMIUM CAPITAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| BENEFICIAL FINANCIAL SERVICES | 303 GORRION AVENUE | VENTURA | CA | 93004 | 6.24.16 | 75,000 | 20160624-00088194-0 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| UPSCALE FINANCIAL LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 2.15.17 | 80,000 | 2017-019595 |
| REFRESHING RESOURCES LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 6.15.17 | 50,000 | 2017-068060 |
| NORTH PARK INVESTMENTS LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 12.12.16 | 80,000 | 2016-153762 |
| REFRESHING RESOURCES LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 6.19.17 | 50,000 | 2017-052286 |
| SHARP FINANCIAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 8.1.16 | 75,000 | 2016-075028 |
| NORTH PARK INVESTMENTS LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 12.12.16 | 80,000 | 2016-131671 |
| PREMIUM CAPITAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 8.1.16 | 75,000 | 2016-075027 |
| BENEFICIAL FINANCIAL SERVICES | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 7.29.16 | 75,000 | 2016-074813 |
| UPSCALE FINANCIAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 2.16.17 | 80,000 | 2017-015167 |
| NORTH PARK INVESTMENTS LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 12.16.16 | 80,000 | 2016-0067882 |
| UPSCALE FINANCIAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| SHARP FINANCIAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| PREMIUM CAPITAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| BENEFICIAL FINANCIAL SERVICES | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| UPSCALE FINANCIAL LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 2.16.17 | 80,000 | 201700014739 |
| NORTH PARK INVESTMENTS LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 12.13.16 | 80,000 | 201600112806 |
| REFRESHING RESOURCES LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 6.15.17 | 50,000 | 201700050554 |
| PREMIUM CAPITAL LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 11.22.16 | 75,000 | 201611220102785 |
| NORTH PARK INVESTMENTS LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 11.22.16 | 75,000 | 201611220102786 |
| UPSCALE FINANCIAL LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 2.11.17 | 80,000 | 201702220015899 |
| NORTH PARK INVESTMENTS LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 1.24.17 | 80,000 | 2017-0014664-00 |
| UPSCALE FINANCIAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| SHARP FINANCIAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| PREMIUM CAPITAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| BENEFICIAL FINANCIAL SERVICES | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| SHARP FINANCIAL LLC | 7394 N MERIDIAN | VACAVILLE | CA | 95688 | 6.28.17 | 75,000 | 201700054790 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| | ROAD | | | | | | |
| REFRESHING RESOURCES LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 6.15.17 | 50,000 | 201700050555 |
| PREMIUM CAPITAL LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 10.11.16 | 75,000 | 201600087277 |
| UPSCALE FINANCIAL LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 2.16.17 | 80,000 | 201700014740 |
| NORTH PARK INVESTMENTS LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 12.13.16 | 80,000 | 201600112807 |
| NORTH PARK INVESTMENTS LLC | 102 SONORA COURT | OAKLEY | CA | 94561 | 1.24.17 | 80,000 | 2017-0014665-00 |
| UPSCALE FINANCIAL LLC | 102 SONORA COURT | OAKLEY | CA | 94561 | 2.16.17 | 80,000 | 2017-0029794-00 |
| REFRESHING RESOURCES LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.21.17 | 50,000 | 3598904 |
| NORTH PARK INVESTMENTS LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 12.20.16 | 80,000 | 03564414 |
| UPSCALE FINANCIAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| SHARP FINANCIAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| PREMIUM CAPITAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| BENEFICIAL FINANCIAL SERVICES | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| BENEFICIAL FINANCIAL SERVICES | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 6.23.16 | 75,000 | 2016-072810 |
| UPSCALE FINANCIAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| SHARP FINANCIAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| PREMIUM CAPITAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| NORTH PARK INVESTMENTS LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 1.24.17 | 80,000 | 2017-010188 |
| NORTH PARK INVESTMENTS LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 80,000 | 2017-01678 |
| BENEFICIAL FINANCIAL SERVICES | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 50,000 | 2017-01677 |
| REFRESHING RESOURCES LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 6.15.17 | 50,000 | 2017-07785 |
| UPSCALE FINANCIAL LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 55,000 | 2017-01676 |
| REFRESHING RESOURCES LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 6.26.17 | 50,000 | 2017-0286478 |
| UPSCALE FINANCIAL LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 5.24.16 | 80,000 | 2016-0252297 |
| SHARP FINANCIAL LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 5.24.16 | 80,000 | 2016-0252297 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| PREMIUM CAPITAL LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 5.24.16 | 80,000 | 2016-0252297 |
| BENEFICIAL FINANCIAL SERVICES | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 6.21.16 | 75,000 | 2016-0305769 |
| NORTH PARK INVESTMENTS LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 2.14.17 | 80,000 | 2017-0075048 |
| NORTH PARK INVESTMENTS LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 1.24.17 | 80,000 | 2017-010189 |
| BENEFICIAL FINANCIAL SERVICES | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 6.23.16 | 75,000 | 2016-072809 |
| UPSCALE FINANCIAL LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 5.13.16 | 210,667 | 2016-055766 |
| SHARP FINANCIAL LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 5.13.16 | 210,667 | 2016-055766 |
| PREMIUM CAPITAL LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 5.13.16 | 210,667 | 2016-055766 |
| REFRESHING RESOURCES LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 6.15.17 | 50,000 | 2017-068061 |
| NORTH PARK INVESTMENTS LLC | 4916 SAINT ANDREWS DRIVE | STOCKTON | CA | 95219 | 1.24.17 | 80,000 | 2017-010189 |
| UPSCALE FINANCIAL LLC | 4525-4527 LINCOLN WAY | SAN FRANCISCO | CA | 94122 | 6.2.16 | 515,333 | 2016-K269087-00 |
| SHARP FINANCIAL LLC | 4525-4527 LINCOLN WAY | SAN FRANCISCO | CA | 94122 | 6.2.16 | 515,333 | 2016-K269087-00 |
| PREMIUM CAPITAL LLC | 4525-4527 LINCOLN WAY | SAN FRANCISCO | CA | 94122 | 6.2.16 | 515,333 | 2016-K269087-00 |
| BENEFICIAL FINANCIAL SERVICES | 4525-4527 LINCOLN WAY | SAN FRANCISCO | CA | 94122 | 6.23.16 | 75,000 | 2016-K278760-00 |
| NORTH PARK INVESTMENTS LLC | 4525-4527 LINCOLN WAY | SAN FRANCISCO | CA | 94122 | 12.12.16 | 80,000 | 2016-K369896-00 |
| NORTH PARK INVESTMENTS LLC | 4129 S CONKLIN ROAD | GREENACRES | WA | 99016 | 12.19.16 | 80,000 | 6563950 |
| UPSCALE FINANCIAL LLC | 4129 S CONKLIN ROAD | GREENACRES | WA | 99016 | 7.1.16 | ADOT | 6511650 |
| SHARP FINANCIAL LLC | 4129 S CONKLIN ROAD | GREENACRES | WA | 99016 | 7.1.16 | ADOT | 6511650 |
| PREMIUM CAPITAL LLC | 4129 S CONKLIN ROAD | GREENACRES | WA | 99016 | 7.1.16 | ADOT | 6511650 |
| BENEFICIAL FINANCIAL SERVICES | 4129 S CONKLIN ROAD | GREENACRES | WA | 99016 | 7.1.16 | ADOT | 6511650 |
| NORTH PARK INVESTMENTS LLC | 24604 E MAXWELL LANE | LIBERTY LAKE | WA | 99019 | 12.19.16 | 80,000 | 6563754 |
| UPSCALE FINANCIAL LLC | 24604 E MAXWELL | LIBERTY LAKE | WA | 99019 | 2.21.17 | 80,000 | 6580023 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| | LANE | | | | | | |
| UPSCALE FINANCIAL LLC | 1422 HEMLOCK AVENUE | IMPERIAL BEACH | CA | 91932 | 2.14.17 | 80,000 | 2017-0075047 |
| NORTH PARK INVESTMENTS LLC | 1422 HEMLOCK AVENUE | IMPERIAL BEACH | CA | 91932 | 12.29.16 | 80,000 | 2016-0713853 |
| UPSCALE FINANCIAL LLC | 543 E MIDLAKE DRIVE | DRAPER | UT | 84020 | 6.30.16 | 45,500 | 12311363 |
| SHARP FINANCIAL LLC | 543 E MIDLAKE DRIVE | DRAPER | UT | 84020 | 6.30.16 | 45,500 | 12311363 |
| PREMIUM CAPITAL LLC | 543 E MIDLAKE DRIVE | DRAPER | UT | 84020 | 6.30.16 | 45,500 | 12311363 |
| BENEFICIAL FINANCIAL SERVICES | 543 E MIDLAKE DRIVE | DRAPER | UT | 84020 | 6.30.16 | 45,500 | 12311363 |
| UPSCALE FINANCIAL LLC | 306 W OAK STREET | OJAI | CA | 93023 | 6.24.16 | 50,000 | 20160624-00088196-0 |
| SHARP FINANCIAL LLC | 306 W OAK STREET | OJAI | CA | 93023 | 6.24.16 | 50,000 | 20160624-00088196-0 |
| PREMIUM CAPITAL LLC | 306 W OAK STREET | OJAI | CA | 93023 | 6.24.16 | 50,000 | 20160624-00088196-0 |
| BENEFICIAL FINANCIAL SERVICES | 306 W OAK STREET | OJAI | CA | 93023 | 6.24.16 | 50,000 | 20160624-00088196-0 |
| REFRESHING RESOURCES LLC | 306 W OAK STREET | OJAI | CA | 93023 | 6.14.17 | 50,000 | 20170614-00077060-0 |
| NORTH PARK INVESTMENTS LLC | 306 W OAK STREET | OJAI | CA | 93023 | 1.30.17 | 80,000 | 20170130-00012074-0 |
| UPSCALE FINANCIAL LLC | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 7.7.16 | 56,000 | 2016-0030376-00 |
| SHARP FINANCIAL LLC | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 7.7.16 | 56,000 | 2016-0030376-00 |
| PREMIUM CAPITAL LLC | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 7.7.16 | 56,000 | 2016-0030376-00 |
| BENEFICIAL FINANCIAL SERVICES | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 7.7.16 | 56,000 | 2016-0030376-00 |
| REFRESHING RESOURCES LLC | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 6.16.17 | 50,000 | 2017-0024558-00 |
| NORTH PARK INVESTMENTS LLC | 1102 PENNIMAN DRIVE | EL DORADO HILLS | CA | 95762 | 12.13.16 | 80,000 | 2016-0061126-00 |
| NORTH PARK INVESTMENTS LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 1.24.17 | 80,000 | 20170124-0116 |
| UPSCALE FINANCIAL LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 5.13.16 | 247,333 | 20160513-0696 |
| SHARP FINANCIAL LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 5.13.16 | 247,333 | 20160513-0696 |
| PREMIUM CAPITAL LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 5.13.16 | 247,333 | 20160513-0696 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| REFRESHING RESOURCES LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 6.16.17 | 50,000 | 201706160909 |
| BENEFICIAL FINANCIAL SERVICES | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 6.23.16 | 75,000 | 20160623-0177 |

# EXHIBIT "5"

**Fill in this information to identify the case:**

Debtor 1    Grand View Financial LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:17-20125-RK

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **Ventura County Tax Collector**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Ventura County Tax Collector, Attn: Bankruptcy
Name

800 S. Victoria Ave.
Number        Street

Ventura            CA        93009-*1290*
City                State        ZIP Code

Contact phone (805) 654-3775, (805) 662-6671 FAX

Contact email Special.Collections@ventura.org

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**Where should payments to the creditor be sent?** (if different)

Name

Number        Street

City                State        ZIP Code

Contact phone _____

Contact email _____

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/_____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 082-0-023-085 |

**7. How much is the claim?**   $ _____282.90 . Does this amount include interest or other charges?

    ☑ No

    ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Property Taxes

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

    **Nature of property:**

    ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe:   428 Georgetown Ave., Ventura CA 93003

    **Basis for perfection:**   Property Tax Lien

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:**   $ 765,000.00

    **Amount of the claim that is secured:**   $ 282.90

    **Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition:**   $ 282.90

    **Annual Interest Rate** (when case was filed) 18.00 %

    ☑ Fixed

    ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/01/2018
                   MM / DD / YYYY

*Mary Barnes*
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Mary K. Barnes | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Deputy Tax Collector | | |
| Company | Ventura County Tax Collector | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 800 S. Victoria Ave. | | |
| | Number      Street | | |
| | Ventura | CA | 93009 -1290 |
| | City | State | ZIP Code |
| Contact phone | (805) 654-3775 | Email | mary.barnes@ventura.org |

# VENTURA COUNTY SUPPLEMENTAL SECURED TAX STATEMENT 2015/16

021808

**STEVEN HINTZ, TAX COLLECTOR**
800 South Victoria Avenue, Ventura, CA 93009-1290
Office Hours: Monday - Friday 8:00 A.M. - 5:00 P.M.
☎ **(805) 654-3744**

**Pay Online at: www.venturapropertytax.org**
**IMPORTANT: SALE OR TRANSFER OF THIS PROPERTY DOES**
**NOT RELIEVE THE ASSESSEE OF THIS TAX**

DATE ASSESSEE NOTICE MAILED: 02/21/17
BILLING DATE: 05/15/17
SITUS/ADDRESS:428    GEORGETOWN

| PHONE | SERVICE AGENCY | RATE PER $100 | AMOUNT |
|-------|----------------|---------------|--------|
| 805 654 3181 | PROP 13 MAXIMUM 1% TAX | 1.000000 | 1,070.00 |
| 805 383 1981 | UNI SCH BOND VENTURA | .027100 | 28.99 |
| 805 383 1981 | VTA COMM COLLEGE BD | .013000 | 13.91 |

ASSESSEE: **GRAND VIEW FINANCIAL LLC**
**ATTN GVF PROCESSING**
**5173 WARING RD #117**
**SAN DIEGO CA        92120**

DATE OF CHANGE OF OWNERSHIP OR
COMPLETION OF NEW CONSTRUCTION  04/15/16
General rate: 1.040100    L & I rate:

| | |
|---|---|
| BASED ON | SUB TOTAL  1,112.90 |
| 076 DAYS | X PRORATION FACTOR  .17 |
| | SUB TOTAL  189.19 |

| TAX RATE AREA | PARCEL/I.D. NUMBER | STMT NO. | ACCOUNT | LINE ITEM# | 1ST INSTALLMENT | 2ND INSTALLMENT | TOTAL |
|---|---|---|---|---|---|---|---|
| 05003 | 082-0-023-085 | 978248 | 00000 | 170007196 | 94.59 DUE BY 06/30/17 | 94.59 DUE BY 10/31/17 | 189.18 |

| TYPE | NEW BASE YEAR VALUE | VALUE ON THE ROLL | PRIOR SUPPLEMENTAL ASSESSMENTS | NET SUPPLEMENTAL ROLL VALUE |
|---|---|---|---|---|
| LAND | 487,500 | 417,000 | | 70,500 |
| IMPROVEMENTS | 262,500 | 226,000 | | 36,500 |
| TOTAL | 750,000 | 643,000 | | 107,000 |
| LESS: | | | | |
| HOMEOWNER'S EXEMP. | | 7,000 | | |
| OTHER EXEMPTION | | | | |
| NET TAXABLE VALUE | 750,000 | 636,000 | | 107,000 |

☞ TEAR HERE

---

## SUPPLEMENTAL SECURED TAX PAYMENT STUB

**PAY THIS AMOUNT:**

**2015/16**

GRAND VIEW FINANCIAL LLC
ATTN GVF PROCESSING
428        GEORGETOWN

**2nd**

TAX PLUS PENALTY:        134.04
IF PAID AFTER:        10/31/17

DUE BY:  10/31/17        **94.59**
**Return Stub with Payment**

**(THIS BILL IS IN ADDITION TO YOUR JOINT CONSOLIDATED TAX BILL)**

2nd installment cannot be paid until
after payment of the 1st installment   **2nd**

Pay Online at: www.venturapropertytax.org
Make check payable to:
**VC Tax Collector**
Please put Assessor's Parcel # on check

| ASSESSOR'S PARCEL# | STATEMENT# | LINE ITEM# |
|---|---|---|
| 082-0-023-085 | 978248 | 170007196 |

99782480210311700000009459000000134040820023085000009

☞ TEAR HERE

---

## SUPPLEMENTAL SECURED TAX PAYMENT STUB

**PAY THIS AMOUNT:**

**2015/16**

GRAND VIEW FINANCIAL LLC
ATTN GVF PROCESSING
428        GEORGETOWN

**1st**

TAX PLUS PENALTY:        104.04
IF PAID AFTER:        06/30/17

DUE BY: 06/30/17        **94.59**
**Return Stub with Payment**

**(THIS BILL IS IN ADDITION TO YOUR JOINT CONSOLIDATED TAX BILL)**

To pay full tax, return both payment stub with this
amount $    189.18 by 06/30/17

Pay Online at: www.venturapropertytax.org
Make check payable to:
**VC Tax Collector**
Please put Assessor's Parcel # on check

| ASSESSOR'S PARCEL# | STATEMENT# | LINE ITEM# |
|---|---|---|
| 082-0-023-085 | 978248 | 170007196 |

99782480106301700000009459000000104040820023085000004

# VENTURA COUNTY SUPPLEMENTAL SECURED TAX STATEMENT 2016/17

021808

**STEVEN HINTZ, TAX COLLECTOR**
**800 South Victoria Avenue, Ventura, CA 93009-1290**
**Office Hours: Monday - Friday 8:00 A.M. - 5:00 P.M.**
☎ **(805) 654-3744**

**Pay Online at: www.venturapropertytax.org**
**IMPORTANT: SALE OR TRANSFER OF THIS PROPERTY DOES**
**NOT RELIEVE THE ASSESSEE OF THIS TAX**

DATE ASSESSEE NOTICE MAILED: 02/21/17
**BILLING DATE:** 05/15/17
**SITUS/ADDRESS:** 428     GEORGETOWN

ASSESSEE: **GRAND VIEW FINANCIAL LLC**
**ATTN GVF PROCESSING**
**5173 WARING RD #117**
**SAN DIEGO CA          92120**

DATE OF CHANGE OF OWNERSHIP OR
COMPLETION OF NEW CONSTRUCTION 04/15/16
General rate: 1.041500   L & I rate:

| PHONE | SERVICE AGENCY | RATE PER $100 | AMOUNT |
|---|---|---|---|
| 805 654 3181 | PROP 13 MAXIMUM 1% TAX | 1.000000 | 90.00 |
| 805 383 1981 | UNI SCH BOND VENTURA | .026000 | 2.34 |
| 805 383 1981 | VTA COMM COLLEGE BD | .015500 | 1.39 |

| | | |
|---|---|---|
| BASED ON | SUB TOTAL | 93.73 |
| 365 DAYS | X PRORATION FACTOR | 1.00 |
| | SUB TOTAL | 93.73 |

| TAX RATE AREA | PARCEL/I.D. NUMBER | STMT NO. | ACCOUNT | LINE ITEM# | 1ST INSTALLMENT | 2ND INSTALLMENT | TOTAL |
|---|---|---|---|---|---|---|---|
| 05003 | 082-0-023-085 | 978249 | 00000 | 170007196 | 46.86 DUE BY 06/30/17 | 46.86 DUE BY 10/31/17 | 93.72 |

| TYPE | NEW BASE YEAR VALUE | VALUE ON THE ROLL | PRIOR SUPPLEMENTAL ASSESSMENTS | NET SUPPLEMENTAL ROLL VALUE |
|---|---|---|---|---|
| LAND | 487,500 | 481,000 | | 6,500 |
| IMPROVEMENTS | 262,500 | 260,000 | | 2,500 |
| TOTAL | 750,000 | 741,000 | | 9,000 |
| LESS: | | | | |
| HOMEOWNER'S EXEMP. | | 7,000 | | |
| OTHER EXEMPTION | | | | |
| NET TAXABLE VALUE | 750,000 | 734,000 | | 9,000 |

☞ TEAR HERE

## SUPPLEMENTAL SECURED TAX PAYMENT STUB

### 2016/17

GRAND VIEW FINANCIAL LLC
ATTN GVF PROCESSING
428     GEORGETOWN

TAX PLUS PENALTY:     81.54
IF PAID AFTER:     10/31/17

**PAY THIS AMOUNT:**

**2nd**

**DUE BY: 10/31/17          46.86**
**Return Stub with Payment**

2nd installment cannot be paid until
after payment of the 1st installment     **2nd**

**(THIS BILL IS IN ADDITION TO YOUR JOINT CONSOLIDATED TAX BILL)**
**Pay Online at: www.venturapropertytax.org**
**Make check payable to:**
**VC Tax Collector**
Please put Assessor's Parcel # on check

| ASSESSOR'S PARCEL | STATEMENT# | LINE ITEM# |
|---|---|---|
| 082-0-023-085 | 978249 | 170007196 |

897824902103117000000004686000000081540820023085000003

☞ TEAR HERE

## SUPPLEMENTAL SECURED TAX PAYMENT STUB

### 2016/17

GRAND VIEW FINANCIAL LLC
ATTN GVF PROCESSING
428     GEORGETOWN

TAX PLUS PENALTY:     51.54
IF PAID AFTER:     06/30/17

**PAY THIS AMOUNT:**

**1st**

**DUE BY: 06/30/17          46.86**
**Return Stub with Payment**

**(THIS BILL IS IN ADDITION TO YOUR JOINT CONSOLIDATED TAX BILL)**

To pay full tax, return both payment stub with this
amount $     93.72 by 06/30/17

**Pay Online at: www.venturapropertytax.org**
**Make check payable to:**
**VC Tax Collector**
Please put Assessor's Parcel # on check

| ASSESSOR'S PARCEL# | STATEMENT# | LINE ITEM# |
|---|---|---|
| 082-0-023-085 | 978249 | 170007196 |

897824901063017000000004686000000051540820023085000008

```
                 S E C U R E D   P R O P E R T Y   D A T A   B A S E
SV22001A   SCREEN 1 OF 2     PUBLIC INQUIRY                    16:27 02/28/18
APN: 082-0-023-085  TRA: 05003            ARC: 0750585  APN STATUS: ACTIVE
    NAME.1: GRAND VIEW FINANCIAL LLC                     DOC.NR: 160052162
    NAME.2: ATTN GVF PROCESSING                          DOC.DT: 04/15/2016
MAIL.ADDR: 5173 WARING RD #117                         DOC.TYPE: GD
  CTY.STA:  SAN DIEGO CA           ZIP: 92120        EFF.DOC.DT:
SITUS.ADDR: 428 GEORGETOWN AV VENTURA
   TRACT: 2468-02    MAP.NR: 068MR 023  PREV.APN: 082-0-023-030  VOID.YR: 7879
   BLOCK:         CONDO.REF:             DT.SALE: 04/15/2016    DTS:
    LOT: 82       CONDO.BLDG:         BSE.YR.APN: 082-0-023-085  BASE.YR: 1718
 LOT.SUB:         CONDO.UNIT:                              EFF.TAX.YR: 2018
================================================================================
   LAND.VALUE:              --EXEMPTION DATA--    NON.TAX.CD:
IMPROVE.VAL:                 CODE      VALUES     LOW.VAL.FLAG:
MIN.RTS.VAL:                                      NO.VAL.FLAG:
PERS.PROP.V:
TR.FIXT.VAL:
TREE.VINE.V:
UNIT.TF.VAL:                 PENALTY:
UNIT.PP.VAL:                                      DISCLAIMER - SEE PAGE 2
PG: 1 OF 2  APN: 082 0 023 085     FORMAT-CD: 01 INDEX-CD: 50  YEAR: 2018
MESSAGE: SELECT FORMAT-CD 00 TO RETURN TO MENU.
```

1

# EXHIBIT "6"

<table>
<tr><td colspan="2" style="background:black;color:white">Fill in this information to identify the case:</td></tr>
</table>

Debtor: Grand View Financial LLC

Debtor 2 _____
(Spouse if filing)

United States Bankruptcy Court for the CENTRAL DISTRICT OF
CALIFORNIA (Los Angeles)

Case Number: 2:17-bk-20125-RK

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment or an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents:** they may be destroyed after scanning. If the documents are not available explain in an attachment.

A person who filed a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date was filed. The date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | Who is the current creditor? | **PennyMac Loan Services, LLC** |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor_____ |

| 2. | Has this claim been acquired from someone else? | ☒ No |
| --- | --- | --- |
| | | ☐ Yes.   From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payment to the creditor be sent? (if different) |
| --- | --- | --- | --- |
| | Federal Rule of Bankruptcy Procedure (FRBP 2002(g) | PennyMac Loan Services, LLC<br>6101 Condor Drive, Suite 200<br>Moorpark, CA 93021 | PennyMac Loan Services, LLC<br>P.O. Box 660929<br>Dallas, TX 75266-0929 |
| | | Contact Phone:  n/a | Contact Phone: n/a |
| | | Contact email:  n/a | Contact email: n/a |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| 4. | Does this claim amend one already filed? | ☒ No | |
| --- | --- | --- | --- |
| | | ☐ Yes. Claim number on court claims registry (if known)_____ | Filed on _____<br>MM /DD/ YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
| --- | --- | --- |
| | | ☐ Yes.   Who made the earlier filing? _____ |

**Part 2:** Give Information About the Claim as of the Date the Case was filed

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor  **2683** |
|---|---|---|

| 7. | How much is the claim? | **$310,989.72**  Does this amount include interest or other charges?<br>☐ No<br>☒ Yes.  Attach statement itemizing interest, fees, expenses, or other<br>Charges required by Bankruptcy Rule 3001 (c)(2)(A). |
|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001 (c).<br><br>Limit disclosing information that his entitled to privacy, such as health care information.<br><br>_____ MONEY LOANED _____ |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☐ No<br>☒ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:** 124 Illinois St., Vallejo, CA 94590<br>☒  Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:<br><br>**Basis for perfection:**    Recorded Deed of Trust<br>(Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                      $_____<br><br>**Amount of the claim that is secured:**    $310,989.72<br><br>**Amount of the claim that is unsecured:**  $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $22,807.95<br><br>**Annual Interest Rate** (when case was filed) 4.625%<br>☒ Fixed<br>☐ Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☒ No<br><br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**          $_____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☒ No<br><br>☐ Yes. **Identify the property:** _____ |
|---|---|---|

**12. Is all or part of the claim Entitled to priority under 11 U.S.C. § 507 (a)?**

☒ No

A claim may be partly Priority and partly Nonpriority.  For example, In some categories, the Law limits the amount Entitled to priority

☐ Yes.   *Check all that apply:*                                                   Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under     $_____
   11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for   $_____
   personal, family, or household use .  11 U.S.C. §507 (a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the   $_____
   bankruptcy petition is filed or the debtor's business ceased, whichever is earlier.
   11 U.S.C. §507 (a)(4).

