1  TODD M. ARNOLD (SBN 221868)
   LEVENE, NEALE, BENDER, YOO & BRILL LLP
2  10250 Constellation Blvd., Suite 1700
3  Los Angeles, CA  90067
   Telephone: (310) 229-1234 / Fax: (310) 229-1244
4  Email: tma@lnbyb.com

5  Attorneys for Debtor and Debtor in Possession

6
7              UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                  LOS ANGELES DIVISION

10 | In re:                              | Case No.: 2:17-bk-20125-RK

11 | GRAND VIEW FINANCIAL, LLC,          | Chapter 11 Case

12 |        Debtor and Debtor in Possession. | **DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER:**
13 |                                     | **(1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,  ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS, SUBJECT TO OVERBID,**
14 |                                     | **(2) FINDING THAT THE BUYER IS GOOD FAITH PURCHASER,**
15 |                                     | **(3) APPROVING BIDDING PROCEDURES AND BREAK-UP FEE,**
16 |                                     | **(4) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS, AND**
17 |                                     | **(5) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h);**
18 |                                     | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**

Hearing
Date:   November 28, 2018
Time:   11:00 a.m.
Place:  Courtroom 1675
           255 E. Temple Street
           Los Angeles, CA  90012

1

1       **PLEASE TAKE NOTICE** that Grand View Financial, LLC, the debtor and debtor in

2    possession in the above-captioned Chapter 11 bankruptcy case (the "<u>Debtor</u>"), hereby moves,

3    pursuant to this motion (the "<u>Motion</u>"), for the entry of an order (the "<u>Sale Order</u>"):

4       (1)    pursuant to 11 U.S.C. §§ 363(b) and (f), approving the sale of the

5    Debtor's residential real property located at 124 Illinois St., Vallejo, CA 94590 (the "<u>Illinois</u>

6    <u>Property</u>") to (a) Rajesh Sharma (the "<u>Buyer</u>"), free and clear of any and all liens, claims,

7    encumbrances, and interests, with the exception of Items 1 and 4-10 (the "<u>Excepted Items</u>")

8    set forth in the preliminary title report for the Property (the "<u>Title Report</u>"), a true and

9    correct copy of which is attached hereto as **Exhibit "1,"** for a purchase price of $370,000

10    (the "<u>Purchase Price</u>"), pursuant to the Counteroffer re Purchase and Sale of 124 Illinois St.,

11    Vallejo, CA 94590 (the "<u>Purchase Agreement</u>"), a true and correct copy of which is attached

12    hereto as **Exhibit "2,"** subject to overbid (each an "<u>Overbid</u>" and collectively the

13    "<u>Overbids</u>") pursuant to the overbid procedures (the "<u>Overbid Procedures</u>") set forth below

14    and any auction (the "<u>Auction</u>") conducted pursuant to the Overbid Procedures, or (b) the

15    winning overbidder (each an "<u>Overbidder</u>" and collectively the "<u>Overbidders</u>") at the

16    Auction;

17       (2)    pursuant to 11 U.S.C. § 363(m) finding that the Buyer or any winning

18    Overbidder at the Auction confirmed as the winning bidder for the Illinois Property is a

19    "good faith" purchaser entitled to the protections afforded under 11 U.S.C. § 363(m);

20       (3)    approving the following Overbid Procedures and break-up fee (the

21    "<u>Break-Up Fee</u>"):

22       •    <u>**Date, Time, and Location of the Auction:**</u> The Auction

23    shall be held concurrently with the hearing on the Motion, as follows:

24                **Date:  November 28, 2018**

25                **Time: 11:00 a.m.**

                    **Place: Courtroom 1675**

26                      **255 E. Temple Street**

27                      **Los Angeles, CA  90012**

28

- **Initial Overbid Amount:** The Purchase Price of $370,000, plus *at least* $10,000 more (*i.e.*, at least $380,000) (the "Initial Overbid Amount");

- **Qualification of Overbidders:**  In order for any prospective Overbidder to have the right to bid at the Auction, the prospective Overbidder must, **within three (3) business days prior to the Auction**, (a) provide to counsel for the Debtor, Levene, Neale, Bender, Yoo & Brill L.L.P., c/o Todd M. Arnold, 10250 Constellation Boulevard, Suite 1700 Los Angeles, California 90067, Telephone: (310) 229-1234 Facsimile: (310) 229-1244, Email: tma@lnbyb.com ("LNBYB"), a signed proposed purchase agreement (each an "Overbid Purchase Agreement"), in substantially and materially the same form as the Purchase Agreement,[1] redlined to show any changes, with such purchase agreement not to contain any financing, inspection, due diligence, or other contingencies (other than the entry of the Sale Order approving the sale of the Illinois Property to the Overbidder), and including, a removal of all contingencies (other than the entry of the Sale Order approving the sale of the Illinois Property to the Overbidder) pursuant to CAR Form CR 14.C, and with a minimum purchase price of at least the Initial Overbid Amount of $380,000; (b) submit a deposit in the amount of 10% of the Initial Overbid Amount set forth in the Overbid Purchase Agreement by cashiers' check or wire into a segregated trust account maintained by LNBYB, who will provide wire instructions on request; (c) demonstrate that the prospective Overbidder has sufficient funds or financing to close the transaction within fifteen (15) calendar days of the entry of the Sale Order approving the prospective Overbidder and the sale of the Illinois Property to the Overbidder; and (d) agree that the prospective

---

[1] LNBYB will provide a copy of the Purchase Agreement in Word to any parties interested in submitting an Overbid.

Overbidder's deposit will be non-refundable if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Illinois Property within fifteen (15) calendar following the date of entry of the Sale Order – regardless of whether an appeal has been filed of the Sale Order, provided there is no entered stay pending appeal of either of the foregoing orders (*i.e.*, no final order requirement).

- **Overbidding Increments and Considerations in Determining the Winning Bidder at Any Auction:** In order to qualify to bid at the Auction, any Overbid Purchase Agreement is required to include an Initial Overbid Amount of at least $380,000. Subsequent overbids at the Auction must be in increments of $1,000 or amounts that are wholly divisible by $1,000. The Debtor, in consultation with its professionals, will select the highest and best offer and recommend Court approval of the sale of the Illinois Property to the Buyer or any qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals, has made the highest and best offer for the Illinois Property.

- **Break-Up Fee:** In the event the Buyer is not the successful bidder at the Auction and an Overbidder closes a purchase of the Illinois Property, the Debtor shall pay a $5,000 Break-Up Fee (approximately 1.4% of the Purchase Price) to the Buyer upon the close of escrow;

(4)    authorizing the Debtor to pay from the proceeds of the sale of the Illinois Property (a) any pre-closing real property taxes secured by the Illinois Property allocated to the Debtor, (b) the 6% commission owed to the Debtor's broker, Keller Williams Realty and KW Commercial (the "Primary Broker") and associated Keller Williams Realty and KW Commercial offices located throughout the United States ("Associated Brokers" and, together with Primary Broker, the "Broker"), and any cooperating broker, pursuant to the Purchase Agreement and the Debtor's application to employ the Broker, which was approved by the Court, and (c) any other customary escrow closing fees and charges

allocated to the Debtor;

(5)     waiving the 14-day stay period set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("FRBP") to enable the sale of the Illinois Property to close as quickly as possible; and

(6)     providing such other relief as is appropriate under the circumstances.

**PLEASE TAKE FURTHER NOTICE** that the principal terms and conditions of the proposed sale to the Buyer, subject to overbid, include the following:[2]

- Name of Buyer: Rajesh Sharma (*i.e.*, the "Buyer").
- Asset: The Illinois Property.
- Purchase Price: $370,000 subject to overbid pursuant to the Overbid Procedures.
- Deposit: $11,000 (3% of the Purchase Price)
- Estimated Costs of Sale: Total of 8% comprised of a 6% commission for the Debtor's broker, plus any outstanding real property taxes, plus other customary closing costs.
- Condition of Asset/Property: "As-is" and "Where is."
- Contingencies: The Purchase Agreement contained a due diligence period that expired on October 1, 2018. All contingencies have now been lifted other than the entry of the Sale Order approving the sale of the Illinois Property to the Buyer.
- Other Terms: The sale is subject to the Overbid Procedures and Break-Up Fee set forth above. Further, the Debtor's sale of the Illinois Property shall be free and clear of any and all liens, claims, encumbrances, and interests, other than the Excepted Items, which non-excepted liens, claims, encumbrances, and interests the Debtor believes are limited to (a) Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report, which are liens securing claims for (i) unpaid real property taxes owed to Solano County (the "County") and (ii) unpaid assessments owed to the city of Vallejo (the "City"), all of which total approximately

---

[2] This is a summary only. To the extent there is any inconsistency between this summary and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

$4,700 and will be paid from escrow upon closing, (b) Item 13 of the Title Report, which is a purported lien allegedly securing an alleged loan from Nations Direct Mortgage, LLC ("Nations Direct") that was later allegedly transferred to PennyMac Loan Services, LLC ("PennyMac LLC"), but which claim and lien, will attach to the proceeds from the sale of the Illinois Property with the same extent, validity, and priority as such claim and lien had prior to the sale, and (c) Items 14-16 of the Title Report, which are deeds of trust (the "Affiliate DOTs") issued by the Debtor to certain of its affiliates (the "Affiliates") that were deemed to be released, reconveyed, terminated, and expunged from title pursuant to an order of the Court.

- Potential Tax Consequences: The Debtor will have to pay applicable capital gains taxes stemming from the sale of the Illinois Property after applicable deductions and exemptions.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon 11 U.S.C. §§ 105(a), 363(b), (f), and (m), FRBP 2002 and 6004, any applicable Local Bankruptcy Rules (the "LBR"), the annexed Memorandum of Points and Authorities and Declarations in support of the Motion, as well as the exhibits thereto (together, the "Memorandum, Declarations, and Exhibits"), the concurrently filed notice of the Motion (the "Notice") all other evidence duly admitted by the Court in connection with consideration of the Motion, the record in this case, and the arguments and statements of counsel to be made at the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), any opposition to the Motion must (1) be in writing and include all reasons and evidence in support of the opposition, (2) be filed at least fourteen (14) days prior to the hearing on the Motion, and (3) be served on the United States Trustee and counsel for the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the Court may deem the failure of any party to file a timely opposition to the Motion to constitute consent to the granting of the Motion and the relief requested herein.

1        **WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order

2    providing the relief requested in paragraphs (1) through (6) of the above Motion.

3    Dated: November 7, 2018           GRAND VIEW FINANCIAL, LLC

4

5                            By:    */s/ Todd M. Arnold*

6                                TODD M. ARNOLD
                                  LEVENE, NEALE, BENDER, YOO

7                                      & BRILL L.L.P.
                                Attorneys for Debtor and

8                                Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3
   MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 8

4
I.     STATEMENT OF FACTS ................................................................... 8

5
       A.    GENERAL BACKGROUND.............................................................. 8

6
       B.    THE DEBTOR'S BUSINESS AND REAL PROPERTY...................................... 8

7
       C.    THE DEBTOR'S ACQUISITION OF THE ILLINOIS PROPERTY. .................. 9

8
       D.    THE REASONS FOR FILING BANKRUPTCY AND THE
9
            DEBTOR'S EXIT STRATEGY.............................................................. 9

10
       E.    ACTIONS BY THE DEBTOR IN FURTHERANCE OF ITS EXIT
11
            STRATEGY................................................................................ 12

12
       F.    PRIOR AND ONGOING MARKETING EFFORTS REGARDING
13
            THE SALE OF THE ILLINOIS PROPERTY.......................................... 12

       G.    THE PROPOSED SALE OF THE ILLINOIS PROPERTY UNDER
14
            THE PURCHASE AGREEMENT. ...................................................... 14

15
       H.    ALLEGED LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
16
            RECORDED AGAINST THE ILLINOIS PROPERTY FROM WHICH
            THE DEBTOR IS SEEKING TO SELL FREE AND CLEAR.......................... 15

17
       I.    THE PROPOSED OVERBID PROCEDURES AND BREAK-UP FEE............. 16

18
II. LEGAL ARGUMENT ............................................................................ 18

19
       A.    THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS
20
            PROPERTY TO THE BUYER, SUBJECT TO OVERBID, OR TO
21
            ANY WINNING OVERBIDDER AT AUCTION.............................................. 18

22
            1.    THE DEBTOR HAS OR WILL HAVE COMPLIED WITH ALL
                 APPLICABLE NOTICE REQUIREMENTS.......................................... 18

23
            2.    THE SALE OF THE ILLINOIS PROPERTY TO THE BUYER,
24
                 SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER
                 AT AUCTION, SHOULD BE APPROVED, BECAUSE GOOD
25
                 BUSINESS REASONS FOR THE SALE EXIST, THE PURCHASE
                 PRICE FOR THE ILLINOIS PROPERTY IS FAIR AND
26
                 REASONABLE, AND THE PROPOSED SALE IS IN THE BEST
27
                 INTERESTS OF THE ESTATE AND CREDITORS.............................. 19

28

i

B.   THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS
PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, OTHER THAN THE
EXCEPTED ITEMS, TO THE BUYER OR ANY WINNING
OVERBIDDER AT THE AUCTION......................................................................... 23

1.   APPLICABLE STANDARDS. ............................................................... 23

2.   THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS
PROPERTY FREE AND CLEAR OF THE NON-EXCEPTED ITEMS
IN THE TITLE REPORT TO THE BUYER OR ANY WINNING
OVERBIDDER AT THE AUCTION....................................................... 26

C.   THE COURT SHOULD APPROVE THE OVERBID PROCEDURES
AND THE BREAK-UP FEE. .................................................................................. 32

D.   THE COURT SHOULD APPROVE THE PAYMENT OF CERTAIN
CLAIMS FROM SALE PROCEEDS UPON THE CLOSE OF THE
SALE OF THE ILLINOIS PROPERTY. ............................................................... 35

E.   THE COURT SHOULD WAIVE THE 14-DAY STAY PERIOD SET
FORTH IN BANKRUPTCY RULES 6004(h)...................................................... 35

III. CONCLUSION................................................................................................................ 36

DECLARATION OF STEVE ROGERS....................................................................................... 37

DECLARATION OF W. DARROW FIEDLER ........................................................................... 45

1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

3    **Federal Cases**

4    *In re 995 Fifth Ave. Assoc., L.P.*
      96 B.R. 24 (Bankr. S.D.N.Y. 1989) ..................................................................................33

5

6    *In re Abbotts Dairies*
      788 F.2d at 149 ...............................................................................................................22

7    *In re Alpha Industries, Inc.*
      84 B.R. 703 (Bankr. Mont. 1988) .....................................................................................21

8

9    *In re Atlanta Packaging Products, Inc.*
      99 B.R. 124 (Bankr. N.D. Ga. 1988) .................................................................................32

10   *Bank of Hemet v. United States* (9th Cir.1981) 643 F.2d 661 ...................................24, 30, 31, 34

11

12   *Big Shanty Land Corp. v. Comer Properties, Inc.*
      61 B.R. 272 (Bankr. N.D. Ga. 1985) ...............................................................................8, 21

13   *In re Canyon Partnership*
      55 B.R. 520 (Bankr. S.D. Cal. 1985) ................................................................................21

14

15   *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot*
      94 B.R. 343 (Bankr. E.D. Pa. 1988) .................................................................................24

16

     *Clear Channel Out-door, Inc. v. Knupfer (In re PW, LLC)*
17    391 B.R. 25 (B.A.P. 9th Cir. 2008) ..............................................................................25, 30

18   *Cottle v. Storer Communication Inc.*
      849 F.2d 570 (11th Cir. 1988) ..........................................................................................33

19

20   *In re Daufuskie Island Props., LLC*
      431 B.R. 626 (Bankr. D.S.C. 2010) .................................................................................24

21

22   *In re Ex-Cel Concrete Company, Inc.*
      178 B.R. 198 (B.A.P. 9th Cir. 1995)................................................................................24

23   *In re Financial News Network, Inc.*
      126 B.R. 152 (Bankr. S.D.N.Y. 1991) .............................................................................33

24

25   *In re Gabel*
      61 B.R. 661 (Bankr. W.D. La. 1985) ...............................................................................24

26   *In re Gerwer*
      898 F.2d 730 (9th Cir. 1990) ...........................................................................................23

27

28

*Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.)*
    277 F.3d 1057 (9th Cir. 2002) ............................................................................24

*In re Integrated Resources, Inc.*
    147 B.R. 650 (S.D.N.Y. 1992), *app dismissed on jurisdictional grounds,* 3
    F.3d 49 (2d Cir. 1993)..............................................................................33, 34

*In re Karpe*
    84 B.R. 926 (Bankr. M.D.Pa. 1988) ....................................................................23

*In re Kellogg-Taxe*
    2014 WL 1016045 (Bankr. C.D. Cal. Mar.17, 2014) ..........................................24

*In re The Landing*
    156 B.R. 246 (Bankr. E.D. Mo. 1993)..................................................................20

*In re Lionel Corp.*
    722 F.2d 1063 (2d Cir. 1983)..............................................................................19

*In re Mama's Original Foods, Inc.*
    234 B.R. 500 (C.D. Cal. 1999) ............................................................................20

*Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms,
Inc.)*
    36 B.R. 856 (Bankr. W.D. Mo. 1984)..................................................................24

*In re Net Data Centers*
    Case No. 15-12690-BB, Dkt. No. 259 (Bankr. CD Cal. Sep. 1, 2015) ...............34

*In re Paddlewheels, Inc.*
    2007 WL 1035151 (Bankr. E.D.La. April 2, 2007)..............................................24

*In re Pomare, Ltd.*
    No. 15-00203, 2015 WL 3523096 (Bankr. D. Haw. May 18, 2015)......................34

*In re S.N.A. Nut Co.*
    186 B.R. 98 (Bankr. N.D. Ill. 1995) ..............................................................33, 34

*In re Schwartz*
    954 F.2d 569 (9th Cir. 1993) ..............................................................................28

*SEC v. Capital Cove Bancorp LLC*
    2015 WL 9701154 (C.D. Cal. Oct.13, 2015).......................................................24

*In re T Asset Acquisition Co., LLC*
    No. 2:09-31853-ER, 2010 WL 4689562 (Bankr. C.D. Cal. Jan. 28, 2010)......14, 34

*Walter v. Sunwest Bank (In re Walter)*
    83 B.R. 14 (B.A.P. 9th Cir. 1988)........................................................................20

*In re Wilde Horse Enterprises, Inc.*
    136 B.R. 830 (Bankr. C.D. Cal. 1991)........................................................20, 21, 22

**California Cases**

*Bank of Am. v. Graves*
    51 Cal. App. 4th 607, 59 Cal. Rptr. 2d 288 (1996)........................................31

*Barer v. Cty. of Riverside*
    57 Cal. App. 4th 558, 67 Cal. Rptr. 2d 241 (1997)........................................30

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*
    207 Cal. App. 3d 1018, 255 Cal. Rptr. 157 (Ct. App. 1989) ................24, 30, 31, 34

*Riverside Cty. Cmty. Facilities Dist. No. 87-1 v. Bainbridge 17*
    77 Cal. App. 4th 644, 92 Cal. Rptr. 2d 29 (1999) ........................................30

**Federal Statutes**

11 U.S.C.
    § 101 et seq. Chapter 11 ........................................................8, 9, 10, 12
    § 102(1)(A) ........................................................................18
    § 363(b)(1) ....................................................................18, 22
    § 363(f)..........................................................................23, 24
    § 363(f)(2) ....................................................................24, 26, 32
    § 363(f)(5) ....................................................................25, 30, 31
    § 502(b)(1) ........................................................................29
    § 549..............................................................................28

**California Statutes**

Cal.Civ.Code
    § 2924k..........................................................................31

Cal. Rev. & Tax. Code
    § 2192.1..........................................................................30

**Other Authorities**

Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) §
    4.8..............................................................................31

Fed.R.Bankr.P. 2002(a)(2) ..........................................................18
Fed.R.Bankr.P. 2002(c)(1) ..........................................................18
Fed.R.Bankr.P. 2002(k) ............................................................18
Fed.R.Bankr.P. 6004(a) ............................................................18
Fed.R.Bankr.P. 6004(f)..............................................................32
Fed.R.Bankr.P. 6004(h) ............................................................35

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>[3]

<b>I.</b><br/><b><u>STATEMENT OF FACTS</u></b>

**A.    <u>GENERAL BACKGROUND.</u>**

On August 17, 2017 (the "<u>Petition Date</u>"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "<u>Bankruptcy Code</u>").[4]    The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.    An Official Committee of Unsecured Creditors has not been formed.

**B.    <u>THE DEBTOR'S BUSINESS AND REAL PROPERTY.</u>**

The Debtor is a Wyoming limited liability company that was formed in 2015.    The Debtor is in the business of acquiring distressed real property (each a "<u>Property</u>" and, collectively, the "<u>Properties</u>")  in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "<u>Alleged Secured Claim</u>" and, collectively, the "<u>Alleged Secured Claims</u>") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "<u>Alleged Lien</u>" and, collectively, the "<u>Alleged Secured Liens</u>") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid.

In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a "<u>Former Owner</u>" and, collectively, the "<u>Former Owners</u>") intended to mutually benefit the Debtor and the Former Owner.  In a typical transaction in which the Debtor acquires a Property:

(1)    the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "<u>Purchase Agreement</u>" and, collectively, the "<u>Purchase Agreements</u>") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an

---

[3] Capitalized terms not otherwise defined herein have the same meanings as in the preceding Motion.
[4] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

"Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Purchase Agreement and Unsecured Note;

(2)    the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

(3)    the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

Through the Petition Date, the Debtor acquired 42 Properties.  In the ordinary course of its business, the Debtor acquired an additional three Properties after the Petition Date, and the Debtor may acquire other Properties.  Unfortunately, prior to the Petition Date, approximately 28 of the 45 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon.  The Debtor has decided to stop pursuing recovery on 22 of the Foreclosed Properties.  Thus, at present, the Debtor has an interest in and/or is pursuing recovery on 23 Properties.

C.    **THE DEBTOR'S ACQUISITION OF THE ILLINOIS PROPERTY.**

Consistent with the Debtor's business model, in November 2016, the Debtor and Monica Lam ("Lam"), the Former Owner of the Illinois Property, entered into a Purchase Agreement, the Debtor issued an Unsecured Note to Lam, Lam executed a Rental Agreement, and Lam executed a Grant Deed transferring title to the Illinois Property to the Debtor (the "Grant Deed").  A true and correct copy of the Grant Deed is attached hereto as **Exhibit "3."**

D.    **THE REASONS FOR FILING BANKRUPTCY AND THE DEBTOR'S EXIT STRATEGY.**

On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary,

invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a Chapter 11 plan of reorganization.

As of the Petition Date, the Debtor intended (1) to initiate adversary proceedings  (each an "Adversary" and, collectively, the "Adversary Proceedings") and/or claim objections (each a "Claim Objection" and, collectively, the "Claim Objections") to (a) invalidate, reverse, or avoid the purported foreclosures on the Foreclosure Properties and (b) challenge and eliminate all of the Alleged Secured Claims and related Alleged Liens, (2) to sell the resulting unencumbered Properties for the highest and best price (subject to any rights of first refusal a Former Owner may have to repurchase the subject Property), and (3) to propose and confirm a plan whereby all allowed secured claims (which the Debtor believes will be limited to some tax claims against certain of the Properties), administrative claims, priority claims, and general unsecured claims (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which was the Debtor's original exit strategy.

While the Debtor disputes the enforceability and validity of the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the validity of the purported foreclosures on the Foreclosure Properties, the Debtor has decided to somewhat alter its original bankruptcy and exit strategy.  More specifically, the Debtor took actions, including the initiation of Adversary Proceedings (which included Claim Objections), in an effort to invalidate, reverse, or avoid the purported foreclosures on certain of the Foreclosure Properties and to challenge certain related the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties.  However, the Debtor, in an exercise of its business judgment, later determined that the cost of pursuing most other potential Adversary Proceedings and Claim Objections likely outweighed the benefit

to be gained in such Adversary Proceedings and Claim Objections, particularly when considering prior results before this Court, the costs of litigating the Adversary Proceedings and Claim Objections, and the delay and risks inherent in litigating Adversary Proceedings and Claim Objections pertaining to the Foreclosed Properties that are the subject of the Rejected Purchase Agreements (as defined below).

Based on the foregoing and other factors, the Debtor, in an exercise of its business judgment, decided that it made better sense to reject 22 of the 28 all of the Purchase Agreements relating to Foreclosed Properties (the "Rejected Purchase Agreements"), to stop seeking recovery on such Foreclosed Properties, and to instead focus on selling the 17 Properties that are non-Foreclosed Properties and continuing to litigate Adversary Proceedings and Claim Objections related to six of the Foreclosed Properties.

The Debtor intends to seek to sell such non-Foreclosed Properties, such as the Illinois Property that is the subject of this Motion, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale. Once non-Foreclosed Properties, such as the Illinois Property that is the subject of this Motion, are sold, to the extent a consensual resolution cannot be reached regarding the disposition of sale proceeds as among the Debtor and any holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners), the Debtor will litigate, in contested Claim Objections or Adversary Proceedings, with the holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) pertaining to the non-Foreclosed Properties, to determine their claims and, therefore, the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property. As further discussed below, the Debtor is already litigating with PennyMac LLC regarding its Alleged Secured Claim and Alleged Lien in an Adversary Proceeding pending before the Court.

The Debtor believes that the foregoing is more likely to result in a higher net benefit to the estate than litigating all Adversary Proceedings and Claim Objections regarding the Foreclosed Properties.

E.    **ACTIONS BY THE DEBTOR IN FURTHERANCE OF ITS EXIT STRATEGY.**

The Debtor already sought and obtained Court authority to reject the Rejected Purchase Agreements, each of which pertained to a Foreclosed Property.

In respect to non-Foreclosed Properties, in furtherance of the Debtor's exit strategy, the Debtor (1) obtained Court authority to employ the Broker as the Debtor's real estate broker to market and sell the Properties at the appropriate time [*see* Dkts. 33, 96, 255, and 264] and (2) with the assistance of the Broker, began to market certain of the non-Foreclosed Properties for sale, including the Illinois Property, as discussed in more detail below.  The Debtor's Court-approved employment of the Broker provides for a 6% commission to be paid to the Broker and shared with the cooperating broker in connection with the sale of the Illinois Property [*see id.*].

In addition, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

Also in furtherance of the Debtor's exit strategy, the Debtor filed a motion to approve a settlement agreement between the Debtor and certain of its Affiliates (the "Affiliate Settlement Motion") pursuant to which, *inter alia*, the Affiliate DOTs issued by the Debtor to certain of its Affiliates would be deemed to be released, reconveyed, terminated, and expunged from title. [Dkts. 252 and 253]  On  June 28, 2018, the Court entered its order (the "Affiliate Settlement Order") [Dkt. 271] granting the Affiliate Settlement Motion and deeming the Affiliate DOTs to be released, reconveyed, terminated, and expunged from title.  A true and correct copy of the Affiliate Settlement Order is attached hereto as **Exhibit "4."**

F.    **PRIOR AND ONGOING MARKETING EFFORTS REGARDING THE SALE OF THE ILLINOIS PROPERTY.**

In furtherance of its efforts to market and sell the Illinois Property, the Broker (1) accessed and viewed the Illinois Property, (2) discussed the Illinois Property and related comparative sale data to come to agreement with the Debtor on a listing price, (3) photographed the Illinois Property, (4) on or about May 29, 2018, listed the Illinois Property on the MLS, which listing was followed by private showings.  The Broker's marketing efforts resulted in numerous views on the MLS and other online platforms, a number of private showings, and

1    multiple offers for the Illinois Property.

2    In addition to the foregoing, the Broker will continue to market the Illinois Property

3    through the Auction date in an effort to attract Overbidders by, among other things, (1)

4    continuing to respond to inquiries regarding the Illinois Property, (2) when possible, continuing

5    to conduct private showings to interested parties, (3) mailing or emailing a copy of the Notice

6    and this Motion and Memorandum, Declarations, and Exhibits, which include the Overbid

7    Procedures, to (a) all parties and/or the brokers of all parties that have provided contact

8    information to the Broker and have shown interest in the Illinois Property and (b) potential

9    interested parties in the Broker's email database, and (4) posting on the MLS basic information

10    about the Auction and Overbid Procedures (such as date and time of the auction and minimum

11    initial overbid amount) and contact information for the Debtor's counsel indicating that such

12    counsel can provide a copy of the Notice and this Motion and Memorandum, Declarations, and

13    Exhibits, which include the full, detailed Overbid Procedures.

14    In addition to the foregoing, as required by LBR 6004-1, concurrently with the filing

15    hereof, the Debtor will submit an additional copy of the Notice of the Motion, which include the

16    Overbid Procedures, with the Clerk of the Bankruptcy Court together with a Form F 6004-

17    2.NOTICE.SALE for purposes of publication.  LBR 6004-1(c)(3) and (f).

18    The efforts of the Debtor and the Broker to market and sell the Illinois Property resulted

19    in the Debtor receiving a number of signed offers for the Illinois Property.  Ultimately, after

20    considering other and prior purchase offers, and based on consultation with its professionals, the

21    Debtor accepted the offer from the Buyer and entered into the Purchase Agreement, a true and

22    correct copy of which is attached hereto as **Exhibit "2."**

23    The Purchase Agreement is the result of arms-length negotiations.  Other than in

24    connection with the proposed sale of the Illinois Property, the Debtor and its principals have no

25    prior connections with and have never met the Buyer.

