TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GRAND VIEW FINANCIAL, LLC,<br><br>      Debtor and Debtor in Possession. | Case No.: 2:17-bk-20125-RK<br><br>Chapter 11 Case<br><br>**DEBTOR'S (1) FOURTH CHAPTER 11 CASE STATUS REPORT AND (2) REQUEST TO CONTINUE STATUS CONFERENCE**<br><br><u>Hearing:</u><br>DATE:    January 8, 2019<br>TIME:    1:30 p.m.<br>PLACE:  Courtroom 1675<br>                 255 E. Temple St.<br>                 Los Angeles, CA 90012 |

      Grand View Financial, LLC, the Chapter 11 debtor and debtor in possession herein (the "<u>Debtor</u>"), respectfully submits this fourth status report (the "<u>Fourth Report</u>") in compliance with the *Order Setting Scheduling And Case Management Conference* entered by the Court, the continued Chapter 11 status conferences held by the Court after the initial Chapter 11 status conference, and the Debtor's First Chapter 11 Case Status Report (the "<u>First Report</u>") and Debtor's Second Chapter 11 Case Status Report and Third Chapter 11 Case Status Report filed in connection therewith.

1

A. **BRIEF DESCRIPTION OF THE DEBTOR'S BUSINESS AND OPERATIONS, IF ANY, AND THE PRINCIPAL ASSETS AND LIABILITIES OF THE ESTATE.**

1. **GENERAL BACKGROUND.**

On August 17, 2017 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").[1] The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108. An Official Committee of Unsecured Creditors has not been formed.

2. **THE DEBTOR'S BUSINESS AND REAL PROPERTY.**

The Debtor is a Wyoming limited liability company that was formed in 2015. The Debtor is in the business of acquiring distressed real property (each a "Property" and, collectively, the "Properties") in situations where public records and documents available to the Debtor demonstrate that the claim allegedly secured by the underlying subject Property (each an "Alleged Secured Claim" and, collectively, the "Alleged Secured Claims") and the related trust deed purportedly securing the Alleged Secured Claim pursuant to a lien on the subject Property (each an "Alleged Lien" and, collectively, the "Alleged Secured Liens") suffer from defects rendering the Alleged Secured Claim and/or related Alleged Lien unenforceable and/or invalid. The defects are often the same defects that were part of the mortgage crisis and resulting implosion of the U.S. economy 2007 and/or were the result of efforts by surviving lenders, servicers, and mortgage trustees to quickly foreclose on and liquidate real estate assets without following applicable law.

In situations where the Debtor identifies a Property it is interested in acquiring, the Debtor seeks to enter into a group of agreements with the then owner of the Property (each a "Former Owner" and, collectively, the "Former Owners") intended to mutually benefit the Debtor and the Former Owner. In a typical transaction in which the Debtor acquires a Property:

---

[1] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

2

(a)    the Debtor and the Former Owner execute a Real Estate Shared-Equity Transaction & Purchase and Sale Agreement (each a "Sale Agreement" and, collectively, the "Sale Agreements") pursuant to which, among other things, the Former Owner sells the subject Property to the Debtor in exchange for an Unsecured Promissory Note (each an "Unsecured Note" and, collectively, the "Unsecured Notes") from the Debtor in a mutually agreed upon amount, which Unsecured Note is only payable in the event the Debtor is able to eliminate the Alleged Lien on the Property (at the sole expense of the Debtor) thereby increasing the equity in the Property, which is to be shared between the Former Owner and the Debtor according to the terms of the subject Sale Agreement and Unsecured Note;

(b)    the Former Owner executes a Grant Deed (or sometimes a Warranty Deed or Quitclaim Deed) transferring title to the Property to the Debtor; and

(c)    the Debtor and the Former Owner execute a Month to Month Rental Agreement (each a "Rental Agreement" and, collectively, the "Rental Agreements") whereby the Former Owner leases back the Property from the Debtor.