☐ Taxes or penalties owed to governmental units.  11 U.S.C. §507 (a)(8).     $_____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).     $_____

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).     $_____

* Amounts are subject to adjustments on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**  **Sign below**

**The person completing This proof of claim must Sign and date it FRBP 9011(b).**

**If you file this claim Electronically, FRBP 5005(a)(2) authorizes courts To establish local rules Specifying what a signature Is.**

**A person who files a Fraudulent claim could be Fined up to $500,000, Imprisoned for up to 5 Years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty or perjury that the foregoing is true and correct.

Executed on   10/30/2017
              MM/DD/YYYY

/s/ Robert P. Zahradka
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Robert P. Zahradka  (SBN 282706)
Title: Attorney for Creditor
Company: Tiffany & Bosco, P.A./ TB File # 17-80841
Address: 1230 Columbia Street, Suite 680
         Number        Street
         San Diego,  CA  92101
         City      State    Zip Code

Contact phone:   619-501-3503                    Email: pocnotifications@tblaw.com

---

Mortgage Proof of Claim Attachment                                                    (12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case Number: | 2:17-bk-20125-RK | Principal balance: | $295,151.92 | Principal & interest due: | $15,397.20 | Principal & interest: | $1,539.72 |
| Debtor 1: | Grand View Financial LLC | Interest due: | $12,005.20 | Prepetition fees due: | $637.72 | Monthly escrow: | $487.40 |
| Debtor 2: | | Fees, costs due: | $ 637.72 | Escrow deficiency for funds Advanced: | $3,194.88 | Private mortgage Insurance: | $203.63 |
| Last 4 digits to identify: | 2683 | Escrow deficiency for funds advanced: | $3,194.88 | Projected escrow shortage: | $3,578.15 | Total monthly payment: | $2,230.75 |
| Creditor | PennyMac Loan Services, LLC | Less total funds on hand: | ($   .00) | Less funds on hand: | ($   .00) | | |
| Servicer: | PennyMac Loan Services, LLC | Total debt: | $310,989.72 | Total prepetition arrearage: | $22,807.95 | | |
| Fixed accrual/daily Simple interest/other: | Fixed | | | | | | |

---

**Part 5: Loan Payment History from First Date of Default**

| | | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual Payment Amount | **C.** Funds Received | **D.** Amount Incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied Funds | **M.** Principal Balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees/ Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |



**PennyMac™**

P O Box 514387
Los Angeles, CA 90051-4387

1-800-777-4001

MONICA K LAM
124 ILLINOIS ST
VALLEJO CA 94590-3854

09/05/17

Loan No:

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

PennyMac Loan Services, LLC is a debt collector. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is for informational purposes only and is not an attempt to collect a debt against you personally.

### PRESENT MORTGAGE PAYMENT

| Your present payment consists of: | Principal & Interest (P&I) | $1,539.72 |
| | Escrow Deposit | $667.82 |

**Total Mortgage Payment**      **$2,207.54**

### ANTICIPATED ANNUAL DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the next amount due as defined by Federal Law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Bills due in the upcoming year: | MORTGAGE INS | $2,443.56 |
| | HAZARD INS | $1,954.00 |
| | COUNTY TAX | $3,800.04 |

**Total Anticipated Annual Disbursements:**    **$8,197.60**    **One-Twelfth/Monthly Amount:**    **$683.13**

### ACCOUNT HISTORY

The following statement of activity in your escrow account from 09/2016 through 09/2017 displays actual activity as it occurred in your escrow account during that period. If you received Account Projections with a prior analysis, they are included again here for comparison.
**Over this period, an additional**    **$49.57 was deposited into your escrow account for interest on**

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | **Beginning Balance** | **$3,225.84** | **$2,558.02** |
| September | 667.82 | 1,335.64 * | 208.98 | | * FHA INS | 3,686.68 | 3,693.66 |
| September | | | | 208.08 | * FHA INS | 3,686.68 | 3,686.68 |
| October | 667.82 | 667.82 | 208.98 | | * FHA INS | 4,147.52 | 4,354.50 |
| October | | | 1,730.00 | 1,836.00 | * HAZARD INS | 2,417.52 | 2,518.50 |
| October | | | | 208.98 | * FHA INS | 2,417.52 | 2,311.52 |
| November | 667.82 | * | 208.98 | 208.98 | FHA INS | 2,676.36 | 2,104.54 |
| November | | | 1,900.02 | 1,756.18 | * COUNTY TAXES | 976.34 | 348.38 |
| December | 667.82 | 49.57 * | 208.98 | | * FHA INS | 1,439.18 | 305.95 |
| December | | | | 203.83 | * FHA INS | 1,439.18 | 102.32 |
| January | 667.82 | * | 208.98 | | * FHA INS | 1,900.02 | 192.32 |
| January | | | | 203.83 | * FHA INS | 1,900.02 | 11.31- |
| February | 667.82 | * | 208.98 | | * FHA INS | 2,360.86 | 11.31- |
| February | | | | 203.83 | * FHA INS | 2,360.86 | 214.94- |
| March | 667.82 | * | 208.98 | | * FHA INS | 2,621.70 | 214.94- |
| March | | | 1,900.02 | 1,756.18 | * COUNTY TAXES | 921.68 | 1,973.10- |
| March | | | | 203.83 | * FHA INS | 921.68 | 2,176.73- |
| April | 667.82 | * | 208.98 | | * FHA INS | 1,382.52 | 2,176.73- |
| April | | | | 203.83 | * FHA INS | 1,382.52 | 2,380.36- |
| May | 667.82 | * | 208.98 | | * FHA INS | 1,843.36 | 2,380.36- |
| May | | | | 203.83 | * FHA INS | 1,843.36 | 2,583.99- |
| June | 667.82 | * | 208.98 | | * FHA INS | 2,304.20 | 2,583.99- |
| June | | | | 203.83 | * FHA INS | 2,304.20 | 2,787.62- |
| July | 667.82 | * | 208.98 | | * FHA INS | 2,765.04 | 2,787.62- |

**\*\*\* CONTINUED ON REVERSE SIDE**

**PennyMac™**

### SHORTAGE

Customer Loan Number:

Customer Name: MONICA K LAM

Shortage Amount:    $94.83

If you prefer to pay your escrow shortage of $94.83 in full, your new monthly payment would then be $2,222.85. Please make your check payable to PennyMac Loan Services.
Mail this form along with your check to:

    PennyMac Loan Services
    PO Box 30597
    Los Angeles, CA 90030-0597

If you are paying your shortage in full, please include your loan number on your check.
Failure to send your payment promptly to the above address will delay the adjustment of your payment

| | | | | | | |
|---|---|---|---|---|---|---|
| July | | | | 203.63 * FHA INS | 2,765.04 | 2,991.25- |
| August | 667.82 | * | 206.98 | * FHA INS | 3,225.88 | 2,991.25- |
| August | | | | 203.63 * FHA INS | 3,225.88 | 3,194.88- |
| September | | 8,678.20 E | | E | 3,225.88 | 3,483.32 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $8,013.80. Under Federal Law, your lowest monthly balance should not have exceeded $921.68, or 1/6th of total anticipated payments from the account, unless your mortgage contract or State law specifies a lower amount.

Under your mortgage contract and State Law your lowest monthly balance should not have exceeded $921.68.


### A C C O U N T   P R O J E C T I O N S

**Your Projected Escrow Account Balance as of 08/31/17 is $3,279.69. Your Required Beginning Escrow Balance according to this analysis should be $3,374.52.**
This means you have a Shortage of $94.83. Per Federal Law, the shortage may be collected from you over 12 months or more unless it is less than 1 month's deposit, in which case we have the additional option of requesting payment within 30 days.
We will collect the shortage over 12 months.
Once during this period, your Required Escrow Account Balance should be reduced to $959.00, as shown in November. This amount represents the cushion selected by us as allowed by your mortgage contract, Federal and State Law.

### N E W   M O R T G A G E   P A Y M E N T

| | | | |
|---|---|---|---|
| Your new payment consists of: | Principal & Interest (P&I) | $1,539.72 | |
| | Escrow Deposit | $683.13 | |
| | Deficiency/Shortage/Surplus | $7.90 | |
| **New Mortgage Payment** | **Beginning** | **09/01/17** | **$2,230.75** |

Should you have any questions about this Escrow Analysis, please call our Customer Service Department at (800)777-4001.

The following estimate of activity in your escrow account from 09/17 through 08/18 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal Law, State Law or your mortgage documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| Month | Anticipated Amount To Escrow | Anticipated Amount From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | **Beginning Balance** | **$3,279.69** | **$3,374.52** |
| September | 683.13 | 203.63 | FHA INS | 3,759.19 | 3,854.02 |
| October | 683.13 | 203.63 | FHA INS | 4,238.69 | 4,333.52 |
| October | | 1,954.00 | HAZARD INS | 2,284.69 | 2,379.52 |
| November | 683.13 | 203.63 | FHA INS | 2,764.19 | 2,859.02 |
| **November** | | **1,900.02** | **COUNTY TAXES** | **864.17 ( PLB )** | **959.00 ( RLB )** |
| December | 683.13 | 203.63 | FHA INS | 1,343.67 | 1,438.50 |
| January | 683.13 | 203.63 | FHA INS | 1,823.17 | 1,918.00 |
| February | 683.13 | 203.63 | FHA INS | 2,302.67 | 2,397.50 |
| March | 683.13 | 203.63 | FHA INS | 2,782.17 | 2,877.00 |
| March | | 1,900.02 | COUNTY TAXES | 882.15 | 976.98 |
| April | 683.13 | 203.63 | FHA INS | 1,361.65 | 1,456.48 |
| May | 683.13 | 203.63 | FHA INS | 1,841.15 | 1,935.98 |
| June | 683.13 | 203.63 | FHA INS | 2,320.65 | 2,415.48 |
| July | 683.13 | 203.63 | FHA INS | 2,800.15 | 2,894.98 |
| August | 683.13 | 203.63 | FHA INS | 3,279.65 | 3,374.48 |


*** CONTINUED ON NEXT PAGE ***

MONICA K LAM
124 ILLINOIS ST
VALLEJO CA  94590-3654

Loan No:

## ** CONTINUATION **

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from
engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of
violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or
harass. AS REQUIRED BY NEW YORK STATE LAW, if a creditor or debt collector receives a money judgment against you in court, state
and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI);
2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment
benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10)
Federal student loans, federal student grants, and federal work study funds; 11) and Ninety percent of your wages or salary
earned in the last sixty days. PennyMac Loan Services, LLC is registered with the Superintendent of the New York State
Department of Financial Services (Department). You may file complaints about PennyMac with the Department. You may obtain
further information from the Department by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting
www.dfs.ny.gov.

This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if
your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is
for informational purposes only and is not an attempt to collect a debt against you personally.

Licensing Information



FHA Case No. ▒▒▒▒▒▒▒▒

**NOTE**

State of California

October 10, 2015                            Irvine,                           California
[Date]                                     [City]                            [State]

**124 ILLINOIS STREET, VALLEJO, CA 94590**
**[Property Address]**

### 1.  PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means  **Nations Direct Mortgage, LLC**

and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of  **TWO HUNDRED NINETY NINE THOUSAND FOUR HUNDRED SEVENTY FIVE AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***  Dollars (U.S.  **$299,475.00**      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **FOUR AND FIVE-EIGHTHS**             percent (  **4.625 %**       ) per year until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the  **1st**           day of each month beginning on  **December 1, 2015.**          Any principal and interest remaining on the  **1st**          day of **November, 2045**       will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at  **18200 Von Karman, Suite 250**
**Irvine, CA 92612**

or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S.  **$1,539.72.**            This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]      ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge
                            ☐ Other (specify)

### 5.  BORROWER'S RIGHT TO PREPAY
Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.
Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.                        Page 1 of 3                    Initials: _____
                                                                      CA8700NT  1214
                                                                      CA8700NT
                                                                      10/09/2015 03:47 PM PST

LOAN #: ██████████

**6.  BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   **FOUR**                                             percent (   **4.000 %**                ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**10.  GROUNDS FOR ACCELERATION OF DEBT**

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(D) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Note and the Security Instrument do not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.

Page 2 of 3

Initials: _____

CA8700NT   1214
CA8700NT
10/09/2015 03:47 PM PST

**LOAN #:** ▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____    _____ (Seal)

MONICA K. LAM

PAY TO THE ORDER OF:    **PENNYMAC CORP.**
WITHOUT RECOURSE
Nations Direct Mortgage, LLC, a Limited Liability Company

BY: _____
        Lori Lanning

TITLE: ____Post Closing Manager_____

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.                                   Page 3 of 3

Initials: _____
CA8700NT  1214
CA8700NT
10/09/2015 03:47 PM PST



**ALLONGE TO NOTE**

LOAN#:

PROPERTY ADDRESS: 124 ILLINOIS STREET, VALLEJO, CA 94590

PRINCIPAL BALANCE: $299475

BORROWER: MONICA K LAM

CO-BORROWER:

PAY TO THE ORDER OF:  PennyMac Loan Services, LLC

WITHOUT RECOURSE: PennyMac Corp.

BY _____

TITLE: April Logan, Authorized Representative

ALLONGE TO NOTE

LOAN#: █████████

PROPERTY ADDRESS: 124 ILLINOIS STREET, VALLEJO, CA 94590

PRINCIPAL BALANCE: $299475

BORROWER: MONICA K LAM

CO-BORROWER:

PAY TO THE ORDER OF:

WITHOUT RECOURSE: PennyMac Loan Services, LLC

BY _____

TITLE: April Logan, Authorized Representative

Recorded in Official Records, Solano County

**Marc C. Tonnesen**
Assessor/Recorder

10/19/2015
8:00 AM
AR64
XX

When recorded, mail to:
Nations Direct Mortgage, LLC
Attn: Final Document Department
18200 Von Karman, Suite 250
Irvine, CA 92612

02 Fidelity Title Co

Doc#: 201500095054

| | |
|---|---|
| Titles: 1 | Pages: 9 |
| Fees | 47.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $47.00 |

Fidelity Title Co

——————————— [Space Above This Line For Recording Data] ———————————

**State of California**

FHA Case No.

# DEED OF TRUST

MIN:
MERS PHONE #: 1-888-679-6377

THIS DEED OF TRUST ("Security Instrument") is made on **October 10, 2015.**       The Trustor is
**MONICA K. LAM, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

whose address is **124 ILLINOIS STREET, VALLEJO, CA 94590**

("Borrower").

The trustee is **FIDELITY NATIONAL TITLE**

("Trustee").

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**Nations Direct Mortgage, LLC**

("Lender") is organized and

existing under the laws of **California,**
and has an address of **18200 Von Karman, Suite 250, Irvine, CA 92612.**

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 1 of 8

Initials: 
CAEFHALD 0514
CAEFHALD
10/09/2015 03:47 PM PST

LOAN #:

Borrower owes Lender the principal sum of **TWO HUNDRED NINETY NINE THOUSAND FOUR HUNDRED SEVENTY FIVE AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***  Dollars (U.S. **$299,475.00**  ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 1, 2045.**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in  **Solano**                    County, California:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #:**

which has the address of   **124 ILLINOIS STREET, VALLEJO,**

[Street, City],

California  **94590**            ("Property Address");
             [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.   **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would

**FHA California Deed of Trust - 4/96**
Ellie Mae, Inc.                            Page 2 of 8                       Initials: _____
                                                                            CAEFHALD  0514
                                                                            CAEFHALD
                                                                            10/09/2015 03:47 PM PST

have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto. In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 3 of 8

Initials: _____
CAEFHALD   0514
CAEFHALD
10/09/2015 03:47 PM PST

LOAN #: ▮▮▮▮▮▮

information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.   Grounds for Acceleration of Debt.**

(a)   **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)   **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)   **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)   **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)   **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 4 of 8

Initials: _MKL_
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

**LOAN #:**

any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.

Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 5 of 8

Initials: _MhL_
CAEFHALD    0514
CAEFHALD
10/09/2015 03:47 PM PST



LOAN #

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California.

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 6 of 8



Initials: _MVL_

CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

**LOAN #:**

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider  ☐ Growing Equity Rider  ☐ Planned Unit Development Rider
☐ Graduated Payment Rider  ☐ Other(s) [specify]

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____Monica K. Lam_____                    10/12/15 (Seal)
MONICA K. LAM                                              DATE

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 7 of 8



Initials: _____
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

Non-Order Search
Doc: CASOLA:2015 00095054

Requested By: eemunoz, Printed: 7/17/2017 11:09 AM

LOAN #: ███████

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _CA_
County of _Solano_

On _Oct. 12, 2015_, before me, _C. Sittinger, notary public_ (here insert name and title of the officer), personally appeared MONICA K. LAM, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _C. Sittinger_ (NOTARY)

(SEAL)

C. SITTINGER
COMM. # 1984159
NOTARY PUBLIC - CALIFORNIA
SOLANO COUNTY
COMM. EXPIRES JULY 30, 2016

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 8 of 8

Initials: _mKL_
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST



## EXHIBIT "A"
### Legal Description

**For APN/Parcel ID(s):**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE BY E.N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY RECORDS.

APN:



El-Sale (Buyer & Seller)
SCA0002233.doc / Updated: 03.31.14

Page 9

Printed: 10.12.15 @ 08:40 AM by CS
CA-FT-FSOL-01500.081101-FSOL-1011500690

Non-Order Search
Doc: CASOLA:2015 00095054

Page 9 of 9

Requested By: eemunoz, Printed: 7/17/2017 11:09 AM

Recorded In Official Records of Solano County

**Marc C. Tonnesen**
Assessor/Recorder

8/22/2017
9:38:25 AM
AR21
04

SPL

**RECORDING REQUESTED BY:**

5

Doc # **201700071020**

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

| | | |
|---|---|---|
| Titles: 1 | Pages: | 2 |
| Fees | | $26.00 |
| Taxes | | $0.00 |
| Other | | |
| Paid | | $26.00 |



## ASSIGNMENT OF DEED OF TRUST

For Value Received, Mortgage Electronic Registration Systems, Inc., as nominee for Nations Direct Mortgage, LLC, its successors and assigns PO BOX 2026 Flint MI 48501-2026 hereby grants, assigns and transfers to **PennyMac Loan Services, LLC** under that certain Deed of Trust dated **10/10/2015** executed by **Monica K. Lam, a married woman as her sole and separate property** Trustor, to **Fidelity National Title** Trustee, and recorded on 10/19/2015 as Instrument No. 201500095054 of the Official Records of Solano County, **CA** describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Date : 8/15/17

Mortgage Electronic Registration Systems, Inc., as nominee for Nations Direct Mortgage, LLC, its successors and assigns

By :
Its:          Christopher Santana
          Assistant Secretary

NDSC File No.
APN No.
**Assignment of Deed of Trust**
Page two

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity
of that document.

State of California
County of _____ Ventura _____

On ___ 8/15/17 ___ before me, **FRANK MICHAEL HOFF**, Notary Public
_____
(insert name and title of the officer)

personally appeared _____ Christopher Santana _____, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

> FRANK MICHAEL HOFF
> Commission # 2094816
> Notary Public - California
> Ventura County
> My Comm. Expires Jan 21, 2019

Signature _____ (Seal)


END OF
DOCUMENT

RECORDING REQUESTED BY:
GRAND VIEW FINANCIAL LLC

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

GRAND VIEW FINANCIAL LLC
6601 Center Drive West, Suite 500-8354
Los Angeles, California 90045

Order No.:
Escrow No.:
APN:

Recorded In Official Records of Solano County

**Marc C. Tonnesen**
Assessor/Recorder
Grand View Financial LLC

Doc # 201600102070

| | | | |
|---|---|---|---|
| | Titles: 1 | Pages: | 1 |
| | Fees | | $23.00 |
| | Taxes | | $990.00 |
| | Other | | |
| | Paid | | $1,024.00 |

11/14/2016
8:20:42 AM
AR49
06

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $0 City Tax is $0 R&T Code 11930
This is a bona fide intervivos gift    $990.00
_GIFT Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area _____ City of Vallejo

For valuable consideration, receipt of which is hereby acknowledged **MONICA K. LAM, AN UNMARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** Grantor(s) hereby grant(s) to:

**GRAND VIEW FINANCIAL LLC,**

the real property situated in the City of **Vallejo**, County of **Solano**, State of **California**, more particularly described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE BY E.N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY RECORDS.

APN NO.
Also known as 124 Illinois Street, Vallejo, CA 94590

Dated: 11/3        2016

**MONICA K. LAM**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
COUNTY OF ____Solano____ ) SS.

On November 3, 2116 before me, Luz Gonzalez _____, Notary Public, personally appeared MONICA K. LAM, who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Notary Public

LUZ GONZALEZ
Commission # 2145547
Notary Public - California
Solano County
My Comm. Expires Mar 7, 2020

(SEAL)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**7720 North 16th Street, Suite 300, Phoenix, Arizona 85020**.

A true and correct copy of the foregoing document entitled (*specify*):

**PROOF OF CLAIM**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/30/17, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/30/17,, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/30/17 | Mirna Garcia | /s/ Mirna Garcia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVICE LIST**

(In re Grand View Financial LLC, Case # 2:17-bk-20125-RK, United States Bankruptcy Court
for the Central District of California)

**SERVICE VIA NOTICE OF ELECTRONIC FILING (NEF):**

Todd M. Arnold, Esq.
tma@lnbyb.com
[ATTORNEY FOR DEBTOR(S)]

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov
(UNITED STATES TRUSTEE, REGION 16)

**SERVICE VIA UNITED STATES MAIL:**

Grand View Financial LLC
6601 Center Drive West
Suite 500-8354
Los Angeles, CA  90045
[DEBTOR(S)]

Robert and Pamela Gabriel
21 Richmond Hill Road
Greenwhich, CT 06831-2525

Lorraine Moller
2525 Arapahoe, Suite 500
Boulder, CO 80302-6720

Heather Hartig
324 Manor Drive
Pacifica, CA 94044

Lehman Borthers
400 Professional Drive
Gaithersburg, MD 20879

Stell Tan
4525-4527 Lincoln Way
San Francisco, CA 94122-1128

Robert & Pamela Gabriel
3 Sayles Street
Greenwhich, CT 06807-2142

E. Greg Somerville
4916 Saint Andrews Drive
Stockton, CA 95219-1917

James Yocum
3417 Danner Circle
Birmingham, AL 35243

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

Robert & Pamela Gabriel
18 Sherman Avenue
Greenwhich, CT 06830-6046

Daniel Golden
21360 Crestwind Drive
San Marcos, CA 92078-5000

Frankie Cheung
1765 Valdez Way
Fremont, CA 94539-3662

Ellen & Clyde Davenport
5555 Thayer Lane
San Ramon, CA 94582-3067

Marc & Michelle Griffith
6020 Heatherton Drive
Somis, CA 93066-9611

Robert Burns
690 Heather Court
Pacifica, CA 94044-2141

David & Leah Manaoat
102 Sonora Court
Oakley, CA 94561-3953

John & Sonja Tombarelli
4129 South Conklin Road
Greenacres, WA 99016-9789

Angela Leung
3217 Acalanes Avenue
Lafayette, CA 94549-3206

Leslie Edwards
17287 W. Summerfield Road
Post Falls, ID 83854

Sunil & L. Lori Wadhwa
747 Sturbridge Drive
Folsom, CA 95630-6166

Gary & Johanna Lohse
7394 N. Meridian Road
Vacaville, CA 95688-9607

Solano County Treasurer - Tax Collector
675 Texas St., Suite 2700
Fairfield, CA 94533

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "7"

8-K 1 jpmmt2005a3form8kforpsa.htm FORM 8-K

# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C.  20549

Form 8-K

## CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event
Reported):  June 16, 2005

### J.P. MORGAN ACCEPTANCE CORPORATION I
### J.P. MORGAN MORTGAGE TRUST 2005-A3

J.P. MORGAN ACCEPTANCE CORPORATION I

(Exact name of registrant as specified in its charter)

| Delaware | 333-121990 | 3-3475488 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

270 Park Avenue
New York, New York  10017

(Address of Principal Executive Offices)
(Zip Code)

Registrant's telephone number, including area code (212) 834-3850

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[  ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
[  ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
[  ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
[  ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Item 8.01.  Other Events.

On May 26, 2005, J.P. Morgan Acceptance Corporation I (the "Company") entered into a Pooling and Servicing Agreement dated as of May 1, 2005 (the "Pooling and Servicing Agreement"), by and among the Company, as depositor, Wells Fargo Bank, N.A., as master servicer (in such capacity, the "Master Servicer") and securities administrator (in such capacity, the "Securities Administrator") and Wachovia Bank, National Association, as trustee (the "Trustee"), providing for the issuance of J.P. Morgan Mortgage Trust 2005-A3 Mortgage Pass-Through Certificates. The Pooling and Servicing Agreement is annexed hereto as Exhibit 99.1.

Item 9.01.  Financial Statements and Exhibits.

(a)  Financial statements of businesses acquired:

   Not applicable.

(b)  Pro forma financial information:

   Not applicable.