26

27

28

## G.    THE PROPOSED SALE OF THE ILLINOIS PROPERTY UNDER THE PURCHASE AGREEMENT.

The principal terms and conditions of the proposed sale of the Illinois Property to the Buyer, subject to overbid, include the following:[5]

- **Name of Buyer:** Rajesh Sharma (*i.e.*, the "Buyer").

- **Asset:** The Illinois Property.

- **Purchase Price:** $370,000 subject to overbid pursuant to the Overbid Procedures.

- **Deposit:** $11,000 (3% of the Purchase Price)

- **Estimated Costs of Sale:** Total of 8% comprised of a 6% commission for the Debtor's broker, plus any outstanding real property taxes, plus other customary closing costs.

- **Condition of Asset/Property:** "As-is" and "Where is."

- **Contingencies:** The Purchase Agreement contained a due diligence period that expired on October 1, 2018.  All contingencies have now been lifted other than the entry of the Sale Order approving the sale of the Illinois Property to the Buyer.

- **Other Terms:** The sale is subject to the Overbid Procedures and Break-Up Fee set forth herein above and below.  Further, the Debtor's sale of the Illinois Property shall be free and clear of any and all liens, claims, encumbrances, and interests, other than the Excepted Items, which non-Excepted Items are discussed further below.

- **Potential Tax Consequences:**   The Debtor will have to pay applicable capital gains taxes stemming from the sale of the Illinois Property after applicable deductions and exemptions.

---

[5] This is a summary only.  To the extent there is any inconsistency between this summary and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

**H.    ALLEGED LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS RECORDED AGAINST THE ILLINOIS PROPERTY FROM WHICH THE DEBTOR IS SEEKING TO SELL FREE AND CLEAR.**

The Title Report for the Property is attached hereto as **Exhibit "1."**  Pursuant to the Motion, the Debtor is seeking to sell the Illinois Property free and free and clear of all liens, claims, encumbrances, and interests, with the exception of the Excepted Items, which are Items 1 and 4-10 set forth in the Title Report.  In other words, the Debtor will be selling free and clear of the Items 2, 3 and 11-19 of the Title Report as the non-Excepted Items of the Title Report.

Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report are liens (the "Government Liens") securing claims (the "Government Claims") for (1) unpaid real property taxes owed to the County for 2016-2017 (*see* Items 2-3 of the Title Report) and (2) unpaid assessments owed to the City (*see* Items 11, 12, 17, 18, and 19 of the Title Report), all of which total approximately $4,700 (*see* Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report).  In addition to the foregoing, the County filed Proof of Claim 17, a true and correct copy of which is attached hereto as **Exhibit "5,"** asserting a secured claim in the amount of $1,405.64 for unpaid real property taxes owed to the County for 2016-2017.  The Government Claims will be paid from escrow upon closing.

Item 13 of the Title Report is PennyMac, LLC's Alleged Lien securing its Alleged Secured Claim in the principal amount of $299,475, as set forth in Item 13 of the Title Report. In addition to the foregoing, PennyMac, LLC Proof of Claim 5, a true and correct copy of which is attached hereto as **Exhibit "6,"** asserting a secured claim in the amount of $310,989.72, with interest accruing thereon as 4.625% as of October 30, 2017, and which would total approximately $325,372.99 with an additional $14,383.27 of interest at 4.625 % over the last year.  PennyMac, LLC's Alleged Lien and Alleged Secured Claim will attach to the proceeds of sale, with the same extent, validity, and priority as such Alleged Lien and Alleged Secured Claim had prior to the sale.

1    Items 14-16 of the Title Report are the Affiliate DOTs issued by the Debtor to certain of

2    its Affiliates that were deemed to be released, reconveyed, terminated, and expunged from title

3    pursuant to the Affiliate Settlement Order.  *See* Exhibit "4."

4    **I.    THE PROPOSED OVERBID PROCEDURES AND BREAK-UP FEE.**

5    The proposed Overbid Procedures and Break-Up Fee are as follows:

6    •    **Date, Time, and Location of the Auction:** The Auction shall be held

7    concurrently with the hearing on the Motion, as follows:

8
9                    **Date:  November 28, 2018**
                    **Time:  11:00 a.m.**
10                   **Place:  Courtroom 1675**
                    **255 E. Temple Street**
11                   **Los Angeles, CA  90012**

12    •    **Initial Overbid Amount:** The Purchase Price of $370,000, plus *at least* $10,000

13    more (*i.e.*, at least $380,000) (i.e., the "Initial Overbid Amount");

14    •    **Qualification of Overbidders:**  In order for any prospective Overbidder to have

15    the right to bid at the Auction, the prospective Overbidder must, **within three (3) business**

16    **days prior to the Auction**, (a) provide to counsel for the Debtor, Levene, Neale, Bender,

17    Yoo & Brill L.L.P., c/o Todd M. Arnold, 10250 Constellation Boulevard, Suite 1700 Los

18    Angeles, California 90067, Telephone: (310) 229-1234 Facsimile: (310) 229-1244, Email:

19    tma@lnbyb.com ("LNBYB"), a signed proposed purchase agreement (each an "Overbid

20    Purchase Agreement"), in substantially and materially the same form as the Purchase

21    Agreement,[6] redlined to show any changes, with such purchase agreement not to contain

22    any financing, inspection, due diligence, or other contingencies (other than the entry of the

23    Sale Order approving the sale of the Illinois Property to the Overbidder), and including, a

24    removal of all contingencies (other than the entry of the Sale Order approving the sale of the

25    Illinois Property to the Overbidder) pursuant to CAR Form CR 14.C, and with a minimum

26    purchase price of at least the Initial Overbid Amount of $380,000; (b) submit a deposit in

27    ───────────────

28    [6] LNBYB will provide a copy of the Purchase Agreement in Word to any parties interested in submitting an
Overbid

16

the amount of 10% of the Initial Overbid Amount set forth in the Overbid Purchase Agreement by cashiers' check or wire into a segregated trust account maintained by LNBYB, who will provide wire instructions on request; (c) demonstrate that the prospective Overbidder has sufficient funds or financing to close the transaction within fifteen (15) calendar days of the entry of the Sale Order approving the prospective Overbidder and the sale of the Illinois Property to the Overbidder; and (d) agree that the prospective Overbidder's deposit will be non-refundable if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Illinois Property within fifteen (15) calendar following the date of entry of the Sale Order – regardless of whether an appeal has been filed of the Sale Order, provided there is no entered stay pending appeal of either of the foregoing orders (*i.e.*, no final order requirement).

- **Overbidding Increments and Considerations in Determining the Winning Bidder at Any Auction:**  In order to qualify to bid at the Auction, any Overbid Purchase Agreement is required to include an Initial Overbid Amount of at least $380,000. Subsequent overbids at the Auction must be in increments of $1,000 or amounts that are wholly divisible by $1,000.  The Debtor, in consultation with its professionals, will select the highest and best offer and recommend Court approval of the sale of the Illinois Property to the Buyer or any qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals, has made the highest and best offer for the Illinois Property.

- **Break-Up Fee:**  In the event the Buyer is not the successful bidder at the Auction and an Overbidder closes a purchase of the Illinois Property, the Debtor shall pay a $5,000 Break-Up Fee (approximately 1.4% of the Purchase Price) to the Buyer upon the close of escrow.

The Debtor believes that the proposed Overbid Procedures and Break-Up Fee, together with efforts already undertaken by the Broker to market the Illinois Property and by the Debtor and the estate to negotiate and enter into the Purchase Agreement, will result in the Debtor and the estate receiving the highest and best price for the Illinois Property under the circumstances.

**II.**

**LEGAL ARGUMENT**

**A.    THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS PROPERTY TO THE BUYER, SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER AT AUCTION.**

**1.    THE DEBTOR HAS OR WILL HAVE COMPLIED WITH ALL APPLICABLE NOTICE REQUIREMENTS.**

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."    11 U.S.C. § 363(b)(1).    Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances.  11 U.S.C. § 102(1)(A).

FRBP 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to  FRBP 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with Section 363(b)(2).  Fed.R.Bankr.P. 6004(a).  FRBP 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice.  Fed.R.Bankr.P. 2002(a)(2).    FRBP 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  It also provides that the notice of sale or property is sufficient if it generally describes the property.  Fed. R. Bankr. P. 2002(c)(1).    FRBP 2002(k) requires that the notice be given to the United States Trustee. Fed.R.Bankr.P. 2002(k).

In addition, LBR 6004-1 requires that the notice contain the information specified in LBR 6004-1(c)(3) and that an additional copy of the notice be submitted to the Clerk of the Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE at the time of filing for purposes of publication.  LBR 6004-1(c)(3) and (f).

The Debtor has or will have complied with all of the above provisions of the Bankruptcy Code, the FRBP and the LBR.  The Debtor has complied with  FRBP 6004(a) and 2002(a)(2),

(c)(1), (i) and (k), as well as LBR 6004-1(c)(3), as far as practicable under the circumstances, because the Notice of the Motion includes all of the required information set forth above, including, without limitation, the date, time and place of the hearing on the Motion to approve the proposed sale of the Illinois Property to the Buyer, subject to overbid, the deadline for objecting to the Motion, the Auction date and Overbid Procedures, and related deadlines, and the Notice of the Motion has been served on the Office of the United States Trustee, the Debtor, all of the Debtor's known creditors, all parties appearing on the Title Report (even parties to the Excepted Items where addresses are available), and all parties requesting special notice. Further, this Motion and its annexed Memorandum, Declarations, and Exhibits will be served on the Office of the United States Trustee, the Debtor, all parties appearing on the Title Report (even parties to the Excepted Items where addresses are available), and all parties requesting special notice.  Additionally, the Notice of the Motion advises parties in interest how and where to obtain a full copy of this Motion and its annexed Memorandum, Declarations, and Exhibits.

Further, as required by LBR 6004-1(f), concurrently with the filing hereof, the Debtor submitted an additional copy of the Notice of the Motion, which include the Overbid Procedures, with the Clerk of the Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE for purposes of publication.

Based on the foregoing, all applicable notice requirements have been satisfied.

**2.    THE SALE OF THE ILLINOIS PROPERTY TO THE BUYER, SUBJECT TO OVERBID, OR TO ANY WINNING OVERBIDDER AT AUCTION, SHOULD BE APPROVED, BECAUSE GOOD BUSINESS REASONS FOR THE SALE EXIST, THE PURCHASE PRICE FOR THE ILLINOIS PROPERTY IS FAIR AND REASONABLE, AND THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE AND CREDITORS.**

As a general matter, a Court considering a motion to approve a sale under Section 363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In addition, the Court must further find that the sale is in the best interest of the estate.  To make this determination, a Court should consider whether:

(1)    the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;

19

(2)     the property has been given adequate marketing;

(3)     the sale is in good faith, *i.e.*, there is an absence of any lucrative deals with insiders, and

(4)     adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999).  Here, the proposed sale of the Illinois Property to the Buyer pursuant to the terms of the Purchase Agreement, or to successful Overbidder at the Auction, satisfies each of these requirements.

### a.     <u>Sound Business Purpose</u>.

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b).  The facts pertaining to the sale at issue here amply substantiate the Debtor's business decision that the contemplated sale of the Illinois Property to the Buyer pursuant to the terms of the Purchase Agreement, or to successful Overbidder at the Auction, serves the best interests of the estate and merits the approval of this Court.

As noted above, the Debtor's exit strategy now primarily focuses on (1) selling the non-Foreclosed Properties, such as the Illinois Property, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale, (2) once non-Foreclosed Properties, such as the Illinois Property, are sold, seeking to reach consensual resolutions with holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) regarding alleged claims and liens pertaining to the subject non-Foreclosed Property, and (3) to the extent a consensual resolutions cannot be reached, litigating, in contested Claim Objections or Adversary Proceedings, to resolve such alleged claims and liens and, therefore, to determine the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property.  Thus, the proposed sale furthers the Debtor's exit strategy.  Indeed, as further discussed below,

1    the Debtor is already litigating with PennyMac, LLC regarding its Alleged Secured Claim and

2    Alleged Lien in an Adversary Proceeding pending before the Court.

3        In addition to the foregoing, the sale of the Illinois Property will (1) as discussed below,

4    result in a net benefit to the estate of at $39,000 (which may be higher in the event of an overbid

5    and/or the Debtor is successful in surcharging PennyMac, LLC's alleged collateral), even if

6    PennyMac, LLC's disputed claim and lien are ultimately deemed to be valid, (2) substantially

7    curtail, if not stop, the accrual of any additional secured claims in favor of PennyMac, LLC for

8    additional interest and (3) stop the accrual of additional secured property tax claims against the

9    estate related to the Illinois Property.

10       Based on the foregoing, the Debtor submits that the proposed sale of the Illinois

11   Property is in the best interests of the estate and its creditors and, therefore, represents a sound

12   exercise of the Debtor's business judgment.

13              **b.    Fair and Reasonable Price.**

14       In order for a sale to be approved under Section 363(b), the purchase price must be fair

15   and reasonable.  *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

16   The trustee is given substantial discretion in this regard.  *Id.*  In addition, Courts have broad

17   discretion with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer*

18   *Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the

19   ultimate purpose is to obtain the highest price for the property sold.  *Wilde Horse Enterprises,*

20   *Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha*

21   *Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

22       As noted above, the Debtor's Broker engaged in, and will continue to engage in,

23   expansive marketing efforts regarding the sale of the Illinois Property.  Those efforts resulted in

24   a number of signed offers for the Illinois Property.  The offer under the Purchase Agreement

25   represents the highest and best offer for the Illinois Property thus far that has remained in

26   escrow.  Further, the Overbid Procedures and Auction process proposed to be implemented by

27   the Debtor are specifically designed to ensure that the highest price possible is obtained for

28   Illinois Property.  Although the Debtor will not know the results of the Auction (if one is

1  conducted) until the Auction has been completed, based upon the marketing efforts by the

2  Debtor's highly experienced Broker after the Petition Date, which are outlined above and which

3  will continue through the Auction date, the Illinois Property will have been exposed to those

4  parties who are most likely to be interested in acquiring the Illinois Property, and the highest

5  and best bid obtained for the Illinois Property (whether it is the bid offered by the Buyer or an

6  Overbid submitted by a successful Overbidder) will constitute fair and reasonable value for the

7  Property.

8          **c.**      **Adequate Marketing.**

9        The intensive marketing efforts undertaken by the Debtor's Broker after the Petition Date,

10  which will continue through the Auction date, are set forth in detail above and are not repeated

11  here.  In consideration of the foregoing marketing efforts by the Debtor's Broker, the Illinois

12  Property has been, and will be, adequately marketed.

13          **d.**      **Good Faith.**

14        When a Bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1), it is

15  required to make a finding with respect to the "good faith" of the purchaser.  *In re Abbotts*

16  *Dairies*, 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed

17  to circumvent creditor protections.  *Id.* at 150.  With respect to the Debtor's conduct in

18  conjunction with the proposed sale of the Property, the good faith requirement focuses

19  principally on whether there is any evidence of "fraud, collusion between the purchaser and

20  other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

21  *Abbotts Dairies*, 788 F.2d at 147; *Wilde Horse Enterprises*, 136 B.R. at 842.

22        Here, as discussed above, the Purchase Agreement is the result of arms-length

23  negotiations and, other than in connection with the proposed sale of the Illinois Property, the

24  Debtor and its principals have no prior connections with and have never met the Buyer.

25        Based on the foregoing, and because the Buyer has no affiliation with the Debtor other

26  than as set forth above and is not an "insider" of the Debtor as that term is defined in Section

27  101(31), the Debtor submits that there has been no fraud or collusion in connection with the

28  proposed sale of the Illinois Property.  Therefore, the good faith requirement has been satisfied,

and that the Buyer (or a successful Overbidder) should be deemed a "good faith" purchaser under Section 363(m) and entitled to the benefits under Section 363(m).

**e.    Accurate and Reasonable Notice.**

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections.  *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988).  A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections.  *Id.*

As set forth in detail in Paragraph II.A.1 above, the Debtor has complied with all of the applicable notice provisions of the Bankruptcy Code, the FRBP and the LBR.  Thus, the Notice of the Motion (and proposed sale of the Property) should be deemed adequate, accurate, and reasonable by the Court.

**B.    THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, OTHER THAN THE EXCEPTED ITEMS, TO THE BUYER OR ANY WINNING OVERBIDDER AT THE AUCTION.**

**1.    APPLICABLE STANDARDS.**

The Court has the power to authorize the sale of property free and clear of liens, claims, or interests.  *See* 11 U.S.C. § 363(f); *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990).

Section 363(f) permits a sale of property "free and clear of any interest in such property of an entity other than the estate" if ***any one*** of the following five conditions is met:

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

1    11 U.S.C. § 363(f).  Section 363(f) is written in the disjunctive; thus, satisfaction of any one of

2    the five conditions is sufficient to sell property free and clear of liens.  *See e.g., Citicorp*

3    *Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988);

4    *Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*, 36 B.R.

5    856, 858 (Bankr. W.D. Mo. 1984).

6         In regard to **Section 363(f)(2)**, the "consent" of an entity asserting an interest in the

7    property sought to be sold, as referenced in 11 U.S.C. § 363(f)(2), can be implied if such entity

8    fails to make a timely objection to the sale after receiving notice of the sale.  *In re Eliot,* 94 B.R.

9    343, 345 (E.D. Pa. 1988); *see also, In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198, 203

10   (B.A.P. 9th Cir. 1995) ("The issue here is whether there was consent or non-opposition by

11   Citicorp."); *In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ("The

12   Sale Motion complies with section 363(f) of the Bankruptcy Code, in that the Trustee either

13   obtained the consent of Whitney to the sale of the Vessel to Purchaser or Whitney had no

14   objection to the Sale."); *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985) (implied consent is

15   sufficient to authorize a sale under § 363(f)(2)).

16        To satisfy **Section 363(f)(4)**, there must be an objective basis for a factual or legal

17   dispute as to the validity of the interest.  *In re Kellogg-Taxe,* 2014 WL 1016045, at *6 (Bankr.

18   C.D. Cal. Mar.17, 2014) (*citing In re Gaylord Grain L.L.C.,* 306 B.R. 624, 627 (B.A.P. 8th Cir.

19   2004)); *In re Daufuskie Island Props., LLC,* 431 B.R. 626, 645 (Bankr. D.S.C. 2010); *see also*

20   *Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1062

21   (9th Cir. 2002) (adopting objective test for determining whether claim supporting involuntary

22   petition is subject to *bona fide* dispute.  "[T]he moving party must 'provide **some** factual

23   grounds to show some objective basis for the dispute."  *SEC v. Capital Cove Bancorp LLC,*

24   2015 WL 9701154, at *7 (C.D. Cal. Oct.13, 2015) (emphasis added).  ***The court is not required***

25   ***to resolve the underlying dispute as a condition to authorizing the sale, but must determine***

26   ***that it exists.***  *Capital Cove Bancorp,* 2015 WL 9701154, at *7; *Kellogg-Taxe,* 2014 WL

27   1016045, at *6 (emphasis added).

28

Pursuant to **Section 363(f)(5)**, a debtor in possession may sell property free and clear of any interest if the holder of that interest "**could** be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5) (emphasis added). Section 363(f)(5) has generally been interpreted to mean that if, under applicable law, the holder of the lien or interest could be compelled to accept payment in exchange for its interest, the debtor in possession may take advantage of that right by replacing the holder's lien or interest with a payment or other adequate protection. COLLIER ON BANKRUPTCY, ¶ 363.06 [6] (15th ed. rev. 2003).

In *Clear Channel Out-door, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008) ("<u>PW</u>"), the BAP reversed the Bankruptcy Court's approval of a sale to a senior lender free and clear of the liens of the junior lienholder under § 363(f)(5). In reversing the Bankruptcy Court's decision, the BAP found that Section 363(f)(5) requires that "(1) a proceeding exists or **could** be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest."  *Id.* at 41 (emphasis added). Analyzing the aforementioned factors in reverse order, the BAP concluded that a lien constitutes an "interest" for purposes of Section 363(f)(5).  *Id.* With respect to the second factor, the BAP ruled that Section 363(f)(5) refers to those proceedings in which the creditor "**could** be compelled to take less than the value of the claim secured by the interest." *Id*. (emphasis added).  In order to approve a sale free and clear under Section 363(f)(5), the Court must "make a finding of the existence of … a mechanism [to address extinguishing the lien or interest without paying such interest in full] and the [debtor in possession] must demonstrate how satisfaction of the lien 'could be compelled.'" *Id*. at 45.  Finally, the Bankruptcy Appellate Panel held that Section 363(f)(5) requires that there be, "or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest." *Id*.

2.    **THE COURT SHOULD APPROVE THE SALE OF THE ILLINOIS PROPERTY FREE AND CLEAR OF THE NON-EXCEPTED ITEMS IN THE TITLE REPORT TO THE BUYER OR ANY WINNING OVERBIDDER AT THE AUCTION.**

As noted, the Debtor is seeking to sell the Illinois Property free and free and clear of all liens, claims, encumbrances, and interests, with the exception of Excepted Items 1 and 4-10 set forth in the Title Report, a copy of which is attached hereto as Exhibit "1." In other words, the Debtor seeking to sell the Illinois Property free and clear of the Items 2, 3 and 11-19 of the Title Report as the non-Excepted Items. The foregoing non-Excepted Items, and the bases for being able to sell free and clear thereof, are as follows.

a.    **Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report** are the Government Liens securing Government Claims for (i) unpaid real property taxes owed to the County for 2016-2017 (*see* Items 2-3 of the Title Report) and (ii) unpaid assessments owed to the City (*see* Items 11, 12, 17, 18, and 19 of the Title Report), all of which total approximately $4,700 (*see* Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report). In addition to the foregoing, the County filed Proof of Claim 17, a true and correct copy of which is attached hereto as Exhibit "5," asserting a secured claim in the amount of $1,405.64 for unpaid real property taxes owed to the County for 2016-2017. Thus, the claim asserted by way of Proof of Claim 17 is duplicative of the claims asserted in Items 2-3 of the Title Report.

(1)    **Section 363(f)(2).** The Government Claims will be paid from the proceeds of the sale of the Illinois Property. Based on the foregoing, the Debtor believes that the County and the City will, either affirmatively or by a lack of any opposition to the Motion, consent to the sale free and clear of the Government Liens and Government Claims provided that the Government Claims are paid upon closing. Based on the foregoing, the Court should approve the sale of the Illinois Property free and clear of the Government Liens and Government Claims pursuant to Section 363(f)(2).

(2)    **Section 363(f)(3).** As discussed in Section I hereof, the Purchase Price of $370,000 (which may be higher if there are overbids) exceeds the approximately $330,072.99 aggregate value of liens against the Illinois Property, which would leave the estate

with net sale proceeds of approximately $39,927 (which may be higher to the extent there is an overbidder, the Debtor is successful in its litigation against PennyMac, LLC, and/or the Debtor is successful in efforts to surcharge PennyMac's alleged collateral interest in the Illinois Property for the costs related to protecting and disposing of it), as follows:

| Items | Amount | Notes |
|---|---|---|
| Purchase Price (subject to overbid) | $ 370,000.00 | |
| Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report, which are liens securing claims for (1) unpaid real property taxes owed to the County and (2) unpaid assessments owed to the City, all of which total approximately $4,700 and will be paid from escrow upon closing. | $ (4,700.00) | Inclusive of the County's Claim 17. |
| Item 13 of the Title Report, which is PennyMac, LLC's Alleged Lien securing its Alleged Secured Claim in the principal amount of $299,475, as set forth in Item 13 of the Title Report.  PennyMac, LLC's Alleged Lien and Alleged Secured Claim will attach to the proceeds of sale, with the same extent, validity, and priority as such Alleged Lien and Alleged Secured Claim had prior to the sale. | $ (325,372.99) | Inclusive of PennyMac, LLC's Claim 5, which asserts a claim in the amount of $310,989.72, with interest accruing thereon as 4.625% as of 10/30/17, plus an additional $14,383.27 of interest at 4.625 % over the last year. |
| Balance to the Estate | $ 39,927.01 | |

Based on the foregoing, the Court should approve the sale of the Illinois Property free and clear of the Government Liens and Government Claims pursuant to Section 363(f)(3).

**(3)** **Section 363(f)(4).**  In addition to the foregoing, the Debtor notes that the purported Government Liens referenced in Items 18 and 19 of the Title Report and the Government Claims related thereto are subject to *bona fide* dispute because the subject Government Liens were recorded on October 11, 2017 and December 18, 2017, which is after the Petition Date of August 17, 2017, and, therefore, makes the subject Government Liens void,

1    not merely voidable, because the recordation thereof constituted a violation of the automatic

2    stay. *In re Schwartz*, 954 F.2d 569, 570-71 (9th Cir. 1993).  Further, the foregoing Government

3    Liens may be avoidable under Section 549 providing for the avoidance of transfers of estate

4    property that occur after the Petition Date and are not authorized under the Title 11 or the Court.

5    11 U.S.C. § 549.  Based on the foregoing, the Court could also approve the sale of the Illinois

6    Property free and clear of the foregoing Government Liens and Government Claims referenced

7    in Items 18 and 19 of the Title Report pursuant to Section 363(f)(4).

8            **b.      Item 13 of the Title Report** is PennyMac, LLC's Alleged Lien securing

9    its Alleged Secured Claim in the principal amount of $299,475, as set forth in Item 13 of the

10   Title Report.   In addition to the foregoing, PennyMac, LLC Proof of Claim 5, a true and correct

11   copy of which is attached hereto as Exhibit "6," asserting a secured claim in the amount of

12   $310,989.72, with interest accruing thereon as 4.625% as of October 30, 2017, and which would

13   total approximately $325,372.99 with an additional $14,383.27 of interest at 4.625 % over the

14   last year.

15           **(1)      Section 363(f)(3).**   As discussed above, the Purchase Price of

16   $370,000 (which may be higher if there are overbids) exceeds the approximately $330,072.99

17   aggregate value of liens against the Illinois Property and would leave the estate with net sale

18   proceeds of approximately $39,927.  Based on the foregoing, and because PennyMac, LLC's

19   Alleged Lien and Alleged Secured Claim will attach to the proceeds of sale, with the same

20   extent, validity, and priority as such Alleged Lien and Alleged Secured Claim had prior to the

21   sale, the Court should approve the sale of the Illinois Property free and clear of the Government

22   Liens and Government Claims pursuant to Section 363(f)(3).

23           **(2)      Section 363(f)(4).**  The Illinois Property can be sold free and clear

24   of the PennyMac, LLC's Alleged Lien and Alleged Secured Claim pursuant to Section 363(f)(4),

25   because PennyMac, LLC's Alleged Lien and Alleged Secured Claim are subject to *bona fide*

26   dispute based on standing and related issues discussed below.

27           More specifically, on February 7, 2018, the Debtor filed a complaint (the

28   "Complaint") against PennyMac, LLC, a true and correct copy of which is attached hereto

1    without exhibits as **Exhibit "7,"** asserting claims for, *inter alia*, (1) declaratory relief regarding

2    whether PennyMac, LLC has a lien on the Illinois Property (*see* Complaint, ¶¶ 63-69) and (2)

3    disallowance of PennyMac, LLC's Alleged Secured Claim (*see* Complaint, ¶¶ 70-71) based on

4    the allegation that PennyMac, LLC's "Alleged Secured Claim and any other claim of the

5    Defendants against the Debtor based on or arising from the [subject note] and [subject DOT lien]

6    is unenforceable against the Debtor and [the Illinois Property] and, therefore must be disallowed

7    under 11 U.S.C. § 502(b)(1). PennyMac, LLC filed a motion to dismiss the Complaint.

8    Thereafter, the Court entered an order granting in part and denying in part such motion (the

9    "<u>First MTD Order</u>"), a true and correct copy of which is attached hereto as **Exhibit "8."**

10   Pursuant to the First MTD Order, the Court, *inter alia*, (1) held that certain theories underlying

11   the declaratory relief claim were plausible and specifically that the Debtor plausibly alleged a

12   claim that PennyMac, LLC does not have a lien on the Illinois Property (*see* First MTD Order,

13   5:4-10) and (2) held that the claim objection claim was plausible (*see* First MTD Order, 5:23-

14   6:12).

15            On September 5, 2018, the Debtor filed an amended complaint (the

16   "<u>FAC</u>") against PennyMac, LLC, a true and correct copy of which is attached hereto without

17   exhibits as **Exhibit "9,"** amending certain claims dismissed without prejudice with leave to

18   amend pursuant to the First MTD Order and again asserting the declaratory relief claim and

19   claim objection claim noted above.  *See* FAC.  PennyMac, LLC filed a motion to dismiss the

20   FAC.  Thereafter, the Court held a hearing on such motion and again (1) held that certain

21   theories underlying the declaratory relief cause of action were plausible and specifically that the

22   Debtor plausibly alleged a claim that PennyMac, LLC does not have a lien on the Illinois

23   Property and (2) held that the claim objection cause of action was plausible.  An order on the

24   foregoing motion to dismiss needs to be lodged with the Court.

25            Based on the foregoing demonstrating a *bona fide* dispute regarding

26   PennyMac, LLC's Alleged Lien and Alleged Secured Claim, and because PennyMac, LLC's

27   Alleged Lien and Alleged Secured Claim will attach to the proceeds of sale, with the same

28   extent, validity, and priority as such Alleged Lien and Alleged Secured Claim had prior to the

1    sale, the Court could can and should approve the sale of the Illinois Property free and clear of

2    PennyMac, LLC's Alleged Lien and Alleged Secured Claim pursuant to Section 363(f)(4).

3                      **(3)    Section 363(f)(5).**

4                      In addition to the foregoing, the Court can approve the sale of the Illinois

5    Property free and clear of PennyMac, LLC's Alleged Lien and Alleged Secured Claim

6    referenced in Title Report Item 13 pursuant to Section 363(f)(5), because all of the factors set

7    forth in *PW* for a sale free and clear of PennyMac, LLC's Alleged Lien and Alleged Secured

8    Claim are satisfied.  ***First***, as discussed in *PW*, PennyMac, LLC's Alleged Lien pursuant to the

9    constitutes an interest in property for the purposes of Section 363(f)(5).  *PW*, 391 B.R. at 41.