Through the Petition Date, the Debtor acquired 42 Properties. In the ordinary course of its business, the Debtor acquired an additional three Properties after the Petition Date, and the Debtor may acquire other Properties. Unfortunately, prior to the Petition Date, approximately 28 of the 45 Properties (each a "Foreclosure Property" and, collectively, the "Foreclosure Properties") were purportedly foreclosed upon. The Debtor has decided to stop pursuing recovery on 22 of the Foreclosed Properties. Thus, at present, the Debtor has an interest in and/or is pursuing recovery on approximately 23 Properties.

B.    **THE PRINCIPAL ASSETS AND LIABILITIES OF THE DEBTOR AND ITS ESTATE.**

The Debtor's principal assets are the Properties in which the Debtor has an interest, which have an estimated current fair market value of approximately $33.2 million.

The Debtor's principal liabilities include the Alleged Secured Claims, which are allegedly secured by the Alleged Liens on the Properties, and which Alleged Secured Claims

total approximately $25.067 million. As discussed herein, the Debtor disputes the validity of the Alleged Secured Claims and Alleged Liens and intends to challenge them in the context of the Debtor's bankruptcy case. The Debtor also challenges the validity of the foreclosures on the Foreclosed Properties. The elimination of some or all of the Alleged Secured Claims and Alleged Liens and the recovery of some or all of the Foreclosed Properties would create substantial equity in the Properties for the benefit of the holders of other allowed claims and interests.

The second principal liability of the Debtor is for general unsecured claims evidenced by the Unsecured Notes, which were issued by the Debtor to the Former Owners as part of the consideration in exchange for the Properties. The claims evidenced by the Unsecured Notes total approximately $15.7 million.

**C.    WHAT PRECIPITATED THE BANKRUPTCY FILING?**

On the Petition Date of August 17, 2017, the Debtor filed the instant Chapter 11 bankruptcy case in order to, *inter alia*, (1) address and resolve various claims against the Debtor, including, but not limited to the Alleged Secured Claims, (2) where necessary, invalidate purported pre-Petition Date foreclosures on the Foreclosure Properties and/or avoid alleged transfers pursuant to purported pre-Petition Date foreclosures on the Foreclosure Properties and recover title to the Foreclosed Properties, (3) facilitate the sale of the Debtor's Properties free and clear of all liens, claims, and interests, and (4) propose and confirm a Chapter 11 plan of reorganization.

As of the Petition Date, the Debtor intended (1) to initiate adversary proceedings (each an "Adversary" and, collectively, the "Adversary Proceedings") and/or claim objections (each a "Claim Objection" and, collectively, the "Claim Objections") to (a) invalidate, reverse, or avoid the purported foreclosures on the Foreclosure Properties and (b) challenge and eliminate all of the Alleged Secured Claims and related Alleged Liens, (2) to sell the resulting unencumbered Properties for the highest and best price (subject to any rights of first refusal a Former Owner may have to repurchase the subject Property), and (3) to propose and confirm a Plan whereby all

4

allowed secured claims (which the Debtor believes will be limited to some tax claims against certain of the Properties), administrative claims, priority claims, and general unsecured claims (largely if not entirely comprised of amounts payable to the Former Owners pursuant to the Unsecured Notes) will be paid in full, with the surplus distributed to the Debtor's owners, which was the Debtor's original exit strategy.

While the Debtor disputes the enforceability and validity of the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties and/or the standing of the parties effectuating the foreclosures and, therefore, the validity of the purported foreclosures on the Foreclosure Properties, the Debtor has decided to somewhat alter its original bankruptcy and exit strategy.  More specifically, the Debtor took actions, including the initiation of Adversary Proceedings (which included Claim Objections), in an effort to invalidate, reverse, or avoid the purported foreclosures on certain of the Foreclosure Properties and to challenge certain related the Alleged Secured Claims and Alleged Liens forming the purported basis for the foreclosures on the Foreclosure Properties.  However, the Debtor, in an exercise of its business judgment, later determined that the cost of pursuing most other potential Adversary Proceedings and Claim Objections likely outweighed the benefit to be gained in such Adversary Proceedings and Claim Objections, particularly when considering prior results before this Court, the costs of litigating the Adversary Proceedings and Claim Objections, and the delay and risks inherent in litigating Adversary Proceedings and Claim Objections pertaining to the Foreclosed Properties that are the subject of the Rejected Purchase Agreements (as defined below).