(c)  Exhibits:

Exhibit No.    Description

99.1        The Pooling and Servicing Agreement, dated as of May 1, 2005, by and among the Company, the Master Servicer, the Securities Administrator and the Trustee.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

J.P. MORGAN ACCEPTANCE CORPORATION I

By: /s/ Jonathan P. Davis
   Name:  Jonathan P. Davis
   Title:  Vice President

Dated:  June 16, 2005

Exhibit Index

99.1        The Pooling and Servicing Agreement

EX-99.2.jpmmt2005a1poolingandservics.htm EXHIBIT 99.1 POOLING AND SERVICING AGREEMENT

Execution Copy

J.P. MORGAN ACCEPTANCE CORPORATION I
*Depositor*

WELLS FARGO BANK, N.A.
*Master Servicer and Securities Administrator*

and

WACHOVIA BANK, NATIONAL ASSOCIATION
*Trustee*

POOLING AND SERVICING AGREEMENT

Dated as of May 1, 2005

J.P. MORGAN MORTGAGE TRUST 2005-A3

MORTGAGE PASS-THROUGH CERTIFICATES

TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS

Section 1.01   Definitions.                                                                 1
Section 1.02   Calculations Respecting Mortgage Loans.                                     44

ARTICLE II
DECLARATION OF TRUST; ISSUANCE OF CERTIFICATES

Section 2.01   Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.       44
Section 2.02   Acceptance of Trust Fund by Trustee; Review of Documentation for Trust
               Fund.                                                                       48
Section 2.03   Representations and Warranties of the Depositor.                            49
Section 2.04   Representations and Warranties as to the Mortgage Loans.                    51
Section 2.05   Discovery of Breach; Repurchase or Substitution of Mortgage Loans.         53
Section 2.06   Grant Clause.                                                               55

ARTICLE III
THE CERTIFICATES

Section 3.01   The Certificates.                                                           56
Section 3.02   Registration.                                                               57
Section 3.03   Transfer and Exchange of Certificates.                                      58
Section 3.04   Cancellation of Certificates.                                               61
Section 3.05   Replacement of Certificates.                                                61
Section 3.06   Persons Deemed Owners.                                                      62
Section 3.07   Temporary Certificates.                                                     62
Section 3.08   Appointment of Paying Agent.                                                63
Section 3.09   Book-Entry Certificates.                                                    63

ARTICLE IV
ADMINISTRATION OF THE TRUST FUND

Section 4.01   Custodial Accounts; Distribution Account.                                   64
Section 4.02   [Reserved].                                                                 66
Section 4.03   [Reserved].                                                                 66
Section 4.04   Reports to Trustee and Certificateholders.                                  66

ARTICLE V
DISTRIBUTIONS TO HOLDERS OF CERTIFICATES

Section 5.01   Distributions Generally.                                                    68
Section 5.02   Distributions from the Distribution Account.                                69
Section 5.03   Allocation of Losses.                                                       76
Section 5.04   Advances by Master Servicer.                                                78
Section 5.05   Compensating Interest Payments.                                             79

ARTICLE VI
CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR; EVENTS OF DEFAULT

Section 6.01   Duties of Trustee and the Securities Administrator.                         79
Section 6.02   Certain Matters Affecting the Trustee and the Securities Administrator.     82

Section 6.03    Trustee and Securities Administrator Not Liable for Certificates.    84
Section 6.04    Trustee and the Securities Administrator May Own Certificates.    84
Section 6.05    Eligibility Requirements for Trustee.    84
Section 6.06    Resignation and Removal of Trustee and the Securities Administrator.    85
Section 6.07    Successor Trustee and Successor Securities Administrator.    86
Section 6.08    Merger or Consolidation of Trustee or the Securities Administrator.    87
Section 6.09    Appointment of Co-Trustee, Separate Trustee or Custodian.    87
Section 6.10    Authenticating Agents.    88
Section 6.11    Indemnification of the Trustee and the Securities Administrator.    89
Section 6.12    Fees and Expenses of Securities Administrator and the Trustee.    90
Section 6.13    Collection of Monies.    90
Section 6.14    Events of Default; Trustee To Act; Appointment of Successor.    90
Section 6.15    Additional Remedies of Trustee Upon Event of Default.    94
Section 6.16    Waiver of Defaults.    94
Section 6.17    Notification to Holders.    94
Section 6.18    Directions by Certificateholders and Duties of Trustee During Event of Default.    95
Section 6.19    Action Upon Certain Failures of the Master Servicer and Upon Event of Default.    95
Section 6.20    Preparation of Tax Returns and Other Reports.    95

ARTICLE VII
PURCHASE OF MORTGAGE LOANS AND TERMINATION OF THE TRUST FUND

Section 7.01    Purchase of Mortgage Loans; Termination of Trust Fund Upon Purchase or Liquidation of All Mortgage Loans.    97
Section 7.02    Procedure Upon Redemption or Other Termination of Trust Fund.    98
Section 7.03    Additional Trust Fund Termination Requirements.    99

ARTICLE VIII
RIGHTS OF CERTIFICATEHOLDERS

Section 8.01    Limitation on Rights of Holders.    100
Section 8.02    Access to List of Holders.    100
Section 8.03    Acts of Holders of Certificates.    101

ARTICLE IX
ADMINISTRATION AND SERVICING OF MORTGAGE LOANS BY THE MASTER SERVICER

Section 9.01    Duties of the Master Servicer; Enforcement of Servicers' and Master Servicer's Obligations.    102
Section 9.02    Assumption of Master Servicing by Trustee.    104
Section 9.03    Representations and Warranties of the Master Servicer.    104
Section 9.04    Compensation to the Master Servicer.    106
Section 9.05    Merger or Consolidation.    106
Section 9.06    Resignation of Master Servicer.    107
Section 9.07    Assignment or Delegation of Duties by the Master Servicer.    107
Section 9.08    Limitation on Liability of the Master Servicer and Others.    107
Section 9.09    Indemnification; Third-Party Claims.    108

ARTICLE X
REMIC ADMINISTRATION

Section 10.01    REMIC Administration.    108
Section 10.02    Prohibited Transactions and Activities.    111
Section 10.03    Indemnification with Respect to Prohibited Transactions or Loss of REMIC Status.    111
Section 10.04    REO Property.    111
Section 10.05    Fidelity.    112

ARTICLE XI
MISCELLANEOUS PROVISIONS

Section 11.01    Binding Nature of Agreement; Assignment.    112
Section 11.02    Entire Agreement.    112
Section 11.03    Amendment.    113
Section 11.04    Voting Rights.    114
Section 11.05    Provision of Information.    114
Section 11.06    Governing Law.    115
Section 11.07    Notices.    115
Section 11.08    Severability of Provisions.    115
Section 11.09    Indulgences; No Waivers.    115
Section 11.10    Headings Not To Affect Interpretation.    116
Section 11.11    Benefits of Agreement.    116
Section 11.12    Special Notices to the Rating Agencies.    116
Section 11.13    Conflicts.    117
Section 11.14    Counterparts.    117
Section 11.15    No Petitions.    117

ATTACHMENTS

Exhibit A    Forms of Certificates
Exhibit B    Form of Residual Certificate Transfer Affidavit (Transferee)
Exhibit C    Form of Residual Certificate Transfer Affidavit (Transferor)
Exhibit D    [Reserved]
Exhibit E    List of Purchase and Servicing Agreements
Exhibit F    List of Custodial Agreements
Exhibit G    List of Limited Purpose Surety Bonds
Exhibit H    Form of Rule 144A Transfer Certificate
Exhibit I    Form of Purchaser's Letter for Institutional Accredited Investors
Exhibit J    Form of ERISA Transfer Affidavit
Exhibit K    Form of Letter of Representations with the Depository Trust Company
Exhibit L    Form of Custodian Certification
Exhibit M    [Reserved]

Schedule A    Mortgage Loan Schedule

https://www.sec.gov/Archives/edgar/data/1338593/000116231805000481...

This POOLING AND SERVICING AGREEMENT, dated as of May 1, 2005 (the "Agreement"), by and among J.P. MORGAN ACCEPTANCE CORPORATION I, a Delaware corporation, as depositor (the "Depositor"), WACHOVIA BANK, NATIONAL ASSOCIATION, as trustee (the "Trustee"), and WELLS FARGO BANK, N.A., in its dual capacities as master servicer (the "Master Servicer") and securities administrator (the "Securities Administrator"), and acknowledged by J.P. MORGAN MORTGAGE ACQUISITION CORP., a Delaware corporation, as seller (the "Seller"), for purposes of Sections 2.04 and 2.05.

PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from the Seller and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by the Depositor to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trustee as consideration for the Trustee's transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein, with respect to the Mortgage Loans and the other property constituting the Trust Fund, are for the benefit of the Holders from time to time of the Certificates. The Depositor, the Trustee, the Master Servicer and the Securities Administrator are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, the Securities Administrator shall elect that the Trust Fund (exclusive of the Additional Collateral) be treated for federal income tax purposes as comprising **four real estate mortgage investment conduits** (each, a "REMIC" or, in the alternative, "Lower-Tier REMIC 1," "Lower-Tier REMIC 2," "Lower-Tier REMIC 3," and the "Upper-Tier" or "Master" REMIC). Each Certificate, other than the Class A-R Certificate, shall represent ownership of one or more regular interests in the Upper-Tier REMIC for purposes of the REMIC Provisions. The Class A-R Certificate represents ownership of the sole class of residual interest in the Upper-Tier REMIC. The Upper-Tier REMIC shall hold as assets the several classes of uncertificated Lower-Tier REMIC Interests in each Lower-Tier REMIC (other than the Class LT1-A-R, LT2-A-R, and LT3-A-R Interests). Lower-Tier REMIC 1 shall hold as assets all property of the Trust Fund (except for any Additional Collateral) related to Pool 1, Pool 2, Pool 3, Pool 4, Pool 5, and Pool 6. Lower-Tier REMIC 2 shall hold as assets all property of the Trust Fund (except for any Additional Collateral) related to Pool 7, Pool 8, Pool 9, and Pool 10. Lower-Tier REMIC 3 shall hold as assets all property of the Trust Fund (except for any Additional Collateral) related to Pool 11. Each Lower-Tier REMIC Interest in Lower-Tier REMIC 1, Lower-Tier REMIC 2, or Lower-Tier REMIC 3 (other than the Class LT1-A-R, Class LT2-A-R, and Class LT3-A-2 Interests, respectively) is hereby designated as a regular interest in a Lower-Tier REMIC. The latest possible maturity date of all REMIC regular interests created in this Agreement shall be the Latest Possible Maturity Date.

**The Lower-Tier REMIC 1**

The Lower-Tier REMIC 1 Regular Interests shall have the initial Class Principal Amounts, pass-through rates and Corresponding Mortgage Pools as set forth in the following table:

| REMIC 1 Interests | Initial Principal Amount | Pass-Through Rate | Corresponding Mortgage Pool |
|---|---|---|---|
| A-1  (0.9% of SP Group 1) | (1) | (2) | 1 |
| B-1  (0.1% of SP Group 1) | (1) | (2) | 1 |
| C-1  (Excess of Group 1) | (1) | (2) | 1 |
| A-2  (0.9% of SP Group 2) | (1) | (2) | 2 |
| B-2  (0.1% of SP Group 2) | (1) | (2) | 2 |
| C-2  (Excess of Group 2) | (1) | (2) | 2 |
| A-3  (0.9% of SP Group 3) | (1) | (2) | 3 |
| B-3  (0.1% of SP Group 3) | (1) | (2) | 3 |
| C-3  (Excess of Group 3) | (1) | (2) | 3 |
| A-4  (0.9% of SP Group 4) | (1) | (2) | 4 |
| B-4  (0.1% of SP Group 4) | (1) | (2) | 4 |
| C-4  (Excess of Group 4) | (1) | (2) | 4 |
| A-5  (0.9% of SP Group 5) | (1) | (2) | 5 |
| B-5  (0.1% of SP Group 5) | (1) | (2) | 5 |
| C-5  (Excess of Group 5) | (1) | (2) | 5 |
| A-6  (0.9% of SP Group 6) | (1) | (2) | 6 |
| B-6  (0.1% of SP Group 6) | (1) | (2) | 6 |
| C-6  (Excess of Group 6) | (1) | (2) | 6 |
| LT1-A-R | (3) | (3) | A-R |

(1) Each Class A Interest shall have a principal balance initially equal to 0.9% of the Pool Subordinate Amount ("SP") of its corresponding Mortgage Pool. Each Class B Interest shall have a principal balance initially equal to 0.1% of the Pool Subordinate Amount of its corresponding Mortgage Pool. The initial principal balance of each Class C Interest shall equal the excess of the initial aggregate principal balance of its corresponding Mortgage Pool over the initial aggregate principal balances of the Class A and Class B Interests corresponding to such Mortgage Pool.

(2) A rate equal to the weighted average of the Net Mortgage Rates of the Mortgage Loans of the corresponding Mortgage Pool.

(3) The Class LT1-A-R Interest is the sole class of residual interest in Lower-Tier REMIC 1. It has no principal balance and pays no principal or interest.

On each Distribution Date, the Available Funds from each Mortgage Pool to which an interest in each Mortgage Pool relates shall be distributed with respect to its corresponding Lower-Tier REMIC Interests in the following manner:

(1) Interest. Interest is to be distributed with respect to each Lower-Tier REMIC 1 Interest at the rate, or according to the formulas, described above.

(2) Principal if no Cross-Over Situation Exists. If no Cross-Over Situation exists with respect to any Class of Interests, then Principal Amounts arising with respect to each such Mortgage Pool shall be allocated: first to cause the Mortgage Pool's corresponding Class A and Class B to equal, respectively, 0.9% of the SP and 0.1% of the SP, and second to the Mortgage Pool's corresponding Class C Interest.

(3) Principal if a Cross-Over Situation Exists. If a Cross-Over Situation exists with respect to the Class A and Class B Interests of a Mortgage Pool then:

(a) if the Calculation Rate in respect of such outstanding Class A and Class B Interests is less than the Aggregate Pool I Subordinate Net WAC, Principal Relocation Payments will be made proportionately to the outstanding Class A Interests prior to any other Principal Distributions from such Mortgage Pool; and

(b) if the Calculation Rate in respect of the outstanding Class A and Class B Interests is greater than the Aggregate Pool I Subordinate Net WAC, Principal Relocation Payments will be made proportionately to the outstanding Class B Interests prior to any other Principal Distributions from such Mortgage Pool.

In each case, Principal Relocation Payments will be made so as to cause the Calculation Rate in respect of the outstanding Class A and Class B Interests to equal the Aggregate Pool I Subordinate Net WAC. With respect to each Mortgage Pool, if (and to the extent that) the sum of (a) the principal payments comprising the Principal Remittance Amount received during the Due Period and (b) the Realized Losses, are insufficient to make the necessary reductions of principal on the Class A and Class B Interests, then interest will be added to the Mortgage Pool's other Interests that are not receiving Principal Relocation Payments, in proportion to their principal amounts.

(c) The outstanding aggregate Class A and Class B Interests for all Mortgage Pools shall not be reduced below 1 percent of the excess of (i) the aggregate outstanding Class Principal Amounts of all Mortgage Pools as of the end of any Due Period over (ii) the Senior Certificates for all Mortgage Pools as of the related Distribution Date (after taking into account distributions of principal on such Distribution Date).

If (and to the extent that) the limitation in paragraph (c) prevents the distribution of principal to the Class A and Class B Interests of a Mortgage Pool, and if the Mortgage Pool's Class C Interest has already been reduced to zero, then the excess principal from that Mortgage Pool will be paid to the Class C Interests of the other Mortgage Pools, the aggregate Class A and Class B Interests of which are less than one percent of the Pool Subordinate Amount. If the Mortgage Pool of a Class C Interest that receives such payment has a weighted average Net Mortgage Rate below the weighted average Net Mortgage Rate of the Mortgage Pool making the payment, then the payment will be treated by the Lower-Tier REMIC 1 as a Realized Loss. Conversely, if the Mortgage Pool of a Class C Interest that receives such payment has a weighted average Net Mortgage Rate above the weighted average Net Mortgage Rate of the Mortgage Pool making the payment, then the payment will be treated by Lower-Tier REMIC 1 as a reimbursement for prior Realized Losses.

**The Lower-Tier REMIC 2**

The Lower-Tier REMIC 2 Regular Interests shall have the initial Class Principal Amounts, pass-through rates and Corresponding Mortgage Pools as set forth in the following table:

| REMIC 2 Interests | Initial Principal Amount | Pass-Through Rate | Corresponding Mortgage Pool |
|---|---|---|---|
| A-1  (0.9% of SP Group 7) | (1) | (2) | 7 |
| B-1  (0.1% of SP Group 7) | (1) | (2) | 7 |
| C-1  (Excess of Group 7) | (1) | (2) | 7 |
| A-2  (0.9% of SP Group 8) | (1) | (2) | 8 |
| B-2  (0.1% of SP Group 8) | (1) | (2) | 8 |
| C-2  (Excess of Group 8) | (1) | (2) | 8 |
| A-3  (0.9% of SP Group 9) | (1) | (2) | 9 |

close of business of the immediately preceding Distribution Date, after giving effect to all distributions made on such date.

Certificate Register and Certificate Registrar:  The register maintained and the registrar appointed pursuant to Section 3.02.  The Securities Administrator will act as the initial Certificate Registrar under this Agreement.

Certificateholder:  The meaning provided in the definition of "Holder."

Chase Originator:  CHF and/or JPMCB, as the context requires.

Chase Originator Mortgage Loan:  Each Mortgage Loan originated by a Chase Originator and listed on the Mortgage Loan Schedule.

Chase Originator Purchase and Servicing Agreement:  The (i) Flow Mortgage Loan Purchase, Warranties and Servicing Agreement, dated as of January 1, 2004, as amended by Amendment No. 1 thereto dated as of June 1, 2004, between the Seller and Chase Manhattan Mortgage Corporation and listed in Exhibit E hereto and further amended by Amendment No. 2 thereto and/or (ii) Flow Mortgage Loan Purchase, Warranties and Servicing Agreement, dated as of January 1, 2005 between the Seller, JPMCB and CHF and listed in Exhibit E hereto, as the context requires.

CHF:  Chase Home Finance, LLC (successor by merger to Chase Manhattan Mortgage Corporation) or any successor in interest.

Civil Relief Act:  The Servicemembers Civil Relief Act and any similar state laws.

Class:  Collectively, Certificates bearing the same class designation.  In the case of the Lower-Tier REMIC, the term "Class" refers to all Lower-Tier Interests having the same alphanumeric designation.

Class A-R Certificate:  The Class A-R Certificate executed by the Trustee or Securities Administrator on behalf of the Trustee, and authenticated and delivered by the Authenticating Agent, substantially in the form annexed hereto as Exhibit A, and evidencing the ownership of the residual interest in the Upper-Tier REMIC.

Class Principal Amount:  With respect to each Class of Certificates, the aggregate of the Certificate Principal Amounts of all Certificates of such Class at the date of determination.  With respect to any Lower-Tier Interest, the initial Class Principal Amount as shown or described in the table set forth in the Preliminary Statement for the issuing REMIC, as reduced by principal distributed with respect to such Lower-Tier Interest and Realized Losses allocated to such Lower-Tier Interest at the date of determination.

Class Subordination Percentage:  With respect to each Class of Subordinate Certificates, for each Distribution Date, the percentage obtained by dividing the Class Principal Amount of such Class immediately prior to such Distribution Date by (a) in the case of the Aggregate Pool I Subordinate Certificates, the aggregate Class Principal Amount of all Aggregate Pool I Certificates, (B) in the case of the Aggregate Pool II Subordinate Certificates, the aggregate Class Principal Amount of all Aggregate Pool II Certificates and (b) in the case of the Pool 11 Subordinate Certificates, the aggregate Class Principal Amount of all Pool 11 Certificates, in each case immediately before that Distribution Date.

Clearing Agency:  An organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended.  As of the Closing Date, the Clearing Agency shall be The Depository Trust Company.

Clearing Agency Participant:  A broker, dealer, bank, other financial institution or other Person for whom from time to time a Clearing Agency effects book-entry transfers and pledges of securities deposited with the Clearing Agency.

Closing Date:  May 26, 2005.

Code:  The Internal Revenue Code of 1986, as amended, and as it may be further amended from time to time, any successor statutes thereto, and applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form.

Compensating Interest Payment:  As to any Distribution Date, the lesser of (1) the Master Servicing Fee for such date, to the extent required by Section 5.05, and (2) any Prepayment Interest Shortfall for such date.

Consent:  A document executed by the Cooperative Corporation (i) consenting to the sale of the Cooperative Unit to the Mortgagor and (ii) certifying that all maintenance charges relating to the Cooperative Unit have been paid.

Cooperative Corporation:  The entity that holds title (fee or an acceptable leasehold estate) to the real property and improvements constituting the Cooperative Property and which governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

Cooperative Loan:  Any Mortgage Loan secured by Cooperative Shares and a Proprietary Lease.

Cooperative Property:  The real property and improvements owned by the Cooperative Corporation, that includes the allocation of individual dwelling units to the holders of the shares of the Cooperative Corporation.

Cooperative Shares:  Shares issued by a Cooperative Corporation.

Cooperative Unit:  With respect to any Cooperative Loan, a specific unit in a Cooperative Property.

Corporate Trust Office:  With respect to the Trustee, the principal corporate trust office of the Trustee located at 401 South Tryon Street, Charlotte, North Carolina, 28288-1179 Attention: Structured Finance Trust Services, J.P. Morgan Mortgage Trust 2005-A3, or at such other address as the Trustee may designate from time to time by notice to the Certificateholders, the Depositor, the Master Servicer and the Securities Administrator or the principal corporate trust office of any successor Trustee.  With respect to the Certificate Registrar and presentment of Certificates for registration of transfer, exchange or final payment, Wells Fargo Bank, N.A., Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479, Attention: Corporate Trust, J.P. Morgan Mortgage Trust 2005-A3.

Corresponding Certificates:  With respect to each Middle-Tier Interest, the Certificates so designated in the Preliminary Statement.

Countrywide:  Countrywide Home Loans, Inc.

Countrywide Mortgage Loan:  Each Mortgage Loan originated by Countrywide Home Loans, Inc. and listed on the Mortgage Loan Schedule.

Countrywide Purchase and Servicing Agreement:  The Master Mortgage Loan Purchase and Servicing Agreement, dated as of August 28, 2003, as amended by Amendment No. 1, thereto dated as of June 1, 2004, between the Seller and Countrywide Home Loans, Inc. and listed in Exhibit E hereto.

Credit Support Depletion Date:  For the Aggregate Pool I Senior Certificates, Aggregate Pool II Senior Certificate and the Pool 11 Senior Certificates, the first Distribution Date, if any, on which the aggregate Class Principal Amount of the Aggregate Pool I Subordinate Certificates, Aggregate Pool II Subordinate Certificates and Pool 11 Subordinate Certificates, respectively, have been reduced to zero.

Cross-Over Situation:  For any Distribution Date and for any Mortgage Pool (after taking into account principal distributions on such Distribution Date) a Cross-Over Situation exists with respect to the Class A and Class B Interests of the Mortgage Pool if such Interests in the aggregate are less than 1% of the Subordinated Portion of the Mortgage Pool.

CTX:  CTX Mortgage Company, LLC, or any successor in interest.

CTX Mortgage Loan:  Each Mortgage Loan originated by CTX and listed on the Mortgage Loan Schedule.

CTX Purchase and Servicing Agreement:  The Mortgage Loan Sale Agreement, dated as of March 10, 2005 among Harwood Street Funding I, LLC, CTX Mortgage Company, LLC and the Seller and listed in Exhibit E hereto.

Current Interest:  With respect to each Class of Certificates and any Distribution Date, the aggregate amount of interest accrued at the applicable Certificate Interest Rate during the related Accrual Period on the Class Principal Amount of such Class immediately prior to such Distribution Date.

Custodial Accounts:  Each custodial account (other than an Escrow Account) established and maintained by a Servicer pursuant to a Purchasing and Servicing Agreement.

Custodial Agreements:  The Custodial Agreements, listed in Exhibit F hereof, as each such agreement may be amended or supplemented from time to time as permitted hereunder.

Custodian:  A Person who is at anytime appointed by the Trustee and the Depositor as a custodian of the Mortgage Documents and the Trustee Mortgage Files.  The initial Custodian is  JPMorgan Chase Bank, National Association, a banking association organized under the laws of the United States.

Cut-off Date:  May 1, 2005.

DBRS:  Dominion Bond Rating Service, Inc., or any successor in interest.

Debt Service Reduction:  With respect to any Mortgage Loan, a reduction by a court of competent jurisdiction in a proceeding under the Bankruptcy Code in the Scheduled Payment for such Mortgage Loan

Pooling and Servicing Agreement

https://www.sec.gov/Archives/edgar/data/1328503/000116231805000481...

Group 3:  All of the Group 3 Certificates.

Group 3 Certificate:  Any Class 3-A-1, Class 3-A-2, Class 3-A-3,  Class  3-A-4 and Class 3-A-5 Certificate.

Group 4:  All of the Group 4 Certificates.

Group 4 Certificate:  Any Class 4-A-1 and Class 4-A-2 Certificate.

Group 5:  All of the Group 5 Certificates.

Group 5 Certificate:  Any Class 5-A-1, Class 5-A-2 and Class 5-A-3 Certificate.

Group 6:  All of the Group 6 Certificates.

Group 6 Certificate:  Any Class 6-A-1, Class 6-A-2, Class 6-A-3, Class 6-A-4, Class 6-A-5, Class 6-A-6 and Class 6-A-7 Certificate.

Group 7:  All of the Group 7 Certificates.

Group 7 Certificate:  Any Class 7CA1 and Class 7CA2 Certificate.

Group 8:  All of the Group 8 Certificates.

Group 8 Certificate:  Any Class 8JA1 and Class 8JA2 Certificate.

Group 9:  All of the Group 9 Certificates.

Group 9 Certificate:  Any Class 9CA1 and Class 9CA2 Certificate.

Group 10:  All of the Group 10 Certificates.

Group 10 Certificate:  Any Class 10-J-1 and Class 10-J-2 Certificate.

Group 11:  All of the Group 11 Certificates.

Group 11 Certificate:  Any Class 11-A-1, Class 11-A-2, Class 11-A-3 and Class 11-A-4 Certificate.

Holder or Certificateholder:  The registered owner of any Certificate or Uncertificated Interest as recorded on the books of the Certificate Registrar except that, solely for the purposes of taking any action or giving any consent pursuant to this Agreement, any Certificate registered in the name of the Depositor, the Trustee, the Master Servicer, the Securities Administrator and any Servicer, or any Affiliate thereof shall be deemed not to be outstanding in determining whether the requisite percentage necessary to effect any such consent has been obtained, except that, in determining whether the Trustee or the Securities Administrator shall be protected in relying upon any such consent, only Certificates which a Responsible Officer of the Trustee or the Securities Administrator knows to be so owned shall be disregarded.  Each of the Trustee and the Securities Administrator may request and conclusively rely on certifications by the Depositor, the Master Servicer, the Securities Administrator (in the case of the Trustee), the Trustee (in the case of the Securities Administrator) or any Servicer in determining whether any Certificates are registered to an Affiliate of the Depositor, the Master Servicer, the Securities Administrator or any Servicer.

HUD:  The United States Department of Housing and Urban Development, or any successor thereto.

Independent:  When used with respect to any Accountants, a Person who is "independent" within the meaning of Rule 2-01(b) of the Securities and Exchange Commission's Regulation S-X.  When used with respect to any other Person, a Person who (a) is in fact independent of another specified Person and any Affiliate of such other Person, (b) does not have any material direct financial interest in such other Person or any Affiliate of such other Person, and (c) is not connected with such other Person or any Affiliate of such other Person as an officer, employee, promoter, underwriter, trustee, partner, director or Person performing similar functions.

Index:  As to each Mortgage Loan, the index from time to time in effect for adjustment of the Mortgage Rate as set forth as such on the related Mortgage Note.

Initial Bankruptcy Coverage Amount:  With respect to the (i) Aggregate Pool I Certificates, $228,753, (ii) Aggregate Pool II Certificates, $183,737 and (iii) Pool 11 Certificates, $100,000.

Initial Optional Purchase Date:  With respect to Aggregate Group I, Aggregate Group II or Pool 11, the first Distribution Date following the date on which the (i) Aggregate Stated Principal Balance of Aggregate Group I is equal to or less than 5% of the Aggregate Stated Principal Balance of Aggregate Group I as of the Cut-off Date, (ii) Aggregate Stated Principal Balance of Aggregate Group II is equal to or less than 5% of the Aggregate Stated Principal Balance of Aggregate Group II as of the Cut-off Date, and (iii) Aggregate Stated Principal Balance of Pool 11 is equal to or less than 5% of the Aggregate Stated Principal Balance of Pool 11 as of the Cut-off Date.

Insurance Policy:  With respect to any Mortgage Loan, any insurance policy, including all names and endorsements thereto in effect, including any replacement policy or policies for any Insurance Policies.

Insurance Proceeds:  Proceeds paid by any Insurance Policy (excluding proceeds required to be applied to the restoration and repair of the related Mortgaged Property or released to the Mortgagor), in each case other than any amount included in such Insurance Proceeds in respect of Insured Expenses and the proceeds from any Limited Purpose Surety Bond.