10                     ***Second***, in regard to the combined other elements – that a proceeding

11   exists or could be brought, in which PennyMac, LLC could be compelled to accept a money

12   satisfaction of its lien – as set forth above, the County and the City have the Government Claims

13   secured by the Government liens.  The County's Government Liens, at least with respect to

14   Title Report Items 2 & 3 pertaining to claims for real property taxes, are senior to all liens,

15   including PennyMac, LLC Alleged Lien.  *See Barer v. Cty. of Riverside*, 57 Cal. App. 4th 558,

16   566–71, 67 Cal. Rptr. 2d 241, 246–49 (1997) (noting that a county's liens for real property taxes

17   are senior to all other liens regardless of the time of their creation) (*citing* Cal. Rev. & Tax.

18   Code § 2187 (West) ("Every tax, penalty, or interest, including redemption penalty or interest,

19   on real property is a lien against the property assessed.") and Cal. Rev. & Tax. Code § 2192.1

20   (West) ("Every tax declared in this chapter to be a lien on real property … [has] priority over all

21   other liens on the property, regardless of the time of their creation. Any tax or assessment

22   described in the preceding sentence shall be given priority over matters including, but not

23   limited to, any recognizance, deed, judgment, debt, obligation, or responsibility with respect to

24   which the subject real property may become charged or liable.")

25                     The County could conduct a judicial foreclosure on its Tax Liens.  *See,

26   e.g., Riverside Cty. Cmty. Facilities Dist. No. 87-1 v. Bainbridge 17*, 77 Cal. App. 4th 644, 660–

27   61, 92 Cal. Rptr. 2d 29, 40–41 (1999) (discussing a county's judicial foreclosure on a tax lien).

28   The County could also non-judicially foreclose on its Tax Liens. In the event of foreclosure by

1  the County, US Bank's lien (and therefore its ability to foreclose on the Illinois Property in

2  order to recover on its alleged secured claim) could be eliminated and/or US Bank could be

3  compelled to accept money satisfaction of its alleged lien securing its alleged claim against the

4  Debtor.  *See, e.g., FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1023,

5  255 Cal. Rptr. 157, 161 (Ct. App. 1989) ("'The statutory scheme concerning nonjudicial

6  foreclosure contemplates that in order to protect its interest, a junior lienor must pay the trustor's

7  obligation to the senior lienor." (*Arnolds Management Corp. v. Eischen, supra*, 158 Cal.App.3d

8  at p. 579, 205 Cal.Rptr. 15; Civ.Code, §§ 2904, 2876, 2924c, sub. (a)(1).)  If a junior lienor does

9  not cure the default in the senior obligation or redeem at the senior foreclosure, its lien will be

10  extinguished at the foreclosure sale unless the successful bidder purchases at a price high

11  enough to pay off the senior indebtedness and the junior indebtedness as well. (*See, e.g., Bank*

12  *of Hemet v. United States*, (9th Cir.1981) 643 F.2d 661.)"); *Bank of Am. v. Graves*, 51 Cal. App.

13  4th 607, 611–12, 59 Cal. Rptr. 2d 288, 291 (1996) ("A senior foreclosure sale conveys the

14  property free of all junior liens.... Thus, the junior no longer has a lien on the property, and the

15  security has been entirely destroyed. A sold-out junior thus holds security that has 'become

16  valueless' and is permitted to sue directly on the note." (Bernhardt, Cal. Mortgage and Deed of

17  Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 4.8, pp. 193–194.)"); Cal.Civ.Code § 2924k (noting

18  that when a senior trust deed holder forecloses, the funds from the sale are first used to pay

19  certain costs of sale, then second used to pay the obligations of the senior foreclosing lender

20  secured by the deed of trust that is the subject of the foreclosure sale, then third to pay the

21  outstanding balance of obligations secured by any junior liens in the order of their priority).

22          Based on the foregoing, the Debtor respectfully submits that the Debtor

23  can sell free and clear of PennyMac, LLC's Alleged Lien and Alleged Secured Claim pursuant

24  to Section 363(f)(5).  Again, PennyMac, LLC's Alleged Lien and Alleged Secured Claim will

25  attach to the proceeds from the sale of the Illinois Property with the same extent, validity, and

26  priority as such claim and lien had prior to the sale.

27          **c.    Items 14-16 of the Title Report** are the Affiliate DOTs issued by the

28  Debtor to certain of its Affiliates that were deemed to be released, reconveyed, terminated, and

expunged from title pursuant to the Affiliate Settlement Order. **See Exhibit "4."** Based on the foregoing, the Affiliate DOTs are already deemed to be expunged from title. However, to the extent it is deemed necessary, the Debtor also hereby consents to the sale of the Illinois Property free and clear of the Affiliate DOTs.

Based on the foregoing, the Debtor respectfully submits that the Debtor can sell free and clear of the Affiliate DOTs pursuant to Section 363(f)(2) based on consent and/or Section 363(f)(4) based on the *bona fide* dispute over the validity of the Affiliate DOTs, which are of no further effect due to the entry of the Affiliate Settlement Order.

## C.    THE COURT SHOULD APPROVE THE OVERBID PROCEDURES AND THE BREAK-UP FEE.

FRBP 2002 and 6004 govern the scope of the notice to be provided in the event a trustee elects to sell property of the estate under Section 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, FRBP 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. P. 6004(f).

Neither the Bankruptcy Code nor the FRBP contain specific provisions with respect to the procedures to be employed by a trustee in conducting a public or private sale. Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*

The Debtor believes that the proposed Overbid Procedures, which are set forth in Section I.G hereof, will maximize the price ultimately obtained for the Illinois Property while still protecting the estate from parties who may wish to bid on the Illinois Property but who are

1   ultimately unable to consummate a purchase of the Illinois Property.  The Overbid Procedures

2   serve numerous legitimate purposes.  Among other things, the Overbid Procedures will (1)

3   foster competitive bidding among any serious potential purchasers, (2) eliminate from

4   consideration purchasers who would waste the estate's time because they would not have the

5   financial ability to consummate a purchase of the Illinois Property, and (3) ensure that the

6   highest possible price is obtained for the Illinois Property.

7        One of the Overbid Procedures provided under the Purchase Agreement is the payment

8   of the Break-Up Fee in the sum of $5,000 (approximately 1.4% of the Purchase Price) to the

9   Buyer in the event that the Buyer is not the winning bidder for the Property.  The Debtor

10  submits that, under the circumstances of this case, the proposed Break-Up Fee is reasonable

11  and should be approved.

12       A break-up fee like the one which is proposed to be paid to the Buyer in the event of a

13  successful sale of the Property to a party other than the Buyer has been approved by other

14  courts.  In general, "[a] 'break-up fee' is an incentive payment to an unsuccessful bidder who

15  placed the estate property in a sales configuration mode ... to attract other bidders to the

16  auction." *In re Financial News Network, Inc.*, 126 B.R. 152, 154 n. 5 (Bankr. S.D.N.Y. 1991);

17  *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 653 (S.D.N.Y. 1992), *app dismissed*

18  *on jurisdictional grounds,* 3 F.3d 49 (2d Cir. 1993) ["[a] break-up fee, or more appropriately, a

19  termination fee, is an incentive payment to a prospective purchaser with which a company fails

20  to consummate a transaction"].    Agreements to provide breakup fees are designed to

21  compensate the potential acquirer who serves as a catalyst or "stalking horse' which attracts

22  more favorable offers.  *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); *In re*

23  *995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

24       Outside of bankruptcy, a break-up fee is generally allowed as long as it "enhances" the

25  bidding.  *In re S.N.A. Nut Co.*, 186 B.R. at 102.  In the bankruptcy context, a break-up fee is

26  generally permissible "if reasonably related to the bidder's efforts and the transaction's

27  magnitude." *Cottle v. Storer Communication Inc.*, 849 F.2d 570, 578 (11th Cir. 1988); *In re*

28  *995 Fifth Ave., supra,* 96 B.R. at 28.  Generally speaking, whether the payment of a break-up

33

1  fee is appropriate is evaluated under the "business judgment rule." *In re S.N.A. Nut Co., supra*,

2  186 B.R. at 102.  Under this rule, there is a presumption that, in making a business decision,

3  the debtor acted on an informed basis, in good faith and in the honest belief that the action

4  taken was in the best interest of the company.

5      In evaluating the appropriateness of a break-up fee, the appropriate question for the

6  Court to consider is "whether the break-up fee served any of three possible useful functions:

7  (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum

8  for other bidders to follow, or (3) to attract additional bidders." *In re Integrated Resources,*

9  *Inc.,* 147 B.R. at 662.  Further, LBR 6004-1(b)(6) provides that in making a request for

10  approval of a break-up fee, the debtor must provide evidence establishing that the fee is likely

11  to enhance the ultimate sale price and that the break-up fee is reasonable.

12      Here, the Break-Up Fee allowed the Debtor to attract and retain a potentially successful

13  bid from the Buyer.  That bid may give other potential Overbidders confidence to make

14  Overbids on the Property, which would enhance the ultimate sale price for the Property.  In

15  addition to attracting the Buyer and serving to enhance the price received for the Property, the

16  Break-Up Fee also serves to establish a bid minimum for any Overbids.  The Debtor submits

17  that the Break-Up Fee equal to approximately 1.4% of the Purchase Price is reasonable and

18  break-up fees of between 3% and 5% been approved in numerous other cases.  *See e.g., In re T*

19  *Asset Acquisition Co., LLC*, No. 2:09-31853-ER, 2010 WL 4689562, at *2 (Bankr. C.D. Cal.

20  Jan. 28, 2010) (approving 3% break-up fee as reasonable); *In re Pomare, Ltd.*, No. 15-00203,

21  2015 WL 3523096, at *4 (Bankr. D. Haw. May 18, 2015) (approving 5% break-up fee as

22  reasonable); *In re Net Data Centers*, Case No. 15-12690-BB, Dkt. No. 259 (Bankr. CD Cal.

23  Sep. 1, 2015) (approving 5% break-up fee as reasonable).

24      Based on the foregoing, the Debtor submits that the proposed Overbid Procedures,

25  including the proposed Break-Up Fee, are reasonable and in the best interests of the estate and,

26  therefore, should be approved.

27

28

**D.    THE COURT SHOULD APPROVE THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS UPON THE CLOSE OF THE SALE OF THE ILLINOIS PROPERTY.**

LBR 6004-1(h) provides as follows:

> A disbursement of proceeds [from a sale of estate property] must not be made without a specific order of the court authorizing the disbursement, *except* for payment to secured creditors, payment to a debtor of exempt proceeds, and payment for expenses of sale. Proceeds may be disbursed to pay auctioneer's fees and brokers' commissions without additional order of the court if payment is consistent with the terms of the order approving the sale or authorizing the employment of the auctioneer or broker.

LBR 6004-1(h).

Here, pursuant to the Motion, the Debtor is requesting authority for the Debtor to pay from the proceeds of the sale of the Illinois Property (1) any pre-closing real property taxes secured by the Illinois Property allocated to the Debtor, (2) the 6% commission owed to the Debtor's Broker and any cooperating broker, pursuant to the Purchase Agreement and the Debtor's application to employ the Broker, which was approved by the Court [*see* Dkts. 33, 96, 255, and 264], and (3) any other customary escrow closing fees and charges allocated to the Debtor.  All of the foregoing payments are consistent with allowed disbursements of sale proceeds under LBR 6004-1(h).

**E.    THE COURT SHOULD WAIVE THE 14-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULES 6004(h).**

FRBP 6004(h) provides, among other things, that an "order authorizing the … sale … of property . . . is stayed until the expiration of 14 days after entry of the court order, unless the court orders otherwise." Fed.R.Bankr.P. 6004(h).

The Debtor's goals under its new exit strategy was and is to, among other things, market and sell the non-Foreclosed Properties, including the Illinois Property that is the subject hereof, for the highest and best price possible and then to quickly proceed with (1) efforts to resolve any disputed secured or other claims related to the Illinois Property and (2) payment of allowed secured claims related to the Illinois Property in full.  Waiver of the stay under FRBP 6004(h) will further these goals by allowing for an expedited closing of the proposed sale decreasing the

chances that the Buyer (or successful Overbidder at the Auction) fails to close due to the passage of time.

Based on the foregoing, the Debtor requests that the Court waive the stay under FRBP 6004(h) and that the Sale Order be effective immediately upon entry.

## III.
## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order providing the relief requested in paragraphs (1) through (6) of the preceding Notice of Motion and Motion.

Dated: November 7, 2018      GRAND VIEW FINANCIAL, LLC

By: ___/s/ Todd M. Arnold_____
        TODD M. ARNOLD
        LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
        Attorneys for Debtor and Debtor in Possession

## DECLARATION OF STEVE ROGERS

I, STEVE ROGERS, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Managing Member and Vice President of Grand View Financial, LLC, the debtor and debtor in possession herein (the "Debtor").  I am familiar with the Debtor's books and records maintained in the ordinary course of the Debtor's business, the Debtor's bank accounts, and the Debtor's business and operations.

3.      I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

4.      On August 17, 2017 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11.  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.  An Official Committee of Unsecured Creditors has not been formed.

5.      The Debtor is a Wyoming limited liability company that was formed in 2015. The Debtor is in the business of acquiring distressed real property (each a "Property" and, collectively, the "Properties")  in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "Alleged Secured Claim" and, collectively, the "Alleged Secured Claims") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "Alleged Lien" and, collectively, the "Alleged Secured Liens") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid.

6.      In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a "Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the Debtor and the Former Owner.  In a typical transaction in which the Debtor acquires a Property:

a.      the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "Purchase Agreement" and, collectively, the "Purchase Agreements") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an "Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Purchase Agreement and Unsecured Note;

b.      the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

c.      the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

7.      Through the Petition Date, the Debtor acquired 42 Properties.  In the ordinary course of its business, the Debtor acquired an additional three Properties after the Petition Date, and the Debtor may acquire other Properties.  Unfortunately, prior to the Petition Date, approximately 28 of the 45 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon.  The Debtor has decided to stop pursuing recovery on 22 of the Foreclosed Properties.  Thus, at present, the Debtor has an interest in and/or is pursuing recovery on 23 Properties.

8.      Consistent with the Debtor's business model, in November 2016, the Debtor and Monica Lam ("Lam"), the Former Owner of the Illinois Property, entered into a Purchase Agreement, the Debtor issued an Unsecured Note to Lam, Lam executed a Rental Agreement, and Lam executed a Grant Deed transferring title to the Illinois Property to the Debtor (the

"Grant Deed"). A true and correct copy of the Grant Deed is attached hereto as **Exhibit "3."**

9.      On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary, invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a Chapter 11 plan of reorganization.

10.      As of the Petition Date, the Debtor intended (1) to initiate adversary proceedings (each an "Adversary" and, collectively, the "Adversary Proceedings") and/or claim objections (each a "Claim Objection" and, collectively, the "Claim Objections") to (a) invalidate, reverse, or avoid the purported foreclosures on the Foreclosure Properties and (b) challenge and eliminate all of the Alleged Secured Claims and related Alleged Liens, (2) to sell the resulting unencumbered Properties for the highest and best price (subject to any rights of first refusal a Former Owner may have to repurchase the subject Property), and (3) to propose and confirm a plan whereby all allowed secured claims (which I believe will be limited to some tax claims against certain of the Properties), administrative claims, priority claims, and general unsecured claims (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which was the Debtor's original exit strategy.

11.      While the Debtor disputes the enforceability and validity of the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the validity of the purported foreclosures on the Foreclosure Properties, the Debtor has decided to somewhat alter its original bankruptcy and exit strategy. More specifically, the Debtor took actions, including the initiation of Adversary Proceedings (which included Claim Objections), in an effort to invalidate, reverse, or avoid the purported foreclosures on certain of the

Foreclosure Properties and to challenge certain related the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties.  However, the Debtor, in an exercise of its business judgment, later determined that the cost of pursuing most other potential Adversary Proceedings and Claim Objections likely outweighed the benefit to be gained in such Adversary Proceedings and Claim Objections, particularly when considering prior results before this Court, the costs of litigating the Adversary Proceedings and Claim Objections, and the delay and risks inherent in litigating Adversary Proceedings and Claim Objections pertaining to the Foreclosed Properties that are the subject of the Rejected Purchase Agreements (as defined below).

12.    Based on the foregoing and other factors, the Debtor, in an exercise of its business judgment, decided that it made better sense to reject 22 of the 28 all of the Purchase Agreements relating to Foreclosed Properties (the "Rejected Purchase Agreements"), to stop seeking recovery on such Foreclosed Properties, and to instead focus on selling the 17 Properties that are non-Foreclosed Properties and continuing to litigate Adversary Proceedings and Claim Objections related to six of the Foreclosed Properties.

13.    The Debtor intends to seek to sell such non-Foreclosed Properties, such as the Illinois Property that is the subject of this Motion, free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale.  Once non-Foreclosed Properties, such as the Illinois Property that is the subject of this Motion, are sold, to the extent a consensual resolution cannot be reached regarding the disposition of sale proceeds as among the Debtor and any holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners), the Debtor will litigate, in contested Claim Objections or Adversary Proceedings, with the holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) pertaining to the non-Foreclosed Properties, to determine their claims and, therefore, the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property. As further discussed below, the Debtor is already litigating with PennyMac LLC regarding its Alleged Secured Claim and Alleged Secured Lien in an Adversary Proceeding pending before the Court.

14.    I believe that the foregoing is more likely to result in a higher net benefit to the estate than litigating all Adversary Proceedings and Claim Objections regarding the Foreclosed Properties.

15.    The Debtor already sought and obtained Court authority to reject the Rejected Purchase Agreements, each of which pertained to a Foreclosed Property.

16.    In respect to non-Foreclosed Properties, in furtherance of the Debtor's exit strategy, the Debtor (1) obtained Court authority to employ the Broker as the Debtor's real estate broker to market and sell the Properties at the appropriate time [*see* Dkts. 33, 96, 255, and 264] and (2) with the assistance of the Broker, began to market certain of the non-Foreclosed Properties for sale, including the Illinois Property, as discussed in more detail below.  The Debtor's Court-approved employment of the Broker provides for a 6% commission to be paid to the Broker and shared with the cooperating broker in connection with the sale of the Illinois Property [*see id.*].

17.    In addition, the Debtor obtained a general claims bar date of May 4, 2018 (the "Bar Date") and provided notice thereof.  [Dkt. 184]

18.    Also in furtherance of the Debtor's exit strategy, the Debtor filed a motion to approve a settlement agreement between the Debtor and certain of its Affiliates (the "Affiliate Settlement Motion") pursuant to which, *inter alia*, the Affiliate DOTs issued by the Debtor to certain of its Affiliates would be deemed to be released, reconveyed, terminated, and expunged from title.  [Dkts. 252 and 253]  On June 28, 2018, the Court entered its order (the "Affiliate Settlement Order") [Dkt. 271] granting the Affiliate Settlement Motion and deeming the Affiliate DOTs to be released, reconveyed, terminated, and expunged from title.  A true and correct copy of the Affiliate Settlement Order is attached hereto as **Exhibit "4."**

19.    The efforts of the Debtor and the Broker to market and sell the Illinois Property discussed in the Motion and the following declaration resulted in the Debtor receiving a number of signed offers for the Illinois Property.  Ultimately, after considering other and prior purchase offers, and based on consultation with its professionals, the Debtor accepted the offer from the Buyer and entered into the Purchase Agreement, a true and correct copy of which is attached

hereto as **Exhibit "2."**

20.     The Purchase Agreement is the result of arms-length negotiations.  Other than in connection with the proposed sale of the Illinois Property, the Debtor and its principals have no prior connections with and have never met the Buyer.

21.     The Title Report for the Property is attached hereto as **Exhibit "1."**

22.     Pursuant to the Motion, the Debtor is seeking to sell the Illinois Property free and free and clear of all liens, claims, encumbrances, and interests, with the exception of the Excepted Items, which are Items 1 and 4-10 set forth in the Title Report.  In other words, the Debtor will be selling free and clear of the Items 2, 3 and 11-19  of the Title Report as the non-Excepted Items of the Title Report.

23.     Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report are liens (the "<u>Government Liens</u>") securing claims (the "<u>Government Claims</u>") for (1) unpaid real property taxes owed to the County for 2016-2017 (*see* Items 2-3 of the Title Report) and (2) unpaid assessments owed to the City (*see* Items 11, 12, 17, 18, and 19 of the Title Report), all of which total approximately $4,700 (*see* Items 2, 3, 11, 12, 17, 18 and 19 of the Title Report).  In addition to the foregoing, the County filed Proof of Claim 17, a true and correct copy of which is attached hereto as **Exhibit "5,"** asserting a secured claim in the amount of $1,405.64 for unpaid real property taxes owed to the County for 2016-2017.  The Government Claims will be paid from escrow upon closing.

24.     Item 13 of the Title Report is PennyMac, LLC's Alleged Lien securing its Alleged Secured Claim in the principal amount of $299,475, as set forth in Item 13 of the Title Report.   In addition to the foregoing, PennyMac, LLC Proof of Claim 5, a true and correct copy of which is attached hereto as **Exhibit "6,"** asserting a secured claim in the amount of $310,989.72, with interest accruing thereon as 4.625% as of October 30, 2017.

25.     Items 14-16 of the Title Report are the Affiliate DOTs issued by the Debtor to certain of its Affiliates that were deemed to be released, reconveyed, terminated, and expunged from title pursuant to the Affiliate Settlement Order. *See* Exhibit "4."

26.     The proposed sale furthers the Debtor's exit strategy.   Indeed, as discussed

above, the Debtor is already litigating with PennyMac, LLC regarding its Alleged Secured Claim and Alleged Lien in an Adversary Proceeding pending before the Court.

27.    In addition to the foregoing, the sale of the Illinois Property will (1) as discussed in the Motion, result in a net benefit to the estate of at $39,000 (which may be higher in the event of an overbid and/or the Debtor is successful in surcharging PennyMac, LLC's alleged collateral), even if PennyMac, LLC's disputed claim and lien are ultimately deemed to be valid, (2) substantially curtail, if not stop, the accrual of any additional secured claims in favor of PennyMac, LLC for additional interest and (3) stop the accrual of additional secured property tax claims against the estate related to the Illinois Property.

28.    Based on the foregoing, I submit that the proposed sale of the Illinois Property is in the best interests of the estate and its creditors and, therefore, represents a sound exercise of the Debtor's business judgment.

29.    On February 7, 2018, the Debtor filed a complaint (the "Complaint") against PennyMac, LLC, a true and correct copy of which is attached hereto without exhibits as **Exhibit "7."**  PennyMac, LLC filed a motion to dismiss the Complaint.  Thereafter, the Court entered an order granting in part and denying in part such motion (the "First MTD Order"), a true and correct copy of which is attached hereto as **Exhibit "8."**

/ / /

/ / /

/ / /

30.    On September 5, 2018, the Debtor filed an amended complaint (the "FAC") against PennyMac, LLC, a true and correct copy of which is attached hereto without exhibits as **Exhibit "9,"** amending certain claims dismissed without prejudice with leave to amend pursuant to the First MTD Order and again asserting the declaratory relief claim and claim objection claim noted above.  Thereafter, the Court held a hearing on such motion and again (1) held that certain theories underlying the declaratory relief cause of action were plausible and specifically that the Debtor plausibly alleged a claim that PennyMac, LLC does not have a lien on the Illinois Property sand (2) held that the claim objection cause of action was plausible.  An order on the foregoing motion to dismiss needs to be lodged with the Court.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 7th day of November 2018, at Minden, Nevada.


STEVE ROGERS

1

2                **DECLARATION OF W. DARROW FIEDLER**

3        I, W. DARROW FIEDLER, do hereby declare:

4        1.      I am over 18 years of age.   Except where otherwise stated, I have personal

5    knowledge of the facts set forth below and, if called to testify, would and could competently

6    testify thereto.

7        2.      I am a California-licensed real estate broker with Keller Williams Realty and

8    KW Commercial located at 23670 Hawthorne Blvd., Suite 100, Torrance, California ("Primary

9    Broker"), whose employment, together with the employment of associated Keller Williams

10   Realty and KW Commercial offices located throughout the United States ("Associated Brokers"

11   and, together with Primary Broker, the "Broker"), was approved by the Court. and

12       3.      I make this Declaration in support of the Motion to which this Declaration is

13   attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the

14   Motion.

15       4.      In furtherance of its efforts to market and sell the Illinois Property, the Broker (1)

16   accessed and viewed the Illinois Property, (2) discussed the Illinois Property and related

17   comparative sale data to come to agreement with the Debtor on a listing price, (3) photographed

18   the Illinois Property, (4) on or about March 30, 2018, listed the Illinois Property on the MLS,

19   which listing was followed by private showings.   The Broker's marketing efforts resulted in

20   numerous views on the MLS and other online platforms, a number of private showings, and

21   multiple offers for the Illinois Property.

22       5.      In addition to the foregoing, the Broker will continue to market the Illinois

23   Property through the Auction date in an effort to attract Overbidders by, among other things, (1)

24   continuing to respond to inquiries regarding the Illinois Property, (2) when possible, continuing

25   to conduct private showings to interested parties, (3) mailing or emailing a copy of the Notice

26   and this Motion and Memorandum, Declarations, and Exhibits, which include the Overbid

27   Procedures, to (a) all parties and/or the brokers of all parties that have provided contact

28   information to the Broker and have shown interest in the Illinois Property and (b) potential

1    interested parties in the Broker's email database, and (4) posting on the MLS basic information

2    about the Auction and Overbid Procedures (such as date and time of the auction and minimum

3    initial overbid amount) and contact information for the Debtor's counsel indicating that such

4    counsel can provide a copy of the Notice and this Motion and Memorandum, Declarations, and

5    Exhibits, which include the full, detailed Overbid Procedures.

6        6.    The efforts of the Debtor and the Broker to market and sell the Illinois Property

7    resulted in the Debtor receiving a number of signed offers for the Illinois Property. Ultimately,

8    after considering other and prior purchase offers, and based on consultation with its

9    professionals, the Debtor accepted the offer from the Buyer and entered into the Purchase

10    Agreement, a true and correct copy of which is attached hereto as **Exhibit "2."**

11        7.    The Purchase Agreement is the result of arms-length negotiations.

12        I declare and verify under penalty of perjury that the foregoing is true and correct to the

13    best of my knowledge.

14        Executed on this 7th day of November 2018, at Torrance, California.

15

16

17    _____
     W. DARROW FIEDLER

18

19

20

21

22

23

24

25

26

27

28

46

# EXHIBIT "1"

# Fidelity National Title Company
3760 Kilroy Airport Way, Suite 110, Long Beach, CA 90806
Phone:  (562) 951-5200

Issuing Policies of Fidelity National Title Insurance Company

ORDER NO.: **00197976-996-MCO-JH7**
LOAN NO.:

Title Officer:  Justine Hilgenberg
Phone: (562) 951-5200
Fax:
Email: justinesteam@fnf.com

Keller Williams Realty South Bay
12670 Hawthorne Blvd
Torrance, CA 90505

ATTN:         Darrow Fiedler
YOUR REF:   124 Illinois St

PROPERTY:   **124 Illinois Street, Vallejo, CA**

## AMENDED **PRELIMINARY REPORT**

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida corporation.*

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

Countersigned by:

*Cindy Fried*

Authorized Signature

# Fidelity National Title Company

3760 Kilroy Airport Way, Suite 110, Long Beach, CA 90806
Phone:  (562) 951-5200

## AMENDED **PRELIMINARY REPORT**

**EFFECTIVE DATE:**          September 18, 2018 at 7:30 a.m., Amended: September 24, 2018, Amendment No. 2

**ORDER NO.:  00197976-996-MCO-JH7**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Homeowner's Policy of Title Insurance (12-2-13)**
**ALTA Extended Loan Policy (6-17-06)**

1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A FEE**

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**Monica K. Lam, an unmarried woman as her sole and separate property, as Subject to item No. 19**

3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

**See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
YOUR REFERENCE:  124 Illinois St

Fidelity National Title Company
ORDER NO.:  00197976-996-MCO-JH7

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO,  COUNTY OF SOLANO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF CALIFORNIA, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE BY E. N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY RECORDS.

APN: **0056-014-080**

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.   Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2018-2019.

2.   Supplemental Assessment for 2016-2017

| | |
|---|---|
| Bill No.: | 005601408005 |
| 1st Installment: | $32.94 Delinquent Plus Penalty 3.29 |
| Must Be Paid By: | July 31, 2017 |
| 2nd Installment: | $32.94 Delinquent  Plus Penalty $13.29 |
| Must Be Paid By: | November 30, 2017 |

3.   Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017

| | |
|---|---|
| APN No.: | 0056-014-080 |
| Default No.: | Not Shown |
| Default Date: | June 30, 2017 |

Amounts to redeem for the above-stated fiscal year (and subsequent years, if any) are:

| | | |
|---|---|---|
| Amount: | $1,486.02, by: | September 30, 2018 |
| Amount: | $1,502.47, by: | October 31, 2018 |

4.   The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4,  respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for payment thereof.

5.   Water rights, claims or title to water, whether or not disclosed by the public records.

6.   Taxes and assessments levied by the Water/Utility  District. Assessments levied by said District are payable with and in like manner as the County taxes of County of Solano.