Based on the foregoing and other factors, the Debtor, in an exercise of its business judgment, decided that it made better sense to reject 22 of the 28 all of the Purchase Agreements relating to Foreclosed Properties (the "Rejected Purchase Agreements"), to stop seeking recovery on such Foreclosed Properties, and to instead focus on selling the 17 Properties that are non-Foreclosed Properties and continuing to litigate Adversary Proceedings and Claim Objections related to six of the Foreclosed Properties.

The Debtor intends to seek to sell such non-Foreclosed Properties free and clear of liens, claims, encumbrances, and interests (with certain exceptions), with such liens, claims, encumbrances, and interests attaching to the proceeds of sale. Once non-Foreclosed Properties are sold, to the extent a consensual resolution cannot be reached regarding the disposition of sale proceeds as among the Debtor and any holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners), the Debtor will litigate, in contested Claim Objections or Adversary Proceedings, with the holders of Alleged Secured Claims and Alleged Secured Liens (and possibly any Former Owners) pertaining to the non-Foreclosed Properties, to determine their claims and, therefore, the appropriate distribution of the proceeds from the sale of the subject non-foreclosed Property.

The Debtor already initiated seven adversary proceedings (the "<u>Adversaries</u>") to challenge certain Alleged Secured Claims and Alleged Liens, as well as certain foreclosures on certain Foreclosed Properties. To date, five of the Adversaries were voluntarily dismissed and the other two are pending.

The Debtor believes that the foregoing is more likely to result in a higher net benefit to the estate than litigating all Adversary Proceedings and Claim Objections regarding the Foreclosed Properties.

**D.    WHAT DOES THE DEBTOR HOPE TO ACCOMPLISH IN THIS CHAPTER 11 CASE?**

*See* Paragraph C above.

**E.    WHAT ARE THE PRINCIPAL DISPUTES OR PROBLEMS LIKELY TO BE ENCOUNTERED DURING THE COURSE OF THE DEBTOR'S REORGANIZATION EFFORTS?**

The principle disputes likely to be encountered during the course of the Debtor's reorganization relate to the Debtor's efforts to recover interests in Properties purportedly foreclosed upon pre-petition pursuant to the Adversaries and to challenge and eliminate some or all of the Alleged Secured Claims and/or Alleged Liens pursuant to settlement, Adversaries, Claim Objections, or other appropriate procedural means.

**F.    HOW DOES THE DEBTOR RECOMMEND THAT THESE DISPUTES BE RESOLVED AND WHY?**

The Debtor recommends that the disputes between the Debtor and the holders of the Alleged Secured Claims (the "Alleged Secured Creditors") and any parties that foreclosed on the Foreclosed Properties be resolved through settlement, Adversaries, Claim Objections, or other appropriate procedural means.

**G.    HAS THE DEBTOR COMPLIED WITH ALL OF HER DUTIES UNDER 11 U.S.C. §§ 521, 1106 AND 1107 AND ALL APPLICABLE GUIDELINES OF THE OFFICE OF THE UNITED STATES TRUSTEE?**

The Debtor submitted its 7-Day Package with the UST and the Debtor believes that the 7-Day Package is now complete.

The Debtor timely filed its Schedules of Assets and Liabilities, Statement of Financial Affairs (the "Schedules") and other related documents on the Petition Date.  On February 27, 2018, the Debtor filed amended Schedules (the "Amended Schedules").