Insured Expenses:  Expenses covered by an Insurance Policy or any other insurance policy with respect to the Mortgage Loans.

Interest Distribution Amount:  For each Class of Certificates, on any Distribution Date, the Current Interest for such Class, as reduced by (i) such Class's share of Net Prepayment Interest Shortfalls and (ii) the related Class' allocable share of (A) after the related Special Hazard Coverage Termination Date, with respect to each Mortgage Loan in the related Mortgage Pool (or after the related Credit Support Depletion Date with respect to Aggregate Pool I or Aggregate Pool II, any Mortgage Loan in Aggregate Pool I or Aggregate Pool II, respectively) that became a Special Hazard Mortgage Loan during the calendar month preceding the month of such Distribution Date, the excess of one month's interest at the related Net Mortgage Rate on the Stated Principal Balance of such Mortgage Loan as of the Due Date in such month over the amount of Liquidation Proceeds applied as interest on such Mortgage Loan with respect to such month, (B) after the related Bankruptcy Coverage Termination Date, with respect to each Mortgage Loan in the related Mortgage Pool (or after the related Credit Support Depletion Date with respect to Aggregate Pool I or Aggregate Pool II, any Mortgage Loan in Aggregate Pool I or Aggregate Pool II, respectively) that became subject to a Bankruptcy Loss during the calendar month preceding the month of such Distribution Date, the interest portion of the related Debt Service Reduction or Deficient Valuation, (C) each related Relief Act Shortfall for the Mortgage Loans in the related Mortgage Pool (or after the related Credit Support Depletion Date with respect to Aggregate Pool I or Aggregate Pool II, any Mortgage Loan in Aggregate Pool I or Aggregate Pool II, respectively) incurred during the calendar month preceding the month of such Distribution Date and (D) after the related Fraud Loss Coverage Termination Date, with respect to each Mortgage Loan in the related Mortgage Pool (or after the related Credit Support Depletion Date with respect to Aggregate Pool I or Aggregate Pool II, any Mortgage Loan in Aggregate Pool I or Aggregate Pool II, respectively) that became a Fraud Loan during the calendar month preceding the month of such Distribution Date, the excess of one month's interest at the related Net Mortgage Rate on the Stated Principal Balance of such Mortgage Loan as of the Due Date in such month over the amount of Liquidation Proceeds applied as interest on such Mortgage Loan with respect to such month.  With respect to Aggregate Pool I, any such shortfalls and reductions for a Mortgage Pool shall be allocated among all Classes of Aggregate Pool I Senior Certificates of the Related Certificate Group (or in the case of the shortfalls and reductions set forth in clause (ii) of the preceding sentence and prior to the Credit Support Depletion Date, among all Classes of Aggregate Pool I Senior Certificates of the Related Certificate Group) proportionately on the basis of the Current Interest otherwise payable thereon on such Distribution Date and among the related Aggregate Pool I Subordinate Certificates on the basis of their Apportioned Principal Balances before taking into account any of the foregoing reductions.  With respect to Aggregate Pool II, any such shortfalls and reductions for a Mortgage Pool shall be allocated among all Classes of Aggregate Pool II Senior Certificates of the Related Certificate Group (or in the case of the shortfalls and reductions set forth in clause (ii) of the preceding sentence and prior to the Credit Support Depletion Date with respect to Aggregate Pool II, among all Classes of Aggregate Pool II Senior Certificates of the Related Certificate Group) proportionately on the basis of the Current Interest otherwise payable thereon on such Distribution Date and among the related Aggregate Pool II Subordinate Certificates on the basis of their Apportioned Principal Balances before taking into account any of the foregoing reductions.  With respect to Pool 11, any such shortfalls and reductions shall be allocated among all Classes of Pool 11 Certificates proportionately on the basis of the Current Interest otherwise payable thereon on such Distribution Date.

Interest Shortfall:  As to any Class of Certificates and any Distribution Date, (i) the amount by which the Interest Distribution Amount for such Class on such Distribution Date and all prior Distribution Dates exceeds (ii) amounts distributed in respect thereof to such Class on prior Distribution Dates.

Interest Transfer Amount:  For any Distribution Date and for any Undercollateralized Group, an amount equal to one month's interest on the applicable Principal Transfer Amount at the weighted average Certificate Interest Rate of the applicable Undercollateralized Group, plus any interest accrued on such Undercollateralized Group remaining unpaid from prior Distribution Dates.

Intervening Assignments:  The original intervening assignments of the Mortgage, notices of transfer or equivalent instrument.

JPMCB:  JPMorgan Chase Bank, National Association, or any successor in interest.

JPMCB Servicing Agreement:  The Flow Servicing Agreement between J.P. Morgan Mortgage Acquisition Corp. and JPMorgan Chase Bank, National Association, dated as of May 20, 2005.

Latest Possible Maturity Date:  The Distribution Date occurring in June 2035.

LIBOR:  Not applicable.

LIBOR Business Day:  Any day on which banks in London, England and the City of New York are open and conducting transactions in foreign currency and exchange.

LIBOR Certificate:  Not applicable.

LIBOR Determination Date:  Not applicable.

Limited Purpose Surety Bond:  Any Limited Purpose Surety Bond listed in Exhibit G.

Liquidated Mortgage Loan:  With respect to any Distribution Date, a defaulted Mortgage Loan (including any REO Property) which was liquidated in the calendar month preceding the month of such Distribution Date and as to which the related Servicer has certified (in accordance with its Purchase and Servicing Agreement) that it has received all amounts it expects to receive in connection with the liquidation of such Mortgage Loan including the final disposition of an REO Property.

Liquidation Proceeds:  Amounts, including Insurance Proceeds, received in connection with the partial or complete liquidation of defaulted Mortgage Loans, whether through trustee's sale, foreclosure sale or otherwise or amounts received in connection with any condemnation or partial release of a Mortgaged Property and any other proceeds received in connection with an REO Property.

Loan-To-Value Ratio:  With respect to any Mortgage Loan and as to any date of determination, the fraction (expressed as a percentage) the numerator of which is the principal balance of the related Mortgage Loan at such date of determination and the denominator of which is the Appraised Value of the related Mortgaged Property.

Lower-Tier Interest:  Any one of the interests in the Lower-Tier REMIC as described in the Preliminary Statement.

Lower-Tier REMIC:  As described in the Preliminary Statement.

Margin:  As to each Mortgage Loan, the percentage amount set forth on the related Mortgage Note added to the Index in calculating the Mortgage Rate thereon.

Master Servicer:  Wells Fargo Bank, N.A., a national banking association organized under the laws of the United States in its capacity as Master Servicer and any Person succeeding as Master Servicer hereunder or any successor in interest, or if any successor master servicer shall be appointed as herein provided, then such successor master servicer.

Master Servicing Fee:  With respect to any Distribution Date, an amount equal to the investment earnings on amounts on deposit in the Distribution Account.

Maximum Rate:  As to any Mortgage Loan, the maximum rate set forth on the related Mortgage Note at which interest can accrue on such Mortgage Loan.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor to Mortgage Electronic Registration Systems, Inc.

MERS Mortgage Loan:  Any Mortgage Loan registered with MERS on the MERS® System.

MERS® System:  The system of recording transfers of mortgages electronically maintained by MERS.

MIN:  The mortgage identification number for any MERS Mortgage Loan.

MOM Loan:  Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

Mortgage:  A mortgage, deed of trust or other instrument encumbering a fee simple interest in real property securing a Mortgage Note, together with improvements thereto.

Mortgage Documents:  With respect to each Mortgage Loan, the mortgage documents required to be delivered to the Custodian pursuant to each Custodial Agreement.

Mortgage Loan:  A Mortgage and the related notes or other evidences of indebtedness secured by each such Mortgage conveyed, transferred, sold, assigned to or deposited with the Trustee pursuant to Section 2.01 (including any Replacement Loan and REO Property), including without limitation, each Mortgage Loan listed on the Mortgage Loan Schedule, as amended from time to time.

Mortgage Loan Schedule:  The schedule attached hereto as Schedule A, which shall identify each Mortgage Loan, as such schedule may be amended by the Depositor or a Servicer from time to time to reflect the addition of Replacement Mortgage Loans to, or the deletion of Deleted Mortgage Loans from, the Trust Fund. Such schedule shall, among other things (i) designate the Servicer servicing such Mortgage Loan and the applicable Servicing Fee Rate; (ii) identify the designated Mortgage Pool in which such Mortgage Loan is included; and (iii) separately identify Additional Collateral Mortgage Loans.

Mortgage Note:  The original executed note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage under a Mortgage Loan.

Mortgage Pool:  Each of Pool 1, Pool 2, Pool 3, Pool 4, Pool 5, Pool 6, Pool 7, Pool 8, Pool 9, Pool 10 and Pool 11.

Mortgaged Property:  The underlying property, including any Additional Collateral, securing a Mortgage Loan which, with respect to a Cooperative Loan, is the related Cooperative Shares and Proprietary Lease.

Mortgage Rate:  As to any Mortgage Loan, the annual rate of interest borne by the related Mortgage Notes.

Mortgagor:  The obligor on a Mortgage Note.

Net Liquidation Proceeds:  With respect to any Liquidated Mortgage Loan or any other disposition of related Mortgaged Property, the related Liquidation Proceeds net of Advances, Servicer Advances, Servicing Fees and/or Master Servicing Fees and any other accrued and unpaid servicing fees received and retained in connection with the liquidation of such Mortgage Loan or Mortgaged Property.

Net Mortgage Rate:  With respect to any Mortgage Loan and any Distribution Date, the related Mortgage Rate as of the Due Date in the month preceding the month of such Distribution Date reduced by the Servicing Fee Rate for such Mortgage Loan.

Net Prepayment Interest Shortfall:  With respect to any Mortgage Loan and any Distribution Date, the amount by which any Prepayment Interest Shortfall for such date exceeds the amount payable by the Master Servicer and/or the related Servicer in respect of such shortfall.

Net WAC:  As to any Distribution Date, the weighted average of the Net Mortgage Rates of the Mortgage Loans as of the Due Date of the month preceding the month of such Distribution Date, weighted on the basis of their outstanding Stated Principal Balances (after giving effect to the Scheduled Payments due on or before such Due Date and Principal Prepayments received prior to such Due Date) at such time.

Net WAC Shortfall:  Not applicable.

Non-Book-Entry Certificate:  Any Certificate other than a Book-Entry Certificate.

Non-permitted Foreign Holder:  As defined in Section 3.03(f).

Non-U.S. Person:  Any person other than a "United States person" within the meaning of Section 7701(a)(30) of the Code.

Nonrecoverable Advance:  Any portion of an Advance or Servicer Advance previously made or proposed to be made by the Master Servicer and/or a Servicer (as certified in an Officer's Certificate of such Servicer), which in the good faith judgment of such party, shall not be ultimately recoverable by such party from the related Mortgagor, related Liquidation Proceeds or otherwise.

Offering Document:  The Prospectus.

Officer's Certificate:  A certificate signed by two Authorized Officers of the Depositor or the Chairman of the Board, any Vice Chairman, the President, any Vice President or any Assistant Vice President of the Master Servicer or the Securities Administrator, and in each case delivered to the Trustee or the Securities Administrator , as the case may be, as required by this Agreement.

Officer's Certificate of a Servicer:  A certificate (i) signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Managing Director, a Vice President (however denominated), an Assistant Vice President, the Treasurer, the Secretary, or one of the Assistant Treasurers or Assistant Secretaries of a Servicer, or (ii) if provided for herein, signed by a Servicing Officer, as the case may be, and delivered to the Trustee, the Securities Administrator or the Master Servicer, as required hereby.

Opinion of Counsel:  A written opinion of counsel, reasonably acceptable in form and substance to the Trustee, the Securities Administrator or the Master Servicer, as required hereby, and who may be in-house or outside counsel to the Depositor, the Master Servicer, the Securities Administrator or the Trustee but which must be Independent outside counsel with respect to any such opinion of counsel concerning the transfer of any Residual Certificate or concerning certain matters with respect to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or the taxation, or the federal income tax status, of each REMIC.

Optional Termination:  Any purchase of the Mortgage Loans in Aggregate Pool I, Aggregate Pool II or Pool II, as applicable, pursuant to Section 7.01(c).

Original Applicable Credit Support Percentage:  With respect to each Class of Aggregate Pool I Subordinate Certificates, Aggregate Pool II Subordinate Certificates and Pool 11 Subordinate Certificates, the corresponding percentage set forth opposite its Class designation:

Aggregate Pool I Subordinate Certificates

Pool 11 Certificates:  The Group 11 Certificates.

Pool 11 Mortgage Loans:  Any Mortgage Loan in Pool 11.

Pool 11 Net WAC:  With respect to any Distribution Date, the weighted average of the Net Mortgage Rates of the Pool 11 Mortgage Loans as of the first day of the calendar month immediately preceding the calendar month of such Distribution Date, weighted on the basis of their Stated Principal Balances.

Pool 11 Senior Prepayment Percentage:  With respect to any Distribution Date and Pool 11, during the period beginning on the first Distribution Date and ending on the Distribution Date in May 2010, 100%. Except as provided herein, the Senior Prepayment Percentage for Pool 11 and any Distribution Date occurring on or after June 2010 shall be as follows: (i) for any Distribution Date occurring in or after June 2010 but before June 2011, the related Senior Percentage plus 70% of the related Subordinate Percentage for that date; (ii) for any Distribution Date occurring in or after June 2011 but before June 2012, the related Senior Percentage plus 60% of the related Subordinate Percentage for that date; (iii) for any Distribution Date occurring in or after June 2012 but before June 2013, the related Senior Percentage plus 40% of the related Subordinate Percentage for that date; (iv) for any Distribution Date occurring in or after June 2013 but before June 2014, the related Senior Percentage plus 20% of the related Subordinate Percentage for that date; and (v) for any Distribution Date occurring in June 2014 or thereafter, the related Senior Percentage for that date; provided, however, that there shall be no reduction in the related Senior Prepayment Percentage unless both Pool 11 Step-Down Conditions, as applicable, are satisfied with respect to Pool 11; and provided, further with respect to Pool 11, that if on any such Distribution Date the Senior Percentage for Pool 11 exceeds the related initial Senior Percentage, the Senior Prepayment Percentage for Pool 11 for that Distribution Date shall again equal 100%.

Notwithstanding the above, if on any Distribution Date the Two Times Test is satisfied, (a) on or prior to the Distribution Date in May 2008 the Senior Prepayment Percentage with respect to Pool 11 shall equal the related Senior Percentage plus 50% of the related Subordinate Percentage and (b) on or after to the Distribution Date in June 2008, the Senior Prepayment Percentage with respect to Pool 11 shall equal the related Senior Percentage.  In addition, if on any Distribution Date the allocation to the Senior Certificates then entitled to distributions of Principal Prepayments and other amounts in the percentage required above would reduce the sum of the Class Principal Amounts of those Certificates to below zero, the related Senior Prepayment Percentage for such Distribution Date shall be limited to the percentage necessary to reduce that Class Principal Amount to zero.

Pool 11 Subordinate Amount:  For any Distribution Date, the excess of the Aggregate Stated Principal Balance of the Pool 11 Mortgage Loans over the sum of the Class Principal Amounts of the Class 11-A-1, Class 11-A-2, Class 11-A-3 and Class 11-A-4 Certificates immediately before such Distribution Date.

Pool 11 Step-Down Conditions:  As of the first Distribution Date as to which any decrease in any Senior Prepayment Percentage applies with respect to Pool 11 (i) the outstanding principal balance of all Pool 11 Mortgage Loans 60 days or more Delinquent (including Mortgage Loans in foreclosure, REO Property or bankruptcy status) (averaged over the preceding six month period), as a percentage of the aggregate Class Principal Amount of the Pool 11 Subordinate Certificates on such Distribution Date, does not equal or exceed 50% and (ii) cumulative Realized Losses with respect to the Pool 11 Mortgage Loans do not exceed (a) with respect to each Distribution Date from June 2010 to May 2011, 30% of the Pool 11 Original Subordinate Principal Amount, (b) with respect to each Distribution Date from June 2011 to May 2012, 35% of the Pool 11 Original Subordinate Principal Amount, (c) with respect to each Distribution Date from June 2012 to May 2013, 40% of the Pool 11 Original Subordinate Principal Amount, (d) with respect to each Distribution Date from June 2013 to May 2014, 45% of the Pool 11 Original Subordinate Principal Amount and (e) with respect to each Distribution Date from and after June 2014 and thereafter, 50% of the Pool 11 Original Subordinate Principal Amount.

Pool 11 Subordinate Amount:  Any of the Pool 1, Pool 2, Pool 3, Pool 4, Pool 5, Pool 6, Pool 7, Pool 8, Pool 9, Pool 10 or Pool 11 Subordinate Amounts.

Pool 11 Subordinate Certificates:  Class III-B-1, Class III-B-2, Class III-B-3, Class III-B-4, Class III-B-5 and Class III-B-6 Certificates.

Pool 11 Original Subordinate Principal Amount:  With respect to Pool 11, the aggregate of the initial Class Principal Amounts of the Pool 11 Subordinate Certificates as of the Closing Date.

Prepayment Interest Shortfall:  With respect to any full or partial Principal Prepayment of a Mortgage Loan, the excess, if any, of (i) one full month's interest at the applicable Net Mortgage Rate on the Stated Principal Balance of such Mortgage Loan or, with respect to a partial Principal Prepayment, the portion of the Stated Principal Balance prepaid, immediately prior to such Principal Prepayment over (ii) the amount of interest actually received with respect to such Mortgage Loan in connection with such Principal Prepayment.

Prepayment Period:  With respect to each Distribution Date, the calendar month immediately preceding the month in which the Distribution Date occurs.

**Primary Mortgage Insurance Policy:  Each policy of primary mortgage guaranty insurance or any replacement policy therefor with respect to any Mortgage Loan.**

Principal Distribution Amount:  With respect to any Mortgage Pool and any Distribution Date, the sum of (a) each Scheduled Payment of principal collected or advanced on the related Mortgage Loans (before taking into account any Deficient Valuations or Debt Service Reductions) and due during the related Due Period, (b) that portion of the Purchase Price representing principal of any Mortgage Loans in such Mortgage Pool purchased in accordance with Section 2.05 hereof and received during the related Prepayment Period, (c) the principal portion of any related Substitution Amount received during the related Prepayment Period, (d) the principal portion of all Insurance Proceeds received during the related Prepayment Period with respect to Mortgage Loans in such Mortgage Pool that are not yet Liquidated Mortgage Loans, (e) the principal portion of all Net Liquidation Proceeds received during the related Prepayment Period with respect to Liquidated Mortgage Loans in such Mortgage Pool, (f) the principal portion of the proceeds of any Additional Collateral with respect to the Mortgage Loans in such Mortgage Pool, (g) the principal portion of all partial and full principal prepayments of Mortgage Loans in such Mortgage Pool applied by the Servicers during the related Prepayment Period, (h) any Subsequent Recoveries received during the related Prepayment Period and (i) on the Distribution Date on which the related Mortgage Pool is to be terminated pursuant to Article X hereof, that portion of the Redemption Price in respect of principal for such Mortgage Pool up to the portion of the Par Value in respect of principal calculated for that Mortgage Pool.

Principal Prepayment:  Any Mortgagor payment of principal or other recovery of principal on a Mortgage Loan that is recognized as having been received or recovered in advance of its scheduled Due Date and applied to reduce the principal balance of the Mortgage Loan in accordance with the terms of the Mortgage Note or the related Purchase and Servicing Agreement.

Principal Prepayment In Full:  Any Principal Prepayment of the entire principal balance of the Mortgage Loans.

Principal Relocation Payment:  A payment from any Mortgage Pool to Lower-Tier REMIC Regular Interests that correspond to a different Mortgage Pool as provided in the Preliminary Statement.  Principal Relocation Payments shall be made of principal allocations comprising the Principal Remittance Amount from a Mortgage Pool.

Principal Transfer Amount:  For any Distribution Date and for any Undercollateralized Group, the excess, if any, of the aggregate Class Principal Amount of such Undercollateralized Group immediately prior to such Distribution Date, over the Aggregate Stated Principal Balance of the related Mortgage Pool immediately prior to such Distribution Date.

Proceeding:  Any suit in equity, action at law or other judicial or administrative proceeding.

Proprietary Lease:  With respect to any Cooperative Property, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Cooperative Shares.

Prospectus:  The prospectus supplement dated May 25, 2005, together with the accompanying prospectus dated November 22, 2004, relating to the Certificates.

Purchase and Servicing Agreements:  The mortgage loan purchase and servicing agreements, listed in Exhibit E hereto, as each such agreement may be amended or supplemented from time to time as permitted hereunder.

Purchase Price:  With respect to any Mortgage Loan required or permitted to be purchased by the Seller or the Depositor pursuant to this Agreement, or by the related Originator or Servicer pursuant to the related Purchase and Servicing Agreement, an amount equal to the sum of (i) 100% of the unpaid principal balance of the Mortgage Loan on the date of such purchase and (ii) accrued interest thereon at the applicable Net Mortgage Rate from the date through which interest was last paid by the Mortgagor to the Due Date in the month in which the Purchase Price is to be distributed to Certificateholders, or such other amount as may be specified in the related Purchase and Servicing Agreement.

Rapid Prepayment Conditions:  As to any Distribution Date with respect to (A) Aggregate Pool I, (1) the Aggregate Subordinate Percentage for Aggregate Pool I on such date is less than 200% of the Aggregate Subordinate Percentage for Aggregate Pool I on the Closing Date; or (2) the outstanding Stated Principal Balance of the Mortgage Loans in any Mortgage Pool in Aggregate Pool I Delinquent 60 days or more (including Mortgage Loans in REO, foreclosure, or bankruptcy status) (averaged over the preceding six-month period), as a percentage of such Mortgage Pool's Pool Subordinate Amount, is greater than or equal to 50% and (B) Aggregate Pool II, if (1) the Aggregate Subordinate Percentage for Aggregate Pool II on such date is less than 200% of the Aggregate Subordinate Percentage for Aggregate Pool II on the Closing Date; or (2) the outstanding Stated Principal Balance of the Mortgage Loans in any Mortgage Pool in Aggregate Pool II Delinquent 60 days or more (including Mortgage Loans in REO, foreclosure, or bankruptcy status) (averaged over the preceding six-month period), as a percentage of such Mortgage Pool's Pool Subordinate Amount, is greater than or equal to 50%.

Rating Agency:  Each of S&P, DBRS and Fitch Ratings.

Realized Loss:  With respect to each Liquidated Mortgage Loan, an amount (not less than zero or more than the Stated Principal Balance of the Mortgage Loan) as of the date of such liquidation, equal to (i) the Stated Principal Balance of the Liquidated Mortgage Loan as of the date of such liquidation, plus (ii) interest at the Net Mortgage Rate from the Due Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date in the month in which Liquidation Proceeds are required to be distributed on the Stated Principal Balance of such Liquidated Mortgage Loan from time to time, minus (iii) the Liquidation Proceeds and the proceeds of any Additional Collateral, if any, received during the month in which such liquidation occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and to principal of the Liquidated Mortgage Loan.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the principal amount due under the related Mortgage Note has been reduced, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.

Recognition Agreement:  An agreement among a Cooperative Corporation, a lender and a Mortgagor with respect to a Cooperative Loan whereby such parties (i) acknowledge that such lender may make, or intends to make, such Cooperative Loan, and (ii) make certain agreements with respect to such Cooperative Loan.

Record Date:  As to any Distribution Date, the last Business Day of the month preceding the month of each Distribution Date or the Closing Date in the case of the first Distribution Date.

(A)   solely with respect to Aggregate Pool I and Aggregate Pool II, as applicable, any related Principal Transfer Amount paid from the Available Distribution Amount of the Related Certificate Group to an Undercollateralized Group; and

(B)   solely with respect to Aggregate Pool I and Aggregate Pool II, as applicable, the amount of principal distributions made to the related Senior Certificates pursuant to Section 5.02(h).

*provided, however*, solely with respect to (i) Aggregate Pool I, that on any Distribution Date after the fifth related Senior Termination Date, the Subordinate Principal Distribution Amount will not be calculated with respect to a Mortgage Pool, but instead will equal the amount calculated as above based on a Subordinate Percentage or Subordinate Prepayment Percentage, as applicable, for the Aggregate Pool I Subordinate Certificates for such Distribution Date with respect to all of the related Mortgage Loans; and (ii) Aggregate Pool II, that on any Distribution Date after the third related Senior Termination Date, the Subordinate Principal Distribution Amount will not be calculated with respect to a Mortgage Pool, but instead will equal the amount calculated as above based on a Subordinate Percentage or Subordinate Prepayment Percentage, as applicable, for the Aggregate Pool II Subordinate Certificates for such Distribution Date with respect to all of the related Mortgage Loans.

Subsequent Recoveries:   With respect to any Distribution Date, with respect to a Liquidated Mortgage Loan that resulted in a Realized Loss in a prior calendar month, amounts received by the Master Servicer from the related Servicer specifically related to such Liquidated Mortgage Loan.

Substitution Amount:   As defined in the second paragraph of Section 2.05(c).

Tax Matters Person:   The "tax matters person" as specified in the REMIC Provisions which, with respect to any REMIC formed hereby, shall initially be the Holder of the majority interest in the residual interest in such REMIC.

Trust Fund:   The corpus of the trust created pursuant to this Agreement, consisting of the Mortgage Loans and all interest and principal received thereon on or after the Cut-off Date (other than Scheduled Payments due on or prior to the Cut-off Date), the Depositor's rights assigned to the Trustee under the Purchase and Servicing Agreements, as modified by the Acknowledgments, the Insurance Policies relating to the Mortgage Loans, all cash, instruments or property held or required to be held in the Custodial Accounts, the Distribution Account, property that secured a Mortgage Loan, the pledge, control and guaranty agreements and Limited Purpose Surety Bond relating to the Additional Collateral Mortgage Loans.

Trustee:   Wachovia Bank, National Association, a national banking association organized under the laws of the United States and any Person succeeding the Trustee hereunder, or if any successor trustee or any co-trustee shall be appointed as herein provided, then such successor trustee and such co-trustee, as the case may be.

Trustee Mortgage Files:   With respect to each Mortgage Loan, the Mortgage Documents to be retained in the custody and possession of the Trustee or Custodian on behalf of the Trustee, as defined in Section 2.01 hereof.

Two Times Test:   As to any Distribution Date and the Aggregate Pool I Subordinate Certificates, (A) on or prior to the Distribution Date in May 2008, (i) the Aggregate Subordinate Percentage for the Pool I Subordinate Certificates is at least two times the related Aggregate Subordinate Percentage as of the Closing Date; (ii) the condition set forth in subclause (i) in the definition of Aggregate Pool I Step-Down Conditions is satisfied with respect to each Mortgage Pool in Aggregate Pool I; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Aggregate Pool I do not exceed 20% of the Aggregate Pool I Original Subordinate Principal Amount and (B) on or after the Distribution Date in June 2008, (i) the Aggregate Subordinate Percentage for the Pool I Subordinate Certificates is at least two times the related Aggregate Subordinate Percentage as of the Closing Date; (ii) the condition set forth in subclause (i) in the definition of Aggregate Pool I Step-Down Conditions is satisfied with respect to each Mortgage Pool in Aggregate Pool I; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Aggregate Pool I do not exceed 30% of the Aggregate Pool I Original Subordinate Principal Amount.