7.   Municipal refuse (garbage) charges levied by the City of Vacaville, if any. Contact (707)448-2945 for charges.

8.   Any unpaid municipal services or assessments of the City of Vallejo. Information as to the amount of such charges may be obtained from the Vallejo City Clerk at (707)552-3110 and from the Vallejo Sanitation and Flood Control District at (707)644-8976.

9.   Matters contained in that certain document

| | |
|---|---|
| Entitled: | Agreement |
| Dated: | November 13, 1973 |
| Executed by: | Dan E. Lorden, a Widower and Irvin Chilner and Betty F. Chilner, also Known as Betty Chilner |
| Recording Date: | November 13, 1973 |
| Recording No.: | Book 1809, Page 414, Official Records |

Reference is hereby made to said document for full particulars

PRELIMINARY REPORT                                                    Fidelity National Title Company
YOUR REFERENCE:  124 Illinois St                          ORDER NO.:  00197976-996-MCO-JH7

## EXCEPTIONS
### (Continued)

10.    Intentionally Omitted

11.    A lien for the amount shown below and any other amounts due,

|  |  |
|---|---|
| Amount: | $281.00 |
| Recording Date: | July 29, 2010 |
| Recording No.: | 2010-68476, Official Records |

12.    A lien for the amount shown below and any other amounts due,

|  |  |
|---|---|
| Amount: | $2,315.00 |
| Recording Date: | December 5, 2014 |
| Recording No.: | 2014-93868, Official Records |

13.    A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $299,475.00 |
| Dated: | October 10, 2015 |
| Trustor/Grantor: | Monica K. Lam, a married woman as her sole and separate property |
| Trustee: | Fidelity National Title |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Nations direct mortgage, LLC |
| Loan No.: | 8010046290 |
| Recording Date: | October 19, 2015 |
| Recording No.: | 2015-95054, Official Records |

Assignment of the beneficial interest under said deed of trust which names:

|  |  |
|---|---|
| Assignee: | Pennymac loan services, LLC |
| Recording Date: | August 22, 2017 |
| Recording No.: | 2017-71020, Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

|  |  |
|---|---|
| Trustee: | National Default Servicing Corporation, An Arizona Corporation |
| Recording Date: | June 1, 2018 |
| Recording No: | 201800037105, Official Records |

A notice of default under the terms of said trust deed

|  |  |
|---|---|
| Executed by: | National Default Servicing Corporation, An Arizona Corporation |
| Recording Date: | June 1, 2018 |
| Recording No: | 201800037106, Official Records |

## EXCEPTIONS
### (Continued)

14.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $80,000.00 |
| Dated: | December 12, 2016 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | North Park Investments LLC |
| Loan No.: | None shown |
| Recording Date: | December 13, 2016 |
| Recording No: | 2016-00112806, Official Records |

15.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $80,000.00 |
| Dated: | February 14, 2017 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | Upscale Financial LLC |
| Loan No.: | None shown |
| Recording Date: | February 16, 2017 |
| Recording No: | 201700014739, Official Records |

16.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $50,000.00 |
| Dated: | June 15, 2017 |
| Trustor/Grantor | Grand View Financial LLC |
| Trustee: | Noted Results LLC, a California Company |
| Beneficiary: | Refreshing Resources, LLC |
| Loan No.: | None shown |
| Recording Date: | June 15, 2017 |
| Recording No: | 201700050554, Official Records |

17.    A lien for the amount shown below and any other amounts due,

| | |
|---|---|
| Amount: | $98.35 |
| Claimant: | Vallejo Sanitation and Flood Control District |
| Nature of Claim: | Public Entity Utility Lien |
| Recording Date: | August 10, 2017 |
| Recording No.: | 2017067480, Official Records |

18.    A lien for the amount shown below and any other amounts due,

| | |
|---|---|
| Amount: | $201.33 |
| Claimant: | Vallejo Sanitation and Flood Control District |
| Nature of Claim: | Public Entity Utility Lien |
| Recording Date: | October 11, 2017 |
| Recording No.: | 201700086610, Official Records |

## EXCEPTIONS
### (Continued)

19.    A lien for the amount shown below and any other amounts due,

| | |
|---|---|
| Amount: | $217.22 |
| Claimant: | Vallejo Sanitation and Flood Control District |
| Nature of Claim: | Public Entity Utility Lien |
| Recording Date: | December 18, 2017 |
| Recording No.: | 201700108671, Official Records |

20.    The interest, if any, of the grantee(s) in the deed referenced below.  The record does not disclose that such grantee is an entity capable of acquiring and holding title to real property in its own name.

| | |
|---|---|
| Grantor: | Monica K. Lam, an unmarried woman as her sole and separate property |
| Grantee: | Grand View Financial LLC |
| Recording Date: | November 14, 2016 |
| Recording No.: | 2016-102070, Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH
FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

### END OF EXCEPTIONS

---

PRELIMINARY REPORT
YOUR REFERENCE: 124 Illinois St

Fidelity National Title Company
ORDER NO.: 00197976-996-MCO-JH7

# REQUIREMENTS SECTION

1.   In order to complete this report, the Company requires a Statement of Information to be completed by the following
party(s),

   Party(s):                    All Parties

   The Company reserves the right to add additional items or make further requirements after review of the requested
Statement of Information.

   NOTE: The Statement of Information is necessary to complete the search and examination of title under this order.
Any title search includes matters that are indexed by name only, and having a completed Statement of Information
assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect
another party with the same or similar name. Be assured that the Statement of Information is essential and will be
kept strictly confidential to this file.

2.   The Company will require the following documents for review prior to the issuance of any title insurance predicated
upon a conveyance or encumbrance from the entity named below:

   Limited Liability Company:  Grand View Financial LLC

   a) A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto,
certified by the appropriate manager or member

   b) If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with
the appropriate filing stamps

   c) If the Limited Liability Company is member-managed, a full and complete current list of members certified by
the appropriate manager or member

   d) A current dated certificate of good standing from the proper governmental authority of the state in which the
entity was created

   e) If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence
of the authority of those signing.

   The Company reserves the right to add additional items or make further requirements after review of the requested
documentation.

---

## END OF REQUIREMENTS

---

PRELIMINARY REPORT                                          Fidelity National Title Company
YOUR REFERENCE:  124 Illinois St                           ORDER NO.:  00197976-996-MCO-JH7

## INFORMATIONAL NOTES SECTION

1.   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation,
     distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving
     Land that is associated with these activities.

2.   None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to
     an Extended Coverage Loan Policy, when issued.

3.   Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form
     116 indicating that there is located on said Land a Single Family Dwelling, known as 124 Illinois Street, Vallejo,
     California to an Extended Coverage Loan Policy.

4.   Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand
     arbitration provision. Arbitrable matters may include, but are not limited to any controversy or claim between the
     Company and the insured arising out of or relating to this policy, any service of the Company in connection with its
     issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample
     copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to
     your Title Insurance Coverage.

5.   Note:  The charge for a policy of title insurance, when issued through this application for title insurance, will be
     based on the Short Term Rate.

6.   The only deed(s) affecting said land which recorded within twenty-four (24) months of the date of this report, is
     (are) as follows:

     | | |
     |---|---|
     | Grantor: | Monica K. Lam, an unmarried woman as her sole and separate property |
     | Grantee: | Grand View Financial LLC |
     | Recording Date: | November 14, 2016 |
     | Recording No.: | 2016-102070, Official Records |

7.   Note: Property taxes for the fiscal year shown below are PAID. For proration purposes the amounts were:

     | | |
     |---|---|
     | Tax Identification No.: | 0056-014-080 |
     | Fiscal Year: | 2017-2018 |
     | 1st Installment: | $2,324.62 Paid |
     | 2nd installment: | $2,324.62 Paid |
     | Exemption: | $0.00 |
     | Land: | $55,000.00 |
     | Improvements: | $260,000.00 |
     | Code Area: | 007000 |
     | Personal Property: | $0.00 |
     | Bill No.: | 5601408001 |

8.   Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer
     Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid
     or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document,
     the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

9.   The Note shown below, which recites: "California Revenue and taxation Code Section 18668, effective January 1,
     1991, requires that the buyer in all sales of California Real Estate, wherein the Seller shows an Out of State Address,
     withhold 3-1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law
     as therein contained."

     is hereby deleted and replaced with the following:

PRELIMINARY REPORT
YOUR REFERENCE:  124 Illinois St

Fidelity National Title Company
ORDER NO.:  00197976-996-MCO-JH7

## INFORMATIONAL NOTES
### (Continued)

Cailfornia Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

10.     The Company has been informed that the policy will have a liability of  $0.00, and that TBD will be named insured.

11.     Note: The map attached, if any, may or may not be a survey of the land depicted hereon. Fidelity National Title Company, expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

12.     Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

13.     If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

14.     Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third party service. If the above requirements cannot be met, please call the Company at the number provided in this report

15.     NOTE: Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

16.     Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows:

Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

## INFORMATIONAL NOTES
### (Continued)

---

### END OF INFORMATIONAL NOTES

---

Justine Hilgenberg/kd

# EXHIBIT "2"

DocuSign Envelope ID: 7B660F26-12D8-4DBF-8633-7B3A5EF52609

## Counteroffer re Purchase and Sale of:
## 124 Illinois St., Vallejo, CA 94590

This is a counteroffer ("Counteroffer") to the September 6, 2018, "CA Residential Purchase Agreement and Joint Escrow Instructions" (the "Buyer's Offer") from Rajesh Sharma (collectively, "Buyer") regarding the purchase of the real property commonly known as 124 Illinois St., Vallejo, CA 94590, APN: 0056-014-080 ("Property"), by the Buyer from Grand View Financial, LLC ("Seller" or "Debtor," and together with Buyer the "Parties"), the Chapter 11 debtor and debtor in possession, in bankruptcy case number 2:17-bk-20125-RK pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").

When fully-executed below, this Counteroffer will constitute conclusive evidence of the contract for the sale and purchase of the Property (the "Sale") and the Parties agreement for the Sale, subject to overbid and approval by the Bankruptcy Court in the Debtor's bankruptcy case and further or more complete documentation in Seller's discretion. **This Counteroffer Supersedes the Buyer's Offer.** Seller may elect to deem this Counteroffer the definitive agreement between the Parties regarding the Sale.

1.    Purchase Price: The purchase price for the Property shall be $370,000; all cash (the "Purchase Price").

2.    Initial Deposit: Within two (2) business days following Buyer's execution of this Counteroffer, Buyer shall deliver to escrow, together with an executed copy of this Counteroffer, the sum of 3% of the Purchase Price, which amounts to $11,100 and shall be applied toward the Purchase Price (the "Deposit"), as follows:

      Better Escrow Service, Alitta Mitchell, Escrow Officer
      3115 W. Olive Av., Burbank, CA 91505-4545
      (818) 381-4714; alitta@betterescrowservice.com

3.    Due Diligence Period: Buyer acknowledges that he/she/it is familiar with the Property. At Buyer's sole expense, Buyer shall have until 1:00 p.m. PDT, Monday, October 1, 2018, to obtain all investigations, appraisals and tests, and to complete any and all due diligence which the Buyer desires (the "Due Diligence Deadline"). By no later than the Due Diligence Deadline, Buyer may advise Seller, in writing, of his/her/its election to cancel the Sale, in which case Buyer shall receive a full refund of the Deposit (the "Notice to Cancel"). Absent Buyer's submission of a Notice to Cancel in accordance with this paragraph 3, the Sale shall be without any further contingencies or due diligence requirements of the Buyer.

1

DocuSign Envelope ID: 7B660F26-12D8-4DBF-8633-7B3A5EF52609

**Without limiting the generality of the foregoing, Buyer's silence shall be deemed an acceptance and affirmative election to proceed with the Sale without any further contingencies or due diligence requirements.**

4.  Bankruptcy Court Approval:  The Sale is expressly subject to Bankruptcy Court approval in the Debtor's bankruptcy case.  As soon as reasonably practical following expiration of the Due Diligence Deadline without Buyer's submission of a Notice to Cancel, Seller shall file a motion to approve the Sale with the Bankruptcy Court pursuant to section 363 of the United States Bankruptcy Code and related overbid procedures (the "Approval Motion"). As part of such motion, Seller shall request a finding of Buyer's "good faith" in accordance with section 363(m) of the United States Bankruptcy Code.

5.  Overbid:  The Sale is subject to notice to creditors and other parties in interest and shall be subject to higher and better bids through and including the hearing on the Approval Motion, pursuant to sale and overbid procedures determined in Seller's sole discretion and subject to Bankruptcy Court approval.

6.  Tender of Balance of Purchase Price/Closing:  The Sale shall close, with Buyer tendering the full Purchase Price, not more than fifteen (15) calendar days after the entry of an order of the Bankruptcy Court authorizing the Sale.

7.  Property Sold "As is" "Where is":  Buyer acknowledges that Seller is a debtor in possession administering its bankruptcy estate.  Seller and or Seller's agents have not, and will not, inspect the Property or determine its condition, fitness or use for any particular purpose, nor will any of them provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agents are exempt from complying with the requirements of Article 1.5 of the California Civil Code Sections 1102-1102.17 relating to disclosures upon transfer of real property.
**The sale shall be "as-is" and "where is" with no warranty or recourse whatsoever.**  If any state or local ordinance laws require that the Property be brought into compliance, Buyer, at his/her/its sole expense, shall comply with and pay for any such requirements.

8.  Transfer of Property: Transfer of the Property by Seller shall be by Grant Deed or Quitclaim Deed.  Seller shall convey and Buyer shall accept the marketable title to the Property that will be insured by Fidelity National Title Company, without material exception, subject only to the terms of this Counteroffer and any further documentation of the Sale consistent with this Counteroffer.

DocuSign Envelope ID: 7B660F26-12D8-4DBF-8633-755A5EF52608

9.    <u>Liens, Claims, Encumbrances and Interests</u>:  The Sale shall be free and of such liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests attaching to the net proceeds of the Sale with the same extent, validity, and priority of such liens, claims, encumbrances, and interests prior to the Sale.

10.    <u>Assessments, Taxes and Escrow fees</u>:  The following assessments, taxes and other costs shall be allocated as follows: (a) all allowable assessments and real property taxes shall be prorated through the closing date of the Sale to the applicable accounts of Seller and Buyer, such that the amounts applicable to the account of Buyer shall not be deducted from the Purchase Price;  (b) escrow fees shall be split equally between Buyer and Seller (50/50), such that the amounts allocable to Buyer shall not be deducted from the Purchase Price; (c) Seller shall pay real property transfer tax (County and State only) and the costs of a standard issue title insurance policy, such that these taxes and costs shall not be deducted from the Purchase Price; and (d) City transfer tax shall be split equally between Buyer and Seller (50/50), such that the amount allocable to Buyer shall not be deducted from the Purchase Price. **All other costs are at Buyer's sole expense and are not to be deducted from the Purchase Price.**

11.    <u>Brokers and Commissions</u>:  Buyer is represented by ReMax Gold, DRE #01820911 ("RMG") and the Seller is represented by Keller Williams Realty South Bay & KW El Dorado Hills, DRE #01854035 ("KWR & KWEDH"). Subject to Bankruptcy Court approval, Seller shall pay commission as follows, through escrow: six percent (6%) of the Purchase Price total: 2.5% to RMG and 1.75% to KWR & 1.75 KWEDH.  No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to the Buyer and upon closing of such sale.

12.    <u>Seller Right to Terminate</u>:  Seller may decline, at its option and sole discretion, to consummate the Sale for any reason, including without limitation: (a) the dismissal or closure of the Debtor's bankruptcy case; (b) the conversion of the debtor's Chapter 11 bankruptcy case to any other chapter under the Bankruptcy Code; (c) the inability to subordinate any liens on the Property to the expenses of administration; (d) the inability to obtain approval of the Sale by the Bankruptcy Court; or (e) the inability to sell the Property on the terms and conditions set forth herein.  Seller reserves the right, in its sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination

3

DocuSign Envelope ID: 7B660F26-12D8-4DBF-8633-7B3A5EF52609

on Buyer. No liability or obligations shall accrue to Seller's bankruptcy estate, Seller, or Seller's members and officers, as a result of any such termination. Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability to close escrow, shall be a refund of the Deposit in full.

13.    **Non-Refundability and Forfeiture of Deposit: Except as set forth above in paragraph 12 to this Counteroffer, immediately upon expiration of the Due Diligence Deadline without Buyer's submission of a Notice to Cancel in accordance with paragraph 3 to this Counteroffer, the entirety of the Deposit shall be absolutely non-refundable and forfeited to the Seller. Notwithstanding the immediately preceding sentence, in the event: (a) the Bankruptcy Court enters an order that does not authorize Seller to sell the Property to Buyer; or (b) the Bankruptcy Court enters an order that authorizes the sale to another bidder and Buyer is not a backup bidder, Seller shall refund the entire Deposit to Buyer within ten (10) calendar days following entry of such order of the Bankruptcy Court. In the event Buyer is overbid and is a backup bidder, Seller shall refund the entire Deposit to Buyer only if the Sale closes to the winning bidder and within ten (10) calendar days following such closing.**

> ⌐DS
> RS
> ⌐____ **_ (Buyer's initials)        _____ (Buyer's initials)**

14.    Escrow Instructions: Escrow instructions shall be signed by Buyer and Seller within ten (10) calendar days after execution of this Counteroffer. In the event that Buyer is unable to close escrow within fifteen (15) calendar days after entry of the Bankruptcy Court's order authorizing the Sale (the "Closing Date"), the Buyer shall compensate Seller two hundred fifty dollars ($250.00) per day for each day beyond the Closing Date that the Sale does not close for a total extended period of no more than ten (10) calendar days. Thereafter, Seller shall have absolute discretion to either: (a) provide further extensions of the Closing Date at the same rate of compensation; or (b) terminate the Sale to Buyer and retain the entirety of the Deposit as liquidated damages.

15.    Bankruptcy Court Jurisdiction: The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Counteroffer/agreement. This Counteroffer/agreement shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable Federal bankruptcy law.

DocuSign Envelope ID: 7B660F26-12D8-4DBF-8633-7B3A5EF52609

16.    Expiration of Offer:  This Counteroffer shall expire, if not executed by Buyer and delivered to Seller's agent, W Darrow Fiedler, DRE #00676445, of Keller Williams Realty / KW Commercial, on or before 1:00 p.m. PDT, Tuesday, September 25, 2018.

17.    Multiple Offers:  Buyer recognizes that multiple offers and/or counteroffers (in addition to the instant Counteroffer) may be pending and Seller reserves the right, per Paragraph 12, to choose which contract to submit to the Bankruptcy Court for approval.


**Read, Understood, Agreed To and Accepted:**

**Seller**


*Steve Rogers*                                                          9/22/2018
Steve Rogers, Managing Member & Vice President          Date
for Grand View Financial, LLC - Seller


**Read, Understood, Agreed To and Accepted:**

**Buyer(s) and His/Her/Its/Their Agent**

DocuSigned by:
*Rajesh Sharma*                                                    9/21/2018 3:54:27 PM PDT
35BCADFD8F284BA...
Rajesh Sharma - Buyer                                              Date


_____                                            _____
None - Buyer                                                        Date

DocuSigned by:
*[signature]*                                                      9/21/2018 2:01:00 PM PDT
51324A8CBFC442F...
Michael Mau - Buyer's Agent                                        Date
DRE #00864264


5

DocuSign Envelope ID: 39DC9ED0-B844-4881-B046-FEB1D0689322

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS**®

**CONTINGENCY REMOVAL No.** ___1___
(C.A.R. Form CR, Revised, 6/16)

In accordance with the terms and conditions of the: [X] Residential Purchase Agreement (C.A.R. Form RPA-CA), [ ] Request For Repair
(C.A.R. Form RR), [ ] Response And Reply To Request For Repair (C.A.R. Form RRRR) or [ ] Other _____
("Agreement"),
dated __09/20/2018__, on property known as _____124 Illinois Street, Vallejo, CA  94590_____ ("Property"),
between _____Rajesh Sharma_____ ("Buyer")
and _____Steve Rogers obo Grand View Financial_____ ("Seller").

**I. BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   **A. ONLY the following individually checked Buyer contingencies are removed:**
   1. [ ] Loan (Paragraph 3J)
   2. [ ] Appraisal (Paragraph 3I)
   3. [ ] Buyer's Physical Inspection (Paragraph 12)
   4. [ ] All Buyer Investigations other than a physical inspection (Paragraph 12)
   5. [ ] Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   6. [ ] Reports/Disclosures (Paragraphs 7 and 10)
   7. [ ] Title: Preliminary Report (Paragraph 13)
   8. [ ] Sale of Buyer's Property (Paragraph 4B)
   9. [ ] Review of documentation for leased or liened items (Paragraph 8B(5)
   10. [ ] Other: _____
   11. [ ] Other: _____
   **OR B.** [ ] **ALL Buyer contingencies are removed, EXCEPT:** [ ] Loan Contingency (Paragraph 3J); [ ] Appraisal Contingency (Paragraph 3I); [ ] Contingency for the Sale of Buyer's Property (Paragraph 4B); [ ] Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); [ ] Other _____
   **OR C.** [X] **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer X _Rajesh Sharma_ _____ Date _10/4/2018 6:37:49 AM PDT_
_Rajesh Sharma_

Buyer _____ Date _____

**II. SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: [ ] Finding of replacement property (C.A.R. Form SPRP); [ ] Closing on replacement property (C.A.R. Form SPRP); [ ] Other _____

Seller X _____ Date _____

Seller _____ Date _____

( ____/____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received
by [ ] Buyer [ ] Seller or authorized agent on _____ (date), at _____ [ ] AM / [ ] PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 6/16 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Michael Mau / Broker, 426 First Street BENICIA, CA 94510        Phone: 7075678737      Fax: 4702662549      124 Illinois St.
Michael Mau
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# EXHIBIT "3"

RECORDING REQUESTED BY:
GRAND VIEW FINANCIAL LLC

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

GRAND VIEW FINANCIAL LLC
6601 Center Drive West, Suite 500-8354
Los Angeles, California 90045

Order No.:
Escrow No.:
APN: 0056-014-080

Recorded in Official Records of Solano County

**Marc C. Tonnesen**
Assessor/Recorder

Grand View Financial LLC

**Doc # 201600102070**

11/14/2016
8:20:42 AM
AR49
06

| | |
|---|---|
| Titles: | 1   Pages: | 1 |
| Fees | $23.00 |
| Taxes | $990.00 |
| Other | |
| Paid | $1,024.00 |

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $0 City Tax is $0 R&T Code 11930
This is a bona fide intervivos gift  $990.00

__GIFT Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area _____ City of  Vallejo

For valuable consideration, receipt of which is hereby acknowledged **MONICA K. LAM, AN UNMARRIED WOMAN
AS HER SOLE AND SEPARATE PROPERTY** Grantor(s) hereby grant(s) to:

**GRAND VIEW FINANCIAL LLC,**

the real property situated in the City of **Vallejo**, County of **Solano**, State of **California**, more particularly described as
follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF
CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE
BY E.N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY
RECORDS.

APN NO.  0056-014-080
Also known as  124 Illinois Street, Vallejo, CA  94590

Dated:  11 / 3 _____ 2016

_Monica Lam_
MONICA K. LAM

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) SS.
COUNTY OF _____ Solano _____ )

On _November 3, 2116_ _____ before me, _Luz Gonzalez_ _____, Notary Public, personally
appeared MONICA K. LAM, who proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature _Luz Gonzalez_
Notary Public

LUZ GONZALEZ
Commission # 2145547
Notary Public - California
Solano County
My Comm. Expires Mar 7, 2020

(SEAL)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

This is certified to be an exact
reproduction of the filed record if
certification is imprinted in purple ink,
bearing date of issuance and an original
signature of the Assessor/Recorder or
deputy.
MARC C. TONNESEN
Solano County Assessor/Recorder

By: _____, Deputy

Issue Date: 11-14-2016

Copy No: 2016-706525

# EXHIBIT "4"

1  TODD M. ARNOLD (SBN 221868)
2  LEVENE, NEALE, BENDER, YOO & BRILL LLP
   10250 Constellation Blvd., Suite 1700
3  Los Angeles, CA  90067
   Telephone: (310) 229-1234
4  Fax: (310) 229-1244
   Email: tma@lnbyb.com
5
   *Attorneys for Debtor and Debtor in Possession*
6

```
┌─────────────────────────────┐
│      FILED & ENTERED         │
│                              │
│         JUN 28 2018          │
│                              │
│  CLERK U.S. BANKRUPTCY COURT │
│  Central District of California │
│  BY tatum     DEPUTY CLERK   │
└─────────────────────────────┘
```

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10                          **LOS ANGELES DIVISION**

11

12  In re:                                  Case No.: 2:17-bk-20125-RK

13  GRAND VIEW FINANCIAL, LLC,              Chapter 11 Case

14          Debtor and Debtor in Possession.

15                                          **ORDER GRANTING DEBTOR'S MOTION
                                            TO APPROVE SETTLEMENT BETWEEN
16                                          DEBTOR, ON ONE HAND, AND
                                            AFFILIATES OF THE DEBTOR, ON THE
17                                          OTHER HAND**

18                                          Hearing:
                                            Date:      June 26, 2018
19                                          Time:      2:30 p.m.
                                            Place:     Courtroom 1675
20                                                     255 E. Temple St.
21                                                     Los Angeles, CA 90012

22

23          A hearing was held at the above referenced date, time, and location to consider the

24  *Motion To Approve Settlement Between Debtor, On One Hand, And Affiliates Of The Debtor,*

    *On The Other Hand* [Dkt. 252] (the "Motion") filed by Grand View Financial, LLC, the debtor
25
    and debtor in possession herein (the "Debtor").  Appearances were made as set forth on the
26
    record of the Court.  Capitalized terms not otherwise defined herein have the same meanings as
27
    in the Motion.
28

                                           1

1        Upon consideration of the Motion, notice of the Motion, and that no opposition to the

2    Motion was filed, and for good cause shown,

3    **IT IS HEREBY ORDERED AS FOLLOWS:**

4        (1)    The Motion is granted.

5        (2)    The Settlement Agreement and Release (the "Settlement Agreement") entered

6    into between the Debtor, on one hand, and the following affiliates of the Debtor – Beneficial

7    Financial Services, LLC ("Beneficial"), North Park Investments, LLC ("North Park"), Premium

8    Capital, LLC ("Premium"), Refreshing Resources, LLC ("Refreshing Resources"), Sharp

9    Financial, LLC ("Sharp"), and Upscale Financial, LLC ("Upscale" and, with Beneficial, North

10    Park, Premium, Refreshing Resources and Sharp, the "Affiliates") – on the other hand, a copy

11    of which is attached to the Motion as **Exhibit "1,"** and the terms of the Settlement Agreement,

12    are approved.

13        (3)    The Deeds of Trust (the "DOT's") executed by the Debtor in favor of the

14    Affiliates – those listed in Schedule 1 to the Settlement Agreement, which Schedule 1 is

15    attached hereto, and any other DOTs executed by the Debtor in favor of any of the Affiliates –

16    are deemed to be released, re-conveyed, terminated, and expunged upon this Order becoming a

17    final, non-appealable order (the "Final Order"), without the need for the Debtor, the Affiliates,

18    or any other party to record any terminations of the DOTs with applicable county recording

19    offices, but provided that the Debtor and/or the Affiliates are authorized to record notices of

20    terminations of the DOTs with applicable county recording offices upon this Order becoming a

21    Final Order.

22    / / /

23    / / /

24    / / /

25

26

27

28

2

1        (4)    The Debtor and the Affiliates are authorized to take any and all steps necessary

2    to effectuate the Settlement Agreement.