The Debtor appeared at its Initial Debtor Interview.  The Debtor appeared at, and participated in, its Section 341(a) Meeting of Creditors on September 9, 2017, which was continued to November 21, 2017 to allow for additional questions by the UST and creditors that appeared at the initial Section 341(a) Meeting of Creditors and so that the UST and such creditors could also ask questions to Robert Sedlar, the Debtor's President, who was unable to attend the initial Section 341(a) Meeting of Creditors, at which the Steve Rogers, the Debtor's Managing Member and Vice President appeared on behalf of the Debtor.  The Debtor attended, and participated in, the continued Section 341(a) Meeting of Creditors held on November 21, 2017 through the appearance of Mr. Sedlar.  The Debtor attended, and participated in, the continued Section 341(a) Meeting of Creditors held on April 3, 2018 through the appearance of Mr. Rogers and Mr. Sedlar and at the further continued Section 341(a) Meeting of Creditors held on May 15, 2018.  In connection with the foregoing Section 341(a) Meetings of Creditors, the Debtor has produced numerous documents to the UST per its request.  After the foregoing, the UST concluded the Debtor's Section 341(a) Meeting of Creditors.

**H.     DO ANY PARTIES CLAIM AN INTEREST IN CASH COLLATERAL OF THE DEBTOR?**

The Debtor believes that the Alleged Secured Creditors claim an interest in the rents from the Debtor's Properties upon which the Alleged Secured Creditors have Alleged Liens as the Alleged Secured Creditor's cash collateral.  As discussed above, the Debtor disputes and intends to challenge the Alleged Secured Creditors' Alleged Secured Claims and Alleged Liens.  With that said, the Debtor acknowledges that it cannot utilize any alleged cash collateral without consent from the appropriate Alleged Secured Creditors or an order of the Bankruptcy Court.  Therefore, at present, the Debtor is not spending any rent proceeds from the Properties.

**I.     IS THE DEBTOR USING CASH THAT ANY PARTY CLAIMS AS ITS CASH COLLATERAL?**

Per Paragraph H, the Debtor is not using any cash that any party claims as its cash collateral.

**J.     THE IDENTITY OF ALL PROFESSIONALS RETAINED OR TO BE RETAINED BY THE ESTATE, THE DATES ON WHICH APPLICATIONS FOR EMPLOYMENT OF SUCH PROFESSIONALS WERE FILED, THE DATES ON WHICH ORDERS WERE ENTERED, AND A GENERAL DESCRIPTION OF THE TYPE OF SERVICES TO BE RENDERED BY EACH OR THE PURPOSE OF THE EMPLOYMENT.**

On August 29, 2017, the Debtor filed and served its application to employ Levene, Neale, Bender, Yoo & Brill L.L.P. as the Debtor's general bankruptcy counsel to, among other things, prosecute the bankruptcy case, Avoidance Actions, and Claim Objections.  On October 30, 2017, the Court entered an order granting the application.

On September 20, 2017, the Debtor filed and served its application to employ Keller Williams Realty and KW Commercial as the Debtor's real estate broker in connection with the sale of any of the Properties.  On November 3, 2017, the Court entered an order granting the application.

On November 29, 2017, the Debtor filed and served its application to employ Landsberg Law APC as the Debtor's special litigation counsel to represent the Debtor in regard to land-lord tenant disputes, including unlawful detainer actions.  On December 20, 2017, the Court entered

an order granting the application.

The Debtor intends to file applications to employ an accountant and special litigation counsel for a probate action regarding one of the Properties that is proceeding after the plaintiff therein obtained relief from stay.

### K. IN OPERATING CASES, EVIDENCE REGARDING PROJECTED INCOME AND EXPENSES FOR THE FIRST SIX MONTHS OF THE CASE.

A true and correct copy of a cash flow budget for the first six months of the case is attached hereto as Exhibit "1," which is the same budget that was attached to the First Report.

### L. PROPOSED DEADLINES FOR THE FILING OF CLAIMS AND OBJECTIONS.

The Court set a general claims bar date of May 4, 2018 and the Debtor provided notice thereof to all creditors and parties in interest.

### M. PROPOSED DEADLINE FOR THE FILING OF A PLAN AND DISCLOSURE STATEMENT.

As discussed above, the extent of equity in the Properties that can be utilized to fund a plan is largely dependent upon (1) the Debtor's success in prosecuting the Adversaries and Claim Objections and (2) the ultimate sales price received from sales of the Properties. Given the foregoing, the Debtor respectfully submits that it is premature to set a deadline for the filing of a disclosure statement and plan.

On a related note, to date, the Debtor has sought and obtained extensions of the Debtor's exclusivity periods.