As to any Distribution Date and the Aggregate Pool II Subordinate Certificates, (A) on or prior to the Distribution Date in May 2008, (i) the Aggregate Subordinate Percentage for the Pool II Subordinate Certificates is at least two times the related Aggregate Subordinate Percentage as of the Closing Date; (ii) the condition set forth in subclause (i) in the definition of Aggregate Pool II Step-Down Conditions is satisfied with respect to each Mortgage Pool in Aggregate Pool II; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Aggregate Pool II do not exceed 20% of the Aggregate Pool II Original Subordinate Principal Amount and (B) on or after the Distribution Date in June 2008, (i) the Aggregate Subordinate Percentage for the Pool II Subordinate Certificates is at least two times the related Aggregate Subordinate Percentage as of the Closing Date; (ii) the condition set forth in clause (i) in the definition of Aggregate Pool II Step-Down Conditions is satisfied with respect to each Mortgage Pool in Aggregate Pool II; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Aggregate Pool II do not exceed 30% of the Aggregate Pool II Original Subordinate Principal Amount.

As to any Distribution Date and the Aggregate Pool 11 Subordinate Certificates, (A) on or prior to the Distribution Date in May 2008, (i) the Aggregate Subordinate Percentage for the Pool 11 Subordinate Certificates is at least two times the related Subordinate Percentage as of the Closing Date; (ii) the aggregate of the principal balances of all the Pool 11 Mortgage Loans Delinquent 60 days or more (including Mortgage Loans in REO, foreclosure or bankruptcy status) (averaged over the preceding six-month period), as a percentage of the aggregate of the Pool 11 Subordinate Certificates on such Distribution Date, does not equal or exceed 50%; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Pool 11 Mortgage Loans do not exceed 20% of the Pool 11 Original Subordinate Principal Amount, and (B) on or after the Distribution Date in June 2008, (i) the Subordinate Percentage for the Pool 11 Subordinate Certificates is at least two times the related Subordinate Percentage as of the Closing Date; (ii) the aggregate of the principal balances of all Mortgage Loans in Pool 11 Delinquent 60 days or more (including Mortgage Loans in REO, foreclosure or bankruptcy status) (averaged over the preceding six-month period), as a percentage of the aggregate of the Class Principal Amount of the Pool 11 Subordinate Certificates on such Distribution Date, does not equal or exceed 50%; and (iii) cumulative Realized Losses with respect to the Mortgage Loans in Pool 11 do not exceed 30% of the Pool 11 Original Subordinate Principal Amount.

UCC:   The Uniform Commercial Code as enacted in the relevant jurisdiction.

Uncertificated Interests:   The LT1-A-R Interest, the LT2-A-R Interests and the LT3-A-R Interest.

Undercollateralized Group:   With respect to any Distribution Date and any Certificate Group in an Aggregate Pool, with respect to which the aggregate Class Principal Amount of such Certificate Group is greater than the aggregate Stated Principal Balance of the Mortgage Loans in the related Mortgage Pool immediately prior to such Distribution Date.

Underwriter:   J.P. Morgan Securities Inc.

Underwriter's Exemption:   The prohibited transaction exemption granted to the Underwriter, or its affiliate, and most recently amended and restated by PTE 2002-19, or any substantially similar administrative exemption granted by the U.S. Department of Labor to the Underwriter.

Underwriting Agreement:   The Underwriting Agreement, dated January 26, 2005, among the Seller, the Depositor and the Underwriter.

Uniform Commercial Code:   The Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

Upper-Tier REMIC:   As described in the Preliminary Statement.

Voting Interests:   The portion of the voting rights of all the Certificates that is allocated to any Certificate for purposes of the voting provisions of this Agreement.   At all times during the term of this Agreement, 95.00% of all Voting Interests shall be allocated to the Class 1-A-1, Class 2-A-1, Class 3-A-1, Class 3-A-2, Class 3-A-3, Class 3-A-4, Class 3-A-5, Class 4-A-1, Class 4-A-2, Class 5-A-1, Class 5-A-2, Class 5-A-3, Class 6-A-1, Class 6-A-2, Class 6-A-3, Class 6-A-4, Class 6-A-5, Class 6-A-6, Class 7CA1, Class 7CA2, Class 8JA1, Class 8JA2, Class 9CA1, Class 9CA2, Class 10-J-1, Class 10-J-2, Class 11-A-1, Class 11-A-2, Class 11-A-3, Class 11-A-4, Class 1-B-1, Class 1-B-2, Class 1-B-3, Class 1-B-4, Class 1-B-5, Class 1-B-6, Class II-BA-1, Class II-BA-2, Class II-BA-3, Class II-BA-4, Class II-BA-5, Class II-BA-6, Class III-B-1, Class III-B-2, Class III-B-3, Class III-B-4 and Class III-B-5 Certificates in the proportion that the related Voting Interests shall be allocated among such Certificates based on the product of (i) 95% and (ii) the fraction, expressed as a percentage, the numerator of which is the aggregate Class Principal Amounts for each such Class then outstanding and the denominator of which is the Aggregate Stated Principal Balance outstanding.   At all times during the term of this Agreement, 5.00% of all Voting Interests shall be allocated to the Class A-R Certificates, while they remain outstanding in proportion to their relative Class Principal Amounts.   Voting Interests shall be allocated among the Certificates within each such Class in proportion to their Certificate Principal Amounts or Percentage Interests.

Wells Fargo:   Wells Fargo Bank, N.A., or any successor in interest.

Wells Fargo Mortgage Loan:   Each Mortgage Loan originated by Wells Fargo and listed on the Mortgage Loan Schedule.

Wells Fargo Purchase and Servicing Agreement:   Seller's Warranties and Servicing Agreement between J.P. Morgan Mortgage Acquisition Corp. and Wells Fargo Bank, N.A., dated as of April 1, 2005 and listed in Exhibit E hereto.

Section 1.02   Calculations Respecting Mortgage Loans.

Calculations required to be made pursuant to this Agreement with respect to any Mortgage Loan in the Trust Fund shall be made based upon current information as to the terms of the Mortgage Loans and reports of payments received from the Mortgagor on such Mortgage Loans and payments to be made to the Securities Administrator as supplied to the Securities Administrator by the Master Servicer.   The Securities Administrator shall not be required to recompute, verify or recalculate the information supplied to it by the Master Servicer or any Servicer.

ARTICLE II

DECLARATION OF TRUST;
ISSUANCE OF CERTIFICATES

Section 2.01   Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a)   Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05, in trust, all the right, title and interest of the Depositor in and to the Trust Fund.   Such conveyance includes, without limitation, (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on or before such date), and all such payments due after such date but

received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights of the Depositor as assignee of the Seller with respect to the Seller's rights under the Purchase and Servicing Agreements pursuant to the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the Depositor's rights under any Insurance Policies related to the Mortgage Loans; and (vi) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties and any Additional Collateral relating to the Additional Collateral Mortgage Loans, including, but not limited to, the pledge, control and guaranty agreements and the Limited Purpose Surety Bond to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in the creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth therein.

In connection with such transfer and assignment of the Mortgage Loans, the Custodian acting on the Trustee's behalf, will hold or continue to hold the documents or instruments listed below with respect to each Mortgage Loan (each, a "Trustee Mortgage File") so transferred and assigned.

The Trustee shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face.

On the Closing Date, the Custodian shall deliver to the Trustee and the Depositor certification ("Custodian Certification") substantially in the form attached hereto as Exhibit L certifying that, pursuant to each related Custodial Agreement, the applicable Originator delivered and released to the Custodian, subject to and in accordance with the relevant section of each related Purchase and Servicing Agreement or Custodial Agreement, the following documents pertaining to each of the Mortgage Loans identified in the Mortgage Loan Schedule (provided, however, that the Custodian shall not be required nor does it intend to re-examine the contents of the Trustee Mortgage File for any of the Mortgage Loans in connection with entering into this Agreement or providing the Custodian Certification required pursuant to this Section 2.01):

(i)     with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable);

(ii)     with respect to each Mortgage Loan (other than a Cooperative Loan) that is a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon;

(iii)     with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to "Wachovia Bank, National Association, as Trustee of J.P. Morgan Mortgage Trust 2005-A3, Mortgage Pass-Through Certificates, without recourse";

(iv)     with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all intervening assignments of the Mortgage, if any, with evidence of recording thereon, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Seller to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(v)     if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(vi)     if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same;

(vii)     if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original power of attorney and guaranty agreement with respect to such Mortgage Loan;

(viii)     if applicable, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed;

(ix)     with respect to each Mortgage Loan which constitutes a Cooperative Loan:

   (a)     the original of any security agreement or similar document executed in connection with the Cooperative Loan;

   (b)     the original Recognition Agreement;

   (c)     UCC-1 financing statements with recording information thereon from the appropriate governmental recording offices if necessary to perfect the security interest of the Cooperative Loan under the Uniform Commercial Code in the jurisdiction in which the Cooperative Property is located, accompanied by UCC-3 financing statements executed in blank for recordation of the change in the secured party thereunder;

   (d)     the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the Seller, then the Seller must execute an assignment of the Assignment of Proprietary Lease in blank;

(x)     if applicable, with respect to each Additional Collateral Mortgage Loan, the related pledge agreement, the UCC financing statement, if applicable, and such other document related thereto as may be required under the related Custodial Agreement; and

(xi)     any other document or instruments required to be delivered under the related Custodial Agreement.

In addition, in connection with the assignment of any MERS Mortgage Loan, it is understood that the related Originator will cause the MERS® System to indicate that such Mortgage Loans have been assigned by the related Originator to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS® System to identify the series of Certificates issued in connection with such Mortgage Loans. It is further understood that the related Originator will not, and the Master Servicer hereby agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(b)     [Reserved].

(c)     In instances where a title insurance policy is required to be delivered to the Trustee or the Custodian on behalf of the Trustee and is not so delivered, the Depositor will provide a copy of such title insurance policy to the Trustee, or to the Custodian on behalf of the Trustee, as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(d)     For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, herewith delivers to the Trustee, or to the Custodian on behalf of the Trustee, an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Distribution Account pursuant to Section 4.01 have been so deposited. All original documents that are not delivered to the Trustee or the Custodian on behalf of the Trustee shall be held by the Master Servicer or the related Servicer in trust for the benefit of the Trustee and the Certificateholders.

(e)     The Depositor and the Trustee hereto agree and understand that it is not intended that any Mortgage Loan be included in the Trust Fund that is (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 and (iii) a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004. The Trustee shall be entitled to indemnification from the Depositor and the Trust Fund for any loss, liability or expense arising out of, or in connection with, the provisions of this Section 2.01(e), including, without limitation, all costs, liabilities and expenses (including reasonable legal fees and expenses) of investigating and defending itself against any claim, action or proceeding, pending or threatened, relating to such provisions.

Section 2.02    Acceptance of Trust Fund by Trustee; Review of Documentation for Trust Fund.

(a)     Subject to the review provided by the Custodian as provided herein and in the Custodial Agreements, the Trustee, by execution and delivery hereof, acknowledges receipt by it or by the Custodian on its behalf of the Trustee Mortgage Files pertaining to the Mortgage Loans listed in the Mortgage Loan Schedule.

(b)     With respect to the PHH Mortgage Loans, within two Business Days after the delivery to the Custodian of the documents set forth in clauses (i), (iv), (v), (vii), (ix) and (xi), which shall be delivered within 120 days after the Closing Date (the "Follow-up Delivery Date") pursuant to the related Custodial Agreement, the Custodian shall, on behalf of the Trustee, ascertain that the original Assignment and Notice of Transfer with respect to each Additional Collateral Mortgage Loan is in its possession, and shall deliver an intermediate certification to the Trustee and the Depositor to the effect that, as to each Additional Collateral Mortgage Loan listed in the related Mortgage Loan Schedule (other than any Additional Collateral Mortgage Loan paid in full or any Additional Collateral Mortgage Loan specifically identified in such certification as not covered by such certification), the Assignment and Notice of Transfer is in its possession. With respect to the PHH Mortgage Loans, within 30 days after the Follow-up Delivery Date, the Custodian on behalf of the Trustee shall, for the benefit of Holders of the Certificates, review each Trustee Mortgage File and deliver a final certification, with any applicable exceptions noted thereon, to the Trustee and the Depositor to the effect that (i) all documents required to be delivered under the related Custodial Agreement are in its possession, (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan, and (iii) each Mortgage Note has been endorsed as required under the related Custodial Agreement.

(c)    With respect to the Mortgage Loans, other than the PHH Mortgage Loans, in the event there exist exceptions noted on the related Custodian Certification, not later than 120 Business Days after the Closing Date, the Custodian shall deliver to the Trustee and the Depositor a further certification with any applicable exceptions noted thereon.

(d)    Nothing in this Agreement shall be construed to constitute an assumption by the Trust Fund, the Trustee, any Custodian or the Certificateholders of any unsatisfied duty, claim or other liability on any Mortgage Loan or to any Mortgagor.

(e)    Each of the parties hereto acknowledges that (i) the Custodian has performed the applicable review of the Mortgage Loans and has delivered the Custodian Certification as provided herein and in the Custodial Agreements on the Closing Date and (ii) thereafter, if applicable, the Custodian shall perform the applicable review of the Mortgage Loans and deliver the further certifications as provided herein and in the applicable Custodial Agreements.

(f)    Upon execution of this Agreement, the Depositor hereby delivers to the Trustee and the Trustee acknowledges receipt of the Acknowledgments, together with the related Purchase and Servicing Agreements.

Section 2.03    Representations and Warranties of the Depositor.

(a)    The Depositor hereby represents and warrants to the Trustee, for the benefit of the Certificateholders, and to the Master Servicer and the Securities Administrator as of the Closing Date or such other date as is specified, that:

(i)    the Depositor is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, to carry on its business as presently conducted, to enter into and perform its obligations under this Agreement, and to create the trust pursuant hereto;

(ii)    the execution and delivery by the Depositor of this Agreement have been duly authorized by all necessary corporate action on the part of the Depositor; neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Depositor or its properties or the certificate of incorporation or bylaws of the Depositor;

(iii)    the execution, delivery and performance by the Depositor of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv)    this Agreement has been duly executed and delivered by the Depositor and, assuming due authorization, execution and delivery by the Trustee, the Master Servicer and the Securities Administrator, constitutes a valid and binding obligation of the Depositor enforceable against it in accordance with its terms except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law;

(v)    there are no actions, suits or proceedings pending or, to the knowledge of the Depositor, threatened or likely to be asserted against or affecting the Depositor, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by this Agreement or (B) with respect to any other matter which in the judgment of the Depositor will be determined adversely to the Depositor and will if determined adversely to the Depositor materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under this Agreement;

(vi)    immediately prior to the transfer and assignment of the Mortgage Loans to the Trustee, the Depositor was the sole owner of record and holder of each Mortgage Loan, and the Depositor had good and marketable title thereto, and had full right to transfer and sell each Mortgage Loan to the Trustee free and clear, subject only to (1) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's title insurance policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (3) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(vii)    This Agreement creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code (the "UCC")), in the Mortgage Loans in favor of the Trustee, which security interest is prior to all other liens, and is enforceable as such against creditors of and purchasers from the Depositor;

(viii)    **The Mortgage Loans constitute "instruments" within the meaning of the applicable UCC;**

(ix)    Other than the security interest granted to the Trustee pursuant to this Agreement, the Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Loans. The Depositor has not authorized the filing of and is not aware of any financing statement against the Depositor that includes a description of the collateral covering the Mortgage Loans other than a financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated. The Depositor is not aware of any judgment or tax lien filings against the Depositor;

(x)    None of the Mortgage Loans have any marks or notations indicating that such Mortgage Loans have been pledged, assigned or otherwise conveyed to any Person other than the Trustee; and

(xi)    The Depositor has received all consents and approvals required by the terms of the Mortgage Loans to convey the Mortgage Loans hereunder to the Trustee.

The foregoing representations made in this Section 2.03 shall survive the termination of this Agreement and shall not be waived by any party hereto.

Section 2.04    Representations and Warranties as to the Mortgage Loans.

(a)    Representations and Warranties of the Depositor as to the Mortgage Loans.

The Depositor hereby represents and warrants to the Trustee with respect to the Mortgage Loans or each Mortgage Loan, as the case may be, as of the date hereof or such other date set forth herein that as of the Closing Date:

(i)    Immediately prior to the transfer and assignment contemplated herein, the Depositor was the sole owner and holder of the Mortgage Loans. The Mortgage Loans were not assigned or pledged by the Depositor and the Depositor had good and marketable title thereto, and the Depositor had full right to transfer and sell the Mortgage Loans to the Trustee free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans.

(ii)    As of the Closing Date, the Depositor has transferred all right, title and interest in the Mortgage Loans to the Trustee on behalf of the Trust.

(iii)    As of the Closing Date, the Depositor has not transferred the Mortgage Loans to the Trustee on behalf of the Trust with any intent to hinder, delay or defraud an of its creditors.

It is understood and agreed that the representations and warranties set forth in this Section 2.04(a) shall survive the delivery of the respective Mortgage Files to the Trustee or the Custodian and shall inure to the benefit of the Trustee, notwithstanding any restrictive or qualified endorsement or assignment.

(b)    Representations and Warranties of the Seller as to the Mortgage Loans.

(i)    The representations and warranties of PHH with respect to the PHH Mortgage Loans in the PHH Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the PHH Purchase and Servicing Agreement. With respect to the PHH Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in clauses (4), (20), (21), (25), (31) and (57) of Section 3.03 of the PHH Purchase and Servicing Agreement with respect to each of the PHH Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(ii)    The representations and warranties of Countrywide with respect to the Countrywide Mortgage Loans in the Countrywide Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the Countrywide Purchase and Servicing Agreement. With respect to the Countrywide Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 3.02 of the Countrywide Purchase and Servicing Agreement with respect to each of the Countrywide Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund. If there is a breach of the representation and warranty made by Countrywide in Section 3.02(e) of the Countrywide Purchase and Servicing Agreement, and Countrywide fails to perform its obligations with respect thereto as provided in Section 2.05, the Seller hereby agrees to perform Countrywide's obligations under Section 2.05 with respect to that Countrywide Mortgage Loan.

(iii)    The representations and warranties of the applicable Chase Originator with respect to the Chase Originator Mortgage Loans in the related Chase Originator Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the Chase Originator Purchase and Servicing Agreement. With respect to the Chase Originator Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 3.02 of each Chase Originator Purchase and Servicing Agreement with respect to each of the Chase Originator Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(iv)    The representations and warranties of Wells Fargo with respect to the Wells Fargo Mortgage Loans in the Wells Fargo Purchase and Servicing Agreement, which have been assigned to the

(d)    It shall not be necessary for the consent of Holders under this Section 11.03 to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof.  The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Holders shall be subject to such reasonable regulations as the Trustee may prescribe.

(e)    Notwithstanding anything to the contrary in any Purchase and Servicing Agreement, the Trustee shall not consent to any amendment of any Purchase and Servicing Agreement except pursuant to the standards provided in this Section with respect to amendment of this Agreement.  With respect to any amendment that relates to the servicing of the Mortgage Loans or a Servicer, the Trustee shall not consent to any such amendment without the prior written consent of the Master Servicer.

Section 11.04  Voting Rights.

Except to the extent that the consent of all affected Certificateholders is required pursuant to this Agreement, with respect to any provision of this Agreement requiring the consent of Certificateholders representing specified percentages of aggregate outstanding Certificate Principal Amount, Certificates owned by the Depositor, the Master Servicer, the Securities Administrator, the Trustee, any Servicer or any Affiliates thereof are not to be counted so long as such Certificates are owned by the Depositor, the Master Servicer, the Securities Administrator, the Trustee, any Servicer or any Affiliate thereof.

Section 11.05  Provision of Information.

(a)    For so long as any of the Certificates of any Class are "restricted securities" within the meaning of Rule 144(a)(3) under the Act, each of the Depositor, the Master Servicer, the Securities Administrator and the Trustee agree to cooperate with each other to provide to any Certificateholders and to any prospective purchaser of Certificates designated by such holder, upon the request of such holder or prospective purchaser, any information required to be provided to such holder or prospective purchaser to satisfy the condition set forth in Rule 144A(d)(4) under the Act.  Any reasonable, out-of-pocket expenses incurred by the Trustee, the Master Servicer or the Securities Administrator in providing such information shall be reimbursed by the Depositor.

(b)    The Securities Administrator shall provide to any person to whom a Prospectus was delivered, upon the request of such person specifying the document or documents requested, a copy (excluding exhibits) of any report on Form 8-K or Form 10-K filed with the Securities and Exchange Commission pursuant to Section 6.20(b).  Any reasonable out-of-pocket expenses incurred by the Securities Administrator in providing copies of such documents shall be reimbursed by the Depositor.

(c)    On each Distribution Date, the Securities Administrator shall deliver or cause to be delivered by first class mail or make available on its website to the Depositor, Attention:  Contract Finance, a copy of the report provided to Certificateholders pursuant to Section 4.02.

Section 11.06  Governing Law.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES APPLIED IN NEW YORK (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAWS).

Section 11.07  Notices.

All requests, demands, notices, authorizations, directions, consents, waivers and communications hereunder shall be in writing and shall be deemed to have been duly given when received by (a) in the case of the Depositor, J.P Morgan Acceptance Corporation I, 270 Park Avenue, New York, New York 10017, telecopy number: (212) 834-3850, Attention: J.P. Morgan Mortgage Trust 2005-A3, (b) in the case of the Seller, J.P. Morgan Mortgage Acquisition Corp., 270 Park Avenue, New York, New York 10017, telecopy number: (212) 834-3850, Attention: J.P. Morgan Mortgage Trust 2005-A3, (c) in the case of the Master Servicer or the Securities Administrator, Wells Fargo Bank, N.A., P.O. Box 98, Columbia, Maryland 21046 (or, for overnight deliveries, 9062 Old Annapolis Road, Columbia, Maryland 21045), telecopy number (410) 715-2380, Attention: J.P. Morgan Mortgage Trust 2005-A3, and (d) with respect to the Trustee or the Certificate Registrar, its respective Corporate Trust Office, or as to each party such other address as may hereafter be furnished by such party to the other parties in writing.  All demands, notices and communications to a party hereunder shall be in writing and shall be deemed to have been duly given when delivered to such party at the relevant address, facsimile number or electronic mail address set forth above or at such other address, facsimile number or electronic mail address as such party may designate from time to time by written notice in accordance with this Section 11.07.

Section 11.08  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the Holders thereof.

Section 11.09  Indulgences; No Waivers.

Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 11.10  Headings Not To Affect Interpretation.

The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 11.11  Benefits of Agreement.

Nothing in this Agreement or in the Certificates, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder and the Holders of the Certificates, any benefit or any legal or equitable right, power, remedy or claim under this Agreement, except to the extent specified in Section 11.15.

Section 11.12  Special Notices to the Rating Agencies.

(a)    The Depositor shall give prompt notice to the Rating Agencies of the occurrence of any of the following events of which it has notice:

(i)    any amendment to this Agreement pursuant to Section 11.03;

(ii)    any Assignment by the Master Servicer of its rights hereunder or delegation of its duties hereunder;

(iii)    the occurrence of any Event of Default described in Section 6.14;

(iv)    any notice of termination given to the Master Servicer pursuant to Section 6.14 and any resignation of the Master Servicer hereunder;

(v)    the appointment of any successor to any Master Servicer pursuant to Section 6.14;

(vi)    the making of a final payment pursuant to Section 7.02; and

(vii)    any termination of the rights and obligations of any Servicer under the applicable Purchase and Servicing Agreement.

(b)    All notices to the Rating Agencies provided for this Section shall be in writing and sent by first class mail, telecopy or overnight courier, as follows:

If to S&P, to:

Standard & Poor's Ratings Services,
a division of The McGraw-Hill Companies, Inc.
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

If to Fitch Ratings, to:

Fitch Ratings
One State Street Plaza
New York, New York 10041
Attention:  Residential Mortgages

If to DBRS, to:

Dominion Bond Rating Service, Inc.