3        **IT IS SO ORDERED.**

4                        # # #

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: June 28, 2018

25                        Robert Kwan
                    United States Bankruptcy Judge

26

27

28

# __SCHEDULE 1__

| Affiliate Name | Property Address | City | ST | Zip | Date TD Recorded | Note Amount | Reference |
|---|---|---|---|---|---|---|---|
| NORTH PARK INVESTMENTS LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 12.20.16 | 80,000 | 2016-0008663 |
| UPSCALE FINANCIAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| SHARP FINANCIAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| PREMIUM CAPITAL LLC | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| BENEFICIAL FINANCIAL SERVICES | 5734 MARVON ROAD | EAST JORDAN | MI | 49727 | 6.29.16 | 17,500 | 2016-0004392 |
| NORTH PARK INVESTMENTS LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 12.16.16 | 80,000 | 2016-0690545 |
| PREMIUM CAPITAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 8.23.16 | 75,000 | 2016-0435061 |
| SHARP FINANCIAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 9.2.16 | 75,000 | 2016-0460943 |
| REFRESHING RESOURCES LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 6.26.17 | 50,000 | 2017-0286479 |
| UPSCALE FINANCIAL LLC | 2015 CEDAR STREET | RAMONA | CA | 92065 | 2.14.17 | 80,000 | 2017-0075046 |
| REFRESHING RESOURCES LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.19.17 | 50,000 | 2017-052285 |
| BENEFICIAL FINANCIAL SERVICES | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.17.16 | 75,000 | 2016-059336 |
| UPSCALE FINANCIAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| SHARP FINANCIAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| PREMIUM CAPITAL LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 6.8.16 | 229,333 | 2016-055300 |
| NORTH PARK INVESTMENTS LLC | 690 HEATHER COURT | PACIFICA | CA | 94044 | 1.30.17 | 80,000 | 2017-009561 |
| NORTH PARK INVESTMENTS LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 2.16.17 | 80,000 | 2017043614 |
| UPSCALE FINANCIAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 2.16.17 | 80,000 | 2017043613 |
| BENEFICIAL FINANCIAL SERVICES | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192289 |
| PREMIUM CAPITAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192290 |
| SHARP FINANCIAL LLC | 1765 VALDEZ WAY | FREMONT | CA | 94539 | 8.1.16 | 75,000 | 2016192291 |
| NORTH PARK INVESTMENTS LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 2.16.17 | 80,000 | 2017-0029795-00 |
| UPSCALE FINANCIAL LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| SHARP FINANCIAL | 5555 THAYER | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| LLC | LANE | | | | | | |
| PREMIUM CAPITAL LLC | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| BENEFICIAL FINANCIAL SERVICES | 5555 THAYER LANE | SAN RAMON | CA | 94582 | 6.17.16 | 126,250 | 2016-0118584-00 |
| REFRESHING RESOURCES LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.15.17 | 50,000 | 2017-068059 |
| UPSCALE FINANCIAL LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.6.17 | 80,000 | 2017-064074 |
| SHARP FINANCIAL LLC | 3943 UPTON COURT | STOCKTON | CA | 95206 | 6.28.17 | 75,000 | 2017-073393 |
| NORTH PARK INVESTMENTS LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 12.19.26 | 80,000 | 2576106000 |
| UPSCALE FINANCIAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| SHARP FINANCIAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| PREMIUM CAPITAL LLC | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| BENEFICIAL FINANCIAL SERVICES | 17287 W SUMMERFIELD ROAD | POST FALLS | ID | 83854 | 6.28.16 | 63,750 | 2551305000 |
| NORTH PARK INVESTMENTS LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 2.2.17 | 80,000 | 2017-0000903-00 |
| UPSCALE FINANCIAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| SHARP FINANCIAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| PREMIUM CAPITAL LLC | 1953 VILLAGE COURT | IONE | CA | 95640 | 5.18.16 | 63,333 | 2016-0003788-00 |
| SHARP FINANCIAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 7.3.17 | 75,000 | 5464 |
| PREMIUM CAPITAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 12.2.16 | 75,000 | 11022 |
| NORTH PARK INVESTMENTS LLC | 3 SAYLES | GREENWICH | CT | 6807 | 12.21.16 | 75,000 | 11579 |
| UPSCALE FINANCIAL LLC | 3 SAYLES | GREENWICH | CT | 6807 | 3.2.17 | 80,000 | 1908 |
| NORTH PARK INVESTMENTS LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 12.21.16 | 75,000 | 11577 |
| SHARP FINANCIAL LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 7.3.17 | 75,000 | 5463 |
| UPSCALE FINANCIAL LLC | 18 SHERMAN AVENUE | GREENWICH | CT | 6830 | 3.2.17 | 80,000 | 1909 |
| SHARP FINANCIAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 7.3.17 | 75,000 | 5462 |
| PREMIUM CAPITAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 9.19.16 | 75,000 | 8681 |
| NORTH PARK INVESTMENTS LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 12.21.16 | 75,000 | 11578 |
| UPSCALE FINANCIAL LLC | 21 RICHMOND HILL ROAD | GREENWICH | CT | 6831 | 3.2.17 | 80,000 | 1907 |
| REFRESHING RESOURCES LLC | 21360 CRESTWIND | SAN MARCOS | CA | 92078 | 6.26.17 | 50,000 | 2017-0286480 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| | DRIVE | | | | | | |
| NORTH PARK INVESTMENTS LLC | 8769 HILLERY DRIVE | SAN DIEGO | CA | 92126 | 2.14.17 | 40,000 | 2017-0075049 |
| UPSCALE FINANCIAL LLC | 8769 HILLERY DRIVE | SAN DIEGO | CA | 92126 | 2.14.17 | 40,000 | 2017-0075049 |
| BENEFICIAL FINANCIAL SERVICES | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 6.24.16 | 75,000 | 20160624-00088193-0 |
| UPSCALE FINANCIAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| SHARP FINANCIAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| PREMIUM CAPITAL LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 5.17.16 | 260,667 | 20160517-00067826-0 |
| NORTH PARK INVESTMENTS LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 1.30.17 | 80,000 | 20170130-00012073-0 |
| REFRESHING RESOURCES LLC | 6020 HEATHERTON DRIVE | SOMIS | CA | 93066 | 6.14.17 | 50,000 | 20170614-00077061-0 |
| BENEFICIAL FINANCIAL SERVICES | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 6.21.16 | 75,000 | 2016-0305770 |
| UPSCALE FINANCIAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| SHARP FINANCIAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| PREMIUM CAPITAL LLC | 733 BEYER WAY | SAN DIEGO | CA | 92154 | 5.24.16 | 80,000 | 2016-0252296 |
| NORTH PARK INVESTMENTS LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 3.15.17 | 80,000 | 20170315-00036426-0 |
| UPSCALE FINANCIAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| SHARP FINANCIAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| PREMIUM CAPITAL LLC | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 5.17.16 | 194,333 | 20160517-00067827-0 |
| BENEFICIAL FINANCIAL SERVICES | 428 GEORGETOWN AVENUE | VENTURA | CA | 93003 | 6.24.16 | 75,000 | 20160624-00088195-0 |
| NORTH PARK INVESTMENTS LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 3.15.17 | 80,000 | 20170315-00036427-0 |
| UPSCALE FINANCIAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| SHARP FINANCIAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| PREMIUM CAPITAL LLC | 303 GORRION AVENUE | VENTURA | CA | 93004 | 5.17.16 | 135,667 | 20160517-00067828-0 |
| BENEFICIAL FINANCIAL SERVICES | 303 GORRION AVENUE | VENTURA | CA | 93004 | 6.24.16 | 75,000 | 20160624-00088194-0 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| UPSCALE FINANCIAL LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 2.15.17 | 80,000 | 2017-019595 |
| REFRESHING RESOURCES LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 6.15.17 | 50,000 | 2017-068060 |
| NORTH PARK INVESTMENTS LLC | 1130 N EDISON STREET | STOCKTON | CA | 95203 | 12.12.16 | 80,000 | 2016-153762 |
| REFRESHING RESOURCES LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 6.19.17 | 50,000 | 2017-052286 |
| SHARP FINANCIAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 8.1.16 | 75,000 | 2016-075028 |
| NORTH PARK INVESTMENTS LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 12.12.16 | 80,000 | 2016-131671 |
| PREMIUM CAPITAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 8.1.16 | 75,000 | 2016-075027 |
| BENEFICIAL FINANCIAL SERVICES | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 7.29.16 | 75,000 | 2016-074813 |
| UPSCALE FINANCIAL LLC | 185 LINDEN AVENUE | SAN BRUNO | CA | 94066 | 2.16.17 | 80,000 | 2017-015167 |
| NORTH PARK INVESTMENTS LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 12.16.16 | 80,000 | 2016-0067882 |
| UPSCALE FINANCIAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| SHARP FINANCIAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| PREMIUM CAPITAL LLC | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| BENEFICIAL FINANCIAL SERVICES | 1622 JANELLE LANE | SANTA MARIA | CA | 93458 | 7.8.16 | 32,750 | 2016-00034394 |
| UPSCALE FINANCIAL LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 2.16.17 | 80,000 | 201700014739 |
| NORTH PARK INVESTMENTS LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 12.13.16 | 80,000 | 201600112806 |
| REFRESHING RESOURCES LLC | 124 ILLINOIS STREET | VALLEJO | CA | 94590 | 6.15.17 | 50,000 | 201700050554 |
| PREMIUM CAPITAL LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 11.22.16 | 75,000 | 201611220102785 |
| NORTH PARK INVESTMENTS LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 11.22.16 | 75,000 | 201611220102786 |
| UPSCALE FINANCIAL LLC | 1421 FRANKLIN STREET SE | GRAND RAPIDS | MI | 49506 | 2.11.17 | 80,000 | 201702220015899 |
| NORTH PARK INVESTMENTS LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 1.24.17 | 80,000 | 2017-0014664-00 |
| UPSCALE FINANCIAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| SHARP FINANCIAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| PREMIUM CAPITAL LLC | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| BENEFICIAL FINANCIAL SERVICES | 3217 ACALANES AVENUE | LAFAYETTE | CA | 94549 | 6.17.16 | 82,500 | 2016-0118583-00 |
| SHARP FINANCIAL LLC | 7394 N MERIDIAN | VACAVILLE | CA | 95688 | 6.28.17 | 75,000 | 201700054790 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| | ROAD | | | | | | |
| REFRESHING RESOURCES LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 6.15.17 | 50,000 | 201700050555 |
| PREMIUM CAPITAL LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 10.11.16 | 75,000 | 201600087277 |
| UPSCALE FINANCIAL LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 2.16.17 | 80,000 | 201700014740 |
| NORTH PARK INVESTMENTS LLC | 7394 N MERIDIAN ROAD | VACAVILLE | CA | 95688 | 12.13.16 | 80,000 | 201600112807 |
| NORTH PARK INVESTMENTS LLC | 102 SONORA COURT | OAKLEY | CA | 94561 | 1.24.17 | 80,000 | 2017-0014665-00 |
| UPSCALE FINANCIAL LLC | 102 SONORA COURT | OAKLEY | CA | 94561 | 2.16.17 | 80,000 | 2017-0029794-00 |
| REFRESHING RESOURCES LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.21.17 | 50,000 | 3598904 |
| NORTH PARK INVESTMENTS LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 12.20.16 | 80,000 | 03564414 |
| UPSCALE FINANCIAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| SHARP FINANCIAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| PREMIUM CAPITAL LLC | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| BENEFICIAL FINANCIAL SERVICES | 716 SPRUCE STREET | BOULDER | CO | 80302 | 6.16.16 | 40,000 | 03524550 |
| BENEFICIAL FINANCIAL SERVICES | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 6.23.16 | 75,000 | 2016-072810 |
| UPSCALE FINANCIAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| SHARP FINANCIAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| PREMIUM CAPITAL LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 5.17.16 | 79,667 | 2016-057096 |
| NORTH PARK INVESTMENTS LLC | 9092 CHIANTI CIRCLE | STOCKTON | CA | 95212 | 1.24.17 | 80,000 | 2017-010188 |
| NORTH PARK INVESTMENTS LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 80,000 | 2017-01678 |
| BENEFICIAL FINANCIAL SERVICES | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 50,000 | 2017-01677 |
| REFRESHING RESOURCES LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 6.15.17 | 50,000 | 2017-07785 |
| UPSCALE FINANCIAL LLC | 44300 LIGHTHOUSE ROAD | POINT ARENA | CA | 94568 | 2.1.17 | 55,000 | 2017-01676 |
| REFRESHING RESOURCES LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 6.26.17 | 50,000 | 2017-0286478 |
| UPSCALE FINANCIAL LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 5.24.16 | 80,000 | 2016-0252297 |
| SHARP FINANCIAL LLC | 9651 MACCOOL LANE | SANTEE | CA | 92071 | 5.24.16 | 80,000 | 2016-0252297 |

| Affiliate Name | Property Address | City | ST | Zip | Date TD | Note | Reference |
|---|---|---|---|---|---|---|---|
| REFRESHING RESOURCES LLC | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 6.16.17 | 50,000 | 201706160909 |
| BENEFICIAL FINANCIAL SERVICES | 747 STURBRIDGE DRIVE | FOLSOM | CA | 95630 | 6.23.16 | 75,000 | 20160623-0177 |

# EXHIBIT "5"

| Fill in this information to identify the case: |
|---|

Debtor 1    GRAND VIEW FINANCIAL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   17-20125



FILED

APR 16 2018

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                        Deputy Clerk

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

SOLANO COUNTY TAX COLLECTOR
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

SOLANO COUNTY TAX COLLECTOR
Name

675 TEXAS STREET, SUITE 1900
Number        Street

FAIRFIELD              CA        94533
City                    State       ZIP Code

Contact phone   707-784-7485

Contact email   TTCCC@SOLANOCOUNTY.COM

Where should payments to the creditor be sent? (if different)

Name

Number        Street

City                    State       ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

____ ____ ____ ____ — ____ ____ ____ ____ — ____ ____ ____ ____ — ____ ____ ____ ____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____     Filed on ___/___/_____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number
you use to identify the
debtor?

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 0056-014-080 ___ ___

7. How much is the claim?    $_____ 1,405.64   Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other
charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the
claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

LOCAL PROPERTY TAXES

9. Is all or part of the claim
secured?

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    LOCAL PROPERTY TAXES

**Basis for perfection:**   CAL. REV. & TAX CODE SECTION 2187

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $    315,000.00

Amount of the claim that is secured:    $    1,405.64

Amount of the claim that is unsecured:  $_____ 0.00 (The sum of the secured and unsecured
amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $    1,199.58

Annual Interest Rate (when case was filed)   18 %

☑ Fixed

☐ Variable

10. Is this claim based on a
lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. Is this claim subject to a
right of setoff?

☑ No

☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                  $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                        $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.     $_____

\* Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/12/2018
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

Name        JOSEPH M. FEGURGUR
            First name        Middle name        Last name

Title       DEPUTY

Company
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     675 TEXAS STREET, SUITE 1900
            Number     Street
            FAIRFIELD                CA        94533
            City                     State     ZIP Code

Contact phone   707-784-7485        Email   TTCCC@SOLANOCOUNTY.COM

| Situs Address | Etal Name/Assessee Mailing Address | | |
|---|---|---|---|
| **0056-014-080** | Grand View Financial LLC | 100.00 % | SA |
| 124 Illinois Street | Grand View Financial LLC | | |
| Vallejo 🔳 | 6601 Center Dr West | | |
| | Ste 500-8354 | | |
| TRA : 7000 | Los Angeles CA  90045 🔳 | | |

**Refund  Taxbills**

| Tax Bill Detail | | | | [5] Sup Event - 2016/01 Tax Year - 2016/17 | ▼ | | |
|---|---|---|---|---|---|---|---|
| Roll Type | Supplemental | Event Num | 2016/01 | Date Billed | 06/06/2017 | Macno | n/a |
| Bill Occur | 5 | Year Taxed | 2016/17 | Gov't Owned | n/a | Cortac No. | 5212 |
| Bill Type | Original | Asmt Year | n/a | Claim No. | n/a | Claim Date | n/a |

| Inst | Base Tax | Billed Tax | Paid Tax | Balance Due | Bill Status | Delq Date |
|---|---|---|---|---|---|---|
| 1 | $32.94 | $36.23 | $0.00 | $36.23 | Delinquent | 07/31/17 |
| 2 | $32.94 | $46.23 | $0.00 | $46.23 | Delinquent | 11/30/17 |
| Total | $65.88 | $82.46 | $0.00 | $82.46 | | |

| Tax Charge Detail | | | FS GN BT 🗐 Reprint PenRqt | | |
|---|---|---|---|---|---|

| | | | First Installment | | Second Installment | |
|---|---|---|---|---|---|---|
| | Fund | Rate | Status | Amount | Status | Amount |
| 59 | 1 PCT Tax Limitation | 1.000000% | Outstand | $29.00 | Outstand | $29.00 |
| 318 | SC Water Agency St Water Proj | 0.020000% | Outstand | $0.58 | Outstand | $0.58 |
| 461 | Vjo USD A 2002 GOB Refunding | 0.060922% | Outstand | $1.76 | Outstand | $1.76 |
| 462 | Vallejo USD Measure A S 2002 | 0.006598% | Outstand | $0.19 | Outstand | $0.19 |
| 467 | Vallejo USD Measure A S 2004 | 0.009426% | Outstand | $0.27 | Outstand | $0.27 |
| 475 | Vallejo USD Measure A - S2006 | 0.005193% | Outstand | $0.15 | Outstand | $0.15 |
| 476 | SCC GOB Series 2006b | 0.000861% | Outstand | $0.02 | Outstand | $0.02 |
| 484 | SCC GOB 2012 Series A | 0.012965% | Outstand | $0.37 | Outstand | $0.37 |
| 485 | SCC GOB 2012 Series B | 0.003373% | Outstand | $0.09 | Outstand | $0.09 |
| 487 | SCC 2014 GOB Ref Series A | 0.002182% | Outstand | $0.06 | Outstand | $0.06 |
| 488 | SCC 2014 GOB Ref Series B | 0.015662% | Outstand | $0.45 | Outstand | $0.45 |
| 9976 | Supp 10% Penalty | Fixed | Outstand | $3.29 | Outstand | $3.29 |
| 9977 | Supp $10 Cost | Fixed | Outstand | $0.00 | Outstand | $10.00 |
| Total | | TRA : 7000  1.137182% | | $36.23 | | $46.23 |

| Payment Details | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pay Control | Payment  Bank | Date Paid | Status | Entered | Pay Type | | INSF | INST |

No payment information found for this bill

End of Listing

| Production | • Help • • Contact • • Print • • E-Mail • | TX58 |
|---|---|---|

| Situs Address | Etal Name/Assessee Mailing Address | | |
|---|---|---|---|
| **0056-014-080** | Grand View Financial LLC | 100.00 % | SA |
| 124 Illinois Street | Grand View Financial LLC | | |
| Vallejo | 6601 Center Dr West | | |
| | Ste 500-8354 | | |
| TRA : 7000 | Los Angeles CA  90045 | | |

**Refund**

| Redemption Inquiry | | |
|---|---|---|
| **Redemption Root** | | |
| **Redemption Assessee** | **Redemption Status** | **Active Sale Number** 2017001488 |
| **0056-014-080** | Pay Plan Status | No pay plan Sale Amount $1,153.68 |
| Grand View Financial LLC | Bankruptcy Status | No Bankruptcy Tax Costs $20.00 |
| 6601 Center Dr West | Power to Sell | No 10% Late Penalty $103.06 |
| Ste 500-8354 | First Year Delinquent | 2016/17 Spec Asmt Taxes $0.00 |
| Los Angeles CA  90045 | Prev Pay Plan Pmnts | $0.00 Total Taxes $1,030.62 |
| Single Family Res | Prev Banko Pmts | $0.00 Outstanding Fees $15.00 |
| Eligible for Power To Sell - 2021/22 | Starting Interest | $0.00 Interest Rate 1.50% |
| R&T - 5 Year Power To Sell | Month Paid | Not Paid Off Monthly Interest $15.45 |

**Payoff** **Roll** **Fees** **Audit** **Abstract** **Purchase**

| Redemption Root Pay Off | | | Current Amount Due $1,323.18 |
|---|---|---|---|
| Totals Due | Interest: | To Redeem: | To Start Five Pay: |
| July | $15.45 | $1,184.13 | $296.83 |
| August | $30.90 | $1,199.58 | $299.92 |
| September | $46.35 | $1,215.03 | $303.01 |
| October | $61.80 | $1,230.48 | $306.10 |
| November | $77.25 | $1,245.93 | $309.19 |
| December | $92.70 | $1,261.38 | $312.28 |
| January | $108.15 | $1,276.83 | $315.37 |
| February | $123.60 | $1,292.28 | $318.46 |
| ST March | $139.05 | $1,307.73 | $321.55 |
| ST April | $154.50 | $1,323.18 | $324.64 |
| May | $169.95 | $1,338.63 | $327.73 |
| June | $185.40 | $1,354.08 | $330.82 |
| End of Listing | | | |

| Production | **Help** • **Contact** • **Print** • **E-Mail** • | TX58 |
|---|---|---|

# EXHIBIT "6"

---

**Fill in this information to identify the case:**

Debtor  Grand View Financial LLC

Debtor 2 _____
(Spouse if filing)

United States Bankruptcy Court for the CENTRAL DISTRICT OF
CALIFORNIA (Los Angeles)

Case Number: 2:17-bk-20125-RK

---

Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment or an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents:** they may be destroyed after scanning. If the documents are not available explain in an attachment.

A person who filed a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.  18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date was filed.  The date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | | |
| --- | --- | --- | --- |
| 1. | Who is the current creditor? | PennyMac Loan Services, LLC | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor _____ | |

| | | | |
| --- | --- | --- | --- |
| 2. | Has this claim been acquired from someone else? | ☒ No ☐ Yes.   From whom? _____ | |

| | | | |
| --- | --- | --- | --- |
| 3. | Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payment to the creditor be sent? (if different)** |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | PennyMac Loan Services, LLC 6101 Condor Drive, Suite 200 Moorpark, CA 93021 | PennyMac Loan Services, LLC P.O. Box 660929 Dallas, TX 75266-0929 |
| | | Contact Phone:  n/a | Contact Phone: n/a |
| | | Contact email:  n/a | Contact email: n/a |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | | | |
| --- | --- | --- | --- |
| 4. | Does this claim amend one already filed? | ☒ No ☐ Yes. Claim number on court claims registry (if known)_____      Filed on _____ MM /DD/ YYYY | |

| | | | |
| --- | --- | --- | --- |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No ☐ Yes.   Who made the earlier filing? _____ | |

**Part 2:**   **Give Information About the Claim as of the Date the Case was filed**

| | |
|---|---|
| **6.** **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor  **2683** |
| **7.** **How much is the claim?** | **$310,989.72**   Does this amount include interest or other charges?<br>☐ No<br><br>☒ Yes.  Attach statement itemizing interest, fees, expenses, or other<br>Charges required by Bankruptcy Rule 3001 (c)(2)(A). |
| **8.** **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001 (c).<br><br>Limit disclosing information that his entitled to privacy, such as health care information.<br><br>_____ MONEY LOANED _____ |
| **9.** **Is all or part of the claim secured?** | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:** 124 Illinois St., Vallejo, CA 94590<br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe:<br><br>**Basis for perfection:**      Recorded Deed of Trust<br>(Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                      $_____<br><br>**Amount of the claim that is secured:**      **$310,989.72**<br><br>Amount of the claim that is unsecured:  $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition: $22,807.95<br><br>Annual Interest Rate (when case was filed) 4.625%<br><br>☒ Fixed<br>☐ Variable |
| **10.** **Is this claim based on a lease?** | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.           $_____ |
| **11.** **Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim Entitled to priority under 11 U.S.C. § 507 (a)? | | | |
|---|---|---|---|---|
| | | ☒ No | | |
| | | ☐ Yes.   Check all that apply: | | Amount entitled to priority |
| | A claim may be partly Priority and partly Nonpriority.  For example, In some categories, the Law limits the amount Entitled to priority | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use .  11 U.S.C. §507 (a)(7). | | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ceased, whichever is earlier. 11 U.S.C. §507 (a)(4). | | $_____ |
| | | ☐ Taxes or penalties owed to governmental units.  11 U.S.C. §507 (a)(8). | | $_____ |
| | | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). | | $_____ |
| | | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). | | $_____ |

* Amounts are subject to adjustments on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

**Part 3:   Sign below**

The person completing This proof of claim must Sign and date it FRBP 9011(b).

If you file this claim Electronically, FRBP 5005(a)(2) authorizes courts To establish local rules Specifying what a signature Is.

A person who files a Fraudulent claim could be Fined up to $500,000, Imprisoned for up to 5 Years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty or perjury that the foregoing is true and correct.

Executed on   10/30/2017
                    MM/DD/YYYY

/s/ Robert P. Zahradka
Signature

Print the name of the person who is completing and signing this claim:

Name: Robert P. Zahradka  (SBN 282706)
Title: Attorney for Creditor
Company: Tiffany & Bosco, P.A./ TB File # 17-80841

Address:   1230 Columbia Street, Suite 680

              Number         Street
              San Diego, CA, 92101
              City     State     Zip Code

Contact phone:    619-501-3503                    Email: pocnotifications@tblaw.com

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

### Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number: | 2:17-bk-20125-RK |
| Debtor 1: | Grand View Financial LLC |
| Debtor 2: | |
| Last 4 digits to identify: | 2683 |
| Creditor: | PennyMac Loan Services, LLC |
| Servicer: | PennyMac Loan Services, LLC |
| Fixed accrual/daily Simple interest/other: | Fixed |

### Part 2: Total Calculation — Debt

| | |
|---|---|
| Principal balance: | $295,151.92 |
| Interest due: | $12,005.20 |
| Fees, costs due: | $ 637.72 |
| Escrow deficiency for funds advanced: | $3,194.88 |
| Less total funds on hand: | ($ .00) |
| Total debt: | $310,989.72 |

### Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $15,397.20 |
| Prepetition fees due: | $637.72 |
| Escrow deficiency for funds Advanced: | $3,194.88 |
| Projected escrow shortage: | $3,578.15 |
| Less funds on hand: | ($ .00) |
| Total prepetition arrearage: | $22,807.95 |

### Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $1,539.72 |
| Monthly escrow: | $487.40 |
| Private mortgage Insurance: | $203.63 |
| Total monthly payment: | $2,230.75 |

### Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual Payment Amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds Received | D. Amount Incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied Funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance | Q. Unapplied funds balance |

Official Form 410A          Mortgage Proof of Claim Attachment          Page 1



PennyMac™

P O Box 514387
Los Angeles, CA 90051-4387

1-800-777-4001

09/05/17

MONICA K LAM
124 ILLINOIS ST
VALLEJO CA 04590-3854

Loan No:

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

PennyMac Loan Services, LLC is a debt collector. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is for informational purposes only and is not an attempt to collect a debt against you personally.

### P R E S E N T   M O R T G A G E   P A Y M E N T

Your present payment consists of: Principal & Interest (P&I)     $1,539.72
                                   Escrow Deposit                  $667.82

**Total Mortgage Payment**                                       **$2,207.54**

### A N T I C I P A T E D   A N N U A L   D I S B U R S E M E N T S

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the next amount due as defined by Federal Law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

Bills due in the upcoming year:     MORTGAGE INS     $2,443.56
                                    HAZARD INS       $1,954.00
                                    COUNTY TAX       $3,800.04

**Total Anticipated Annual Disbursements:**     **$8,197.60**     One-Twelfth/Monthly Amount:     **$683.13**

### A C C O U N T   H I S T O R Y

The following statement of activity in your escrow account from 09/2016 through 09/2017 displays actual activity as it occurred in your escrow account during that period. If you received Account Projections with a prior analysis, they are included again here for comparison.

Over this period, an additional **$48.57 was deposited into your escrow account for interest on**

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $3,225.84 | $2,558.02 |
| September | 667.82 | 1,335.64 * | 206.98 | | * FHA INS | 3,886.68 | 3,893.68 |
| September | | | | 206.98 * | FHA INS | 3,886.68 | 3,686.68 |
| October | 667.82 | 667.82 | 206.98 | | * FHA INS | 4,147.52 | 4,354.59 |
| October | | | | 1,536.00 * | HAZARD INS | 2,417.52 | 2,516.50 |
| October | | | | 206.98 * | FHA INS | 2,417.52 | 2,311.52 |
| November | 667.82 | | 206.98 | * | FHA INS | 2,678.38 | 2,104.54 |
| November | | 1,900.02 | | 1,758.16 * | COUNTY TAXES | 978.34 | 346.38 |
| December | 667.82 | 49.57 * | 206.98 | | * FHA INS | 1,439.18 | 395.05 |
| December | | | | 203.63 * | FHA INS | 1,439.18 | 192.32 |
| January | 667.82 | | 206.98 | * | FHA INS | 1,900.02 | 192.32 |
| January | | | | 203.63 * | FHA INS | 1,900.02 | 11.31- |
| February | 667.82 | | 206.98 | * | FHA INS | 2,360.86 | 11.31- |
| February | | | | 203.63 * | FHA INS | 2,360.86 | 214.94- |
| March | 667.82 | | 206.98 | * | FHA INS | 2,821.70 | 214.94- |
| March | | 1,900.02 | | 1,758.16 * | COUNTY TAXES | 921.66 | 1,973.19- |
| March | | | | 203.63 * | FHA INS | 921.66 | 2,178.73- |
| April | 667.82 | | 206.98 | * | FHA INS | 1,382.52 | 2,178.73- |
| April | | | | 203.63 * | FHA INS | 1,382.52 | 2,380.36- |
| May | 667.82 | | 206.98 | * | FHA INS | 1,843.36 | 2,380.36- |
| May | | | | 203.63 * | FHA INS | 1,843.36 | 2,583.99- |
| June | 667.82 | | 206.98 | * | FHA INS | 2,304.20 | 2,583.99- |
| June | | | | 203.63 * | FHA INS | 2,304.20 | 2,787.62- |
| July | 667.82 | | 206.98 | * | FHA INS | 2,765.04 | 2,787.62- |

*** CONTINUED ON REVERSE SIDE



PennyMac™

### S H O R T A G E

Customer Loan Number:

Shortage Amount     $94.83

Customer Name:     MONICA K LAM

If you prefer to pay your escrow shortage of $94.83 in full, your new monthly payment would then be $2,222.85. Please make your check payable to PennyMac Loan Services. Mail this form along with your check to.

PennyMac Loan Services
PO Box 30597
Los Angeles, CA 90030-0597

If you are paying your shortage in full, please include your loan number on your check
Failure to send your payment promptly to the above address will delay the adjustment of your payment

** CONTINUATION

| | | | | | |
|---|---|---|---|---|---|
| July | | | 203.63 * FHA INS | 2,765.04 | 2,991.25- |
| August | 667.82 | * | 206.96 | * FHA INS | 3,225.68 | 2,991.25- |
| August | | | 203.63 * FHA INS | 3,225.68 | 3,194.88- |
| September | | 6,678.20 E | E | 3,225.68 | 3,453.32 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or
the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred,
but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period
equaling $6,013.80. Under Federal Law, your lowest monthly balance should not have exceeded $921.68,
or 1/6th of total anticipated payments from the account, unless your mortgage contract or State law
specifies a lower amount.

Under your mortgage contract and State Law your lowest monthly balance should not have exceeded $921.68.