### N. A DISCUSSION OF ANY SIGNIFICANT UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO WHICH THE DEBTOR IS A PARTY AND THE DEBTOR'S INTENTIONS WITH REGARD TO THESE LEASES AND CONTRACTS.

The Debtor is party to a number of month-to-month Rental Agreements pursuant to which the Debtor, as landlord, leases certain Properties back to the Former Owners or other third parties. Assuming tenants remain current on rent payment obligations, the Debtor intends to keep such Rental Agreements intact pending successful Claim Objections and subsequent sales

of Properties.  With that said, as noted above, the Debtor may reject Sale Agreements and Rental Agreements with Former Owners regarding many or all of the Foreclosed Properties.

O. **REQUEST TO CONTINUE STATUS CONFERENCE.**

The Debtor respectfully requests that the Chapter 11 Status Conference be continued for 120 to 180 days so that the Debtor can continue to facilitate its exit strategy.  At that point, the Debtor will have more to report to the Court.

Dated:  December 26, 2018            **GRAND VIEW FINANCIAL, LLC**

By: *Todd M. Arnold*
TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO
 & BRILL L.L.P.
Attorneys for Debtor and
Debtor in Possession

**EXHIBIT "1"**

| | | August 17 - 31, 2017 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | TOTAL | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH (Approx.)** | | $ 8,477.58 | $ 8,477.58 | $ 29,485.58 | $ 50,168.58 | $ 71,176.58 | $ 92,184.58 | $ 112,867.58 | | |
| | | | | | | | | | | |
| **INCOME** | | | | | | | | | | |
| RENT | | $ - | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 126,048.00 | |
| OTHER | | $ - | $ - | $ - | $ - | | | | $ - | |
| | | | | | | | | | | |
| TOTAL INCOME | | $ - | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 21,008.00 | $ 126,048.00 | |
| **EXPENSES*** | | | | | | | | | | |
| REAL PROPERTY INSURANCE | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| PAYROLL | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| LEGAL | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | Accrued |
| ALLEGED SECURED CREDITOR PAYMENTS | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | No payments on disputed /invalid claims |
| UTILITIES | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| OFFICE RENT | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| BANK FEES | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| REAL PROPERTY TAXES | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| U.S. TRUSTEE FEES | | $ - | $ - | $ 325.00 | $ - | $ - | $ 325.00 | $ - | $ 650.00 | |
| | | | | | | | | | | |
| TOTAL EXPENSE | | $ - | $ - | $ 325.00 | $ - | $ - | $ 325.00 | $ - | $ 650.00 | |
| | | | | | | | | | | |
| **ENDING CASH:** | | $ 8,477.58 | $ 29,485.58 | $ 50,168.58 | $ 71,176.58 | $ 92,184.58 | $ 112,867.58 | $ 133,875.58 | | |

\* Any amounts to be paid will be paid from (1) non-cash collateral funds, (2) cash collateral funds with the consent of the appropriate Alleged Secured Creditor or an order of the Court, or (3) equity contributions or gifts from third-parties.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DEBTOR'S (1) FOURTH CHAPTER 11 CASE STATUS REPORT AND (2) REQUEST TO CONTINUE STATUS CONFERENCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 26, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Marcus T Brown    marcus@marcusbrownlaw.com, sarah@marcusbrownlaw.com
- Matthew R. Clark    bankruptcyecfs@gmail.com, mclark@ecf.courtdrive.com
- Theron S Covey    tcovey@rasflaw.com, CAECF@tblaw.com
- Douglas A Crowder    dcrowder@crowderlaw.com, bknotices@americandebtlaw.com
- Jered T Ede    jede@hallgriffin.com, cgallardo@hallgriffin.com
- Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Can Guner    cguner@rasflaw.com
- Jamie D Hanawalt    ecfcacb@aldridgepite.com, jhanawalt@ecf.inforuptcy.com
- Matthew S Henderson    matthew.henderson@piblaw.com, marian.flores@piblaw.com;yamileth.moore@piblaw.com
- Laurie Howell    laurie.howell@tflglaw.com
- Merdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Ian Landsberg    ian@landsberg-law.com, casey@landsberg-law.com;lisa@landsberg-law.com;diana@landsberg-law.com;yesi@landsberg-law.com;ilandsberg@ecf.inforuptcy.com
- Nancy L Lee    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com
- Megan E Lees    caecf@tblaw.com, MEL@ecf.inforuptcy.com
- Richard D Marks    RDMarks@rdmpc.com
- Angie M Marth    amarth@logs.com, ssali@logs.com
- Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com
- Vinod Nichani    vinod@nichanilawfirm.com, vnichani1978@gmail.com
- Michael G Olinik    michael@oliniklaw.com, rachael@callahanfirm.com
- David M Poitras    dpoitras@wedgewood-inc.com, dpoitras@jmbm.com;dmarcus@wedgewood-inc.com;aguisinger@wedgewood-inc.com
- Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Cassandra J Richey    cdcaecf@bdfgroup.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Edward G Schloss    egs2@ix.netcom.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- Bethany Wojtanowicz    bethanyw@w-legal.com, BNC@w-legal.com
- Hatty K Yip    hatty.yip@usdoj.gov
- Kristin A Zilberstein    ecfnotifications@ghidottilaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