# EXHIBIT "8"

https://www.sec.gov/Archives/edgar/data/1328503/000105640405002783...

```
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>jpa050a3_10507.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington D. C. 20549

FORM 8-K

CURRENT REPORT
Pursuant to Section 13 or 15(d) of The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported):  July 25, 2005

J.P. MORGAN MORTGAGE TRUST
Mortgage Pass-Through Certificates, Series 2005-A3 Trust
(Exact name of registrant as specified in its charter)

| | | |
|---|---|---|
| New York (governing law of | 333-121990-01 | |
| Pooling and Servicing Agreement) | (Commission | 54-2175557 |
| (State or other | File Number) | 54-2175558 |
| jurisdiction | | 54-2175559 |
| of Incorporation) | | 54-2175633 |
| | | IRS EIN |

c/o Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, Maryland                                          21045
(Address of principal executive offices)        (Zip Code)

Registrant's telephone number, including area code:  (410) 884-2000

(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any
of the following provisions (see General Instruction A.2. below):

[ ] Written communications pursuant to Rule 425 under the Securities Act
    (17 CFR 230.425)
[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act

    (17 CFR 240.14a-12)
[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the
    Exchange Act(17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the
    Exchange Act(17 CFR 240.13e-4(c))

ITEM 8.01  Other Events

On July 25, 2005 a distribution was made to holders of J.P. MORGAN MORTGAGE
TRUST, Mortgage Pass-Through Certificates, Series 2005-A3 Trust.

https://www.sec.gov/Archives/edgar/data/1328593/000105640405002783...

ITEM 9.01  Financial Statements and Exhibits

    (c)  Exhibits

| Exhibit Number | Description |
|---|---|
| EX-99.1 | Monthly report distributed to holders of Mortgage Pass-Through Certificates, Series 2005-A3 Trust, relating to the July 25, 2005 distribution. |

Pursuant to the requirements of the Securities Exchange Act of 1934, the
registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

J.P. MORGAN MORTGAGE TRUST
Mortgage Pass-Through Certificates, Series 2005-A3 Trust
(Registrant)

    By:  Wells Fargo Bank, N.A. as Securities Administrator
    By:  /s/  Beth Belfield as Officer
    By:  Beth Belfield as Officer

    Date:  7/26/2005

INDEX TO EXHIBITS

| Exhibit Number | Description |
|---|---|
| EX-99.1 | Monthly report distributed to holders of Mortgage Pass-Through Certificates, Series 2005-A3 Trust, relating to the July 25, 2005 distribution. |

EX-99.1
<TABLE>
<CAPTION>
J.P. Morgan Acceptance Corporation I
Mortgage Pass-Through Certificates

Record Date:            6/30/2005
Distribution Date:      7/25/2005

J.P. Morgan Acceptance Corporation I
Mortgage Pass-Through Certificates
Series 2005-A3

Contact: Customer Service - CTSLink
        Wells Fargo Bank, N.A.
        Securities Administration Services
        7485 New Horizon Way
        Frederick, MD 21703
        www.ctslink.com

```
<TABLE>
<CAPTION>
```

                        Prepayment Detail - Prepayments during Current Period
(continued)

| Summary Loans | Substitution Loans Curtailments | | | Liquidated | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Original | Current | | Original |
| | | | Principal | Principal | | Principal |
| Current Principal Group Balance | Curtailment Amount | Count | Balance | Balance | Count | Balance |
| <S> <C> | <C> <C> | <C> | <C> | <C> | <C> | <C> |
| 1 0.00 | 35,575.50 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 2 0.00 | 379,199.83 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 3 0.00 | 172,820.89 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 4 0.00 | 62,655.03 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 5 0.00 | 15,834.18 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 6 0.00 | 231,989.63 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 7 0.00 | 204,591.31 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 8 0.00 | 681,964.48 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 9 0.00 | 196,361.07 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 10 0.00 | 254,291.34 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| 11 0.00 | 114,343.15 | 0 | 0.00 | 0.00 | 0 | 0.00 |
| Total 0.00 | 2,349,626.41 | 0 | 0.00 | 0.00 | 0 | 0.00 |

```
</TABLE>
```

```
<TABLE>
<CAPTION>
```

                        Prepayment Loan Detail - Prepayments during Current Period

| Original Principal Group Balance | Prepayment Amount | Loan Number | State | LTV at Origination | First Payment Date |
| --- | --- | --- | --- | --- | --- |
| <S> <C> | <C> <C> | <C> | <C> | <C> | |
| 1 100,000.00 | 100,000.00 | 7077962962 | FL | 50.00 | 01-Apr-2005 |
| 1 | | 7100019020 | PA | 19.73 | 01-May-2005 |

| | | | | | |
|---|---|---|---|---|---|
| 73,000.00 | 71,023.30 | | | | |
| 2 | | 1295682750 | SC | 78.74 | 01-Dec-2004 |
| 100,000.00 | 100,000.00 | | | | |
| 2 | | 1466050349 | CA | 76.00 | 01-Apr-2005 |
| 494,000.00 | 491,922.05 | | | | |
| 2 | | 1595836408 | CA | 78.00 | 01-Jan-2005 |
| 390,000.00 | 387,040.09 | | | | |
| 2 | | 1595839701 | CA | 67.54 | 01-Jan-2005 |
| 452,500.00 | 448,658.98 | | | | |
| 2 | | 1595853699 | CA | 64.00 | 01-Mar-2005 |
| 400,000.00 | 397,738.73 | | | | |
| 3 | | 1793951420 | IN | 53.76 | 01-Jan-2005 |
| 100,000.00 | 98,990.48 | | | | |
| 3 | | 7077857055 | OK | 52.51 | 01-Feb-2005 |
| 338,700.00 | 338,700.00 | | | | |
| 4 | | 0019361617 | WA | 80.00 | 01-Apr-2003 |
| 332,000.00 | 332,000.00 | | | | |
| 4 | | 0031162688 | VA | 80.00 | 01-Oct-2003 |
| 248,000.00 | 248,000.00 | | | | |
| 4 | | 0129780375 | NC | 80.00 | 01-Aug-2003 |
| 408,000.00 | 394,533.60 | | | | |
| 5 | | 1793952060 | AZ | 83.02 | 01-Mar-2005 |
| 178,500.00 | 177,155.66 | | | | |
| 5 | | 1845126020 | CT | 87.67 | 01-Mar-2005 |
| 320,000.00 | 318,105.42 | | | | |
| 5 | | 1845126767 | FL | 80.00 | 01-Jun-2004 |
| 160,000.00 | 156,841.70 | | | | |
| 5 | | 1845127249 | NJ | 76.73 | 01-Nov-2004 |
| 211,000.00 | 208,461.41 | | | | |
| 5 | | 1845127500 | LA | 80.00 | 01-Dec-2004 |
| 160,000.00 | 158,329.97 | | | | |
| 5 | | 1845128558 | LA | 80.00 | 01-Oct-2004 |
| 296,000.00 | 292,293.14 | | | | |
| 5 | | 1927035130 | MD | 80.00 | 01-Mar-2005 |
| 378,792.00 | 378,792.00 | | | | |
| 6 | | 0079694728 | CA | 75.32 | 01-Mar-2005 |
| 650,000.00 | 650,000.00 | | | | |
| 6 | | 0080101509 | CA | 79.92 | 01-Mar-2005 |
| 390,000.00 | 390,000.00 | | | | |
| 6 | | 1466048154 | PA | 80.00 | 01-Mar-2005 |
| 88,000.00 | 88,000.00 | | | | |
| 6 | | 1844124631 | MD | 79.16 | 01-Apr-2005 |
| 262,500.00 | 262,500.00 | | | | |
| 6 | | 1845129095 | FL | 74.96 | 01-May-2004 |
| 93,700.00 | 91,775.41 | | | | |
| 6 | | 1847112118 | CA | 69.30 | 01-Apr-2005 |
| 298,000.00 | 298,000.00 | | | | |
| 6 | | 1927035639 | CA | 80.00 | 01-Apr-2005 |
| 421,500.00 | 421,500.00 | | | | |
| 7 | | 0029408218 | FL | 61.81 | 01-Jan-2005 |
| 168,130.00 | 166,853.93 | | | | |
| 7 | | 0029423712 | FL | 58.24 | 01-Jan-2005 |
| 148,500.00 | 147,346.41 | | | | |
| 7 | | 0029452372 | CA | 72.80 | 01-Jan-2005 |
| 250,000.00 | 248,057.93 | | | | |
| 7 | | 0029750486 | SC | 80.00 | 01-Apr-2005 |
| 135,200.00 | 134,502.58 | | | | |
| 7 | | 0029776564 | CA | 72.64 | 01-Apr-2005 |
| 300,000.00 | 298,938.84 | | | | |
| 7 | | 0029789914 | CO | 100.00 | 01-Feb-2005 |
| 250,000.00 | 250,000.00 | | | | |
| 7 | | 0029990215 | FL | 66.67 | 01-Apr-2005 |

```
100,000.00          99,670.12
7                             0030063853        FL           80.00        01-Apr-2005
136,000.00         135,441.25
7                             0030114722        VA           80.00        01-Jun-2005
110,400.00         110,400.00
7                             0030134530        KY           95.00        01-May-2005
84,550.00          84,319.45
7                             0030298475        CT           63.06        01-Jun-2005
140,000.00         139,727.16
7                             0030378509        MD           95.00        01-May-2005
178,125.00         177,673.48
7                             0030405104        GA           95.00        01-Jun-2005
99,750.00          99,581.90
8                             0029767522        MA           80.00        01-Apr-2005
430,800.00         428,944.80
8                             0029971025        CA           80.00        01-May-2005
440,000.00         440,000.00
8                             0030050512        NJ           90.00        01-May-2005
427,500.00         426,216.86
8                             0030145841        SC           79.97        01-May-2005
503,000.00         502,200.00
9                             0029484300        CA           68.00        01-Jan-2005
340,000.00         339,902.27
9                             0030051007        FL           80.00        01-Apr-2005
87,200.00          87,200.00
9                             0030499578        AZ           80.00        01-Jun-2005
190,120.00         190,120.00
9                             7079952615        NY           74.77        01-May-2005
200,000.00         200,000.00
9                             7080037984        VA           90.00        01-Feb-2005
230,400.00         230,400.00
9                             7100029292        CO           80.00        01-May-2005
272,000.00         272,000.00
10                            0029537255        CA           59.43        01-Jan-2005
469,480.00         469,480.00
11                            1410036060        OR           41.24        01-Dec-2004
800,000.00         793,516.18
11                            1596407622        CA           80.00        01-Jul-2003
592,000.00         567,963.99
11                            1765113664        CA           53.01        01-Sep-2003
888,000.00         859,965.37
```

</TABLE>


<TABLE>
<CAPTION>

                         Prepayment Loan Detail - Prepayments during Current Period

(continued)


Current

| Loan Group | Original | Loan Number Seasoning | PIF Type | Months Delinquent |
|---|---|---|---|---|
| Rate | Term | | | |
| <s> | <C> | <C> | <C> | <C> |
| <C> | <C> | | | |
| 1 | | 7077962962 | Loan Paid in Full | 0 |
| 5.440% | 360 | 3 | | |
| 1 | | 7100019020 | Loan Paid in Full | (2) |

| Rate | Term | | Loan Number | Status | |
| --- | --- | --- | --- | --- | --- |
| 5.560% | 360 | 2 | | | |
| | | 2 | 1295682750 | Loan Paid in Full | (1) |
| 5.625% | 360 | 7 | | | |
| | | 2 | 1466050349 | Loan Paid in Full | 0 |
| 5.750% | 360 | 3 | | | |
| | | 2 | 1595836408 | Loan Paid in Full | 0 |
| 5.625% | 360 | 6 | | | |
| | | 2 | 1595839701 | Loan Paid in Full | 0 |
| 5.125% | 360 | 6 | | | |
| | | 2 | 1595853699 | Loan Paid in Full | 0 |
| 5.375% | 360 | 4 | | | |
| | | 3 | 1793951420 | Loan Paid in Full | 0 |
| 5.600% | 360 | 6 | | | |
| | | 3 | 7077857055 | Loan Paid in Full | (1) |
| 5.625% | 360 | 5 | | | |
| | | 4 | 0019361617 | Loan Paid in Full | 0 |
| 4.625% | 360 | 27 | | | |
| | | 4 | 0031162688 | Loan Paid in Full | 0 |
| 4.500% | 360 | 21 | | | |
| | | 4 | 0129780375 | Loan Paid in Full | 0 |
| 4.500% | 360 | 23 | | | |
| | | 5 | 1793952060 | Loan Paid in Full | 0 |
| 4.500% | 360 | 4 | | | |
| | | 5 | 1845126020 | Loan Paid in Full | 0 |
| 5.125% | 360 | 4 | | | |
| | | 5 | 1845126767 | Loan Paid in Full | (1) |
| 4.250% | 360 | 13 | | | |
| | | 5 | 1845127249 | Loan Paid in Full | 0 |
| 4.500% | 360 | 8 | | | |
| | | 5 | 1845127500 | Loan Paid in Full | 0 |
| 4.625% | 360 | 7 | | | |
| | | 5 | 1845128558 | Loan Paid in Full | 0 |
| 4.875% | 360 | 9 | | | |
| | | 5 | 1927035130 | Loan Paid in Full | 0 |
| 4.875% | 360 | 4 | | | |
| | | 6 | 0079694728 | Loan Paid in Full | 0 |
| 5.375% | 360 | 4 | | | |
| | | 6 | 0080101509 | Loan Paid in Full | 0 |
| 5.250% | 360 | 4 | | | |
| | | 6 | 1466048154 | Loan Paid in Full | 0 |
| 5.250% | 360 | 4 | | | |
| | | 6 | 1844124631 | Loan Paid in Full | 0 |
| 5.625% | 360 | 3 | | | |
| | | 6 | 1845129095 | Loan Paid in Full | 0 |
| 4.500% | 360 | 14 | | | |
| | | 6 | 1847112118 | Loan Paid in Full | 0 |
| 5.000% | 360 | 3 | | | |
| | | 6 | 1927035639 | Loan Paid in Full | 0 |
| 5.250% | 360 | 3 | | | |
| | | 7 | 0029408218 | Loan Paid in Full | 0 |
| 5.625% | 360 | 6 | | | |
| | | 7 | 0029423712 | Loan Paid in Full | (1) |
| 5.500% | 360 | 6 | | | |
| | | 7 | 0029452372 | Loan Paid in Full | 0 |
| 5.500% | 360 | 6 | | | |
| | | 7 | 0029750486 | Loan Paid in Full | 0 |
| 5.500% | 360 | 3 | | | |
| | | 7 | 0029776564 | Loan Paid in Full | 0 |
| 5.125% | 360 | 3 | | | |
| | | 7 | 0029789914 | Loan Paid in Full | 0 |
| 5.625% | 360 | 5 | | | |
| | | 7 | 0029990215 | Loan Paid in Full | 0 |

| 5.500% | 360 | 3 | | |
| 7 | | 0030063853 | Loan Paid in Full | 0 |
| 5.875% | 360 | 3 | | |
| 7 | | 0030114722 | Loan Paid in Full | 0 |
| 5.560% | 360 | 1 | | |
| 7 | | 0030134530 | Loan Paid in Full | 0 |
| 6.500% | 360 | 2 | | |
| 7 | | 0030298475 | Loan Paid in Full | (1) |
| 6.125% | 360 | 1 | | |
| 7 | | 0030378509 | Loan Paid in Full | (1) |
| 6.875% | 360 | 2 | | |
| 7 | | 0030405104 | Loan Paid in Full | (1) |
| 6.875% | 360 | 1 | | |
| 8 | | 0029767522 | Loan Paid in Full | 0 |
| 5.625% | 360 | 3 | | |
| 8 | | 0029971025 | Loan Paid in Full | (1) |
| 5.250% | 360 | 2 | | |
| 8 | | 0030050512 | Loan Paid in Full | 0 |
| 6.000% | 360 | 2 | | |
| 8 | | 0030145841 | Loan Paid in Full | (1) |
| 5.440% | 360 | 2 | | |
| 9 | | 0029484300 | Loan Paid in Full | 0 |
| 5.750% | 360 | 6 | | |
| 9 | | 0030051007 | Loan Paid in Full | 0 |
| 5.750% | 360 | 3 | | |
| 9 | | 0030499578 | Loan Paid in Full | (1) |
| 5.900% | 360 | 1 | | |
| 9 | | 7079952615 | Loan Paid in Full | 0 |
| 5.750% | 360 | 2 | | |
| 9 | | 7080037984 | Loan Paid in Full | 0 |
| 5.875% | 360 | 5 | | |
| 9 | | 7100029292 | Loan Paid in Full | 0 |
| 6.270% | 360 | 2 | | |
| 10 | | 0029537255 | Loan Paid in Full | (1) |
| 5.750% | 360 | 6 | | |
| 11 | | 1410036060 | Loan Paid in Full | 0 |
| 6.000% | 360 | 7 | | |
| 11 | | 1596407622 | Loan Paid in Full | 0 |
| 4.875% | 360 | 24 | | |
| 11 | | 1765113664 | Loan Paid in Full | 0 |
| 4.500% | 360 | 22 | | |

</TABLE>


<TABLE>

Prepayment - Voluntary Prepayments

<CAPTION>
Summary

| SMM | | CPR | | PSA |
| <S> | <C> | <S> | <C> | <S> |
| <C> | | | | |
| Current Month | 0.936% | Current Month | 10.673% | |
| Current Month | 654.470% | | | |
| 3 Month Average | 0.000% | 3 Month Average | 0.000% | 3 |
| Month Average | 0.000% | | | |
| 12 Month Average | 0.000% | 12 Month Average | 0.000% | 12 |
| Month Average | 0.000% | | | |

<CAPTION>

# EXHIBIT "9"



**Bank of America**

**Home Loans**

*Customer Service Department, CA6-919-01-41*
*450 American Street*
*Simi Valley, CA 93065-6298*

July 25, 2011

Raymond, Jr., and Cheryl A. Gutierrez
428 Georgetown Ave
Ventura, CA 93003

Subject:     Bank of America, N.A., number ending in: 6204
             Property Address: 428 Georgetown Avenue, Ventura, CA 93003

Dear Raymond, Jr., and Cheryl A. Gutierrez:

Thank you for contacting our office with your correspondence dated May 25, 2011 received by our department on July 05, 2011.

Please find enclosed all available loan documents and note that the *Loan Transaction History Statement* you requested has been mailed under a separate cover.

If you are seeking payment assistance, you may contact our Home Retention Department ("HRD") directly at (800) 669-0102. Please be prepared to discuss payment assistance options by having the following items readily available:

· Letter of hardship
· Evidence of income (2 most recent pay stubs or if self employed, tax records)
· Bank statements (2 most recent)
· Last year's tax returns
· Monthly expenditure information

You may also forward the above-referenced items to HRD via facsimile at (800) 658-0395. Please note that assistance is not a guarantee, however Bank of America, N.A. will look at every available option to assist you.

Please be advised that as per our records, the investor on your loan is WELLS FARGO.

For all other questions, please contact the Customer Service Department at (800) 669-6607. Thank you for the opportunity to be of service.

Sincerely,


Customer Service


Enclosures

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ Conventional  ☐ Other: | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | 1040048876-00 |

| Amount | Interest Rate | No. of Months | Amortization Type: | |
|---|---|---|---|---|
| 583,200.00 | 5.375 % | 360 | ☐ Fixed Rate  ☐ Other (explain): | |
| | | | ☐ GPM  ☒ ARM (type): | 5/YR LIBOR I/O |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & zip code) | No. of Units |
|---|---|
| 428 GEORGETOWN AVENUE, VENTURA, CA 93003 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE PRELIM TITLE REPORT | 1975 |

| Purpose of Loan | ☒ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☐ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Raymond Gutierrez, Jr & Cheryl A. Gutierrez; | Husband And Wife As Community Property, | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| GIFT /CHECKING & SAVINGS |

## III. BORROWER INFORMATION / Co-Borrower

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| RAYMOND GUTIERREZ, JR | CHERYL A GUTIERREZ |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (805)659-9678 | 11/18/1959 | 18 | 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 | (805)659-9678 | 03/03/1960 | 18 |

| ☒ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0  ages | ☒ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|
| ☐ Separated | | ☐ Separated | |

| Present Address (street, city, state, zip code)  ☒ Own  ☐ Rent 5.00 No. Yrs. | Present Address (street, city, state, zip code)  ☒ Own  ☐ Rent 5.00 No. Yrs. |
|---|---|
| 303 GORRION AVE  VENTURA, CA 93004 | 303 GORRION AVE  VENTURA, CA 93004 |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, zip code)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| | |

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer  ☐ Self Employed | Yrs. on this job  3 YRS  6 MOS | Name & Address of Employer  ☐ Self Employed | Yrs. on this job  3 YRS |
| COUNTY OF VENTURA  800 SOUTH VICTORIA AVE, L-1600  VENTURA, CA 93009 | Yrs. employed in this line of work/profession  21 YRS | LENDING HAND REAL ESTATE  290 MAPLE COURT 6110  VENTURA, CA 93003 | Yrs. employed in this line of work/profession  3 YRS |

| Base: 10,500.00 | O/T: | Bonus: | Commissions: | Base: 3,000.00 | O/T: | Bonus: | Commissions: |
|---|---|---|---|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| MANAGER MUNICIPAL ENGINEERING | (805)654-2069 | OFFICE MANAGER | (805)392-2931 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |
| | $ | | $ |
| Base: | O/T: | Bonus: | Commissions: | Base: | O/T: | Bonus: | Commissions: |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |
| | $ | | $ |
| Base: | O/T: | Bonus: | Commissions: | Base: | O/T: | Bonus: | Commissions: |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Borrower's Initials | LOAN NUMBER: 1040048876-00 | Page 1 of 4 | Freddie Mac Form 65/Rev. 01/04  Fannie Mae Form 1003/Rev. 01/04 |
|---|---|---|---|
| Co-Borrower's Initials | | | Mortgagesoft OnLine  NM 07/03  FORM 1003_1 |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 10,500.00 | $ 3,000.00 | $ 13,500.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | $ 2,060.25 | $ 2,612.25 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 54.00 | 121.50 |
| Dividends/Interest | | | | Real Estate Taxes | 222.00 | 759.38 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 10,500.00 | $ 3,000.00 | $ 13,500.00 | Credits MCC: | | |
| | | | | Buy Down Credit: | | $ |
| | | | | Total | $ 2,336.25 | 3,493.13 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also    Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|---|
| Description | | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Cash deposit toward purchase held by: | | | Name and address of Company | $ Payment/Months | $ |
| | $ 27,700.00 | | CHASE NA | | |
| List checking and saving accounts below | | | 150 DUFFY AVENUE | 387.00 / 50 | 19,355.00 |
| Name and address of Bank, S&L, or Credit Union | | | HICKSV, NY 11801 | | |
| CITIBANK FSB | | | | | |
| 1011 S. VICTORIA AVE | | | | | |
| VENTURA, CA 93003 | | | Acct. no. 5183371679 | | |
| Acct. no. 105-4244130 | $ 23,504.82 | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | HHLD BANK | 620.00 / 39 | 12,408.00 |
| CITIBANK FSB | | | PO BOX 98706 | | |
| 1011 S. VICTORIA AVE. | | | LAS VE, NV 89193 | | |
| VENTURA, CA 93003 | | | | | |
| Acct. no. 105-4244155 | $ 3,774.84 | | Acct. no. 0090200563 | | |
| Name and address of Bank, S&L, or Credit Union | | | Name and address of Company | $ Payment/Months | |
| GIFT - NOT DEPOSITED | | | DISCOVER FIN | 193.00 / 50 | 9,650.00 |
| | | | DECLINES TO VERIFY | | |
| | | | WILMIN, DE 19850 | | |
| Acct. no. 12121 | $ 109,900.00 | | Acct. no. 6011299070366 | | |
| Name and address of Bank, S&L, or Credit Union | | | Name and address of Company | $ Payment/Months | |
| SEE THE ATTACHED SCHEDULE | | | COUSASEARS | 37.00 / 39 | 743.00 |
| | | | 13200 SMITH RD | | |
| | | | GOLETA, OH 44130 | | |
| Acct. no. | $ | | Acct. no. 504994015154 | | |
| Stock & Bonds (Company name/number & description) | $ | | Name and address of Company | $ Payment/Months Net Rental Income Used. | |
| | 103,000.00 | | AFFILIATED FUNDING CORP. | 2,060.42 /223 | 460,000.00 |
| | | | 5 HUTTON CENTER DRIVE SUITE # 1100 | | |
| | | | SANTA ANA, CA 92707 | | |
| | | | RE LOAN ON 303 GORRION AVE | | |
| Life insurance net cash value & Descr. | $ | | Acct. no. 1040048634-00 | | |
| | | | Name and address of Company | $ Payment/Months | |
| Subtotal Liquid Assets | $ 368,615.18 | | | | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 600,000.00 | | | | |
| Vested interest in retirement fund | $ 40,000.00 | | Acct. no. | | |
| Net worth of business(es) owned (attach financial statement) | $ 50,000.00 | | Name and address of Company | $ Payment/Months | $ |
| Automobiles owned (make and year) | | | | | |
| FORD       1999 | $ 7,000.00 | | | | |
| FORD       1999 | 7,000.00 | | | | |
| FORD       1997 | 6,000.00 | | Acct. no. | | |
| | | | Alimony / Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (Itemize) | $ | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | | Total Monthly Payments | $ 3,297.42 | |
| Total Assets a. | $ 1,078,615.18 | | Net Worth (a minus b) | $ 576,459.18 | Total Liabilities b. | $ 502,156.00 |

## VII. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 303 GORRION AVE VENTURA, CA 93004 | R | 003 sfr | $ 600,000.00 | $ 450,000.00 | $ 2,900.00 | $ 2,060.42 | $ 275.20 | -160.62 |
| | | | | | | | | |
| Totals | | | 600,000.00 | 450,000.00 | 2,900.00 | 2,060.42 | 275.20 | -160.62 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VI. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 729,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 4,983.40 |
| f. Estimated closing costs | 3,842.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 1,458.00 |
| Other Expenses: | |
| i. Total costs (add items a through h) | 739,283.40 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 3,500.00 |
| l. Other Credits (explain) | |
| Held Deposit | 27,700.00 |
| Fees Paid in Advance | 350.00 |
| Loan amount (exclude PMI, MIP, Funding Fee financed) | 583,200.00 |
| m. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 583,200.00 |
| p. Cash From Borrower (subtract j, k, l & o from i) | 124,533.40 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. Are you a party to a lawsuit? | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. Are you presently delinquent or in default on any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. Is any part of the down payment borrowed? | | X | | X |
| i. Are you a co-maker or endorser on a note? | | X | | X |
| j. Are you a U.S. citizen? | X | | X | |
| k. Am you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | X | | X | |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers, and any other person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 1-27-05 | X | 1-27-05 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| ☐ I do not wish to furnish this information. | | ☐ I do not wish to furnish this information. | |
| Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino | | Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino | |
| Race: ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander ☐ Asian ☐ Black or African American ☒ White | | Race: ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander ☐ Asian ☐ Black or African American ☒ White | |
| Sex: ☐ Female ☒ Male | | Sex: ☒ Female ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | ROLAND GUTIERREZ (AGENT) ROLAND GUTIERREZ (BROKER) | INHOUSELENDER.COM ( DRE # 01254954 ) A DIV. OF AFFILLIATED FUNDING CORP. |
| ☐ Face-to-face interview | Interviewer's Signature        Date | JOHANNA STEPHENSON        (714) 919-3168 |
| ☐ Mail | | Branch Office: |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | 19001 SUNDOWN LN |
| ☐ Internet | (844) 957-2429 | YORBA LINDA, CA 92886 |

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 104004887600                                      Date: JANUARY 24, 2005
Creditor: AFFILIATED FUNDING CORPORATION (CFL # 6038165)
Address: 5 HUTTON CENTER DRIVE STE.#1100, SANTA ANA, CALIFORNIA 92707

Borrower(s): RAYMOND GUTIERREZ, JR, CHERYL A GUTIERREZ

Address: 303 GORRION AVE, VENTURA, CALIFORNIA 93004

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 5.364 % | $ 626,680.50 | $ 578,499.12 | $ 1,205,179.62 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 60 | 2,612.25 | 03/01/05 | | | | | | |
| 299 | 3,494.81 | 03/01/10 | | | | | | |
| 1 | 3,496.43 | 02/01/35 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability    __X__ Property Insurance    _____ Flood Insurance    _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 428 GEORGETOWN AVENUE, VENTURA, CALIFORNIA 93003
__X__ The goods or property being purchased    _____ Real property you already own.
FILING FEES: $ 100.00
LATE CHARGE: If payment is more than _____15_____ days late, you will be charged __5.000__ % of the payment.    * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
_____ may    __X__ will not    have to pay a penalty.
_____ may    __X__ will not    be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may    _____ may, subject to conditions    __X__ may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate    _____ all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

Applicant RAYMOND GUTIERREZ, JR    Date 1-27-05        Applicant CHERYL A GUTIERREZ    Date 1-27-05

Applicant _____    Date _____    Applicant _____    Date _____

Applicant _____    Date _____    Applicant _____    Date _____

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

**A. SETTLEMENT STATEMENT**  U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**FINAL**

| B. Type of Loan | | | |
|---|---|---|---|
| 1. ☐FHA  2. ☐FmHA  3. ☐Conv. Unins. | 6. File Number | 7. Loan Number | Mortgage Insurance Number |
| 4. ☐VA  5. ☐Conv. Ins. | 040840 | 104004893400 | |

C. Note: THIS NOTE IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO ANY AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING. THEY ARE SHOWN HERE FOR INFORMATION PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| RAYMOND GUTIERREZ JR.<br>CHERYL A. GUTIERREZ<br>303 GORRION AVENUE<br>VENTURA, CA 93004 | | AFFILIATED FUNDING CORPORATION<br>5 HUTTON CENTRE DRIVE #1100<br>SANTA ANA, CA 92707 |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 303 GORRION AVENUE<br>VENTURA, CA 93004 | In House Lender.com | |
| | Place of Settlement | Settlement Date |
| | 5 Hutton Centre Dr., Suite 1100 ·<br>Santa Ana, CA 92707 | January 21, 2005 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract Sales Price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 5,409.39 | 403. | |
| 104. ABN AMRO | 310,758.28 | 404. | |
| 105. CHASE MANHATTAN MORTGAGE | 157,411.90 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 473,579.57 | **420. Gross Amount Due to Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposits or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. New 1st Trust Deed | 460,000.00 | 502. Settl. chrgs. to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. RAYMOND AND CHERYL GUTIERREZ | 14,907.71 | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 474,907.71 | 520. Total Reductions in Amount Due Seller | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT FROM/TO SELLER** | |
| 301. Gross Amounts due from Borrower (line 120) | 473,579.57 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 474,907.71 | 602. Less reductions in amount due Seller (line 520) | |
| 303. CASH TO BORROWER | 1,328.14 | 603. CASH FROM SELLER | |

We do hereby certify this to be a full true
and correct copy of the original instrument by





| L.  SETTLEMENT STATEMENT | | |
|---|---|---|
| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| 700.  TOTAL SALES/BROKER'S COMMISSION | | |
| Based on price $        @        % | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 800.  ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. Loan origination fee | | |
| 802. Loan Discount Fee to AFFILIATED FUNDING CORPORATION | 1,150.00 | |
| 803. Appraisal Fee  POC $350.00 to AFFILIATED FUNDING CORPORATION | | |
| 804. Credit Report to AFFILIATED FUNDING CORPORATION | 18.00 | |
| 805. Lender's inspection fee | | |
| 806. Mortgage Insurance application fee | | |
| 807. Assumption fee | | |
| 808. Tax Service to AFFILIATED FUNDING CORPORATION | 69.00 | |
| 809. Wire Fee to AFFILIATED FUNDING CORPORATION | 98.00 | |
| 810. Underwriting Fee to AFFILIATED FUNDING CORPORATION | 989.00 | |
| 811. Flood Report Fee to AFFILIATED FUNDING CORPORATION | 18.00 | |
| 900.  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. Interest at $68.6800/day from 01/20/2005 to 02/01/2005 to AFFILIATED FUNDING CORPORATION | 824.17 | |
| 902. Mortgage insurance | | |
| 903. Hazard insurance | | |
| 904. Flood insurance | | |
| 905. | | |
| 1000.  RESERVES DEPOSITED WITH LENDER | | |
| 1001. Insurance @ $53.00/mo for 2 mos to AFFILIATED FUNDING CORPORATION | 106.00 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. Taxes @ $222.20/mo for 1 mo to AFFILIATED FUNDING CORPORATION | 222.20 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Reserves | | |
| 1009. | | |
| 1100.  ESCROW AND TITLE CHARGES | | |
| 1101. Escrow Fee to In House Lender.com | 450.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fee to ATS DOCUMENT SERVICE | 175.00 | |
| 1107. Attorney's fees | | |
| 1108. Title insurance to TICOR TITLE COMPANY | 1,116.50 | |
| 1109. Lender's coverage $1,116.50 | | |
| 1110. Owner's coverage $ | | |
| 1111. Messenger Fee to TICOR TITLE COMPANY | 20.82 | |
| 1112. Wire/Overnight to TICOR TITLE COMPANY | 18.70 | |
| 1113. Messenger Fee to In House Lender.com | 54.00 | |
| 1200.  GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. Recording fees: Deed $; Mortgage $80.00; Releases $ to TICOR TITLE COMPANY | 80.00 | |
| 1202. City/County tax stamps | | |
| 1203. State tax/stamps | | |
| 1204. | | |
| 1205. | | |
| 1300.  ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1400.  TOTAL SETTLEMENT CHARGES (ENTER ON LINES 103 SECTION J AND 502, SECTION K) | 5,409.39 | |

We do hereby certify a true, exact
and correct copy of the original instrument by

MIN: 1000827-1040048876-6          Loan Number: 104004887600

## InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In
### *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED
INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY
MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

JANUARY 24, 2005             SANTA ANA            CALIFORNIA
    [Date]                      [City]               [State]

    428 GEORGETOWN AVENUE, VENTURA, CALIFORNIA 93003
                    [Property Address]

**1.   BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $583,200.00        (this amount is
called "Principal"), plus interest, to the order of Lender. Lender is AFFILIATED FUNDING
CORPORATION, A NEVADA CORPORATION (CFL # 6038165)
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of     5.375 %. The interest rate I will pay may change in accordance with Section 4 of this
Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
    (A) Time and Place of Payments
    I will make a payment on the  1st  day of every month, beginning on MARCH 1, 2005      .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will
consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and
interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest
Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid
all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly
payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will
be applied to interest before Principal. If, on FEBRUARY 1, 2035    and I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 5 HUTTON CENTER DRIVE, STE #1100, SANTA
ANA, CALIFORNIA 92707
                            or at a different place if required by the Note Holder.

Borrower Initials: _____  _____  _____  _____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3530  11/01                          Page 1 of 5
Us3530.not.1.mm          DocMagic *eFmms* 800-649-1362
                         www.docmagic.com

(B) Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $2,612.25          before the First Principal
and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at
the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date.
The Note Holder will notify me prior to the date of change in monthly payment.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 or 5 of this Note.

4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the     1st     day of
FEBRUARY, 2010         , and the adjustable interest rate I will pay may change on that day every 12th
month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date
on which my adjustable interest rate could change, is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is
the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days
before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding     TWO  AND
250/1000               percentage points (     2.250  %) to the Current Index.  The Note
Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject
to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change
Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than        10.375 %
or less than      2.250  %.  Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than   TWO AND 000/1000                  percentage points
from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than
10.375  %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment
changes again.
(F) Notice of Changes
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will
deliver or mail to me a notice of such change. The notice will include information required by law to be given to me
and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Borrower Initials: _____  _____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE-ONE-YEAR LIBOR INDEX
Single Family-Fannie Mae MODIFIED INSTRUMENT
Form 3530   11/01                                         Page 2 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3530.not.2.tem

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000   % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Borrower Initials: _____  _____  _____  _____  _____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE-ONE-YEAR LIBOR INDEX
Single Family-Fannie Mae MODIFIED INSTRUMENT
Form 3530  11/01                                        Page 3 of 6

DocMagic EForms  800-649-1362
www.docmagic.com

tlx3530.not.3.tem

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: _____  _____  _____  _____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTEMONE-YEAR LIBOR INDEX
Single FamilyMFannie Mae MODIFIED INSTRUMENT
Form 3530  11/01                                    Page 4 of 6

DocMagic *EForms* 800-649-1362
www.docmagic.com

IJs3530.not.4.tem

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

I certify this to be a true
and correct copy of the original.

Borrower Initials: _____ _____ _____ _____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE-ONE-YEAR LIBOR INDEX
Single Family/Fannie Mae MODIFIED INSTRUMENT
Form 3530  11/01                                    Page 5 of 6

DocMagic *Phone* 800-649-1362
www.docmagic.com

Us3530.eu1.5.tem

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RAYMOND GUTIERREZ, JR    -Borrower

_____ (Seal)
CHERYL G GUTIERREZ    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Without Recourse Pay To The Order Of

Affiliated Funding Corporation, A Nevada Corporation

X _____
        Alfred Hanna President

*[Sign Original Only]*

I certify this to be a true
and correct copy of the original.

_____

MULTISTATE InterestFirst ADJUSTABLE RATE NOTEMONE-YEAR LIBOR INDEX
Single FamilyFannie Mae MODIFIED INSTRUMENT
Form 3530  11/01                          Page 6 of 6

DocMagic eForms  800-649-1362
www.docmagic.com

Us3530.not.6.tem

Recording Requested by
STEWART TITLE



610  079876204  D2  001  002

Recording Requested By:
AFFILIATED FUNDING CORPORATION

And After Recording Return To:

AFFILIATED FUNDING CORPORATION
5 HUTTON CENTER DRIVE STE.#1100
SANTA ANA, CALIFORNIA 92707
Loan Number: 104004887600

20050201-0024590
Pages: 19   Fees: $61.00
02/01/2005 08:00:00 AM
T20050008672 LR
Ventura County Recorder
Philip J. Schmit

0455 2860

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN: 1000827-1040048876-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 24, 2005        , together with all Riders to this document.
(B) "Borrower" is RAYMOND GUTIERREZ, JR AND CHERYL A GUTIERREZ, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP.


Borrower is the trustor under this Security Instrument.
(C) "Lender" is AFFILIATED FUNDING CORPORATION

Lender is a NEVADA  CORPORATION                                             organized
and existing under the laws of  CALIFORNIA
Lender's address is 5 HUTTON CENTER DRIVE STE.#1100, SANTA ANA, CALIFORNIA 92707

(D) "Trustee" is STEWART TITLE OF CALIFORNIA
302 NORTH LANTANA, SUITE 41, CAMARILLO, CALIFORNIA 93010

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JANUARY 24, 2005
The Note states that Borrower owes Lender FIVE HUNDRED EIGHTY-THREE THOUSAND TWO HUNDRED AND 00/100                Dollars (U.S. $ 583,200.00        ) plus interest.

Borrower Initials: _____ _____    _____ _____   _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS         DocMagic ℮Forms  800-649-1362
Form 3005 01/01                                Page 1 of 14                                    www.docmagic.com

Ca3005.mzd.1.tem

# EXHIBIT "10"

RECORDING REQUESTED BY

Law Offices of Art Hoomiratana
750 E. Green Street Suite 333
Pasadena, CA 91101

WHEN RECORDED MAIL TO:

Law Offices of Art Hoomiratana
750 E. Green Street Suite 333
Pasadena, CA 91101