A C C O U N T   P R O J E C T I O N S

**Your Projected Escrow Account Balance as of 08/31/17 is $3,279.69. Your Required Beginning Escrow
Balance according to this analysis should be $3,374.52.**
This means you have a Shortage of $94.83. Per Federal Law, the shortage may be collected from you over
12 months or more unless it is less than 1 month's deposit, in which case we have the additional option
of requesting payment within 30 days.
We will collect the shortage over 12 months.
Once during this period, your Required Escrow Account Balance should be reduced to $959.00, as
shown in November. This amount represents the cushion selected by us as allowed by your mortgage
contract, Federal and State Law.

N E W   M O R T G A G E   P A Y M E N T

| | | | |
|---|---|---|---|
| Your new payment consists of: | Principal & Interest (P&I) | $1,539.72 |
| | Escrow Deposit | $683.13 |
| | Deficiency/Shortage/Surplus | $7.90 |
| **New Mortgage Payment** | **Beginning    09/01/17** | **$2,230.75** |

Should you have any questions about this Escrow Analysis, please call our Customer Service Department at
(800)777-4001.

The following estimate of activity in your escrow account from 09/17 through 08/18 is provided for your
information. All payments we anticipate receiving as well as disbursements we anticipate making on your
behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your
current actual escrow balance. The Required Escrow Account Balance displays the amount actually required
to be on hand as specified by Federal Law, State Law or your mortgage documents, and may include a
cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with
the actual activity in your account at the end of the next escrow account computation year.

| Month | Anticipated Amount To Escrow | From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | **Beginning Balance** | **$3,279.69** | **$3,374.52** |
| September | 683.13 | 203.53 | FHA INS | 3,759.19 | 3,854.02 |
| October | 683.13 | 203.63 | FHA INS | 4,238.69 | 4,333.52 |
| October | | 1,954.00 | HAZARD INS | 2,284.69 | 2,379.52 |
| November | 683.13 | 203.63 | FHA INS | 2,764.19 | 2,859.02 |
| **November** | | **1,900.02** | **COUNTY TAXES** | **864.17  ( PLB )** | **959.00  ( RLB )** |
| December | 683.13 | 203.63 | FHA INS | 1,343.67 | 1,438.50 |
| January | 683.13 | 203.63 | FHA INS | 1,823.17 | 1,918.00 |
| February | 683.13 | 203.63 | FHA INS | 2,302.67 | 2,397.50 |
| March | 683.13 | 203.63 | FHA INS | 2,782.17 | 2,877.00 |
| March | | 1,900.02 | COUNTY TAXES | 882.15 | 976.98 |
| April | 683.13 | 203.63 | FHA INS | 1,361.65 | 1,456.48 |
| May | 683.13 | 203.63 | FHA INS | 1,841.15 | 1,935.98 |
| June | 683.13 | 203.63 | FHA INS | 2,320.65 | 2,415.48 |
| July | 683.13 | 203.63 | FHA INS | 2,800.15 | 2,894.98 |
| August | 683.13 | 203.63 | FHA INS | 3,279.65 | 3,374.48 |

*** CONTINUED ON NEXT PAGE ***



MONICA K LAM
124 ILLINOIS ST
VALLEJO CA  94590-3854

**Loan No:**

** CONTINUATION **

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. AS REQUIRED BY NEW YORK STATE LAW, if a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; 11) and Ninety percent of your wages or salary earned in the last sixty days. PennyMac Loan Services, LLC is registered with the Superintendent of the New York State Department of Financial Services (Department). You may file complaints about PennyMac with the Department. You may obtain further information from the Department by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting www.dfs.ny.gov.

This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.

Licensing Information

**NOTE**                    FHA Case No.

State of California

October 10, 2015                    Irvine,                    California
[Date]                             [City]                     [State]

124 ILLINOIS STREET, VALLEJO, CA 94590
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means   Nations Direct Mortgage, LLC

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of   TWO HUNDRED NINETY NINE THOUSAND FOUR HUNDRED SEVENTY FIVE AND NO/100° ° ° ° ° ° ° ° ° ° ° ° ° ° ° ° ° ° ° ° Dollars (U.S. $299,475.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   FOUR AND FIVE-EIGHTHS    percent ( 4.625 %  ) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
(A) Time
Borrower shall make a payment of principal and interest to Lender on the  1st       day of each month beginning on  December 1, 2015.       Any principal and interest remaining on the  1st       day of November, 2045       will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at  18200 Von Karman, Suite 250
Irvine, CA 92612

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S.  $1,539.72.       This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]      ☐ Graduated Payment Allonge      ☐ Growing Equity Allonge
☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.
Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.                    Page 1 of 3                    Initials: 
CA8700NT  1214
CA8700NT
10/09/2015 03:47 PM PST



**LOAN #**

6. **BORROWER'S FAILURE TO PAY**

   **(A) Late Charge for Overdue Payments**
   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000 %** ) of the overdue amount of each payment.

   **(B) Default**
   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   **(C) Payment of Costs and Expenses**
   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**
   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

10. **GROUNDS FOR ACCELERATION OF DEBT**
    **(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument and due under this Note if:
    (i)  Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or
    (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

    **(B) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:
    (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
    (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(D) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Note and the Security Instrument do not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.                                Page 2 of 3                 Initials:

CA8700NT  1214
CA8700NT
10/09/2015 03:47 PM PST

LOAN #: ████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____   _____ (Seal)
MONICA K. LAM

PAY TO THE ORDER OF:    PENNYMAC CORP.
WITHOUT RECOURSE
Nations Direct Mortgage, LLC, a Limited Liability Company

BY: _____
            Lori Lanning
TITLE: _____ Post Closing Manager

FHA California Fixed Rate Note - 10/95
Ellie Mae, Inc.

Page 3 of 3

Initials: _____
CA8700NT  1214
CA8700NT
10/09/2015 03:47 PM PST



ALLONGE TO NOTE

LOAN#: ▮▮▮▮▮

PROPERTY ADDRESS: 124 ILLINOIS STREET, VALLEJO, CA 94590

PRINCIPAL BALANCE: $299475

BORROWER: MONICA K LAM

CO-BORROWER:

PAY TO THE ORDER OF:  PennyMac Loan Services, LLC

WITHOUT RECOURSE: PennyMac Corp.

BY _____

TITLE: April Logan, Authorized Representative

ALLONGE TO NOTE

LOAN#: ███████

PROPERTY ADDRESS: 124 ILLINOIS STREET, VALLEJO, CA 94590

PRINCIPAL BALANCE: $299475

BORROWER: MONICA K LAM

CO-BORROWER:

PAY TO THE ORDER OF:

WITHOUT RECOURSE: PennyMac Loan Services, LLC

BY _____

TITLE: April Logan, Authorized Representative

Recorded in Official Records, Solano County

**Marc C. Tonnesen**
Assessor/Recorder

02  Fidelity Title Co

Doc#:  201500095054

10/19/2015
8:00 AM
AR64
XX

| | |
|---|---|
| Titles: | 1 | Pages: | 9 |

| Fees | 47.00 |
|---|---|
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $47.00 |

When recorded, mail to:
Nations Direct Mortgage, LLC
Attn: Final Document Department
18200 Von Karman, Suite 250
Irvine, CA 92612

Fidelity Title Co

———————————— [Space Above This Line For Recording Data] ————————————

**State of California**

# DEED OF TRUST



FHA Case No.

MIN:
MERS PHONE #: 1-888-679-6377

THIS DEED OF TRUST ("Security Instrument") is made on    **October 10, 2015.**          The Trustor is
**MONICA K. LAM, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

whose address is  **124 ILLINOIS STREET, VALLEJO, CA 94590**

("Borrower").

The trustee is  **FIDELITY NATIONAL TITLE**

("Trustee").

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nomi-
nee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS
is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
Michigan 48501-2026, tel. (888) 679-MERS.
**Nations Direct Mortgage, LLC**

("Lender") is organized and

existing under the laws of  **California,**
and has an address of  **18200 Von Karman, Suite 250, Irvine, CA 92612.**

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 1 of 8

Initials:  _MKL_
CAEFHALD    0514
CAEFHALD
10/09/2015 03:47 PM PST



LOAN #: ▮▮▮▮▮▮

Borrower owes Lender the principal sum of **TWO HUNDRED NINETY NINE THOUSAND FOUR HUNDRED
SEVENTY FIVE AND NO/100** ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ Dollars (U.S.  **$299,475.00**            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **November 1, 2045.**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns)
and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property
located in **Solano**                                        County, California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: ▮▮▮▮▮▮

which has the address of   **124 ILLINOIS STREET, VALLEJO,**
                                                                                                                    [Street, City],
California **94590**                          ("Property Address");
                  [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees
that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply
with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or
all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required
of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances
of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

   UNIFORM COVENANTS.
   **1.   Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on,
the debt evidenced by the Note and late charges due under the Note.
   **2.   Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment,
together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special
assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and
(c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance
premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.                                    Page 2 of 8                          Initials: _MhL_
                                                                                          CAEFHALD   0514
                                                                                                    CAEFHALD
                                                                                          10/09/2015 03:47 PM PST



**LOAN #:**

have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto. In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.                                    Page 3 of 8          Initials:
                                                                        CAEFHALD   0514
                                                                        CAEFHALD
                                                                        10/09/2015 03:47 PM PST

LOAN #: ▮▮▮▮▮▮

information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

   (a)  **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment; or

      (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn–St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

      (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c)  **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d)  **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   (e)  **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 4 of 8



Initials: _MKL_
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

LOAN #: ▮▮▮▮▮▮▮

any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.

Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 5 of 8

Initials: _MhL_
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST





**LOAN #**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California.

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 6 of 8

Initials: _MVL_

CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST



LOAN #: ▮▮▮▮▮▮▮

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Planned Unit Development Rider
☐ Graduated Payment Rider    ☐ Other(s) [specify]

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Monica K. Lam_ _____    10/12/15   (Seal)
MONICA K. LAM                                        DATE

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 7 of 8                    ▮▮▮▮▮▮▮

Initials: _____
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

LOAN #: ███████

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _CA_

County of _Solano_

On _Oct. 12, 2015_, before me, _C. Sittinger, notary public_
(here insert name and title of the officer), personally appeared MONICA K. LAM, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _C. Sittinger_ (NOTARY)

(SEAL)

C. SITTINGER
COMM. # 1984159
NOTARY PUBLIC - CALIFORNIA
SOLANO COUNTY
COMM. EXPIRES JULY 30, 2016

FHA California Deed of Trust - 4/96
Ellie Mae, Inc.

Page 8 of 8



Initials: _MKL_
CAEFHALD  0514
CAEFHALD
10/09/2015 03:47 PM PST

# EXHIBIT "A"
Legal Description

**For APN/Parcel ID(s):** ▮▮▮▮▮▮▮▮▮

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE BY E.N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY RECORDS.

APN: ▮▮▮▮▮▮▮▮



Recorded In Official Records of Solano County

8/22/2017
9:38:25 AM
AR21
04

**Marc C. Tonnesen**
Assessor/Recorder

SPL

**Doc # 201700071020**

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | $26.00 |
| Taxes | | | $0.00 |
| Other | | | |
| Paid | | | $26.00 |

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

5

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **Mortgage Electronic Registration Systems, Inc., as nominee for Nations Direct Mortgage, LLC, its successors and assigns** PO BOX 2026 Flint MI 48501-2026 hereby grants, assigns and transfers to **PennyMac Loan Services, LLC** under that certain Deed of Trust dated **10/10/2015** executed by **Monica K. Lam, a married woman as her sole and separate property** Trustor, to **Fidelity National Title** Trustee, and recorded on **10/19/2015** as Instrument No. **201500095054** of the Official Records of Solano County, CA describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Date : 8/15/17

Mortgage Electronic Registration Systems, Inc., as nominee for Nations Direct Mortgage, LLC, its successors and assigns

By :
Its:        Christopher Santana
        Assistant Secretary

NDSC File No.  ████████████████
APN No.        ████████████████
**Assignment of Deed of Trust**
Page two

## ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or validity
> of that document.

State of California
County of _____ Ventura _____

On ___8/15/17___ before me, __FRANK MICHAEL HOFF , Notary Public__
                                (insert name and title of the officer)