2. **SERVED BY UNITED STATES MAIL**: On **December 26, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Robert N. Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682
/ Courtroom 1675
Los Angeles, CA 90012

☒ *Service information continued on attached page*

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 26, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 26, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                      **F 9013-3.1.PROOF.SERVICE**

Grand View Financial LLC
20 Largest
File No. 8277

Grand View Financial LLC
8939 S Sepulveda Blvd.,Suite 103
Los Angeles, CA 90045

Kenneth G Lau
Office of the United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

**RSN** U.S. BANK NATIONAL ASSOCIATION.
AS TRUSTEE, SUCCESSOR IN INTEREST
TO WACHOVIA BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR J.P.
MORGAN MORTGAGE TRUST 2005-A3,
MORTAGE PASS-THROUGH
CERTIFICATES
C/O RAS CRANE. LLC
BANKRUPTCY DEPARTMENT
10700 ABBOTT'S BRIDGE ROAD
SUITE 170
DULUTH, GA 30097

Amador County Tax Collector **RSN**
Attn: Michael E. Ryan
810 Court Street
Jackson, CA 95642

Angela Leung
3217 Acalanes Avenue
Lafayette, CA 94549-3206

Daniel Golden
21360 Crestwind Drive
San Marcos, CA 92078-5000

David & Leah Manaoat
102 Sonora Court
Oakley, CA 94561-3953

E. Greg Somerville
4916 Saint Andrews Drive
Stockton, CA 95219-1917

Ellen & Clyde Davenport
5555 Thayer Lane
San Ramon, CA 94582-3067

Frankie Cheung
1765 Valdez Way
Fremont, CA 94539-3662

Gary & Johanna Lohse
7394 N Meridian Road
Vacaville, CA 95688-9607

Heather Hartig
324 Manor Drive
Pacifica, CA 94044

James Yocum
3417 Danner Circle
Birmingham, AL 35243

John & Sonja Tombarelli
4129 South Conklin Road
Greenacres, WA 99016-9789

Lehman Brothers
400 Professional Drive
Gaithersburg, MD 20879

Marc & Michelle Griffith
6020 Heatherton Drive
Somis, CA 93066-9611

Leslie Edwards
17287 W. Summerfield Road
Post Falls, ID 83854

Lorraine Moller
2525 Arapahoe, Suite 500
Boulder, CO 80302-6720

Robert & Pamela Gabriel
3 Sayles Street
Greenwich, CT 06807-2142

Robert & Pamela Gabriel
18 Sherman Avenue
Greenwich, CT 06830-6046

Robert & Pamela Gabriel
21 Richmond Hill Road
Greenwich, CT 06831-2525

Sunil & L. Lori Wadhwa
747 Sturbridge Drive
Folsom, CA 95630-6166

Robert Burns
690 Heather Court
Pacifica, CA 94044-2141

Stella Tan
4525-4527 Lincoln Way
San Francisco, CA 94122-1128