```
20130305-00040067-0 1/3
Ventura County Clerk and Recorder
MARK A. LUNN
03/05/2013 03:09:28 PM
695483 $21.00 CO
```

THIS SPACE FOR RECORDER'S USE ONLY

# ORIGINAL

NOTICE OF LIS PENDENS
TITLE OF DOCUMENT

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Govt. Code 27361.6)
(Additional recording fee applies)

275-214
(Rev. 1/9-1)

1

**LAW OFFICES OF ART HOOMIRATANA**

2

**ART HOOMIRATANA, ESQ. (CA SBN 247253)**
**Email: arthoomiratana@realestatelawcenter.org**

3

**REALESTATELAWCENTER.ORG**
**Email: litigationsupport@realestatelawcenter.org**

4

750 East Green Street

5

Suite 333
Pasadena, California 91101

6

Telephone: (888) 688-4770
Facsimile: (888) 848-4570

7

8

Attorney for Plaintiffs,
RAYMOND GUTIERREZ

**ORIGINAL**

9

CHERYL GUTIERREZ

10

11

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA**

12

13

RAYMOND GUTIERREZ

CASE NO.: 56 -2013-00432682- CU-DE- VTA

14

CHERYL GUTIERREZ

**NOTICE OF LIS PENDENS**

15

Plaintiffs,

16

vs.

17

BANK OF AMERICA, NATIONAL

18

ASSOCIATION; and DOES 1-100,
Inclusive,

19

20

Defendants.

21

22

23

24

25

26

Notice is hereby given that the above-entitled action was filed in the above-entitled court on this

27

_28_ day of _FEBRUARY_ 2013, by RAYMOND GUTIERREZ and CHERYL GUTIERREZ

28

1 of 2
**NOTICE OF LIS PENDENS**

Plaintiffs, against BANK OF AMERICA, NATIONAL ASSOCIATION, and DOES 1-100,

Inclusive, Defendants. The action affects the title to a specific parcel of Real Property and the

right to lawful possession of same.

The property is described as APN Number: 082-0-023-085

The commonly known address is: 428 Georgetown Ave

Ventura, CA 93003

The legal description is:

Lot: 82 District: 05 Tract No: 2468.02 Map Ref: MAP 068MR 023

Abbreviated Description: LOT:82 DIST:05 CITY:VENTURA

TR#:2468.02 TRACT 246802, LOT 82, MAP NUM: 68MR 023, PREV

APN: 082-0-023-030 MAP REF: MAP 068MR

023City/Muni/Twp: VENTURA

The nature of the claims are BREACH OF CONTRACT - THIRD PARTY BENEFICIARY,

CONSTRUCTIVE FRAUD, VIOLATION OF CALIFORNIA CIVIL CODE SECTION

§2923.5, VIOLATION OF CALIFORNIA CIVIL CODE SECTION §2923.6, VIOLATION

OF CALIFORNIA CIVIL CODE SECTION §2923.7, PROMISSORY ESTOPPEL,

NEGLIGENCE, NEGLIGENT MISREPRESENTATION, VIOLATION OF BUSINESS

AND PROFESSIONS CODE SECTION 17200, ET SEQ.

Dated:        February 27, 2013                LAW OFFICES OF ART HOOMIRATANA


                                              _____
                                              ART HOOMIRATANA, Esq.
                                              Attorney for Plaintiffs

2 of 2

**NOTICE OF LIS PENDENS**

# EXHIBIT "11"



THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF VENTURA

Return to Search Page

# Case Information

| | |
|---|---|
| **Case Number:** | 56-2013-00432682-CU-OR-VTA |
| **Case Title:** | Raymond Gutierrez vs. Bank of America National Association |
| **Case Category:** | Civil - Unlimited |
| **Filed Date:** | 2/28/2013 |
| **Case Type:** | Other Real Property |
| **Case Status:** | Dismissed |
| **Location:** | Ventura |

# Participants

| Name | Filing Document | Role | Attorney | Filed By |
|---|---|---|---|---|
| Bank of America National Association | Complaint | Defendant | Jindal, Neeru | Gutierrez, Raymond \| Gutierrez, Cheryl |
| Gutierrez, Cheryl | Complaint | Plaintiff | Hoomiratana, Art | Gutierrez, Raymond \| Gutierrez, Cheryl |
| Gutierrez, Raymond | Complaint | Plaintiff | Hoomiratana, Art | Gutierrez, Raymond \| Gutierrez, Cheryl |
| Bank of America National Association | Complaint - Amended | Defendant | Jindal, Neeru | Gutierrez, Raymond \| Gutierrez, Cheryl |
| Gutierrez, Cheryl | Complaint - Amended | Plaintiff | Hoomiratana, Art | Gutierrez, Raymond \| Gutierrez, Cheryl |
| Gutierrez, Raymond | Complaint - Amended | Plaintiff | Hoomiratana, Art | Gutierrez, Raymond \| Gutierrez, Cheryl |

# Past Events

| Event Type | Description | Event Status | Event Date | Event Time | Location | Department |
|---|---|---|---|---|---|---|

| Event Type | Description | Event Status | Event Date | Event Time | Location | Department |
|---|---|---|---|---|---|---|
| Demurrer (CLM) | | HEARD | 6/17/2013 | 8:20 AM | Ventura | 40 |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | | RESCHEDULED | 8/2/2013 | 8:15 AM | Ventura | 22B |
| Demurrer (CLM) | Demurrer to First Amended Complaint | RESCHEDULED | 8/28/2013 | 8:20 AM | Ventura | 40 |
| Demurrer (CLM) | Demurrer to First Amended Complaint | HEARD | 9/11/2013 | 8:20 AM | Ventura | 40 |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | | RESCHEDULED | 10/11/2013 | 8:15 AM | Ventura | 22B |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | | HEARD | 12/9/2013 | 8:15 AM | Ventura | 22B |

# Future Events

No future event information found

# Register of Actions

Show  10  entries  **Filter Results:**

| ? |

Showing 1 to 10 of 46 entries

| ROA # | Entry Date | Entry |
|---|---|---|
| 46 | 9/3/2017 | Case File Destroyed Pursuant to GC 68152 |

| ROA # | Entry Date | Entry |
|-------|-----------|-------|
| 45 | 12/9/2013 | Minutes finalized for MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default heard 12/09/2013 08:15:00 AM. |
| 44 | 12/9/2013 | Court ordered entire action dismissed without prejudice. |
| 43 | 12/10/2013 | Case disposed with disposition of Other court dismissal - Conditional or Good Faith. |
| 42 | 12/9/2013 | Case dismissed with disposition of Other court dismissal - Conditional or Good Faith. |
| 41 | 12/6/2013 | Case Management Statement filed by Gutierrez, Raymond; Gutierrez, Cheryl on 12/06/2013. |
| 40 | 11/21/2013 | Case Management Statement filed by Bank of America National Association on 11/21/2013. |
| 39 | 10/16/2013 | Answer filed by Bank of America National Association on 10/16/2013. |
| 38 | 10/11/2013 | Minutes finalized for MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default heard 10/11/2013 08:15:00 AM. |
| 37 | 10/11/2013 | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default - scheduled for 12/09/2013 at 08:15:00 AM in 22B at Ventura. |

Previous    1    2    3    4    5    Next

# Case Documents

| Event Type | Event Date | Event Time | Department | Document |
|-----------|-----------|-----------|-----------|----------|
| Demurrer (CLM) | 6/17/2013 | 8:20 AM | 40 | Tentative |
| Demurrer (CLM) | 6/17/2013 | 8:20 AM | 40 | Minutes |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | 8/2/2013 | 8:15 AM | 22B | Tentative |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | 8/2/2013 | 8:15 AM | 22B | Minutes |
| Demurrer (CLM) | 9/11/2013 | 8:20 AM | 40 | Minutes |
| Demurrer (CLM) | 9/11/2013 | 8:20 AM | 40 | Tentative |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | 10/11/2013 | 8:15 AM | 22B | Minutes |
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File | 12/9/2013 | 8:15 AM | 22B | Minutes |

| Event Type | Event Date | Event Time | Department | Document |
|---|---|---|---|---|
| Proof of Service/Default | | | | |

© 2012 Superior Court of Ventura County

# EXHIBIT "12"

RECORDED AT REQUEST OF
AND RETURN TO:

1   Patricia Rodriguez Esq., SBN 270639
2   **RODRIGUEZ LAW GROUP, INC.**
    1961 W. Huntington Dr., Suite 201
3   Alhambra, California 91801
    Office Phone: (626) 888-5206
4   Fax: (626) 282-0522

5   Attorney for Plaintiffs,
6   RAYMOND GUTIERREZ JR. and CHERYL A. GUTIERREZ

20151001-00146944-0 1/7
Ventura County Clerk and Recorder
MARK A. LUNN
10/01/2015 11:54:54 AM
989568 $32.00 CE

7              **SUPERIOR COURT OF CALIFORNIA**

8              **FOR THE COUNTY OF VENTURA**

9

10  RAYMOND GUTIERREZ JR., an          Case No.: 56-2015-00472859-CU-OR-VTA
    individual; CHERYL A. GUTIERREZ, an
11  individual;                         **NOTICE OF PENDENCY OF ACTION**

12              Plaintiff,

13      vs.

14
    AFFILIATED FUNDING
15  CORPORATION; NATIONSTAR
    MORTGAGE LLC; MORTGAGE
16  ELECTRONIC REGISTRATION
    SYSTEMS INC.; U.S. BANK N.A. AS
17  SUCCESSOR TRUSTEE TO THE J.P.
18  MORGAN MORTGAGE TRUST 2005-A3;
    BARRETT, DAFFIN FRAPPIER TREDER
19  & WEISS; AND DOES 1 THROUGH 10,
20  INCLUSIVE,

21              Defendants.

22

23

24          PLEASE TAKE NOTICE that this action was commenced in the above-named court

25  on the 30th day of September, 2015, by the above entitled Plaintiffs against the above entitled

26  Defendants, and is now pending.

27

28

                                    1

**VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

The Plaintiffs allege a real property claim affecting real property located at 428 Georgetown Avenue, Ventura, CA 93003 (the "Property"). The legal description of the property is:

"LOT 82, TRACT NO. 2468-2, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGES 23, 24 AND 25 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, BUT HOWEVER, WITHOUT THE RIGHT OF SURFACE OR SUBSURFACE ENTRY ABOVE 500 FEET MEASURED VERTICALLY FROM THE SURFACE OF SAID LAND."

APN 082-0-023-085

Additionally attached in Plaintiffs Notice of Rescission of said Deed of Trust for:

- Affiliated Funding Corporation – April 28, 2015 (SEE EXHIBIT A)
- US Bank National Association – June 8, 2015 (SEE EXHIBIT B)

Dated: October 1, 2015                    RODRIGUEZ LAW GROUP, INC.

By: Patricia Rodriguez, Esq.
Attorney for Plaintiffs
Raymond Gutierrez Jr. and Cheryl A. Gutierrez

2

**VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

# EXHIBIT A

RAYMOND GUTIERREZ JR, CHERYL A GUTIERREZ
428 GEORGETOWN AVENUE
VENTURA, CA 93003

**UPS Tracking Number:** 1 Z 8E3 270 42 6871 7260

**AFFILIATED FUNDING COPORATION**
**ATTENTION:  ALFRED HANNA,**
**AGENT FOR SERVICE OF PROCESS AND PRESIDENT OF AFFILATED FUNDING CORPORATION**
**3843 SOUTH BRISTOL STREET, #482**
**SANTA ANA, CA 92704**

Dear Mr. ALFRED HANNA,

Regarding the following loan, with a security instrument date of January 24, 2005 and a Deed of
Trust recorded in the County of Ventura, State of California, Office of the County Recorder of
said County as Instrument No. 20050201-0024590 on February 1, 2005, by AFFILIATED
FUNDING CORPORATION, its successors and/or assigns, in the amount of $583,200.00, MIN:
1000827-1040048876-6, Loan Number:  104004887600 to borrowers RAYMOND GUTIERREZ, JR
AND CHERYL A GUTIERREZ, for the purchase loan of their principal dwelling located at 428
GEORGETOWN AVENUE, VENTURA, CALIFORNIA 93003:

**The borrowers, RAYMOND GUTIERREZ, JR AND CHERYL A GUTIERREZ, rescind the subject**
**loan.**

If you have any questions, please us at 805-256-4767.  Our email address is
RayGutierrezPE@aol.com

Sincerely,

RAYMOND GUTIERREZ, JR                    CHERYL A GUTIERREZ
BORROWER                                 BORROWER

*See attached*
*for Notary*

## CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT
### (CALIFORNIA CIVIL CODE § 1189)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                           )
COUNTY OF ___Ventura_____       )

On _April 28, 2015_ before me, _Emily Noelle Lueck, Notary Public_
    (Date)                  (Here Insert Name and Title of the Officer)

personally appeared _Raimond Gutierrez Jr. & Jewell A. Gutierrez_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

                                                  EMILY NOELLE LUECK
                                                  Commission # 2079156
                                                  Notary Public - California
                                                  Ventura County
                                                  My Comm. Expires Aug 22, 2018

(Notary Seal)

---

### ADDITIONAL OPTIONAL INFORMATION

Description of Attached Document

Title or Type of Document: _Affidavit_ _____ Document Date: _4-28-15_
_Binding Arbitration_
Number of Pages: _____ Signer(s) Other Than Named Above: _____

Additional information: _____

# EXHIBIT B

RAYMOND GUTIERREZ JR, CHERYL A GUTIERREZ
428 GEORGETOWN AVENUE
VENTURA, CA 93003
June 8, 2015

U.S. Bank, National Association, Successor Trustee to Wachovia Bank N.A.,
as Trustee for The Holders of JPMorgan Mortgage Trust 2005-A3
60 Livingston Avenue
Saint Paul, MN 55107-2232

VIA U.S. CERTIFIED RETURN RECEIPT MAIL ARTICLE NUMBER:  7014 3490 0001 6707 3406

Subject:  Borrowers RAYMOND GUTIERREZ, JR AND CHERYL A GUTIERREZ
          428 GEORGETOWN AVENUE, VENTURA, CA 93003

To Whom It May Concern,

Regarding the following loan in the original amount of $583,200, with a security instrument
date of January 24, 2005 and identified by MIN: 1000827-1040048876-6, Loan Number:
104887600, with a Deed of Trust recorded in the County of Ventura, State of California, Office
of the County Recorder of said County as Instrument No. 20050201-0024590 on February 1,
2005 by AFFILIATED FUNDING CORPORATION, to borrowers RAYMOND GUTIERREZ, JR AND
CHERYL A GUTIERREZ:

The borrowers, RAYMOND GUTIERREZ, JR AND CHERYL A GUTIERREZ, rescind the subject
loan.

If you have any questions, please write us at the above address.

Sincerely,

RAYMOND GUTIERREZ, JR
Borrower and Consumer

CHERYL A GUTIERREZ
Borrower and Consumer

# EXHIBIT "13"



THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF VENTURA

Return to Search Page

# Case Information

| | |
|---|---|
| **Case Number:** | 56-2015-00472859-CU-OR-VTA |
| **Case Title:** | Raymond Gutierrez vs. Affiliated Funding Corporation |
| **Case Category:** | Civil - Unlimited |
| **Filed Date:** | 9/30/2015 |
| **Case Type:** | Other Real Property |
| **Case Status:** | Removed to Federal Court |
| **Location:** | Ventura |

# Participants

| Name | Filing Document | Role | Attorney | Filed By |
|---|---|---|---|---|
| Affiliated Funding Corporation | Complaint | Defendant | | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |
| Barrett Daffin Frappier Treder & Weiss | Complaint | Defendant | TREDER, EDWARD A. | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |
| Gutierrez, Cheryl A | Complaint | Plaintiff | Rodriguez, Patricia R | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |
| Gutierrez, Raymond Jr | Complaint | Plaintiff | Rodriguez, Patricia R | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |

Case 2:17-bk-20125-RK    Doc 313    Filed 09/11/18    Entered 09/11/18 14:28:08    Desc
Main Document    Page 199 of 222

| Name | Filing Document | Role | Attorney | Filed By |
|---|---|---|---|---|
| Mortgage Electronic Registration Systems Inc | Complaint | Defendant | BALSER, JUSTIN D. | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |
| Nationstar Mortgage LLC | Complaint | Defendant | BALSER, JUSTIN D. | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |
| US Bank NA as Successor Trustee to the JP Morgan Mortgage Trust 2005 A3 | Complaint | Defendant | BALSER, JUSTIN D. | Gutierrez, Raymond Jr \| Gutierrez, Cheryl A |

## Past Events

| Event Type | Description | Event Status | Event Date | Event Time | Location | Department |
|---|---|---|---|---|---|---|
| MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | | VACATED | 2/26/2016 | 8:15 AM | Ventura | 22B |

## Future Events

No future event information found

## Register of Actions

| ROA # | Entry Date | Entry |
|---|---|---|
| 10 | 12/7/2015 | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default - scheduled for 02/26/2016 at 08:15:00 AM in 22B was vacated. |
| 9 | 12/3/2015 | Notice of Removal to Federal Court (2 15 cv 09308 PJW) filed by Nationstar Mortgage LLC; Mortgage Electronic Registration Systems Inc; US Bank NA as Successor Trustee to the JP Morgan Mortgage Trust 2005 A3 on 12/03/2015. |
| 8 | 12/3/2015 | BALSER, JUSTIN D. added as a effective 12/03/2015. |
| 7 | 11/10/2015 | Notice - Other (of Pendency of Action) filed by Gutierrez, Raymond Jr; Gutierrez, Cheryl A on 11/10/2015. |

| ROA # | Entry Date | Entry |
|---|---|---|
| 6 | 11/4/2015 | Notice - Other (of Filing of Declaration of Non Monetary Status) filed by Barrett Daffin Frappier Treder & Weiss on 11/04/2015. |
| 5 | 11/4/2015 | Declaration of Non-Monetary Status filed by Barrett Daffin Frappier Treder & Weiss on 11/04/2015. |
| 4 | 10/1/2015 | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default - scheduled for 02/26/2016 at 08:15:00 AM in 22B at Ventura. |
| 3 | 9/30/2015 | Case assigned to Department 20. |
| 2 | 9/30/2015 | Civil Case Cover Sheet filed by Gutierrez, Raymond Jr; Gutierrez, Cheryl A on 09/30/2015. |
| 1 | 9/30/2015 | Complaint (for Damages & Equitable Relief) filed by Gutierrez, Raymond Jr; Gutierrez, Cheryl A on 09/30/2015. Filed By: Gutierrez, Raymond Jr(Plaintiff) | Gutierrez, Cheryl A(Plaintiff) Refers To: Affiliated Funding Corporation(Defendant) | Nationstar Mortgage LLC(Defendant) | Mortgage Electronic Registration Systems Inc(Defendant) | US Bank NA as Successor Trustee to the JP Morgan Mortgage Trust 2005 A3(Defendant) | Barrett Daffin Frappier Treder & Weiss(Defendant) |

© 2012 Superior Court of Ventura County

# EXHIBIT "14"

ACCO,NORTHERN,(KKx),         ,DISCOVERY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:15-cv-09308-JFW-KK

Raymond Gutierrez Jr., et al v. Affiliated Funding Corporation, et al
Assigned to: Judge John F. Walter
Referred to: Magistrate Judge Kenly Kiya Kato
Related Case: 2:17-cv-05684-JFW-KK
Case in other court: 9th Circuit, 16-55373
Superior Court of California, Ventura County, 56-02015-00472859-CU-OR-VTA
Cause: 28:1444 Notice of Removal - Foreclosure

Date Filed: 12/02/2015
Date Terminated: 02/11/2016
Jury Demand: Plaintiff
Nature of Suit: 220 Real Property: Foreclosure
Jurisdiction: Federal Question

## Plaintiff

**Raymond Gutierrez, Jr.**
*an individual*

represented by **Patricia Renee Rodriguez**
Rodriguez Law Group Inc
1492 W. Colorado Blvd., Suite 120
Pasadena, CA 91105
626-888-5206
Fax: 626-282-0522
Email: prod@attorneyprod.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cheryl A. Gutierrez**          represented by  **Patricia Renee Rodriguez**
*an individual*                                    (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Affiliated Funding
Corporation**

**Defendant**

**Mortgage Electronic**     represented by  **Karen Palladino Ciccone**
**Registration Systems,**                    Akerman LLP
**Inc.**                                     725 South Figueroa Street 38th
                                             Floor
                                             Los Angeles, CA 90017-5433
                                             213-688-9500
                                             Fax: 213-688-6342
                                             Email:
                                             karen.ciccone@akerman.com
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Justin D Balser**
                                             Akerman LLP
                                             725 South Figueroa Street 38th
                                             Floor
                                             Los Angeles, CA 90017-5433
                                             213-688-9500
                                             Fax: 213-627-6342
                                             Email:
                                             justin.balser@akerman.com
                                             *ATTORNEY TO BE NOTICED*

**Katalina Baumann**
Akerman Senterfitt LLP
725 South Figueroa Street 38th
Floor
Los Angeles, CA 91784
213-688-9500
Fax: 213-627-6342
Email:
katalina.baumann@akerman.com
*ATTORNEY TO BE NOTICED*

### Defendant

| | | |
|---|---|---|
| **U.S. Bank N.A.** | represented by | **Karen Palladino Ciccone** |
| *as successorr trustee to* | | (See above for address) |
| *the J.P. Morgan* | | *LEAD ATTORNEY* |
| *Mortgage Trust 2005-A3* | | *ATTORNEY TO BE NOTICED* |
| *Successor* | | |

as successor Trustee to
The J.P. Morgan
Mortgage Trust 2005-A3

**Justin D Balser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katalina Baumann**
(See above for address)
*ATTORNEY TO BE NOTICED*

### Defendant

| | | |
|---|---|---|
| **Nationstar Mortgage LLC** | represented by | **Karen Palladino Ciccone** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Justin D Balser**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Katalina Baumann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Barrett, Daffin
Frappier Treder and
Weiss**

**Defendant**

**Does**
*1 through 10, inclusive*
*TERMINATED:*
*12/22/2015*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/02/2015 | 1 | NOTICE OF REMOVAL from Ventura County Superior Court, case number 56-2015-00472859-CU-OR-VTA Receipt No: 0973-16872730 - Fee: $400, filed by Defendants Nationstar Mortgage LLC, U.S. Bank N.A. as Successor Trustee to the J.P. Morgan Mortgage Trust 2005-A3, Mortgage Electronic Registration Systems, Inc.. (Attachments: # 1 Civil Cover Sheet) (Attorney Katalina Baumann added to party Mortgage Electronic Registration Systems, Inc.(pty:dft), Attorney Katalina Baumann added to party Nationstar Mortgage LLC(pty:dft), Attorney Katalina Baumann added to party U.S. Bank N.A. as Successor Trustee to the J.P. Morgan Mortgage Trust 2005-A3(pty:dft))(Baumann, Katalina) (Entered: 12/02/2015) |

| 12/02/2015 | | CONFORMED COPY OF COMPLAINT against defendants Affiliated Funding Corporation, Barrett, Daffin Frappier Treder and Weiss, Does 1 through 10, inclusive, Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A., Jury Demand, filed by plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (esa) (Entered: 12/02/2015) |
|---|---|---|
| 12/02/2015 | 2 | NOTICE TO COUNSEL re Magistrate Judge Direct Assignment Program. This case has been randomly assigned to Magistrate Judge Patrick J. Walsh. (Attachments: # 1 CV-11C) (esa) (Entered: 12/02/2015) |
| 12/02/2015 | 3 | NOTICE OF DEFICIENCIES in Attorney Case Opening. The following error(s) was found: No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1-1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. Other error(s) with document(s): CIVIL COVER SHEET should have been filed as a separate entry under its own event. NO FURTHER ACTION is required regarding this item. (esa) (Entered: 12/02/2015) |
| 12/02/2015 | 4 | REQUEST FOR JUDICIAL NOTICE *IN SUPPORT OF ITS NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U SC §§1331, 1441, AND 1446* filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Baumann, Katalina) (Entered: 12/02/2015) |
| 12/02/2015 | 5 | CERTIFICATE of Interested Parties filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A., (Baumann, |

Katalina) (Entered: 12/02/2015)

12/02/2015    6    STATEMENT of Non-Consent to Proceed Before a United States Magistrate Judge filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A. (Baumann, Katalina) (Entered: 12/02/2015)

12/03/2015    7    NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Statement 6 . The following error was found: Incorrect event selected. The correct event is: Consent to Proceed (CV-11C) DECLINED before US Magistrate Judge Direct Assignment Program. Incorrectly used the event: Statement. (mg) (Entered: 12/03/2015)

12/03/2015    8    NOTICE OF REASSIGNMENT of MJDAP case from Magistrate Judge Patrick J. Walsh to Judge John F. Walter for all further proceedings. Any discovery matters that may be referred to a Magistrate Judge are assigned to U.S. Magistrate Judge Kenly Kiya Kato. The case number will now reflect the initials of the transferee Judges CV15-09308 JFW (KKx). (mg) (Entered: 12/03/2015)

12/03/2015    9    DECLINED STATEMENT OF CONSENT TO PROCEED before the assigned Magistrate Judge filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Baumann, Katalina) (Entered: 12/03/2015)

12/03/2015    10    Text Entry Order: Plaintiff's counsel shall deliver courtesy copies of ALL filings in this action to the the Chambers courtesy box by 10:30 am on December 7, 2015. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 12/03/2015)

CM/ECF - California Central District  Case 2:17-bk-20125-RK  Doc 313  Filed 09/11/18  Entered 09/11/18 14:28:08  Desc
Main Document  Page 208 of 222

https://ecf.caed.uscourts.gov/cgi-bin/Dkt.Rpt.pl?160875864757377-...

| 12/03/2015 | 11 | STANDING ORDER by Judge John F. Walter. This action has been assigned to the calendar of Judge John F. Walter. READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. (jp) (Entered: 12/03/2015) |
|---|---|---|
| 12/03/2015 | 12 | MINUTE ORDER IN CHAMBERS by Judge John F. Walter: Counsel are hereby notified that a Scheduling Conference has been set for 1/4/2016 at 08:30 AM before Judge John F. Walter. Lead Trial Counsel shall attend all proceedings before this Court, including the Scheduling Conference. Counsel are directed to comply with Rule 26 of the Federal Rules of Civil Procedure and Local Rule 26-1 in a timely fashion and to file a Joint Report, on or before 12/21/2015. (jp) (Entered: 12/03/2015) |
| 12/09/2015 | 13 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. Motion set for hearing on 1/11/2016 at 01:30 PM before Judge John F. Walter. (Attachments: # 1 Proposed Order) (Baumann, Katalina) (Entered: 12/09/2015) |
| 12/09/2015 | 14 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 13 filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Baumann, Katalina) (Entered: 12/09/2015) |
| 12/10/2015 | 15 | Text Entry Order: In Defendants Nationstar Mortgage LLC, U.S. Bank N.A. as Successor Trustee to the J.P. Morgan Mortgage Trust 2005-A3, and Mortgage Electronic Registration Systems, Inc.'c Motion to Dismiss filed on December 9, 2015 (Docket No. 13 ), |

counsel represents that Plaintiffs counsel, Patricia Rodriguez failed to respond to Defendants efforts to comply with Local Rule 7-3. Accordingly, Plaintiffs counsel, Patricia Rodriguez, is ordered to show cause, in writing, by December 15, 2015 why the Court should not impose sanctions in the amount of $750.00 against Plaintiffs counsel, Patricia Rodriguez or dismiss this action for failure to cooperate with counsel and comply with Local Rule 7-3 and paragraph 5(b) of the Court's Standing Order filed December 3, 2015. No oral argument on this matter will be heard unless otherwise ordered by the Court. See Fed. R. Civ. P. 78; Local Rule 7-15. The Order will stand submitted upon the filing of the response to the Order to Show Cause. Failure to respond to the Order to Show Cause will result in the imposition of sanctions. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 12/10/2015)

12/11/2015  16  DECLARATION of Patricia Rodriguez & Katalina Baumann re Text Only Scheduling Notice,,,, 15 *JOINT DECLARATION* filed by Plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (Rodriguez, Patricia) (Entered: 12/11/2015)

12/16/2015  17  Text Entry Order: The Court has reviewed the Joint Declaration of the Parties Counsels Responding to this Courts Order to Show Cause (Docket No. 16 ) and finds that counsel did not explain why they failed to file the joint statement required by paragraph 5(b) of the Court's December 3, 2015 Standing Order. Accordingly Defendants Nationstar Mortgage LLC, U.S. Bank N.A. As Successor Trustee to the J.P. Morgan Mortgage Trust 2005-A3, and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss filed December 9, 2015 (Docket

13 ) is STRICKEN for failure to comply with the Courts Standing Order. If Defendants wish to re-file the Motion, counsel shall meet and confer in person by December 28, 2015. In the unlikely event that the parties cannot resolve issues raised in the Motion, within 3 days of the meet and confer, each party shall file a declaration setting forth the issues resolved at the conference and those issues that were not resolved with a detailed explanation of why those issues could not be resolved. If a Motion remains necessary, it shall not be filed until 2 days after each party files the declaration required by this Order.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 12/16/2015)

12/21/2015  18  STATUS REPORT *JOINT STATUS REPORT* filed by Plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (Rodriguez, Patricia) (Entered: 12/21/2015)

12/21/2015  19  REQUEST for ADR Procedure No. 2 filed. Parties request Filed by Plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr.(Rodriguez, Patricia) Modified on 12/22/2015 (cw). (Entered: 12/21/2015)

12/22/2015  20  NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents Re: Joint Status Report 18 . The following error was found: Incorrect type font used by counsel; see L.R. 11-3.1.1. Counsel are reminded to use the correct type font in future filings. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (cw) (Entered: 12/22/2015)

| 12/22/2015 | 21 | ORDER VACATING SCHEDULING CONFERENCE AND REFERRAL TO ADR by Judge John F. Walter. The Court has reviewed the parties' Joint Rule 26(f) Report and finds that a Scheduling Conference is not necessary. The hearing on January 4, 2016 is vacated and taken off calendar. A Scheduling and Case Management Order will issue. Any unserved DOE defendants are dismissed at this time.The Court, having considered the parties' Request: ADR Procedure Selection, the Notice to Parties of Court-Directed ADR Program, or the report submitted by the parties pursuant to Fed. R. Civ. P. 26(f) and Civil L.R. 26-1, hereby: ADR PROCEDURE NO. 3: (Private mediation). The ADR proceeding is to be completed no later than: 8/1/2016. (jp) (Entered: 12/22/2015) |
|---|---|---|
| 12/22/2015 | 23 | SCHEDULING AND CASE MANAGEMENT ORDER by Judge John F. Walter. ( Jury Trial set for 12/13/2016 at 08:30 AM and Pretrial Conference set for 11/18/2016 at 10:00 AM before Judge John F. Walter.) (jloz) (Entered: 12/23/2015) |
| 12/23/2015 | 22 | DECLARATION of Karen P. Ciccone *Lead Trial Counsel re: Compliance with Local Rules Governing Electronic Filing* filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Ciccone, Karen) (Entered: 12/23/2015) |
| 12/23/2015 | 24 | DECLARATION of Karen P. Ciccone *Pursuant to the December 16, 2015 Court Order* filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Ciccone, Karen) (Entered: 12/23/2015) |
| 12/24/2015 | 25 | NOTICE of Supplement Removal filed by Defendants |

Mortgage Electronic Registration Systems, Inc.,
Nationstar Mortgage LLC, U.S. Bank N.A.. (Ciccone,
Karen) (Entered: 12/24/2015)

| | | |
|---|---|---|
| 12/26/2015 | 26 | DECLARATION of Patricia Rodriguez *PURSUANT TO THIS COURTS DECEMBER 16, 2015 ORDER* filed by Plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (Rodriguez, Patricia) (Entered: 12/26/2015) |
| 12/29/2015 | 27 | Joint STIPULATION for Extension of Time to Amend Complaint - (Discovery), filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Attachments: # 1 Proposed Order)(Baumann, Katalina) (Entered: 12/29/2015) |
| 12/30/2015 | 28 | ORDER GRANTING Parties Stipulation to Allow Plaintiffs to File Their Amended Complaint 27 by Judge John F. Walter as follows: The Court GRANTS the parties' joint stipulation allowing plaintiffs Cheryl Gutierrez and Raymond Gutierrez (plaintiffs) to file their amended complaint within 10 days of the date of this order. (jp) (Entered: 12/30/2015) |
| 01/09/2016 | 29 | FIRST AMENDED COMPLAINT against DEFENDANTS All Defendants amending Complaint - (Discovery),, filed by PLAINTIFFS Cheryl A. Gutierrez, Raymond Gutierrez, Jr(Rodriguez, Patricia) (Entered: 01/09/2016) |
| 01/11/2016 | 30 | AMENDED STANDING ORDER by Judge John F. Walter. This action has been assigned to the calendar of Judge John F. Walter. READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. (jp) (Entered: 01/11/2016) |

01/19/2016  31  STATEMENT re the Parties' Meet and Confer Pursuant to the Court's January 11, 2016 Standing Order filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A. (Baumann, Katalina) (Entered: 01/19/2016)

01/19/2016  32  NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents Re: Joint Statement 31 . The following error was found: The Joint Statement lacks the attestation required for the non-filing signatories; see L.R. 5-4.3.4(a)(2)(i). Counsel are reminded to include the attestation in future filings. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (cw) (Entered: 01/20/2016)

01/22/2016  33  NOTICE OF MOTION AND MOTION to Dismiss Case *as to Plaintiffs' First Amended Complaint* filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. Motion set for hearing on 2/22/2016 at 01:30 PM before Judge John F. Walter. (Baumann, Katalina) (Entered: 01/22/2016)

01/22/2016  34  REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *as to Plaintiffs' First Amended Complaint* 33 filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Baumann, Katalina) (Entered: 01/22/2016)

02/03/2016  35  OPPOSITION OPPOSITION TO DEFENDANTS MOTION TO DISMISS FIRST AMENDED

COMPLAINT re: NOTICE OF MOTION AND MOTION to Dismiss Case *as to Plaintiffs' First Amended Complaint* 33 filed by Plaintiffs Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (Rodriguez, Patricia) (Entered: 02/03/2016)

02/08/2016    36    REPLY in Support of NOTICE OF MOTION AND MOTION to Dismiss Case *as to Plaintiffs' First Amended Complaint* 33 filed by Defendants Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage LLC, U.S. Bank N.A.. (Baumann, Katalina) (Entered: 02/08/2016)

02/10/2016    37    NOTICE OF LODGING filed re NOTICE OF MOTION AND MOTION to Dismiss Case *as to Plaintiffs' First Amended Complaint* 33 (Attachments: # 1 Proposed Statement of Decision Granting Defendants' Motion to Dismiss First Amended Complaint)(Baumann, Katalina) (Entered: 02/10/2016)

02/11/2016    38    MINUTES (IN CHAMBERS) ORDER GRANTING Defendants Motion to Dismiss Plaintiffs' First Amended Complaint 33 by Judge John F. Walter: Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED without leave to amend. The Court adopts as its ruling Defendants Proposed Statement of Decision, lodged with the Court on February 10, 2016. In addition, the Court exercises its discretion and sua sponte DISMISSES without leave to amend Plaintiffs' First Amended Complaint as to all the defendants, including non-moving defendants Affiliated Funding Corporation and Barrett Daffin Frappier Treder and Weiss. Accordingly, this action is DISMISSED with prejudice. (MD JS-6. Case Terminated.) (Attachments: # 1 Statement of Decision) (jp) (Entered: 02/11/2016)

03/10/2016  39  NOTICE OF APPEAL to the 9th Circuit Court of
Appeals filed by PLAINTIFFS Cheryl A. Gutierrez,
Raymond Gutierrez, Jr. Appeal of Order on Motion to
Dismiss Case,,, 38 . (Appeal Fee - In Forma Pauperis
Request.) (Rodriguez, Patricia) (Entered: 03/10/2016)

03/11/2016  40  NOTIFICATION by Circuit Court of Appellate Docket
Number 16-55373, 9th Circuit regarding Notice of
Appeal to 9th Circuit Court of Appeals 39 as to Plaintiffs
Cheryl A. Gutierrez, Raymond Gutierrez, Jr. (mat)
(Entered: 03/11/2016)

03/14/2016  41  ORDER from Ninth Circuit Court of Appeals filed re:
Notice of Appeal to 9th Circuit Court of Appeals 39 filed
by Raymond Gutierrez, Jr., Cheryl A. Gutierrez. CCA #
16-55373. A review of the docket reflects that appellant
has not paid the docketing and filing fees for this appeal.
Within 21 days from the date of this order, appellant
shall: [See document] If appellant fails to comply with
this order, this appeal will be dismissed automatically by
the Clerk for failure to prosecute. See 9th Cir. R. 42-1.
[See document for details] (mat) (Entered: 03/15/2016)

04/07/2016  42  ORDER from Ninth Circuit Court of Appeals filed re:
Notice of Appeal to 9th Circuit Court of Appeals 39 filed
by Raymond Gutierrez, Jr., Cheryl A. Gutierrez. CCA #
16-55373. This appeal is dismissed for failure to pay the
docketing/filing fees in this case. Counsel for appellants
is directed to notify immediately his/her client in writing
regarding this dismissal. This order served on the district
court shall constitute the mandate of this court. (mat)
(Entered: 04/07/2016)

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 08/27/2018 12:23:24 | | | |
| **PACER Login:** | lnbyb1700:4835325:4871380 | **Client Code:** | 8277 |
| **Description:** | Docket Report | **Search Criteria:** | 2:15-cv-09308-JFW-KK End date: 8/27/2018 |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

EXHIBIT "15"

Alex Padilla
California Secretary of State

 **Business Search - Entity Detail**

The California Business Search is updated daily and reflects work processed through Thursday, September 6, 2018. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C2319447    AFFILIATED FUNDING CORPORATION

| | |
|---|---|
| Registration Date: | 08/28/2001 |
| Jurisdiction: | NEVADA |
| Entity Type: | FOREIGN STOCK |
| Status: | FTB FORFEITED |
| Agent for Service of Process: | MEDHAT SABRY |
| | 5 HUTTON CENTRE STE 1100 |
| | SANTA ANA CA 92707 |
| Entity Address: | 5 HUTTON CENTRE STE 1100 |
| | SANTA ANA CA 92707 |
| Entity Mailing Address: | 5 HUTTON CENTRE STE 1100 |
| | SANTA ANA CA 92707 |

| Document Type ↕ | File Date ↧ | PDF |
|---|---|---|
| SI-COMPLETE | 06/07/2004 | |
| SI-COMPLETE | 01/09/2004 | |
| REGISTRATION | 08/28/2001 | |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**        **New Search**        **Back to Search Results**

# State of California
## Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:

  AFFILIATED FUNDING CORPORATION