personally appeared_____Christopher Santana_____, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
FRANK MICHAEL HOFF
Commission # 2094816
Notary Public · California
Ventura County
My Comm. Expires Jan 21, 2019
```

Signature_____ (Seal)


END OF
DOCUMENT

Recorded In Official Records of Solano County                    11/14/2016
                                                                 8:20:42 AM
**Marc C. Tonnesen**                                             AR49
Assessor/Recorder                                                06

Grand View Financial LLC

Doc # **201600102070**          Titles:  1     Pages:    1
                                Fees              $23.00
                                Taxes            $990.00
                                Other
                                Paid           $1,024.00

RECORDING REQUESTED BY:
GRAND VIEW FINANCIAL LLC

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

GRAND VIEW FINANCIAL LLC
6601 Center Drive West, Suite 500-8354
Los Angeles, California 90045

Order No.:
Escrow No.:
APN: ▆▆▆▆

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $0 City Tax is $0 R&T Code 11930
This is a bona fide intervivos gift  $990.00
_GIFT Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area  _____ City of Vallejo

For valuable consideration, receipt of which is hereby acknowledged **MONICA K. LAM, AN UNMARRIED WOMAN
AS HER SOLE AND SEPARATE PROPERTY** Grantor(s) hereby grant(s) to:

**GRAND VIEW FINANCIAL LLC,**

the real property situated in the City of **Vallejo**, County of **Solano**, State of **California**, more particularly described as
follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF
CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK 514, OFFICIAL MAP OF HIRST'S SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO MADE
BY E.N. SAGER, A SURVEYOR, AND FILED FEBRUARY 19, 1902 IN BOOK 1 OF MAPS, PAGE 109, SOLANO COUNTY
RECORDS.

APN NO. ▆▆▆▆
Also known as  124 Illinois Street, Vallejo, CA  94590

Dated: 11/3                    2016

MONICA K. LAM

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA              )
                                 ) SS.
COUNTY OF _____ Solano _____     )

On November 3, 2116  before me, Luz Gonzalez _____, Notary Public, personally
appeared MONICA K. LAM, who proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

LUZ GONZALEZ
Commission # 2145547
Notary Public - California
Solano County
My Comm. Expires Mar 7, 2020

Signature _____
           Notary Public                        (SEAL)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**7720 North 16th Street, Suite 300, Phoenix, Arizona 85020**.

A true and correct copy of the foregoing document entitled (*specify*):

**PROOF OF CLAIM**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/30/17,, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/30/17,, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/30/17 | Mirna Garcia | /s/ Mirna Garcia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**
(In re Grand View Financial LLC, Case # 2:17-bk-20125-RK, United States Bankruptcy Court
for the Central District of California)

**SERVICE VIA NOTICE OF ELECTRONIC FILING (NEF):**

Todd M. Arnold, Esq.
tma@lnbyb.com
[ATTORNEY FOR DEBTOR(S)]

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov
(UNITED STATES TRUSTEE, REGION 16)

**SERVICE VIA UNITED STATES MAIL:**

Grand View Financial LLC
6601 Center Drive West
Suite 500-8354
Los Angeles, CA  90045
[DEBTOR(S)]

Robert and Pamela Gabriel
21 Richmond Hill Road
Greenwhich, CT 06831-2525

Lorraine Moller
2525 Arapahoe, Suite 500
Boulder, CO 80302-6720

Heather Hartig
324 Manor Drive
Pacifica, CA 94044

Lehman Borthers
400 Professional Drive
Gaithersburg, MD 20879

Stell Tan
4525-4527 Lincoln Way
San Francisco, CA 94122-1128

Robert & Pamela Gabriel
3 Sayles Street
Greenwhich, CT 06807-2142

E. Greg Somerville
4916 Saint Andrews Drive
Stockton, CA 95219-1917

James Yocum
3417 Danner Circle
Birmingham, AL 35243

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1.PROOF.SERVICE**

Robert & Pamela Gabriel
18 Sherman Avenue
Greenwhich, CT 06830-6046

Daniel Golden
21360 Crestwind Drive
San Marcos, CA 92078-5000

Frankie Cheung
1765 Valdez Way
Fremont, CA 94539-3662

Ellen & Clyde Davenport
5555 Thayer Lane
San Ramon, CA 94582-3067

Marc & Michelle Griffith
6020 Heatherton Drive
Somis, CA 93066-9611

Robert Burns
690 Heather Court
Pacifica, CA 94044-2141

David & Leah Manaoat
102 Sonora Court
Oakley, CA 94561-3953

John & Sonja Tombarelli
4129 South Conklin Road
Greenacres, WA 99016-9789

Angela Leung
3217 Acalanes Avenue
Lafayette, CA 94549-3206

Leslie Edwards
17287 W. Summerfield Road
Post Falls, ID 83854

Sunil & L. Lori Wadhwa
747 Sturbridge Drive
Folsom, CA 95630-6166

Gary & Johanna Lohse
7394 N. Meridian Road
Vacaville, CA 95688-9607

Solano County Treasurer - Tax Collector
675 Texas St., Suite 2700
Fairfield, CA 94533

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "7"

TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GRAND VIEW FINANCIAL, LLC,<br><br>         Debtor and Debtor in Possession. | Case No.:  2:17-bk-20125-RK<br><br>Chapter 11 Case<br><br>Adv. No. 2:18-ap-_____-RK |
| GRAND VIEW FINANCIAL, LLC,<br><br>         Plaintiff,<br>v.<br><br>NATIONS DIRECT MORTGAGE, LLC;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>FIDELITY NATIONAL TITLE aka<br>FIDELITY NATIONAL TITLE COMPANY;<br>PENNYMAC LOAN SERVICES, LLC;<br>PENNYMAC CORP.; and<br>MASSACHUSETTS MUTUAL LIFE<br>INSURANCE COMPANY,<br><br>         Defendants. | **COMPLAINT FOR:**<br><br>(1)  **DECLARATORY RELIEF;**<br>(2)  **DISALLOWANCE OF ANY CLAIMS OF PENNYMAC LOAN SERVICES, LLC; AND**<br>(3)  **VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**<br><br>Date:  [TO BE SET BY SUMMONS]<br>Time:  [TO BE SET BY SUMMONS]<br>Place:  Courtroom 1675<br>        Roybal Federal Building<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

1        Plaintiff Grand View Financial, LLC, the Chapter 11 debtor and debtor in possession (the

2 "Debtor") in the above captioned Chapter 11 bankruptcy case (the "GV BK Case"), avers and

3 complains, by way of this Complaint, subject to amendment, as follows:

### JURISDICTION AND VENUE

5      1.      This adversary proceeding in the Chapter 11 GV BK Case, pending in the United

6 States Bankruptcy Court for the Central District of California, Los Angeles Division (the

7 "Bankruptcy Court"), is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

8      2.      This Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to

9 28 U.S.C. §§ 151, 157, 1334, and 2201, 15 U.S.C. § 1692k(d), and Local Rules and Orders of the

10 United States District Court for the Central District of California governing the reference and

11 conduct of proceedings arising under or related to cases under Title 11 of the United States Code,

12 including General Order No. 13-05, dated July 1, 2013.

13      3.      Venue is proper in this Bankruptcy Court under 28 U.S.C. § 1409(a), as this

14 adversary proceeding arises in, under, and/or in connection with a case under Title 11 which is

15 pending in this district.

16      4.      The Debtor consents to the entry of final judgments and orders by the Bankruptcy

17 Court in this adversary proceeding.

### PARTIES

19      5.      On August 17, 2017 (the "Petition Date"), the Debtor filed a Voluntary Petition

20 under Chapter 11 of the Bankruptcy Code.

21      6.      The Debtor is informed and believes and based thereon alleges that defendant

22 Nations Direct Mortgage, LLC (the "Original Lender") (a) is a California limited liability

23 company, (b) had its status as a California limited liability company suspended, (c) does business

24 in California, and (d) is subject to the jurisdiction of this Bankruptcy Court.

25      7.      The Debtor is informed and believes and based thereon alleges that defendant

26 Mortgage Electronic Registration Systems, Inc. ("MERS") (a) is a Delaware corporation

27 registered to do business in California, (b) does business in numerous states, including California,

28 and (c) is subject to the jurisdiction of this Bankruptcy Court.

8.     The Debtor is informed and believes and based thereon alleges that defendant Fidelity National Title aka Fidelity National Title Company (the "Original DOT Trustee") (a) is a California corporation, (b) does business in California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

9.     The Debtor is informed and believes and based thereon alleges that defendant PennyMac Loan Services, LLC ("PennyMac LLC") (a) is a Delaware limited liability company registered to do business in California, (b) filed two Statements of Information with the California Secretary of State indicating that was in the business of being a "Mortgage Servicer," (c) does business in numerous states, including California, and (d) is subject to the jurisdiction of this Bankruptcy Court.

10.     The Debtor is informed and believes and based thereon alleges that defendant PennyMac Corp. ("PennyMac Corp.") (a) is a Delaware corporation registered to do business in California, (b) does business in numerous states, including California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

11.     The Debtor is informed and believes and based thereon alleges that defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual" and, together with the Original Lender, MERS, Original DOT Trustee, PennyMac LLC, and PennyMac Corp., the "Defendants") (a) is a Massachusetts corporation registered to do business in California, (b) does business in numerous states, including California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

12.     The Debtor is informed and believes and based thereon alleges that one or more of the Defendants purport to be a secured creditor with a claim (the "Alleged Secured Claim") secured by real property located at 124 Illinois Street, Vallejo, California 94590 (the "Property"), which is located in Solano County.

13.     The Debtor is informed and believes and based thereon alleges that defendant PennyMac LLC (a) uses instrumentalities of interstate commerce and/or the mails in its business, the principal purpose of which is the collection of debts, (b) regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed and due to another, and/or

3

1    (c) regularly conducts non-judicial foreclosure sales as a purported foreclosure trustee under

2    deeds of trust.

3         14.    The Debtor is informed and believes and based thereon alleges that defendant

4    PennyMac LLC is a "debt collector," as that term is defined in 15 U.S.C. § 1692a(6), including,

5    *inter alia*, for purposes of 15 U.S.C. § 1692f(6), in regard to the Original Note (as defined below),

6    the Loan (as defined below), the Original Lender DOT (as defined below), and the PennyMac

7    LLC Claim, particularly because PennyMac LLC was not the originator of the Original Note (as

8    defined below), the Loan (as defined below), and the Original Lender DOT (as defined below)

9    and is only the purported successor in interest thereto and only became a purported successor in

10    interest thereto when there was an existing default under the Original Note (as defined below), the

11    Loan (as defined below), and/or the Original Lender DOT (as defined below).

12    **GENERAL ALLEGATIONS**

13    **THE FORMER OWNER'S ACQUISITION OF THE PROPERTY.**

14         15.    The Debtor is informed and believes and based thereon alleges that, on or about

15    October 10, 2015, Monika K. Lam (the "Former Owner") purchased the Property.

16         16.    The Debtor is informed and believes and based thereon alleges that (a) the Former

17    Owner's purchase of the Property was financed by a loan (the "Loan") with a loan number ending

18    in 6290 from the Original Lender evidenced by a promissory note (the "Original Note") and (b)

19    the Loan under Original Note was purportedly secured by a Deed of Trust (the "Original Lender

20    DOT") issued by the Former Owner in favor of the Original Lender.

21         17.    A true and correct copy of the Original Note, together with one alleged

22    endorsement (the "Endorsement") of the Original Note and two alleged allonges (each an

23    "Allonge" and, collectively, the "Allonges") to the Original Note, is attached hereto as **Exhibit**

24    **"1."**

25         18.    The Debtor is informed and believes and based thereon alleges that, on or about

26    October 19, 2015, the Original Lender recorded the Original Lender DOT with the Solano County

27    Recorder.

28

19.    A true and correct copy of the Original Lender DOT is attached hereto as **Exhibit "2."**

20.    The Debtor is informed and believes and based thereon alleges that the Original DOT Trustee was named as the original trustee under the Original Lender DOT.

21.    The Debtor is informed and believes and based thereon alleges that the Original Lender DOT purports to provide that (a) MERS was the nominee of the Original Lender and the Original Lender's successors and assigns and (b) MERS was the beneficiary under the Original Lender DOT.

22.    The Debtor is informed and believes and based thereon alleges that the Original Lender DOT provides, *inter alia*, that (a) mortgage insurance might be required for the Loan, (b) the Original Lender DOT shall be governed by federal law and the law of the jurisdiction where the Property is located, which is California, (c) the Original Lender shall give notice of breaches under the Original Lender DOT, (d) only the Original Lender may invoke the power of sale under the Original Lender DOT, (e) "[u]pon payment of all Sums Secured by [the Original Lender DOT], the [Original Lender (or its successor in interest)] shall request [the Original DOT Trustee] to reconvey the Property and shall surrender [the Original Lender DOT and the Original Note] to [the Original DOT Trustee or its successor]" and "[the Original DOT Trustee or its successor] shall reconvey the Property without warranty to [the Former Owner (or his/her successor in interest)]," and (f) "[the Original] Lender, at its option, may from time to time appoint a successor trustee to [the Original DOT Trustee] appointed hereunder by an instrument executed and acknowledged by [the Original] Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the [the Original] Lender, [Original DOT Trustee, and the Former Owner], the book and page where this [Original Lender DOT] is recorded and the name and address of the successor to the [Original DOT Trustee.] This procedure for substitution shall govern to the exclusion of all other provisions for substitution."

**THE DEBTOR'S ACQUISITION OF THE PROPERTY.**

23.    The Debtor is informed and believes and based thereon alleges that, prior to the Petition Date, until on or about November 1, 2016, the Property was owned by the Former Owner.

24. On or about November 1, 2016, (a) the Debtor and the Former Owner executed a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (the "PSA"), (b) the Debtor executed a Promissory Note (the "PSA Note") in favor of the Former Owner, and (c) the Former Owner executed a Grant Deed (the "Grant Deed") conveying title to the Property to the Debtor pursuant to the terms of the PSA and in exchange for the consideration provided under the PSA and PSA Note.

25. A true and correct copy of the PSA is attached hereto as **Exhibit "3."**

26. A true and correct copy of the PSA Note is attached hereto as **Exhibit "4."**

27. A true and correct copy of the Grant Deed is attached hereto as **Exhibit "5."**

28. As of on or about November 1, 2016, the Debtor held title to and owned the Property.

29. On November 14, 2016, the Debtor recorded the Grant Deed with the Solano County Recorder.

30. At present, the Debtor and the Former Owner are parties to a Month to Month Rental Agreement (the "Rental Agreement") pursuant to which the Former Owner rents the Property from the Debtor in exchange for, *inter alia*, the payment of $1,000 per month in rent (collectively, the "Rent Payments").

**ALLEGED TRANSFERS AND/OR ASSIGNMENTS OF THE ORIGINAL NOTE AND ORIGINAL LENDER DOT TO PENNYMAC LLC; PENNYMAC LLC'S EFFORTS TO ENFORCE THE ORIGINAL NOTE AND ORIGINAL LENDER DOT; THE PURPORTED SALE OF THE ORIGINAL NOTE AND LOAN TO MASS MUTUAL; PENNYMAC'S RELIEF FROM STAY MOTION AND MISREPRESENTATIONS TO THE COURT IN CONNECTION THEREWITH; AND EFFORTS TO EFFECTUATE A FORECLOSURE SALE OF THE PROPERTY.**

31. Pursuant to the Endorsement on the Original Note, the Original Lender purported to make the Original Note payable to PennyMac Corp.

32. Pursuant to the first Allonge purportedly attached to the Original Note, PennyMac Corp. purported to make the Original Note payable to PennyMac LLC.

6

33.    Pursuant to the second Allonge purportedly attached to the Original Note, PennyMac Corp. purported to make the Original Note payable in blank.

34.    The Endorsement and Allonges are all undated so it is impossible to see the sequence of the alleged execution of the purported Endorsement and Allonges.

35.    The Original Note provides, *inter alia*, that for any Allonges to be effective, they would have to be signed by the Former Owner.

36.    There are no staple holes evident from the copy of the Original Note showing that the Allonges were actually attached and part of the Original Note and the Allonges were not signed by the Former Owner; therefore, the Allonges are void, invalid, and ineffective.

37.    On December 21, 2016, PennyMac LLC sent a Notice of Default and Intent to Accelerate the Original Loan (the "Notice of Default").

38.    A true and correct copy of the Notice of Default is attached hereto as **Exhibit "6."**

39.    Pursuant to the Notice of Default, PennyMac LLC identified itself as a "debt collector" and indicated that the Notice of Default was being sent as "an attempt by a debt collector to collect a debt."

40.    Under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.*, PennyMac LLC could not be both the creditor on the Original Note and a debt collector on the Original Note. Therefore, by no later than December 21, 2016, PennyMac LLC did not own the Original Note and was merely a purported debt collector for the owner of the Original Note.

41.    Pursuant to the Notice of Default, PennyMac LLC asserted that the Original Note and Loan were in default by no later than November 1, 2016.

42.    The Notice of Default references a loan number ending in 2683; however, the Loan number on the Original Note ended in 6290. Based on the foregoing, the Debtor alleges that the Loan was satisfied by insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note

to the Original DOT Trustee (or its successor in interest), who was required to reconvey the Property without warranty to the Former Owner (or his/her successor in interest).

43.    On February 2, 2017, PennyMac LLC sent a letter (the "2/2/17 Letter") to the Former Owner.

44.    A true and correct copy of the 2/2/17 Letter is attached hereto as **Exhibit "7."**

45.    The 2/2/17 Letter, indicates, *inter alia,* that (a) the Original Note and Loan were purportedly sold to Mass Mutual on February 1, 2017 and (b) PennyMac LLC would continue to be the servicer for the Loan.

46.    The 2/2/17 Letter references a loan number ending in 2683; however, the Loan number on the Original Note ended in 6290.  Based on the foregoing, the Debtor alleges that the Loan was satisfied by insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), who was required to reconvey the Property without warranty to the Former Owner (or his/her successor in interest).

47.    On August 15, 2017, MERS purported to assign the Original Lender DOT, **but not the Original Note**, to PennyMac LLC pursuant to an Assignment of Deed of Trust (the "DOT Assignment").

48.    A true and correct copy of the DOT Assignment is attached hereto as **Exhibit "8."**

49.    The DOT Assignment is void, invalid, and ineffective, because, *inter alia,* (a) the DOT Assignment only purported to assign the Original Lender DOT and not the Original Note, (b) at the time of the alleged DOT Assignment, the Original Note and Loan had already purportedly been assigned to Mass Mutual such that MERS lacked authority to assign the Original Note and Loan, and (c) PennyMac is only a loan servicer and, at the time of the purported DOT Assignment was only a loan servicer for the Original Note and Loan, and purported assignments of deeds of trust to loan servicers are void.

50.     On December 22, 2017, PennyMac LLC filed a motion for relief from stay (the "RFS Motion") seeking relief from the automatic stay of 11 U.S.C. § 362 to proceed with remedies, including foreclosure of the Property.

51.     A true and correct copy of the RFS Motion, without exhibits, is attached hereto as **Exhibit "9."**

52.     Pursuant to the RFS Motion, PennyMac LLC represented to the Bankruptcy Court that PennyMac LLC (a) was the payee under the Original Note and (2) was the beneficiary under the Original Lender DOT.

53.     On January 9, 2018, the Debtor filed its opposition to the RFS Motion (the "RFS Opposition").

54.     A true and correct copy of the RFS Opposition, without exhibits, is attached hereto as **Exhibit "10."**

55.     Pursuant to the RFS Opposition, the Debtor asserted, *inter alia*, that, due to the 2/2/17 Letter, wherein PennyMac LLC itself admits and asserts that the Original Note and Loan were sold to Mass Mutual, but which PennyMac LLC failed to disclose to the Court, PennyMac LLC lacked standing to file the RFS Motion and pursue the relief requested therein.

56.     On January 9, 2018, PennyMac LLC filed its reply to the RFS Opposition (the "RFS Reply").

57.     A true and correct copy of the RFS Reply is attached hereto as **Exhibit "11."**

58.     In its RFS Reply, (a) PennyMac LLC completely ignored the Debtor's argument in the RFS Opposition that, due to the 2/2/17 Letter, wherein PennyMac LLC itself admits and asserts that the Original Note and Loan were sold to Mass Mutual, but which PennyMac LLC failed to disclose to the Court, PennyMac LLC lacked standing to file the RFS Motion and pursue the relief requested therein and (b) PennyMac LLC did not object to the 2/2/17 Letter evidencing the transfer of the Original Note and Loan to Mass Mutual.

59.     Notwithstanding the foregoing, at the January 23, 2018 hearing on the RFS Motion, the Bankruptcy Court invited PennyMac LLC to make an objection to the 2/2/17 Letter, which PennyMac LLC did and which the Court sustained for purposes of the RFS Motion.

1       60.    At the hearing on the RFS Motion and after acknowledging that the hearing was

2   only a summary proceeding, the Bankruptcy Court granted the RFS Motion, with the exception of

3   certain forms of relief sought by PennyMac LLC, and, on January 25, 2018, the Court entered its

4   order granting the RFS Motion, with the exception of certain forms of relief sought by PennyMac

5   LLC (the "RFS Order").

6       61.    A true and correct copy of the RFS Order is attached hereto as **Exhibit "12."**

7       62.    The Debtor is informed and believes that PennyMac LLC is proceeding or will

8   proceed with efforts to effectuate a foreclosure of the Property (the "Foreclosure") pursuant to a

9   foreclosure sale (the "Foreclosure Sale") thereof and, in the event PennyMac LLC conducts a

10  Foreclosure Sale, PennyMac LLC will seek to transfer the Property to the winning bidder at the

11  Foreclosure Sale (a "Transfer").

12             **FIRST CLAIM FOR RELIEF**

13      **(Declaratory Relief Pursuant to 28 U.S.C. § 2201)**

14            **(Against All Defendants)**

15      63.    The Debtor realleges each and every allegation contained in paragraphs 1 through

16  62, inclusive of this Complaint as if set forth fully herein.

17      64.    There is a present case and/or controversy between the Debtor, on one hand, and

18  the Defendants, on the other hand, regarding:

19      a.    whether PennyMac LLC ever owned and had title to the Original Note and

20  Original Lender DOT,

21      b.    whether PennyMac LLC has, or ever had, standing under the Original Note

22  and Original Lender DOT to issue the Notice of Default, file the RFS Motion, file the RFS

23  Reply, obtain the RFS Order, and/or proceed with any efforts to effectuate a Foreclosure

24  of the Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC

25  conducts a Foreclosure Sale, to Transfer the Property to the winning bidder at the

26  Foreclosure Sale,

27      c.    whether the Loan was satisfied by insurance proceeds or otherwise and/or

28  replaced by a new loan such that the Loan was satisfied and, pursuant to the Original

1   Lender DOT, whether the Original Lender (or its successor in interest) is required to

2   request that the Original DOT Trustee (or its successor in interest) reconvey the Property

3   and to surrender the Original Lender DOT and the Original Note to the Original DOT

4   Trustee (or its successor in interest), and whether the Original DOT Trustee (or its

5   successor in interest) is required to reconvey the Property without warranty to the Former

6   Owner (or his/her successor in interest), and

7         d.     whether any of the Defendants has a lien on the Property pursuant to the

8   Original Lender DOT or otherwise.

9         65.     PennyMac LLC never owned and had title to the Original Note and Original

10   Lender DOT.

11         66.     PennyMac LLC never had standing under the Original Note and Original Lender

12   DOT to issue the Notice of Default, file the RFS Motion, file the RFS Reply, obtain the RFS

13   Order, and PennyMac LLC never had, and currently does not have, standing under the Original

14   Note and Original Lender DOT to proceed with any efforts to effectuate a Foreclosure of the

15   Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC conducts a

16   Foreclosure Sale, to Transfer the Property to the winning bidder at the Foreclosure Sale.

17         67.     The Loan was satisfied by insurance proceeds or otherwise and/or replaced by a

18   new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original

19   Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its

20   successor in interest) reconvey the Property and to surrender the Original Lender DOT and the

21   Original Note to the Original DOT Trustee (or its successor in interest), and the Original DOT

22   Trustee (or its successor in interest) is required to reconvey the Property without warranty to the

23   Former Owner (or his/her successor in interest).

24         68.     None of the Defendants has a lien on the Property pursuant to the Original Lender

25   DOT or otherwise.

26         69.     The Debtor is entitled to a declaratory judgment establishing that:

27         a.     PennyMac LLC never owned and had title to the Original Note and

28   Original Lender DOT,

b.      PennyMac LLC never had standing under the Original Note and Original Lender DOT to issue the Notice of Default, file the RFS Motion, file the RFS Reply, obtain the RFS Order, and PennyMac LLC never had, and currently does not have, standing under the Original Note and Original Lender DOT to proceed with any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, to Transfer the Property to the winning bidder at the Foreclosure Sale,

c.      The Loan was satisfied by insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), and the Original DOT Trustee (or its successor in interest) is required to reconvey the Property without warranty to the Former Owner (or his/her successor in interest), and

d.      None of the Defendants has a lien on the Property pursuant to the Original Lender DOT or otherwise.

## SECOND CLAIM FOR RELIEF

**(For Disallowance of Any Alleged Secured Claim Pursuant to 11 U.S.C. § 502(b))**

**(Against All Defendants)**

70.     The Debtor realleges each and every allegation contained in paragraphs 1 through 69, inclusive, of this Complaint as if set forth fully herein.

71.     The Alleged Secured Claim and any other claim of the Defendants against the Debtor based on or arising from the Original Note and Original Lender DOT is unenforceable against the Debtor and property of the Debtor and, therefore, must be disallowed under 11 U.S.C. § 502(b)(1).

////

## THIRD CLAIM FOR RELIEF

**(For Damages for Violation of the Fair Debt Collection Practices Act Pursuant to 15 U.S.C.**

**§§ 1692 et seq.)**

**(Against Defendant PennyMac LLC)**

72.    The Debtor realleges each and every allegation contained in paragraphs 1 through 66, inclusive, of this Complaint as if set forth fully herein.

73.    PennyMac LLC (a) took non-judicial action to effect the dispossession or disablement of the Property by issuing or causing to be issued the Notice of Default and (b) will take non-judicial action to effect the dispossession or disablement of the Property by proceeding with any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, by effectuating any Transfer the Property to the winning bidder at the Foreclosure Sale (collectively, the "Conduct").

74.    At the time the Conduct occurred or will occur, Deutsche had or will have had no present right to possession of the Property claimed as collateral under the Original Lender DOT and the Original Lender DOT did not create an enforceable security interest in the Property in favor of PennyMac LLC.

75.    The Conduct violated and/or will violate 15 U.S.C. § 1692f(6).

76.    The Debtor is entitled to actual damages according to proof at trial from PennyMac LLC pursuant to 15 U.S.C. § 1692k(a).

## PRAYER FOR RELIEF

**WHEREFORE,** the Debtor prays for judgment as follows:

1.    On the First Claim for Relief: A declaratory judgment against the Defendants establishing that

    a.    PennyMac LLC never owned and had title to the Original Note and Original Lender DOT,

    b.    PennyMac LLC never had standing under the Original Note and Original Lender DOT to issue the Notice of Default, file the RFS Motion, file the RFS Reply, obtain the RFS Order, and PennyMac LLC never had, and currently does not have,

1   standing under the Original Note and Original Lender DOT to proceed with any efforts to

2   effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the

3   event PennyMac LLC conducts a Foreclosure Sale, to Transfer the Property to the winning

4   bidder at the Foreclosure Sale,

5        c.    The Loan was satisfied by insurance proceeds or otherwise and/or replaced

6   by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT,

7   the Original Lender (or its successor in interest) is required to request that the Original

8   DOT Trustee (or its successor in interest) reconvey the Property and to surrender the

9   Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor

10  in interest), and the Original DOT Trustee (or its successor in interest) is required to

11  reconvey the Property without warranty to the Former Owner (or his/her successor in

12  interest), and

13       d.    None of the Defendants has a lien on the Property pursuant to the Original

14  Lender DOT or otherwise.

15       2.    On the Second Claim for Relief: A judgment against the Defendants disallowing

16  the Alleged Secured Claim and any other claim of the Defendants against the Debtor based on or

17  arising from the Original Note and Original Lender DOT pursuant to 11 U.S.C. § 502(b)(1).

18       3.    On the Third Claim for Relief: A judgment against PennyMac LLC (a) establishing

19  that the Conduct violated 15 U.S.C. § 1692f(6) and (b) for actual damages according to proof at

20  trial resulting from the Conduct pursuant to 15 U.S.C. § 1692k(a).

21       4.    On all Claims for Relief: A judgment granting such other and further relief as the

22  Bankruptcy Court deems just and proper.

23  Dated: February 7, 2018              LEVENE, NEALE, BENDER, YOO
                                         & BRILL L.L.P.
24

25                                       By:    /s/ Todd M. Arnold
                                               TODD M. ARNOLD
26                                       Attorneys for Debtor and Debtor in Possession

27

28

# EXHIBIT "8"

1

2

3

4

5

6

FILED & ENTERED

APR 30 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

7

8

9

10

11

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| 12 In re: | Case No.  2:17-bk-20125-RK |
| 13 GRAND VIEW FINANCIAL, LLC, | Chapter 11 |
| 14                              Debtor. | Adv. No.  2:18-ap-01035-RK |
| 15 | **ORDER GRANTING IN PART AND** |
| 16 | **DENYING IN PART DEFENDANTS' MOTION** |
| 17 | **TO DISMISS, VACATING HEARING ON** |
| 18 | **MOTION AND CONTINUING STATUS** |
| | **CONFERENCE** |
| 19 GRAND VIEW FINANCIAL, LLC., | **Vacated Hearing** |
| 20 | Date:      May 1, 2018 |
| 21                              Plaintiff, | Time:      3:00 p.m. |
| | Courtroom:  1675 |
| 21    vs. | |
| 22 | |
| 23 NATIONS DIRECT MORTGAGE, LLC, | |
|    et al., | |
| 24 | |
| 25                              Defendants. | |
| 26 | |

27        Pending before the court in this adversary proceeding is the motion of

28   Defendants PennyMac Loan Services, LLC, PennyMac Corp., and Mortgage Electronic

1   Registration Systems, Inc., to dismiss the complaint of Plaintiff Grand View Financial,

2   LLC, Debtor, for failure to state a claim upon which relief can be granted pursuant to

3   Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure

4   12(b)(6).  In its complaint, Plaintiff alleged three claims for relief against Defendants for

5   (1) Declaratory Relief; (2) Disallowance of Any Claims of PennyMac Loan Services,

6   LLC; and (3) Violation of Fair Debt Collection Practices Act, which relates to its

7   contention that it has an interest in certain real property located at 124 Illinois Street,

8   Vallejo, California 94590.  Lorenzo E. Gasparetti, Christopher O. Rivas and Patil T.

9   Derderian, of the law firm of Reed Smith LLP, represents the moving parties,

10  Defendants PennyMac Loan Services, LLC, PennyMac Corp., and Mortgage Electronic

11  Registration Services, Inc.  Todd M. Arnold, of the law firm of Levene, Neale, Bender,

12  Yoo & Brill L.L.P., represents the responding party, Plaintiff Grand View Financial, LLC,

13  Debtor.

14          Having considered the moving and opposing papers, the court determines that

15  pursuant to Local Bankruptcy Rule 9013-1(j)(3), oral argument on the motion is not

16  necessary, dispenses with oral argument, vacates the hearing on the motion on May 1,

17  2018, takes the motion under submission and rules on the motion on the papers as

18  follows.

19

20          **(1)      First Cause of Action - Claim for Declaratory Relief**

21          In its claim for declaratory relief, Plaintiff seeks declaratory relief that Defendant

22  PennyMac Loan Services, LLC, never owned and had title to the original note and

23  original lender deed of trust, that PennyMac Loan Services, LLC, never had standing to

24  issue a Notice of Default, to file a motion for relief from stay, file a reply to such motion

25  for relief from stay, obtain an order for relief from stay and does not have standing to

26  proceed with foreclosure, that the loan was satisfied by insurance proceeds and that

27  none of the Defendants has a lien on the subject real property pursuant to original

28  lender deed of trust.

1    This court granted relief from stay to PennyMac Loan Services, LLC, on January

2    25, 2018 in the main bankruptcy case (Docket Number 169).  Since the motion was

3    granted and an order was entered, this court already determined that PennyMac Loan

4    Services, LLC, had standing for purposes of stay relief.  Plaintiff did not appeal or ask

5    for reconsideration of this order, which is now final and nonappealable.  Plaintiff's claim

6    for declaratory relief as to the stay relief proceedings is an improper collateral attack on

7    the stay relief order, and thus, the claim fails to state a claim upon which relief can be

8    granted.  Amendment of the claim as to stay relief proceedings would be futile, so the

9    court does not grant leave to amend as to any claim for declaratory relief as to stay

10   relief.

11    As to Plaintiff's allegations that Defendant PennyMac Loan Services, LLC, does

12   not have an ownership interest in the note because the endorsements and allonges

13   transferring an interest in the note to it were not signed by Monica Lam, the borrower

14   and former owner of the subject property, such allegations are not plausible.  There is

15   nothing in the original note that requires the borrower's signature for the lender to

16   assign its interest in the note.  *See Yvanova v. New Century Mortgage Corp.*, 62 Cal.4[th]

17   919, 927 (2016)("A promissory note is a negotiable instrument the lender may sell

18   without notice to the borrower.")  Plaintiff cites no legal authority requiring the borrower's

19   signature for the lender to assign its interest in the note.  *Id.*  Amendment of the claim as

20   to these allegations would be futile, so the court does not grant leave to amend as to

21   any claim for declaratory relief as to these allegations.

22    As to Plaintiff's allegations that Defendant PennyMac Loan Services, LLC, does

23   not have an ownership interest in the note because the MERS assignment of the

24   original deed of trust did not include an assignment of the original note, i.e., the note

25   and deed of trust are "inseparable".  Such allegations are not plausible.  The court

26   disagrees with, and rejects, Plaintiff's theory of its claim regarding the "separation" of

27   the promissory note and deed of trust, citing *Carpenter v. Longan,* 83 U.S. 274 (1872).

28   *See In re Copelin,* No. 2:13-bk-32580 RK, Adv. No. 2:14-ap-01250 RK, 2015 WL

1  222456 (Bankr. C.D. Cal. 2015), *citing, In re Preston,* 931 F.Supp.2d 743 (N.D. Tex.

2  2013).  As discussed in these cases, *Copelin* and *Preston,* the separation of the note

3  and deed of trust defense applicable to Colorado territorial law at issue in *Carpenter v.*

4  *Longan* does not necessarily apply to the law of other states, such as California, where

5  the subject property is situated.  Plaintiff cites no legal authority that this defense applies

6  in California law.  The authority is to the contrary.  *In re Copelin,* No. 2:13-bk-32580 RK,

7  Adv. No. 2:14-ap-01250 RK, 2015 WL 222456, slip op. at *2, *citing,* California Civil

8  Code § 2924 *et seq., Debrunner v. Deutsche Bank National Trust Co.,* 204 Cal.App.4th

9  433, 439-442 (2012); *In re Rivera,* 2014 WL 66775693 (9th Cir. BAP 2014), slip op. at

10  *7; *see also, Heflebower v. JPMorgan Chase Bank, N.A.,* No. 1:12-CV-01671 AWI,

11  2013 WL 5476806 (E.D. Cal. 2013), slip op. at *9 ("California is a non-judicial

12  foreclosure state and requires neither possession nor production of the original notice in

13  order to initiate non-judicial foreclosure proceedings under a deed of trust.").

14  Amendment of the claim as to these allegations would be futile, so the court does not

15  grant leave to amend as to any claim for declaratory relief as to these allegations.

16        As to Plaintiff's allegations that the loan was satisfied by insurance proceeds,

17  such allegations are not plausible.  The assertion that the loan numbers are different is

18  not a plausible factual basis for such claim, which the court determines fails to state a

19  claim upon which relief can be granted. It seems to the court that a different company

20  holding the loan can administratively assign a different account number to the loan, and

21  it cannot be reasonably implied from that administrative change that insurance proceeds

22  paid off the loan. However, the court will grant leave to amend at least once to allege a

23  plausible claim for declaratory relief as to alleged loan satisfaction, which must have a

24  reasonable basis in fact and law pursuant to Federal Rule of Bankruptcy Procedure

25  9011. *See National Council of La Raza v. Cegavske,* 800 F.3d 1032, 1041-1042 (9th

26  Cir. 2015)(citations omitted).

27        As to Plaintiff's allegations that Defendants do not have a lien on the subject

28  property and whether they may properly foreclose a lien on the subject property, Plaintiff

1   seeks a determination that the lien of Defendants do not attach to the subject property,

2   which it contends is property of the bankruptcy estate under 11 U.S.C. § 541. Plaintiff

3   alleges that it owns the subject property based on a transfer from the prior owner,

4   Monica Lam, the borrower on the loan evidenced by the note and the deed of trust. The

5   factual allegations that as indicated in a letter dated February 2, 2017 to Monica Lam,

6   the borrower and the former owner of the subject property (Exhibit 7 to Complaint),

7   Defendant PennyMac Loan Services, LLC, sold the loan to Mass Mutual Life Insurance

8   Co. indicate a claim upon which relief can be granted that Defendants do not have a lien

9   on the subject property, and the motion as to such claim should be denied. *See* 2

10  O'Connell, Stevenson and Phillips, *Rutter Group Practice Guide: Federal Civil*

11  *Procedure Before Trial, California and Ninth Circuit Edition*, ¶¶ 9:213 and 9:215 at 9-84

12  – 9-85 (2018)(complaint is to be construed in light most favorable to plaintiff, and

13  material factual allegations are assumed to be true), *citing inter alia, Bell Atlantic Corp.*

14  *v. Twombly,* 550 U.S. 544, 556 (2007) and *Doe v. United States,* 419 F.3d 1058, 1062

15  (9th Cir. 2005). However, having said this, such allegations do not by themselves stop

16  Defendants from proceeding with a nonjudicial foreclosure (e.g., as assignee of the

17  deed of trust under California law, *Debrunner v. Deutsche Bank National Trust Co.,*

18  *supra)* if they have a right to do so since stay relief was granted. In granting stay relief,

19  the court only determines that the movant had a colorable claim to enforce a right

20  against property of the bankruptcy estate and does not determine the merits of any such

21  claim. *See, e.g., In re Griffin,* 719 F.3d 1126, 1128 (9th Cir. 2013)(citations omitted).

22

23          (2)     **Second Cause of Action - Claim for Disallowance of Any Claims of**
                    **PennyMac Loan Services, LLC per § 502(b)**
24

25          PennyMac Loan Services, LLC, filed a proof of claim in this bankruptcy case

26  (Claim Number 5). The proof of claim asserted a secured claim in the amount of

27  $310,989.72 for "Money Loaned." Defendants contend that Plaintiff fails to state a claim

28  upon which relief can be granted as for the first cause of action for declaratory relief, but

1  the factual allegations for the first cause of action that indicate a claim upon which relief