```
FILE NUMBER:       C2319447
REGISTRATION DATE: 08/28/2001
TYPE:              FOREIGN CORPORATION
JURISDICTION:      NEVADA
STATUS:            FORFEITED
```

I, ALEX PADILLA, Secretary of State of the State of California,
hereby certify:

The records of this office indicate the California Franchise Tax
Board forfeited the entity's powers, rights and privileges on
January 03, 2005, pursuant to the provisions of the California
Revenue and Taxation Code, and the entity's powers, rights and
privileges remain forfeited.



IN WITNESS WHEREOF, I execute this certificate
and affix the Great Seal of the State of
California this day of December 02, 2016.

**ALEX PADILLA**
**Secretary of State**

MAR

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER: (1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS, SUBJECT TO OVERBID, (2) FINDING THAT THE BUYER IS GOOD FAITH PURCHASER, (3) APPROVING BIDDING PROCEDURES AND BREAK-UP FEE, (4) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS, AND (5) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 11, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Matthew R. Clark    bankruptcyecfs@gmail.com, mclark@ecf.courtdrive.com
- Theron S Covey    tcovey@rasflaw.com, CAECF@tblaw.com
- Jered T Ede    jede@hallgriffin.com, cgallardo@hallgriffin.com
- Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Can Guner    cguner@rasflaw.com
- Jamie D Hanawalt    ecfcacb@aldridgepite.com, jhanawalt@ecf.inforuptcy.com
- Matthew S Henderson    matthew.henderson@piblaw.com, marian.flores@piblaw.com
- Laurie Howell    laurie.howell@tflglaw.com
- Chi L Ip    filing@lawyer4property.com, jenny@lawyer4property.com
- Merdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Ian Landsberg    ian@landsberg-law.com, casey@landsberg-law.com;lisa@landsberg-law.com;diana@landsberg-law.com;yesi@landsberg-law.com;ilandsberg@ecf.inforuptcy.com
- Megan E Lees    caecf@tblaw.com, MEL@ecf.inforuptcy.com
- Richard D Marks    RDMarks@rdmpc.com
- Angie M Marth    amarth@logs.com, ssali@logs.com
- Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
- Vinod Nichani    vinod@nichanilawfirm.com, vnichani1978@gmail.com
- Michael G Olinik    michael@oliniklaw.com, rachael@callahanfirm.com
- David M Poitras    dpoitras@jmbm.com, bt@jmbm.com;vr@jmbm.com;dmp@ecf.inforuptcy.com
- Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Cassandra J Richey    cdcaecf@bdfgroup.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Edward G Schloss    egs2@ix.netcom.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- Bethany Wojtanowicz    bethanyw@w-legal.com, BNC@w-legal.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1
- Hatty K Yip    hatty.yip@usdoj.gov
- Kristin A Zilberstein    ecfnotifications@ghidottilaw.com

2    **2.  SERVED BY UNITED STATES MAIL**: On **September 11, 2018**, I served the following persons
and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a
3    true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid,
and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
4    completed no later than 24 hours after the document is filed.

5

6    **RSN** U.S. BANK NATIONAL ASSOCIATION. AS TRUSTEE, SUCCESSOR IN
INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE
7    FOR J.P. MORGAN MORTGAGE TRUST 2005-A3, MORTAGE PASS-
THROUGH CERTIFICATES
8    C/O RAS CRANE. LLC
BANKRUPTCY DEPARTMENT
9    10700 ABBOTT'S BRIDGE ROAD
SUITE 170
10   DULUTH, GA 30097

Amador County Tax Collector **RSN**
Attn: Michael E. Ryan
810 Court Street
Jackson, CA 95642

11

12    ☒ *Service information continued on attached page*

13    **3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
14    on **September 11, 2018**, I served the following persons and/or entities by personal delivery, overnight
mail service, or (for those who consented in writing to such service method), by facsimile transmission
15    and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or
overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

16    **SERVED BY PERSONAL DELIVERY**
Honorable Robert N. Kwan
17    United States Bankruptcy Court
255 E. Temple Street, Suite 1682 / Courtroom 1675
18    Los Angeles, CA 90012

19

20    ☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
21    true and correct.

22    | September 11, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
23    | Date | Type Name | Signature |

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

Buyer and Alleged Secured List
428 Georgetown

Buyer Broker:
Mark Goetz
Coldwell Banker Residential Brokerage
3938 State St
Santa Barbara, CA 93105-3114

US Bank, N.A. **RSN**
c/o RAS Crane, LLC
c/o Can Gunner
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA 30097

Nationstar Mortgage
Attn: Bankruptcy Department
PO Box 61096
Dallas, TX 75261-9741

Nationstar Mortgage
Attn: Hall Huguenin LLP
Jered T. Ede/Elena A. Leonard
1851 E. First St., 10th Fl.
Santa Ana, CA 92705

Ventura County Tax Collector
Attn: Bankruptcy
Mary K. Barnes
Deputy Tax Collector
800 S. Victoria Ave.
Ventura, CA 93009-1290

Gene Wolter Development Co.
BIANCA M WOLTER (Agent for
Service)
10240 DONNA AVE
NORTHRIDGE CA 91324

Southern California Edison Co.
CRISTINA E. LIMON (Agent for
Service)
2244 WALNUT GROVE AVENUE
ROSEMEAD CA 91770

Lis Pendens
Law Offices of Art Hoomiratana
750 E. Green St., Suite 333
Pasadena, CA 91101

Amador County Tax Collector **RSN**
Attn: Michael E. Ryan
810 Court Street
Jackson, CA 95642