2  can be granted that Defendants do not have a secured claim against the estate (i.e., the

3  allegations that Defendants sold the note to a third party, Mass Mutual), and the motion

4  as to such claim should be denied.

5      Defendants also contend that Plaintiff must litigate this claim through the claims

6  disallowance process under Federal Rule of Bankruptcy Procedure 3007.  Federal Rule

7  of Bankruptcy Procedure 3007(b) states in pertinent part: "A party in interest shall not

8  include a demand for relief of a kind specified in Rule 7001 in an objection to the

9  allowance of a claim, but may include the objection in an adversary proceeding."

10     Accordingly, Plaintiff may properly assert a claim for disallowance of the filed

11  proof of claim of PennyMac Loan Services, LLC, through this adversary proceeding,

12  and thus, the motion as to this claim should be denied.

13
14  **(3)  Third Cause of Action - Claim for Violation of Fair Debt Collection**
    **Practices Act (FDCPA) Pursuant to 15 U.S.C. §§ 1692 et seq.**
15

16     Plaintiff alleges in the complaint that "PennyMac LLC (a) took non-judicial action

17  to effect the dispossession or disablement of the Property by issuing or causing to be

18  issued the Notice of Default and (b) will take non-judicial action to effect the

19  dispossession or disablement of the Property by proceeding with any efforts to

20  effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in

21  the event PennyMac LLC conducts a Foreclosure Sale, by effectuating any Transfer the

22  Property to the winning bidder at the Foreclosure Sale (collectively, the 'Conduct')."

23  Complaint,  ¶ 73.  Plaintiff alleges that this conduct violated 15 U.S.C. § 1692f(6) and it

24  is entitled to damages under 15 U.S.C. § 1692k(a). Complaint, ¶¶75 and 76.

25     Defendants argue that their actions in a nonjudicial foreclosure on the subject

26  property is not "debt collection" within the meaning of the FDCPA, citing inter alia,

27  *Izenberg v. ETS Services, LLC,* 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008), which

28  stated that foreclosing on a property pursuant to a deed of trust is not the collection of

1   debt within the meaning of FDCPA. "To be held liable for violation of the FDCPA, a

2   defendant must—as a threshold requirement—fall within the Act's definition of 'debt

3   collector.'" *Id.* at 1198, *citing, Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489, 131

4   L.Ed.2d 395 (1995) and *Romine v. Diversified Collection Services*, 155 F.3d 1142, 1146

5   (9th Cir.1998). The FDCPA defines "debt collector," in pertinent part, as follows: "any

6   person who uses any instrumentality of interstate commerce or the mails in any

7   business the principal purpose of which is the collection of any debts, or who regularly

8   collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

9   owed or due another." 15 U.S.C. § 1692a(6). "Thus, a 'debt collector' under the

10  FDCPA is either (1) 'a person' the 'principal purpose' of whose business is the collection

11  of debts (whether on behalf of himself or others); or (2) 'a person' who 'regularly'

12  collects debts on behalf of others (whether or not it is the principal purpose of his

13  business)." *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d at 1199. "To state a claim

14  for violation of the FDCPA, a plaintiff must allege that the defendant is a 'debt collector'

15  collecting a 'debt.'" *Id.* at 1199, quoting *Ines v. Countrywide Home Loans*, No.

16  08cv1267 WQH (NLS), 2008 WL 4791863, *2 (S.D.Cal. 2008).

17          "Foreclosing on a trust deed is distinct from the collection of the obligation to pay

18  money. The FDCPA is intended to curtail objectionable acts occurring in the process of

19  collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different

20  path. Payment of funds is not the object of the foreclosure action. Rather, the lender is

21  foreclosing its interest in the property." *Hulse v. Ocwen Federal Bank, FSB*, 195

22  F.Supp.2d 1188, 1204 (D. Ore. 2002), *cited with approval in. Vien-Phuong Thi Ho v.*

23  *ReconTrust Co., NA*, 858 F.3d 568, 572-573 (9th Cir. 2017).

24          The Ninth Circuit has held that the enforcement of a security interest is not

25  always debt collection within the meaning of the FDCPA. *Vien-Phuong Thi Ho v.*

26  *ReconTrust Co., NA*, 858 F.3d at 573. An entity does not become a "debt collector"

27  within the meaning of FDCPA if its only role in the debt collection process is the

28  enforcement of a security interest. *Id.* In *Vien-Phuong Thi Ho*, the communications

1    were limited to the foreclosure process and did not request payment. *Id.* at 574. The

2    communications merely informed the debtor that the foreclosure process began,

3    explained the foreclosure timeline, appraised her of her rights and stated should could

4    contact Countrywide if she wished to make a payment. *Id.* These communications

5    were entirely different form the harassing communications that the FDCPA was meant

6    to prevent. *Id.* The enforcement of a security interest often creates an incentive to pay

7    the underlying debt. *Id.* "If this were sufficient to transform the enforcement of security

8    interest into debt collection, then all the security enforcers would be debt collectors. This

9    would render meaningless the FDCPA's carefully drawn distinction between debt

10   collectors and enforcers of security interests, and expand the scope of the FDCPA well

11   past the boundary of clear congressional intent and common sense." *Id.*

12          Plaintiff cites to the Ninth Circuit's opinion in *Dowers v. Nationstar Mortgage,*

13   *LLC*, 852 F.3d 964 (9th Cir. 2017) wherein the Ninth Circuit referred its earlier decision

14   in *Ho v. ReconTrust Co., NA*, 840 F.3d 618 (9th Cir. 2016) as instructive as to a party

15   enforcing a security interest being a debt collector for purposes of 15 U.S.C. § 1692f(6).

16   *Id.* at 971. However, as held in *Dowers*, alleged conduct to enforce a security interest

17   may be actionable under 15 U.S.C. § 1692f(6) if "there is no present right to possession

18   of the property claimed as collateral through an enforceable security interest."   *Dowers*

19   *v. Nationstar Mortgage, LLC*, 852 F.3d at 971. Liberally construing the claim, Plaintiff

20   apparently alleges that Defendants did not have the present right to possession of the

21   property because their ownership and authority to act is in question. Here, the notice of

22   default to the borrower and former owner, Ms. Lam, was dated in 2016 before the

23   assignment of the deed of trust in 2017 to Defendant PennyMac Loan Services, LLC,

24   and the allonges transferring the interest in the note to this defendant are undated.

25   Defendants belatedly in their reply produce a copy of a letter to the borrower and former

26   owner, Ms. Lam, dated in 2015 before the notice of default indicating that the holder of

27   the note designated PennyMac Loan Services, LLC, as the servicer on the loan, which

28   may indicate that it had authority to issue the notice of default.

1    The complaint in this case alleges that the only acts by Defendants in violation of

2    the FDCPA are the issuance of the notice of default to the borrower and former owner,

3    Monica Lam, and future acts to enforce their security interest against the subject real

4    property through nonjudicial foreclosure.  Such allegations fail to state a claim upon

5    which relief can be granted under the FDCPA that Plaintiff may assert as to the notice of

6    default because Plaintiff lacks standing to complain of the notice of default as a violation

7    of the FDCPA since it was not directed to it, but to Ms. Lam.  Moreover, as to future acts

8    to enforce the security interest, such allegations fail to state a claim upon which relief

9    can be granted under the FDCPA because these acts which may violate the FDCPA

10    have not occurred, so there is no violation.  Besides, if Defendants only undertake acts

11    to enforce the security interest, such acts may not be the type of debt collection that

12    FDCPA was designed to prevent as held in *Vien-Phuong Thi Ho v. ReconTrust Co.,*

13    *NA., supra.*  However, the court will grant leave to amend at least once to allege a

14    plausible claim under the FDCPA, which must have a reasonable basis in fact and law

15    pursuant to Federal Rule of Bankruptcy Procedure 9011.  *See National Council of La*

16    *Raza v. Cegavske,* 800 F.3d at 1041-1042(citations omitted).

17    For the foregoing reasons, the court grants in part and denies in part the motion

18    as follows:

19    The motion as to the first cause of action for declaratory relief as to the stay relief

20    proceedings is granted, and the claim is dismissed for failure to state a claim upon

21    which relief can be granted with prejudice.

22    The motion as to the first cause of action for declaratory relief on grounds that

23    Defendant PennyMac Loan Services, LLC, does not have an ownership interest in the

24    note because the endorsements and allonges transferring an interest in the note to it

25    were not signed by Monica Lam, the borrower and former owner of the subject property

26    is granted, and the claim is dismissed for failure to state a claim upon which relief can

27    be granted with prejudice.

28    The motion as to the first cause of action for declaratory relief on grounds that

1  Defendant PennyMac Loan Services, LLC, does not have an ownership interest in the

2  note because the MERS assignment of the original deed of trust did not include an

3  assignment of the original note is granted, and the claim is dismissed for failure to state

4  a claim upon which relief can be granted with prejudice.

5        The motion as to the first cause of action for declaratory relief as to the alleged

6  loan satisfaction is granted, and the claim is dismissed for failure to state a claim upon

7  which relief can be granted with leave to amend within 30 days of entry of this order.

8        The motion as to the first cause of action for declaratory relief as to avoidance of

9  Defendants' alleged lien on the subject property is denied, and Defendants must serve

10  an answer to this claim within 14 days of the date of entry of this order. (The court

11  recognizes that Plaintiff may serve an amended complaint, which would supersede the

12  original complaint and any answer thereto.  However, Plaintiff may choose not to amend

13  its complaint by letting the 30-day leave period lapse, and the case will be at issue.)

14        The motion as to the second cause of action for claim disallowance declaratory

15  relief as to avoidance of Defendants' alleged lien on the subject property is denied, and

16  Defendants must serve an answer to this claim within 14 days of the date of entry of this

17  order.

18        The motion as to the third cause of action under the FDCPA, and the claim is

19  dismissed for failure to state a claim upon which relief can be granted with leave to

20  amend within 30 days of entry of this order.

21        The hearing on the motion noticed for May 1, 2018 at 3:00 p.m. is vacated.  No

22  appearances are required on May 1, 2018.

23  ///

24  ///

25

26

27

28

1       In light of the court's rulings in this order, the court on its own motion continues

2 the status conference set for June 5, 2018 at 1:30 p.m. to July 17, 2018 at 1:30 p.m.

3 and extends the deadline for filing a joint status report to July 10, 2018.

4       IT IS SO ORDERED.

5                       ###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: April 30, 2018

26                                  Robert Kwan
                                 United States Bankruptcy Judge

27

28

# EXHIBIT "9"

TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GRAND VIEW FINANCIAL, LLC,<br><br>        Debtor and Debtor in Possession. | Case No.:  2:17-bk-20125-RK<br><br>Chapter 11 Case<br><br>Adv. No. 2:18-ap-01035-RK |
| GRAND VIEW FINANCIAL, LLC,<br><br>                          Plaintiff,<br>v.<br><br>NATIONS DIRECT MORTGAGE, LLC;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>FIDELITY NATIONAL TITLE aka<br>FIDELITY NATIONAL TITLE COMPANY;<br>PENNYMAC LOAN SERVICES, LLC;<br>PENNYMAC CORP.; and<br>MASSACHUSETTS MUTUAL LIFE<br>INSURANCE COMPANY,<br><br>                          Defendants. | FIRST AMENDED COMPLAINT FOR:<br><br>(1)  DECLARATORY RELIEF;<br>(2)  DISALLOWANCE OF ANY CLAIMS<br>     OF PENNYMAC LOAN SERVICES,<br>     LLC; AND<br>(3)  VIOLATION OF FAIR DEBT<br>     COLLECTION PRACTICES ACT<br><br>Current Status Conference<br>Date:  October 2, 2018<br>Time:  1:30 p.m.<br>Place:  Courtroom 1675<br>        Roybal Federal Building<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

1    Plaintiff Grand View Financial, LLC, the Chapter 11 debtor and debtor in possession (the

2    "Debtor") in the above captioned Chapter 11 bankruptcy case (the "GV BK Case"), avers and

3    complains, by way of this First Amended Complaint, subject to amendment, as follows:

### JURISDICTION AND VENUE

5    1.    This adversary proceeding in the Chapter 11 GV BK Case, pending in the United

6    States Bankruptcy Court for the Central District of California, Los Angeles Division (the

7    "Bankruptcy Court"), is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

8    2.    This Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to

9    28 U.S.C. §§ 151, 157, 1334, and 2201, 15 U.S.C. § 1692k(d), and Local Rules and Orders of the

10    United States District Court for the Central District of California governing the reference and

11    conduct of proceedings arising under or related to cases under Title 11 of the United States Code,

12    including General Order No. 13-05, dated July 1, 2013.

13    3.    Venue is proper in this Bankruptcy Court under 28 U.S.C. § 1409(a), as this

14    adversary proceeding arises in, under, and/or in connection with a case under Title 11 which is

15    pending in this district.

16    4.    The Debtor consents to the entry of final judgments and orders by the Bankruptcy

17    Court in this adversary proceeding.

### PARTIES

19    5.    On August 17, 2017 (the "Petition Date"), the Debtor filed a Voluntary Petition

20    under Chapter 11 of the Bankruptcy Code.

21    6.    The Debtor is informed and believes and based thereon alleges that defendant

22    Nations Direct Mortgage, LLC (the "Original Lender") (a) is a California limited liability

23    company, (b) had its status as a California limited liability company suspended for a period of

24    time, (c) does business in California, and (d) is subject to the jurisdiction of this Bankruptcy

25    Court.

26    7.    The Debtor is informed and believes and based thereon alleges that defendant

27    Mortgage Electronic Registration Systems, Inc. ("MERS") (a) is a Delaware corporation

28

2

registered to do business in California, (b) does business in numerous states, including California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

8.      The Debtor is informed and believes and based thereon alleges that defendant Fidelity National Title aka Fidelity National Title Company (the "Original DOT Trustee") (a) is a California corporation, (b) does business in California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

9.      The Debtor is informed and believes and based thereon alleges that defendant PennyMac Loan Services, LLC ("PennyMac LLC") (a) is a Delaware limited liability company registered to do business in California, (b) filed two Statements of Information with the California Secretary of State indicating that was in the business of being a "Mortgage Servicer," (c) "services residential mortgage loans on behalf of non-affiliates and [affiliates of PennyMac Financial Services, Inc. ("PMSI")], purchases and originates new prime credit quality residential mortgage loans, and engages in other mortgage banking activities for its own account and the account [of an affiliate of PMSI], as reported by PMSI, the parent of PennyMac LLC, in certain of PMSI's filings with the Securities and Exchange Commission, and (d) is subject to the jurisdiction of this Bankruptcy Court.

10.     The Debtor is informed and believes and based thereon alleges that defendant PennyMac Corp. ("PennyMac Corp.") (a) is a Delaware corporation registered to do business in California, (b) does business in numerous states, including California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

11.     The Debtor is informed and believes and based thereon alleges that defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual" and, together with the Original Lender, MERS, Original DOT Trustee, PennyMac LLC, and PennyMac Corp., the "Defendants") (a) is a Massachusetts corporation registered to do business in California, (b) does business in numerous states, including California, and (c) is subject to the jurisdiction of this Bankruptcy Court.

12.     The Debtor is informed and believes and based thereon alleges that defendant PennyMac LLC (a) uses instrumentalities of interstate commerce and/or the mails in its business,

1    the principal purpose of which is the collection of debts, (b) regularly collects or attempts to

2    collect, directly or indirectly, debts owed or due or asserted to be owed and due to another, and/or

3    (c) regularly conducts non-judicial foreclosure sales as a purported foreclosure trustee under

4    deeds of trust.

5         13.    The Debtor is informed and believes and based thereon alleges that defendant

6    PennyMac LLC is a "debt collector," as that term is defined in 15 U.S.C. § 1692a(6), including,

7    *inter alia*, for purposes of 15 U.S.C. § 1692f(6), in regard to the Original Note (as defined below),

8    the Loan (as defined below), the Original Lender DOT (as defined below), and the PennyMac

9    LLC Claim, particularly because PennyMac LLC was not the originator of the Original Note (as

10    defined below), the Loan (as defined below), and the Original Lender DOT (as defined below)

11    and is only the purported successor in interest thereto and only became a purported successor in

12    interest thereto when there was an existing default under the Original Note (as defined below), the

13    Loan (as defined below), and/or the Original Lender DOT (as defined below).

14    **GENERAL ALLEGATIONS**

15    **THE FORMER OWNER'S ACQUISITION OF THE PROPERTY.**

16         14.    The Debtor is informed and believes and based thereon alleges that, on or about

17    October 10, 2015, Monika K. Lam (the "Former Owner") purchased real property located at 124

18    Illinois Street, Vallejo, California 94590 (the "Property"), which is located in Solano County.

19         15.    The Debtor is informed and believes and based thereon alleges that (a) the Former

20    Owner's purchase of the Property was financed by a loan (the "Loan") with a loan number ending

21    in 6290 from the Original Lender evidenced by a promissory note (the "Original Note") and (b)

22    the Loan under Original Note was purportedly secured by a Deed of Trust (the "Original Lender

23    DOT") issued by the Former Owner in favor of the Original Lender.

24         16.    A true and correct copy of the Original Note, together with one alleged

25    endorsement (the "Endorsement") of the Original Note and two alleged allonges (each an

26    "Allonge" and, collectively, the "Allonges") to the Original Note, is attached hereto as **Exhibit**

27    **"1."**

28

17.    The Debtor is informed and believes and based thereon alleges that, on or about October 19, 2015, the Original Lender recorded the Original Lender DOT with the Solano County Recorder.

18.    A true and correct copy of the Original Lender DOT is attached hereto as **Exhibit "2."**

19.    The Debtor is informed and believes and based thereon alleges that the Original DOT Trustee was named as the original trustee under the Original Lender DOT.

20.    The Debtor is informed and believes and based thereon alleges that the Original Lender DOT purports to provide that (a) MERS was the nominee of the Original Lender and the Original Lender's successors and assigns and (b) MERS was the beneficiary under the Original Lender DOT.

21.    The Debtor is informed and believes and based thereon alleges that the Original Lender DOT provides, *inter alia*, that (a) mortgage insurance ("Mortgage Insurance") might be required for the Loan, (b) the Original Lender DOT shall be governed by federal law and the law of the jurisdiction where the Property is located, which is California, (c) the Original Lender shall give notice of breaches under the Original Lender DOT, (d) only the Original Lender may invoke the power of sale under the Original Lender DOT, (e) "[u]pon payment of all Sums Secured by [the Original Lender DOT], the [Original Lender (or its successor in interest)] shall request [the Original DOT Trustee] to reconvey the Property and shall surrender [the Original Lender DOT and the Original Note] to [the Original DOT Trustee or its successor]" and "[the Original DOT Trustee or its successor] shall reconvey the Property without warranty to [the Former Owner (or his/her successor in interest)]," and (f) "[the Original] Lender, at its option, may from time to time appoint a successor trustee to [the Original DOT Trustee] appointed hereunder by an instrument executed and acknowledged by [the Original] Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the [the Original] Lender, [Original DOT Trustee, and the Former Owner], the book and page where this [Original Lender DOT] is recorded and the name and address of the successor to the [Original

1    DOT Trustee.] This procedure for substitution shall govern to the exclusion of all other provisions

2    for substitution."

3    **THE DEBTOR'S ACQUISITION OF THE PROPERTY.**

4         22.    The Debtor is informed and believes and based thereon alleges that, prior to the

5    Petition Date, until on or about November 1, 2016, the Property was owned by the Former Owner.

6         23.    On or about November 1, 2016, (a) the Debtor and the Former Owner executed a

7    Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (the "PSA"), (b) the

8    Debtor executed a Promissory Note (the "PSA Note") in favor of the Former Owner, and (c) the

9    Former Owner executed a Grant Deed (the "Grant Deed") conveying title to the Property to the

10    Debtor pursuant to the terms of the PSA and in exchange for the consideration provided under the

11    PSA and PSA Note.

12         24.    A true and correct copy of the PSA is attached hereto as **Exhibit "3."**

13         25.    A true and correct copy of the PSA Note is attached hereto as **Exhibit "4."**

14         26.    A true and correct copy of the Grant Deed is attached hereto as **Exhibit "5."**

15         27.    As of on or about November 1, 2016, the Debtor held title to and owned the

16    Property.

17         28.    On November 14, 2016, the Debtor recorded the Grant Deed with the Solano

18    County Recorder.

19         29.    At present, the Debtor and the Former Owner are parties to a Month to Month

20    Rental Agreement (the "Rental Agreement") pursuant to which the Former Owner rents the

21    Property from the Debtor in exchange for, *inter alia*, the payment of $1,000 per month in rent

22    (collectively, the "Rent Payments").

23    **ALLEGED TRANSFERS AND/OR ASSIGNMENTS OF THE ORIGINAL NOTE AND
ORIGINAL LENDER DOT TO PENNYMAC LLC; PENNYMAC LLC'S EFFORTS TO**

24    **ENFORCE THE ORIGINAL NOTE AND ORIGINAL LENDER DOT; THE**

25    **PURPORTED SALE OF THE ORIGINAL NOTE AND LOAN TO MASS MUTUAL; AND
EFFORTS TO EFFECTUATE A FORECLOSURE SALE OF THE PROPERTY.**

26         30.    Pursuant to the Endorsement on the Original Note, the Original Lender purported

27    to make the Original Note payable to PennyMac Corp.

28

6

1        31.     Pursuant to the first Allonge purportedly attached to the Original Note, PennyMac

2 Corp. purported to make the Original Note payable to PennyMac LLC.

3        32.     Pursuant to the second Allonge purportedly attached to the Original Note,

4 PennyMac Corp. purported to make the Original Note payable in blank.

5        33.     The Endorsement and Allonges are all undated so it is impossible to see the

6 sequence of the alleged execution of the purported Endorsement and Allonges.

7        34.     On December 21, 2016, PennyMac LLC sent a Notice of Default and Intent to

8 Accelerate the Original Loan (the "Notice of Default").

9        35.     A true and correct copy of the Notice of Default is attached hereto as **Exhibit "6."**

10        36.     Pursuant to the Notice of Default, PennyMac LLC identified itself as a "debt

11 collector" and indicated that the Notice of Default was being sent as "an attempt by a debt

12 collector to collect a debt."

13        37.     Under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.*,

14 PennyMac LLC could not be both the creditor on the Original Note and a debt collector on the

15 Original Note. Therefore, by no later than December 21, 2016, PennyMac LLC did not own the

16 Original Note and was merely a purported debt collector for the owner of the Original Note.

17        38.     Pursuant to the Notice of Default, PennyMac LLC asserted that the Original Note

18 and Loan were in default by no later than November 1, 2016.

19        39.     On February 2, 2017, PennyMac LLC sent a letter (the "2/2/17 Letter") to the

20 Former Owner.

21        40.     A true and correct copy of the 2/2/17 Letter is attached hereto as **Exhibit "7."**

22        41.     The 2/2/17 Letter, indicates, *inter alia*, that (a) the Original Note and Loan were

23 purportedly sold to Mass Mutual on February 1, 2017 and (b) PennyMac LLC would continue to

24 be the servicer for the Loan.

25        42.     On August 15, 2017, MERS purported to assign the Original Lender DOT, **but not**

26 **the Original Note**, to PennyMac LLC pursuant to an Assignment of Deed of Trust (the "DOT

27 Assignment").

28        43.     A true and correct copy of the DOT Assignment is attached hereto as **Exhibit "8."**

44.    The DOT Assignment is void, invalid, and ineffective, because, *inter alia,* (a) at the time of the alleged DOT Assignment, the Original Note and Loan had already purportedly been assigned to Mass Mutual such that MERS lacked authority to assign the Original Note and Loan and (b) PennyMac is only a loan servicer and, at the time of the purported DOT Assignment was only a loan servicer for the Original Note and Loan, and purported assignments of deeds of trust to loan servicers are void.

45.    The Debtor is informed and believes that PennyMac LLC is proceeding or will proceed with efforts to effectuate a foreclosure of the Property (the "Foreclosure") pursuant to a foreclosure sale (the "Foreclosure Sale") thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, PennyMac LLC will seek to transfer the Property to the winning bidder at the Foreclosure Sale (a "Transfer").

## PENNYMAC LLC'S PROOF OF CLAIM AND SATISFACTION OF THE LOAN.

46.    On October 30, 2017, PennyMac LLC filed proof of claim no. 5 (the "Claim 5").

47.    A true and correct copy of Claim 5 is attached hereto as **Exhibit "9."**

48.    Pursuant to Claim 5, PennyMac LLC (a) asserts that it is the creditor entitled to payment on the Loan, (b) asserts that, as of the date Claim 5 was filed, PennyMac LLC had a claim in the amount of $310,989.72 secured by the Original Lender DOT against the Property, (c)

49.    The attachments to Claim 5 indicate that the Loan was insured by Mortgage Insurance, because, *inter alia,* (a) the Mortgage Proof of Claim Attachment to Claim 5 indicates that each monthly mortgage payment on the Loan included a $203.63 payment for "Private Mortgage Insurance," and (b) the Annual Escrow Account Disclosure Statement attached to Claim 5 indicates that (i) it was sent to the Former Owner on September 5, 2017, (ii) PennyMac LLC had advanced $203.63 or more in each month from September 2016 through August 2017 for mortgage insurance, and (iii) PennyMac LLC expected to advance $203.63 each month from September 2017 through August 2018.

50.    In the Annual Escrow Account Disclosure Statement attached to Claim 5, PennyMac LLC again admits that is "is a debt collector" and that the Annual Escrow Account Disclosure Statement was "an attempt by a debt collector to collect a debt."

51.    The Notice of Default and 2/2/17 Letter reference a loan number ending in 2683; however, the Loan number on the Original Note ended in 6290.  Based on the foregoing and because the Loan was insured by Mortgage Insurance, the Debtor alleges that the Loan was satisfied by Mortgage Insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), who was required to reconvey the Property without warranty to the Former Owner (or his/her successor in interest).

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Pursuant to 28 U.S.C. § 2201)

### (Against All Defendants)

52.    The Debtor realleges each and every allegation contained in paragraphs 1 through 51, inclusive of this Complaint as if set forth fully herein.

53.    There is a present case and/or controversy between the Debtor, on one hand, and the Defendants, on the other hand, regarding:

a.    whether PennyMac LLC ever owned and had title to the Original Note and Original Lender DOT,

b.    whether PennyMac LLC has, or ever had, standing under the Original Note and Original Lender DOT to issue the Notice of Default and/or proceed with any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, to Transfer the Property to the winning bidder at the Foreclosure Sale,

c.    whether the Loan was satisfied by Mortgage Insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, whether the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the

1    Original DOT Trustee (or its successor in interest), and whether the Original DOT Trustee

2    (or its successor in interest) is required to reconvey the Property without warranty to the

3    Former Owner (or his/her successor in interest), and

4         d.    whether any of the Defendants has a lien on the Property pursuant to the

5    Original Lender DOT or otherwise.

6         54.    PennyMac LLC never owned and had title to the Original Note and Original

7    Lender DOT.

8         55.    PennyMac LLC never had standing under the Original Note and Original Lender

9    DOT to issue the Notice of Default and PennyMac LLC never had, and currently does not have,

10   standing under the Original Note and Original Lender DOT to proceed with any efforts to

11   effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the event

12   PennyMac LLC conducts a Foreclosure Sale, to Transfer the Property to the winning bidder at the

13   Foreclosure Sale.

14        56.    The Loan was satisfied by Mortgage Insurance proceeds or otherwise and/or

15   replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender

16   DOT, the Original Lender (or its successor in interest) is required to request that the Original

17   DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original

18   Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), and

19   the Original DOT Trustee (or its successor in interest) is required to reconvey the Property

20   without warranty to the Former Owner (or his/her successor in interest).

21        57.    None of the Defendants has a lien on the Property pursuant to the Original Lender

22   DOT or otherwise.

23        58.    The Debtor is entitled to a declaratory judgment establishing that:

24        a.    PennyMac LLC never owned and had title to the Original Note and

25   Original Lender DOT,

26        b.    PennyMac LLC never had standing under the Original Note and Original

27   Lender DOT to issue the Notice of Default and PennyMac LLC never had, and currently

28   does not have, standing under the Original Note and Original Lender DOT to proceed with

1    any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale

2    thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, to Transfer the

3    Property to the winning bidder at the Foreclosure Sale,

4          c.     The Loan was satisfied by Mortgage Insurance proceeds or otherwise

5    and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the

6    Original Lender DOT, the Original Lender (or its successor in interest) is required to

7    request that the Original DOT Trustee (or its successor in interest) reconvey the Property

8    and to surrender the Original Lender DOT and the Original Note to the Original DOT

9    Trustee (or its successor in interest), and the Original DOT Trustee (or its successor in

10    interest) is required to reconvey the Property without warranty to the Former Owner (or

11    his/her successor in interest), and

12          d.     None of the Defendants has a lien on the Property pursuant to the Original

13    Lender DOT or otherwise.

14                  **SECOND CLAIM FOR RELIEF**

15        **(For Disallowance of Claim 5 Pursuant to 11 U.S.C. § 502(b))**

16                  **(Against PennyMac LLC)**

17        59.     The Debtor realleges each and every allegation contained in paragraphs 1 through

18    58, inclusive, of this Complaint as if set forth fully herein.

19        60.     The Claim 5, and any other claim of PennyMac LLC based on or arising from the

20    Original Note and Original Lender DOT, are unenforceable against the Debtor and property of the

21    Debtor and, therefore, must be disallowed under 11 U.S.C. § 502(b)(1).

22                  **THIRD CLAIM FOR RELIEF**

23    **(For Damages for Violation of the Fair Debt Collection Practices Act Pursuant to 15 U.S.C.**

24                     **§§ 1692 et seq.)**

25               **(Against Defendant PennyMac LLC)**

26        61.     The Debtor realleges each and every allegation contained in paragraphs 1 through

27    60, inclusive, of this Complaint as if set forth fully herein.

28        62.     PennyMac LLC (a) took non-judicial action to effect the dispossession or

1  disablement of the Property by issuing or causing to be issued the Notice of Default, (b) will take

2  non-judicial action to effect the dispossession or disablement of the Property by proceeding with

3  any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and,

4  in the event PennyMac LLC conducts a Foreclosure Sale, by effectuating any Transfer the

5  Property to the winning bidder at the Foreclosure Sale, and (c) made and used false, deceptive, or

6  misleading representations in connection with seeking to recover on alleged obligations under the

7  Original Note and Original Lender DOT by filing Claim 5, which makes a false representation as

8  to the character and/or legal status of the alleged obligations under the Original Note and Original

9  Lender DOT and a threat to seek to recover on the alleged obligations under the Original Note

10 and Original Lender DOT (collectively, the "Conduct").

11         63.    At the time the Conduct occurred or will occur, PennyMac LLC had or will have

12 had (a) no claim under the Original Note and/or Original Lender DOT and (b) no present right to

13 possession of the Property claimed as collateral under the Original Lender DOT and the Original

14 Lender DOT did not create an enforceable security interest in the Property in favor of PennyMac

15 LLC.

16         64.    The Conduct violated and/or will violate 15 U.S.C. §§ 1692e(2) and/or (5) and/or

17 1692f(6).

18         65.    The Debtor is entitled to actual damages according to proof at trial from PennyMac

19 LLC pursuant to 15 U.S.C. § 1692k(a).

20                              **PRAYER FOR RELIEF**

21         **WHEREFORE,** the Debtor prays for judgment as follows:

22         1.     On the First Claim for Relief: A declaratory judgment against the Defendants

23 establishing that

24                a.     PennyMac LLC never owned and had title to the Original Note and

25         Original Lender DOT,

26                b.     PennyMac LLC never had standing under the Original Note and Original

27         Lender DOT to issue the Notice of Default and PennyMac LLC never had, and currently

28         does not have, standing under the Original Note and Original Lender DOT to proceed with

12

any efforts to effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof and, in the event PennyMac LLC conducts a Foreclosure Sale, to Transfer the Property to the winning bidder at the Foreclosure Sale,

    c.    The Loan was satisfied by Mortgage Insurance proceeds or otherwise and/or replaced by a new loan such that the Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), and the Original DOT Trustee (or its successor in interest) is required to reconvey the Property without warranty to the Former Owner (or his/her successor in interest), and

    d.    None of the Defendants has a lien on the Property pursuant to the Original Lender DOT or otherwise.

    2.    On the Second Claim for Relief: A judgment against PennyMac LLC disallowing Claim 5, and any other claim of PennyMac LLC based on or arising from the Original Note and Original Lender DOT, pursuant to 11 U.S.C. § 502(b)(1).

    3.    On the Third Claim for Relief: A judgment against PennyMac LLC (a) establishing that the Conduct violated 15 U.S.C. §§ 1692e(2) and/or (5) and/or 1692f(6) and (b) for actual damages according to proof at trial resulting from the Conduct pursuant to 15 U.S.C. § 1692k(a).

    4.    On all Claims for Relief: A judgment granting such other and further relief as the Bankruptcy Court deems just and proper.

Dated: September 5, 2018          LEVENE, NEALE, BENDER, YOO
                             & BRILL L.L.P.

                             By:   /s/ Todd M. Arnold
                                TODD M. ARNOLD
                          Attorneys for Debtor and Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

1

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

3

4

5

6

7

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER: (1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,   ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS, SUBJECT TO OVERBID, (2) FINDING THAT THE BUYER IS GOOD FAITH PURCHASER, (3) APPROVING BIDDING PROCEDURES AND BREAK-UP FEE, (4) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS, AND (5) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

8

9

10

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 7, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Todd M Arnold    tma@lnbyb.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Matthew R. Clark    bankruptcyecfs@gmail.com, mclark@ecf.courtdrive.com
- Theron S Covey    tcovey@rasflaw.com, CAECF@tblaw.com
- Jered T Ede    jede@hallgriffin.com, cgallardo@hallgriffin.com
- Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Can Guner    cguner@rasflaw.com
- Jamie D Hanawalt    ecfcacb@aldridgepite.com, jhanawalt@ecf.inforuptcy.com
- Matthew S Henderson    matthew.henderson@piblaw.com, marian.flores@piblaw.com
- Laurie Howell    laurie.howell@tflglaw.com
- Chi L Ip    filing@lawyer4property.com, jenny@lawyer4property.com
- Merdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Ian Landsberg    ian@landsberg-law.com, casey@landsberg-law.com;lisa@landsberg-law.com;diana@landsberg-law.com;yesi@landsberg-law.com;ilandsberg@ecf.inforuptcy.com
- Megan E Lees    caecf@tblaw.com, MEL@ecf.inforuptcy.com
- Richard D Marks    RDMarks@rdmpc.com
- Angie M Marth    amarth@logs.com, ssali@logs.com
- Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
- Vinod Nichani    vinod@nichanilawfirm.com, vnichani1978@gmail.com
- Michael G Olinik    michael@oliniklaw.com, rachael@callahanfirm.com
- David M Poitras    dpoitras@jmbm.com, bt@jmbm.com;vr@jmbm.com;dmp@ecf.inforuptcy.com
- Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Cassandra J Richey    cdcaecf@bdfgroup.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Edward G Schloss    egs2@ix.netcom.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- Bethany Wojtanowicz    bethanyw@w-legal.com, BNC@w-legal.com
- Hatty K Yip    hatty.yip@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

- Kristin A Zilberstein    ecfnotifications@ghidotlilaw.com

**2.  SERVED BY UNITED STATES MAIL**: On **November 7, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**RSN** U.S. BANK NATIONAL ASSOCIATION. AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE TRUST 2005-A3, MORTAGE PASS-THROUGH CERTIFICATES
C/O RAS CRANE. LLC
BANKRUPTCY DEPARTMENT
10700 ABBOTT'S BRIDGE ROAD
SUITE 170
DULUTH, GA 30097

Amador County Tax Collector **RSN**
Attn: Michael E. Ryan
810 Court Street
Jackson, CA 95642

☒ *Service information continued on attached page*

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 7, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Robert N. Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682
/ Courtroom 1675
Los Angeles, CA 90012

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 7, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

In re Grand View Financial LLC
124 Illinois Sale Mtn Service List
File No. 8277
Service by U.S. Mail

**RSN** U.S. BANK NATIONAL ASSOCIATION.
AS TRUSTEE, SUCCESSOR IN INTEREST
TO WACHOVIA BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR J.P.
MORGAN MORTGAGE TRUST 2005-A3,
MORTAGE PASS-THROUGH CERTIFICATES
C/O RAS CRANE. LLC
BANKRUPTCY DEPARTMENT
10700 ABBOTT'S BRIDGE ROAD
SUITE 170
DULUTH, GA 30097

Grand View Financial LLC
8939 S Sepulveda Blvd.,Suite 103
Los Angeles, CA 90045

Kenneth G Lau
Office of the United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Buyer Broker:
Michael Mau
Norcal Gold Inc
5200 SUNRISE BLVD STE 5
FAIR OAKS, CA 95628

Buyer Broker:
Michael Mau
Norcal Gold Inc
426 FIRST STREET
BENICIA, CA 94510

Alleged Secured Creditor:
PennyMac Loan Services, LLC
6101 Condor Drive, Suite 200
Moorpark, CA 93021

Alleged Secured Creditor:
PennyMac Loan Services, LLC
P.O. Box 660929
Dallas, TX 75266-0929

Alleged Secured Creditor Counsel:
PennyMac Loan Services, LLC
c/o Tiffany & Bosco, P.A./
Attn: Robert P. Zahradka
1230 Columbia Street, Suite 680
San Diego, CA 92101

Solano County Tax Collector
Attn: Joseph M. Fegurgur
675 Texas St # 1900,
Fairfield, CA 94533

Former Owner:
Monica Lam
124 Illinois Street
Vallejo, CA 94590-3854

Former Affiliate DOT Holders
North Park Investments LLC
Upscale Financial LLC
Refreshing Resources, LLC
Attn: Steve Rogers
8939 S. Sepulveda Blvd., Suite 103
Los Angeles, CA 90045

Vallejo Sanitation & Flood Control District
450 Ryder St.
Vallejo, CA 94590